## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

               Plaintiff,

v.

EDWARD S. ADAMS,

               Defendant.

17-cr-64-DWF-KMM

**DEFENDANT'S MOTION FOR ENTRY OF SCHEDULING ORDER AND SETTING OF TRIAL DATE**

## INTRODUCTION

As agreed at the May 12, 2017 telephonic status conference, Defendant Edward S. Adams hereby submits his proposed schedule for pretrial disclosures, motions, and a trial date in this complex financial case. The Indictment alleges conduct by Mr. Adams in connection with multiple separate securities transactions, involving millions of dollars in purchases and sales of the stock or warrants of four separate companies, over the course of almost a decade. The Government—which has been investigating this case for *three years*[1]—has just produced over half a million pages of documents to the defense, which will require substantial review, analysis, tracing of monies through bank statements, and the like. As a result, Mr. Adams proposes that the Court set a trial date twelve months from now, on May 7, 2018. Counsel for Mr. Adams respectfully suggests that a trial date in less than a year, for a case of this magnitude and complexity, is both common and

---

[1] The Government indicted Mr. Adams approximately one month after the SEC declined to recommend any enforcement action against him.

appropriate.  The remaining deadlines Mr. Adams proposes are tagged to the trial date; they are set forth in Exhibit A hereto and are discussed below.[2]

## BACKGROUND

The Indictment alleges a complex financial fraud scheme that, it says, dates back to 2004.  It claims that Mr. Adams—an accomplished lawyer and longtime professor at the University of Minnesota Law School—used his involvement as a lawyer for and officer of two technology companies, Apollo Diamond, Inc. ("ADI") and Apollo Diamond Gemstone Corporation ("ADGC"), to essentially "embezzle" money from those companies and their successors.  The Indictment alleges Mr. Adams organized four separate private securities transactions in 2006, 2007, 2009, and 2011-12, through which investors purchased stock or warrants in these technology companies, and that Mr. Adams directed certain proceeds of these sales to pay himself, other shareholders of the companies, business associates, and his law firm millions of dollars.  Despite the fact that many of these payments were made to several others involved in ADI and ADGC, who knew the money they received had come from investors through securities transactions, the Indictment charges only Mr. Adams.

The Indictment asserts that Mr. Adams defrauded investors by "directly and indirectly" misrepresenting the nature of their stock or warrant purchases, how their funds would be deployed, and the extent of his control over the companies and accounts to which their funds would be directed.  The Indictment raises such issues as Mr. Adams'

---

[2] Mr. Adams has submitted separately herewith a waiver of his rights under the Speedy Trial Act.

2

and others' control over and knowledge of companies, bank accounts, and securities transactions, the legitimacy of payments made to creditors (including Mr. Adams' law firm), the motivation behind and structuring of a private-to-public corporate reorganization, the content and meaning of various communications to investors, and the functioning of the relevant boards of directors.  It identifies five unnamed individual witnesses, including executives, board members and/or employees of the relevant companies, collaborating fundraisers, and a law partner.  (Indictment ¶¶ 7–9, 21, 39).  It further identifies seven bank accounts that purportedly were used by Mr. Adams to perpetrate the charged fraud. (Indictment ¶¶ 16, 23, 29, 34, 40).  Over the course of seven years, Mr. Adams is said to have profited $4.38 million in ill-gotten gains and to have directed payment to his law firm of $2.54 million in fees (the legitimacy of which appears to be questioned in the Indictment, although the document acknowledges that Mr. Adams' firm in fact "did perform services").  (Indictment ¶¶ 2, 14).  Interestingly, however, the only charged conduct relates to just over $4,000 invested by a handful of investors in a public company known as Scio Diamond Technology Corporation  in mid- to late 2012 (Indictment ¶ 63)—presumably because the Government recognizes that any charges based on transactions prior to that would be barred by the statute of limitations.

The Government has been investigating and developing its case for three years. While Mr. Adams and his counsel have only just begun to receive documents and disclosures from the Government, it is evident (and unsurprising) that the volume is substantial.  The Government's May 3, 2017 disclosure pursuant to Federal Rule of

Criminal Procedure 16—the first such production[3]—revealed that the Government has obtained documents from over 50 financial, corporate, and municipal institutions and over 20 individuals. The Bates numbers in the Government's production suggest it contains over 500,000 pages of materials.

