UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 17-cr-64-DWF-KMM |
| | ) | |
| v. | ) | **DECLARATION OF LANCE** |
| | ) | **A. WADE IN SUPPORT OF** |
| EDWARD S. ADAMS, | ) | **DEFENDANT'S MOTION TO** |
| | ) | **SUPPRESS** |
| Defendant. | ) | |

Pursuant to 28 U.S.C. § 1746, I, Lance A. Wade, counsel for Defendant Edward S. Adams, under penalty of perjury hereby state:

1. The government, as part of its criminal investigation, first applied for a search warrant directed to Yahoo!, Inc. on November 25, 2015. *See* Exhibit 1, which is a true and accurate copy of the government's November 25, 2015 warrant application.

2. The November 25, 2015 warrant was not executed, because the method of service used by the government was outdated. *See* Exhibit 2, which is a true and accurate copy of the returned November 25, 2015 warrant.

3. The government applied for a second search warrant directed to Yahoo!, Inc. on January 7, 2016. *See* Exhibit 3, which is a true and accurate copy of the government's January 7, 2016 warrant application.

4. The January 7, 2016 warrant was executed on January 8, 2016. *See* Exhibit 4, which is a true and accurate copy of the returned January 7, 2016 warrant.

5. Prior to the government's first application for a search warrant directed to Yahoo!, Inc. in November 2015, Mr. Adams had become the subject of an SEC

investigation, *In re Scio Diamond Technology Corporation* (C-08091), that concerned the acquisition of the assets of Apollo Diamond, Inc. ("Apollo Diamond") and the exchange of shares in Apollo Diamond for shares in the acquiring company.

6. Mr. Adams was represented in the SEC investigation by attorneys James Farrell and John J. Sikora, Jr. of Latham & Watkins LLP ("Latham") and attorney James L. Kopecky of the Chicago law firm of Kopecky Schumacher Bleakley & Rosenburg, P.C. *See* Ex. 5 at 2. Exhibit 5 is a true and accurate copy of excerpts of the Transcript of the Deposition of Edwards S. Adams, *In re Scio Diamond Technology Corporation* (C-08091) (Aug. 27, 2015 & Oct. 8, 2015).

7. Mr. Adams was deposed at length by SEC attorneys on August 27, 2015 and October 8, 2015. *See* Ex. 5. In the course of the deposition, Mr. Adams testified that he was Apollo Diamond's General Counsel. *Id.* at 63-64. In connection with the criminal investigation, the government obtained the transcripts of those depositions. *See* Ex. 1, Kroells Affidavit at ¶¶ 14, 33.

8. In February of this year, the SEC notified Mr. Adams that it had decided not to pursue an enforcement action against him in connection with its investigation.

9. After the United States Attorney's Office for the District of Minnesota ("USAO") opened a criminal investigation of Mr. Adams, he was represented in that investigation by Jon M. Hopeman, then of Felhaber Larson. The USAO was aware by at least mid-February 2016 that Mr. Adams was obtaining counsel to represent him in the USAO's investigation, and was introduced to Mr. Hopeman specifically by early March 2016.

10.     Mr. Adams was represented by counsel in four civil suits relating to the Apollo companies that were brought by disgruntled shareholders of Apollo Diamond, Private Scio, and Public Scio in 2012 and 2013. In *McPheely v. Adams, et al. and Scio Diamond Technology Corporation, Inc.*, Case No. 6:13-cv-02660-GRA and *Sennott v. Adams, et al. and Apollo Diamond, Inc.*, Case No. 6:13-cv-02813-GRA, Mr. Adams was represented by attorneys from Latham and an attorney at the Charleston, South Carolina law firm of Moore & Van Allen PLLC. See Ex. 6, which is a true and accurate copy of an excerpt of the docket in the *McPheely* litigation; Ex. 7, which is a true and accurate copy of an excerpt of the docket in the *Sennott* litigation.

11.     In *Fink v. Adams, et al.*, Case No. 12-cv-01899 (JRT/JSM), Mr. Adams was represented by attorneys from Latham. See Ex. 8, which is a true and accurate copy of a Certificate of Service filed in the *Fink* litigation, identifying counsel for Mr. Adams.