In accordance with the complexity of this case and the time reasonably required for Mr. Adams and his counsel to mount a proper defense, Mr. Adams requests that the Court enter a schedule with the dates set forth in Exhibit A hereto, including a trial date of May 7, 2018. Specific justifications for the proposed trial date and various pretrial deadlines are set forth below.

## I.    Proposed Trial Date

Mr. Adams requests a trial date approximately one year from now, on May 7, 2018. This date appropriately accounts for the volume and complexity of the transactions and the multi-year time period at issue on the face of the Indictment. It also permits adequate time for both parties to prepare for the likelihood that dozens of witnesses and hundreds of documents will be presented at trial, which the defense expects would last three to four weeks. A one-year trial timetable would comport with common federal court practice for multi-faceted financial fraud cases like this one; indeed, many complex financial fraud cases, including in this District, have been set for trial well over a year after indictment.

---

[3] The Government initially made this production electronically available to Mr. Adams' former counsel on April 7, 2017, before undersigned counsel were retained to appear in the case. Because Mr. Adams retained new counsel, the production was not previously accessed or reviewed.

Although the Government has not proposed a specific trial date in discussions with the defense, it has suggested a trial in "early" 2018. That would be patently unfair to Mr. Adams. The Government has been investigating the case for *three years*, including having financial and accounting experts review thousands of bank records, preparing analyses of those records, executing search warrants for hundreds of thousands of pages of emails, issuing document subpoenas, reviewing the produced emails and documents, interviewing witnesses, taking testimony in the grand jury, and the like. With a three-year head start, it is not surprising that the Government would be ready to try the case before Mr. Adams. But in order for Mr. Adams to be on a level playing field, he and his counsel need time to do all the things the Government has been doing for the past few years. A trial date in early 2018 does not permit the defense to do so. Mr. Adams proposed May 7, 2018 not in an effort to "split the difference" with the Government, but rather to suggest a realistic trial date that takes into account the unquestioned complexity of the case and volume of work that the defense must perform to prepare for trial.

## II.     Deadline for Non-Discovery Pre-Trial Motions

In conjunction with a May 2018 trial date, Mr. Adams proposes that all pre-trial motions (excluding discovery motions) be filed less than six months from now, on November 5, 2017. That would allow the Court to hold a hearing on such motions before the end of the year. As the Court anticipated during the May 12, 2017 telephonic status conference, Mr. Adams expects to file multi-pronged, substantive motions to dismiss the Indictment. For example, even at this early stage, it is clear that statute-of-limitations issues are in play; the Indictment dedicates substantial discussion to uncharged conduct

between 2006 and 2011, and all of the funds allegedly "embezzled" by Mr. Adams were purportedly misappropriated over five years ago.  The Government's effort to charge mails and wires from 2012 involving just over $4,000, while at the same time alleging a multi-million dollar fraud from many years earlier, raises substantial statute-of-limitations and other issues that Mr. Adams expects to address in motions to dismiss.  In addition, in light of (a) the volume of discovery provided by the Government to date and (b) Mr. Adams' status as a licensed and practicing attorney during the time period at issue in the Indictment, when he had attorney-client relationships with ADI, ADGC, and other individuals and entities mentioned in the Indictment (and when he also was himself a client being advised by attorneys), sufficient time is necessary before the motions deadline to explore the propriety and provenance of the Government's seizure of documents from Mr. Adams' email accounts, receipt of documents from others, and document review protocols.

In short, as in many complex financial cases—particularly those where a lawyer is the defendant—substantial motions to dismiss and motions to suppress are expected to be filed, and the defense requires time to review all the available discovery, interview witnesses, and conduct needed legal research before filing motions.  A deadline less than six months away is reasonable for that effort.

## III.    Proposed Deadlines for Government Disclosures

### A.    Rule 404(b) and Rule 801(d)(2) Disclosures

As noted above, the Indictment cites heavily to uncharged conduct predating the applicable statute-of-limitations period.  As such, Mr. Adams anticipates substantial

motions practice regarding the admissibility of evidence the Government presumably would seek to offer under Federal Rule of Evidence 404(b).  Thus, Mr. Adams proposes that any such Government-sponsored Rule 404(b) evidence ought to be disclosed 120 days in advance of trial, on January 8, 2018, so that the defense has sufficient time to move to exclude the evidence the Government proffers, and both parties have sufficient time in advance of trial to incorporate the Court's ruling on the motion (which could significantly change the scope and contours of the evidence at trial) into their trial preparation and strategy.