12.     In *Mack v. Adams, et al. and Loblolly, Inc. (f/k/a Scio Diamond Technology Corporation*, Court File No. 12-cv-1115 (DSD/JJK), Mr. Adams was represented by Aaron R. Hartman of Monroe Moxness Berg P.A. See Ex. 9, which is a true and accurate copy of an excerpt of the docket in the *Mack* litigation. The *Mack* suit was the subject of questioning by the SEC when it deposed Mr. Adams in 2015. See Ex. 5 at 451–55.

13.     At his deposition before the SEC, Mr. Adams testified that the email address that he had mainly used was edwardsadams@yahoo.com. See Ex. 5 at 12. He also explained that he sometimes used the email address jafman1@yahoo.com, including for matters relating to the Apollo companies. See Ex. 5 at 368 (note that the email address is mistranscribed as "jeffman1@yahoo.com").

14. After the government served the second warrant on Yahoo!, the company provided it with a flashdrive containing information associated with the three email addresses. *See* Ex. 4 at 2.

15. On May 16, 2017, the government produced to the defense, pursuant to its Rule 16 obligations, a hard drive containing ESI that had been produced to it by Yahoo! from the three email accounts that were the subject of the government's warrant. *See* Ex. 10, which is a true and accurate copy of the government's May 16, 2017 production letter.

16. In May 2017, when the government provided defense counsel with the emails produced by Yahoo!, the government purported to provide two databases. One database (which the government called "Yahoo email unfiltered") supposedly contained all of the emails produced by Yahoo!, and the other (which the government called "Yahoo email filtered") supposedly contained "potentially privileged, as well as non-responsive, emails and documents" from the Yahoo! production. *See* Ex. 10.

17. The government's account of what the two databases contained was inaccurate. This became apparent when defense counsel reviewed the ESI on the hard drive produced by the government, and defense counsel immediately informed the government of the discrepancy. *See* Ex. 11 at 6, which is a true and accurate copy of email correspondence between counsel for the defense and the government, from May 16, 2017 to August 23, 2017.

18. On June 5, 2017, the government responded by conceding that its earlier statements about the hard drive had been erroneous:

4

> I checked on this with our lit support folks, and, apparently, they did not understand what our paralegal had requested. On the hard drive that you received, they did not include the full set of data for the two Adams accounts (edwardsadams@yahoo.com and jafman1@yahoo.com) that we received from Yahoo.

Ex. 11 at 3-4. The government stated that it would separately supply the complete data received from Yahoo!. The government stated that the prosecution team had been given access to "the folder that was labeled 'Adams_Yahoo_Unfiltered' on the drive that [the defense] received." *Id.* at 4.

19. On or about June 6, 2017, the government produced to defense counsel an additional thumb drive containing Yahoo! emails. As described by the government in its June 5, 2017 correspondence, the Yahoo! emails were divided into two categories: "Main Emails," previously described as "unfiltered," and "Adams taint," previously described as "filtered." Counsel for the government stated that the prosecution team "has access" to the "Main Emails"/"unfiltered" database, whereas the "Adams taint"/"filtered" database includes "materials that were extracted from the database in an effort to remove potentially privileged materials." Ex. 11 at 3-4. Counsel for the government did not disclose the methods that were used to divide the Yahoo! emails into the two databases. *Id.*

20. In total, Yahoo! disclosed 108,291 emails or draft emails from Mr. Adams's accounts: more than 70,000 associated with edwardsadams@yahoo.com and nearly 38,000 associated with jafman1@yahoo.com, for a total of more than 400,000 pages of ESI. Yahoo! also disclosed emails from Mr. Monahan's Yahoo! account. The emails date back to October 2006.

21. The Yahoo! production includes privileged communications between Mr. Adams and his counsel in the same criminal investigation in which the warrant was obtained. The Yahoo! production also contains privileged communications with Mr. Adams's attorneys in the SEC investigation and prior civil suits regarding the same subject matters at issue in the criminal investigation.

22. Based on defense counsel's review of the two databases produced by the government to date, more than 79,000 files are in the "Adams taint"/"filtered" database, whereas more than 29,000 files are in the "Main Emails"/"unfiltered" database to which the government has access. Thus the vast majority of the emails obtained from Yahoo!—more than 70%—were identified by the government as being potentially privileged or irrelevant to the subjects listed in the warrant.