Relatedly, any evidence the Government intends to argue constitute admissions by Mr. Adams or supposed co-conspirators under Federal Rule of Evidence 801(d)(2) ought to be disclosed at the same time.  There are several persons mentioned in the Indictment who received substantial monies—as the Indictment alleges Mr. Adams did—from the securities transactions at issue, so Mr. Adams should know well in advance of trial whether the Government will seek to claim that statements by any of them should qualify as admissions of Mr. Adams.

### B.    Staggered Expert Disclosures

Mr. Adams proposes staggered disclosures of experts—with the Government disclosing its proposed expert opinions 30 days before defense expert disclosures.  In a complex financial fraud case like this one, staggered expert disclosures would be more efficient than simultaneous disclosures.  For example, given the securities transactions and bank accounts described in the Indictment, one presumes the Government might seek to present testimony from a forensic accountant about the flow of funds sent by investors,

what bank accounts the monies touched, where the funds ended up, and (for monies allegedly paid to Mr. Adams and other owners of ADI and ADGC) how the monies were used.  Until Mr. Adams sees a summary of such testimony, he will not know whether any of it is disputed—in which case he would need no expert to rebut it—or what the extent of any dispute is, which would shape whatever competing expert opinions he needs to offer.  The same is true for other topics suggested by the Indictment, such as securities transactons, private-to-public corporate reorganization transactions, legal ethics, and many others.  Mr. Adams should not be left to guess whether the Government will seek to offer expert testimony on any of these topics before deciding whether he needs to do the same.

For these reasons, undersigned counsel's experience in complex financial fraud cases, including in this District, is that the Government will disclose its expert opinions first, and the defense will submit responsive expert opinions 30 days later.  Mr. Adams requests that same schedule here.

## C.      Jencks, *Giglio*, and *Brady* Materials

On the face of the Indictment, it is clear that the Government has conducted (and likely will continue to conduct) substantial interviews of critical witnesses—including all persons identified in the Indictment only by their initials—and that it presented the testimony of key witnesses to the grand jury.  Many of these witnesses previously worked with Mr. Adams on precisely the corporate affairs and securities transactions that form the basis for the Government's case.  The Government has informed defense counsel that it will not provide "open file" discovery, such that it has not produced any FBI Form

302s or transcripts of grand jury testimony relating to these witnesses. Thus, Mr. Adams anticipates that the Government's required *Jencks* disclosures will be substantial. The same is true for *Brady* and *Giglio* materials; Mr. Adams expects that several of the Government's witnesses, including those who (like Mr. Adams) received proceeds from the securities transactions at issue, have provided statements that are exculpatory for Mr. Adams and/or that the Government is aware of information that could be used to impeach them if they testify.

Mr. Adams requests that all of these disclosures be made at least 60 days before trial, to afford a fair opportunity for review, incorporation into trial strategy, and preparation for cross-examination. As the Court noted during the May 12, 2017 telephonic conference, although the Court cannot force the Government to provides *Jencks* material in advance of the statutory deadline, in a complex financial case such as this one there would be substantial delays in the trial if the Government does not produce such material well in advance.

## CONCLUSION

For the foregoing reasons, Mr. Adams requests that the Court set a trial date of May 7, 2018 and enter an order that contains the pretrial deadlines set forth in Exhibit A, attached hereto.

Dated:      May 15, 2017                          *s/James L. Volling*
                                                  James L. Volling (#113128)
                                                  Deborah A. Ellingboe (#26216X)
                                                  FAEGRE BAKER DANIELS LLP
                                                  2200 Wells Fargo Center
                                                  90 South Seventh Street
                                                  Minneapolis, MN  55402
                                                  Telephone:  (612) 766-7000
                                                  Facsimile:  (612) 766-1600
                                                  james.volling@faegrebd.com
                                                  debbie.ellingboe@faegrebd.com

                                                  Joseph G. Petrosinelli (DC Bar #434280)
                                                  Lance Wade (DC Bar #484845)
                                                  Sarah Lochner O'Connor (DC Bar #1012405)
                                                  WILLIAMS & CONNOLLY LLP
                                                  725 Twelfth Street NW
                                                  Washington, DC  20005
                                                  Telephone:  (202) 434-5000
                                                  jpetrosinelli@wc.com
                                                  lwade@wc.com
                                                  soconnor@wc.com

                                                  Attorneys for Defendant Edward S. Adams