23. Based on searches and reviews conducted by the defense to date, it appears that at least 5,000, and potentially as many as 10,500, of the emails in the "Main Emails"/"unfiltered" database to which the government has access are privileged. Hundreds of other emails in the "Main Emails"/"unfiltered" database are wholly unrelated to the subjects identified in the warrant.

24. Over 900 emails in the "Main Emails"/"unfiltered" folder appear to implicate Mr. Adams's personal attorney-client privilege with his own counsel. This includes emails from July 2012 (many of which are marked "PRIVILEGED ATTORNEY CLIENT COMMUNICATION") among Mr. Adams, Mr. Monahan, and Aaron Hartman, an attorney then at Anthony, Ostlund, Baer & Louwagie P.A., about

6

then-pending litigation with shareholders of Apollo, Private Scio, and Public Scio in which Mr. Hartman represented Mr. Adams and Mr. Monahan.

25. Over 1,600 other emails in the "Main Emails"/"unfiltered" folder appear to involve Mr. Adams's communications with his own clients, regarding either his legal work for them or matters in which he had been retained as a consultant or expert witness.

26. More than 300 emails in the "Main Emails"/"unfiltered" folder implicate the spousal privilege Mr. Adams shares with his wife, Denise. Dozens of the private spousal communications now in the prosecution team's possession relate to Apollo business.

27. Also among the emails in the "Main Emails"/"unfiltered" folder are more than 200 emails entirely unrelated to the subjects of the Indictment, including, for example: more than one hundred emails about the planning of a surprise 50th birthday party for Mr. Adams's wife (including drafts of a poem Mr. Adams wrote to her for that occasion); more than sixty emails relating to a yogurt business owned by Mr. Adams; emails about ski trips taken by Mr. Adams; travel itineraries for family vacations; emails concerning a potential personal investment by Mr. Adams in a Chicago hotel; and emails relating to evaluations of coaches of children's sports teams.

28. Over 5,600 emails in the "Main Emails"/"unfiltered" category to which the prosecution team was given access contain the terms "privilege" or "privileged." Adding other common terms used to safeguard privileged materials (set out in more detail below), and properly factoring in the attachments to those communications, brings the total number to over 11,000 documents.

29. Over 6,800 emails in the "Main Emails"/"unfiltered" category that was accessible to the prosecution team contain references to "attorney," "lawyer," or "counsel."

30. "Williams & Connolly" and the names of Mr. Adams's Williams & Connolly counsel, including Joe Petrosinelli, appear in several documents in the "Main Emails"/"unfiltered" category, even though the government was aware of Mr. Petrosinelli's representation of Mr. Adams no later than early March 2016.

31. The "Main Emails"/"unfiltered" folder available to the prosecution team contains 60 additional emails referring to Latham, Mr. Farrell, or Mr. Sikora—Mr. Adams' counsel in the parallel SEC investigation that concluded in February 2017.

32. Since all Yahoo! emails were produced in June 2017, the government has rejected repeated requests by the defense to identify the measures it took to identify privileged communications and those not related to the subjects set forth in the warrant. *See* Ex. 12, which is a true and accurate copy of a letter from myself to the government, dated May 16, 2017; Ex. 13, which is a true and accurate copy of a letter from myself to the government, dated August 31, 2017; Ex. 11 at 2, 7, 8 (containing government's responses to requests, including that "we do not intend to detail for you the methods that we utilized to filter the database").

33. On September 8, 2017, the government agreed to suspend the prosecution team's access to the "Main Emails"/"unfiltered" category. *See* Ex. 14, which is a true and accurate copy of email correspondence between counsel for the defense and the government, from Sept. 8, 2017 to Sept. 15, 2017.

34. By then, the prosecution team had had access to the Yahoo! emails in the "Main emails"/"unfiltered" category for twenty months, since the execution of the warrant on January 8, 2016. *See* Ex. 4.

35. Shortly before the government agreed to suspend the prosecution team's access to the folder, it also offered to establish a "taint team" for privilege review. *See* Ex. 11 at 1; Ex.14.

36. Undersigned counsel has spoken to a representative of the proposed taint team, but the parties have not yet entered into any agreement regarding a taint team review, which may be inadequate under the circumstances existing in this case.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 27th day of September, 2017.

*[signature]*

Lance A. Wade