UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 17-cr-64-DWF-KMM |
| | ) | |
| v. | ) | **MOTION TO COMPEL** |
| | ) | **HEARING DOCUMENTS** |
| EDWARD S. ADAMS, | ) | **AND INCORPORATED** |
| | ) | **MEMORANDUM OF LAW** |
| Defendant. | ) | |

Mr. Adams, by and through his undersigned counsel, moves to compel the production of certain documents in the Government's possession that are relevant to his pending Motion to Suppress (DCD 36) and needed for the January 8, 2018, evidentiary hearing. These documents came into focus as a result of the Government's November 30, 2017, Notice of Intent to Call Witnesses and related disclosures (DCD 52 & 52-1). The parties have met and conferred in good faith, and have substantially narrowed the matters in dispute. The Government has, however, refused to disclose documents, including memoranda and email correspondence, relating to Inspector Kroells's statement in her declaration that she understood from AUSA Kokkinen "that he complied with the requirements for seeking an attorney-related search warrant," (DCD 52-1 at 2-3 (Kroells Decl. ¶ 6)), including evidence that those requirements were or were not met.

These documents are material to the motion to dismiss and are discoverable pursuant to Federal Rule of Criminal Procedure 16. Moreover, the Jencks Act requires production of memoranda and emails written by the law enforcement witnesses. Finally,

*Brady* and *Giglio* require disclosure of evidence favorable to Mr. Adams, including information affecting the credibility of the Government's hearing witnesses. *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150, 153-55 (1972).

## BACKGROUND

The relevant factual background on this matter was set forth in Mr. Adams's Responsive Notice of Intent to Call Witnesses (DCD 54) and Mr. Adams's Motion to Suppress (DCD 37 at 4-16). Those facts are incorporated herein, but will not be repeated. For the Court's convenience, however, selected facts relevant to this motion are summarized briefly below.

As the Government concedes, Mr. Adams was, at all material times, a practicing attorney and a partner at the Adams Monahan LLP law firm. (DCD 49 (Suppression Opp. at 2)). The Government also acknowledges that Mr. Adams provided legal services to Apollo and served as Apollo Diamond's General Counsel. (DCD 49 at 20-21 & nn.7-8). It also acknowledges that Mr. Adams previously testified that edwardsadams@yahoo.com was his primary email account. (DCD 49 at 3).

The Government obtained the search warrant at issue after U.S. Postal Inspector Kroells submitted her second application for a warrant for Attorney Adams's Yahoo! email accounts on January 7, 2016. (*See* DCD 41-1 at 41 (Application for a Search Warrant)). The Government obtained the search warrant that same day. (DCD 41-1 at 75 (Search and Seizure Warrant)). Around March 7, 2016, the Government received approximately 146,000 documents from Yahoo! on a flash drive. (DCD 52-1 at 4 (Kroells Decl. ¶ 10), 24 (Zeitz Decl. ¶ 7)).

2

The Government did not use a taint team during its search of Attorney Adams's email. (DCD 52-1 at 39 (Maria Decl. ¶ 8)). Rather, the searches were conducted by members of the prosecution team. (DCD 52-1 at 7-9 (Kroells Decl. ¶¶ 19-23), 14-15 (Khan Decl. ¶¶ 11-13), 19-20 (Belich Decl. ¶ 11), 25 (Zeitz Decl. ¶ 9), 39-42 (Maria Decl. ¶¶ 9-16)). In March 2016, during a two-day period and before taking any steps to remove privileged documents, Inspector Kroells, with permission from AUSA Maria, searched the contents of all 146,000 documents on the flash drive. (*See* DCD 52-1 at 4-5 (Kroells Decl. ¶¶ 9-12)).

On or about April 14, 2016, AUSA Maria proposed a list of search terms to apply to the 146,000 Yahoo! documents to exclude potentially privileged documents from the Government's search. (DCD 52-1 at 26 (Zeitz Decl. ¶ 13)). Upon applying this initial list of search terms, 70 to 80 percent of the documents, or approximately 105,000 documents, were identified as containing potentially privileged information. (DCD 52-1 at 26 & 29-31 (Zeitz Decl. ¶¶ 14, 23)). Instead of segregating those 105,000 potentially privileged documents, on or about April 27, 2016, AUSA Maria abandoned the original list of search terms in favor of a narrower list of terms that resulted in excluding only approximately 32,000, rather than 105,000, emails from the Government's review. (DCD 52-1 at 26-27, 29 (Zeitz Decl. ¶¶ 15-16, 23)) & 39 (Maria Decl. ¶ 8)).

Approximately three weeks later and after the email search had begun, on May 16, 2016, the Government realized it had omitted the names of several lawyers and law firms with which Mr. Adams had an attorney-client relationship, including Mr. Adams's then-current defense counsel. (DCD 52-1 at 7-8 (Kroells Decl. ¶ 20) & 28 (Zeitz Decl. ¶¶ 18-

3

19)).  The Government did not exclude from its review database the 1,000 documents containing these additional terms for another three weeks, until June 7, 2016.  (DCD 52-1 at 29 (Zeitz Decl. ¶ 20)).

Even after the Government applied relevance search terms on April 4, 2017, after the indictment had been returned, and reduced the size of its review database to approximately 43,000 documents, (*see* DCD 52-1 at 41-42 (Maria Decl. ¶¶ 13-14); DCD 54 at 4-5), thousands of privileged documents remained in the Government's review database, (*see* DCD 37 at 13-16 & DCD 38 (Wade Decl.) ¶¶ 23-31).  This includes hundreds of documents implicating Mr. Adams's personal attorney-client privilege with his own counsel, more than 1,600 that involve Attorney Adams's communications with his own clients regarding legal work or expert engagements, and thousands containing the words "privilege" or "privileged."  *Id.*

The Government has submitted a declaration from Inspector Kroells stating that she "understood AUSA Kokkinen had engaged in a process related to attorney-involved searches" and that she "understand[s] from [her] communications with AUSA Kokkinen that he complied with the requirements for seeking an attorney-related search warrant." (DCD 52-1 at 2-3 (Kroells Decl. ¶ 6)).  Similarly, Agent Belich's declaration states that he understood that the use of privilege search terms "was something that needed to be done to comply with some kind of a request made because the target of the investigation was an attorney."  (DCD 52-1 at 18 (Belich Decl. ¶ 7)).

# ARGUMENT

Mr. Adams is entitled to discovery regarding Inspector Kroells's statement that the Government "complied with the requirements for seeking an attorney-related search warrant," including evidence that those requirements were or were not met, as the Government has put this subject at issue in the upcoming evidentiary hearing.  (*See* DCD 52-1 at 2-3 (Kroells Decl. ¶ 6); 18 (Belich Decl. ¶ 7)).  Contrary to Inspector Kroells's assertion, it appears that the Government failed to comply with many of the requirements of United States Attorneys' Manual ("USAM") § 9-13.420, which establishes guidelines for the execution of "Searches of Premises of Subject Attorneys."[1]

The USAM policy sets forth the following guidelines:

A.  "[P]rosecutors are expected to take the least intrusive approach" and "[c]onsideration should be given to obtaining information from other sources or through the use of a subpoena";

B.  "No application for such a search warrant may be made to a court without the express approval of the United States Attorney or pertinent Assistant Attorney General";

C.  "In addition to obtaining approval . . . and before seeking judicial authorization for the search warrant, the federal prosecutor must consult with the Criminal Division;" and the prosecutor should submit to the Criminal Division "any special instructions to the searching agents regarding search procedures and procedures to be followed to ensure that the prosecution team is not 'tainted' by any privileged material inadvertently seized during the search";

D.  "Procedures should be designed to ensure that privileged materials are not improperly viewed, seized or retained during the course of the search";

---

[1] *Available at* https://www.justice.gov/usam/usam-9-13000-obtaining-evidence#9-13.420.

5

    E.    "The search warrant should be drawn as specifically as possible," "a 'privilege team' should be designated, consisting of agents and lawyers not involved in the underlying investigation," and "[t]he affidavit in support of the search warrant . . . at a minimum, should generally state the government's intention to employ procedures designed to ensure that attorney-client privileges are not violated."

USAM § 9-13.420(A)-(E).

To the best of Mr. Adams's knowledge, the government complied with none of these directives; certainly, the second warrant application neither mentioned privilege nor included any provision to protect it, and the Government concedes that it did not employ a taint team during the relevant time period. (*See* DCD 41-1 at 41-73; DCD 52-1 at 39 (Maria Decl. ¶ 8)).

While Mr. Adams acknowledges that § 9-13.420 does not create any rights, *see* USAM § 1-1.100,[2] the Government's compliance with its own internal polices is relevant and material to determining whether it acted reasonably and in good faith, especially in light of Inspector Kroells's assertion in her declaration that she understood the government to be complying with those policies. *See United States v. Baker*, 16 F.3d 854, 856 n.1 (8th Cir. 1994) (noting that although "police violation of state law does not establish a Fourth Amendment violation," it is relevant to both the reasonableness of police conduct and applying the good faith exception to the exclusionary rule).

---

[2] *Accord United States v. Lee*, 274 F.3d 485, 493 (8th Cir. 2001).

Rules 16, 26.2, *Brady*, and *Giglio* require the Government to disclose the information in its possession that would permit Mr. Adams to challenge Inspector Kroells's assertion.

First, Rule 16 empowers the Court to compel the Government to produce its papers, documents, or data that are "material" to preparing Mr. Adams's suppression argument. *See* Fed. R. Crim. P. 16(a)(1)(E)(i). "[M]aterial" means "helpful to the defense," *United States v. Vue*, 13 F.3d 1206, 1208 (8th Cir. 1994), and "[t]he materiality hurdle is not intended to be a high one," *United States v. Jean*, No. 5:15-CR-50087, 2016 WL 6886871, at *4 (W.D. Ark. Nov. 22, 2016). At the moment, "the defense is the suppression issue." *United States v. Virgen-Nunez*, No. 4:09-CR-16, 2009 WL 10678145, at *2 (S.D. Iowa June 26, 2009).[3] The documents sought by Mr. Adams would be helpful to the defense's argument that the Government failed to act reasonably, and in good faith, when seeking and executing the warrant, and as a result should be disclosed pursuant to Rule 16. *See* Fed. R. Crim. P. 16(a)(1)(E)(i); *Vue*, 13 F.3d at 1208.

Second, Rule 26.2 and the Jencks Act, 18 U.S.C. § 3500, require disclosure of the "communications with AUSA Kokkinen" referenced by Inspector Kroells as a relevant statement by a law enforcement witness. (DCD 52; DCD 52-1 at 2-3 (Kroells Decl. ¶ 6)).

---

[3] This formulation of the inquiry was the defendant's as quoted by the court in *Virgen-Nunez*. *See* 2009 WL 10678145, at *2. But based on its reasoning, the court adopted the defendant's formulation. *See id.* (finding evidence material because it made it more likely that the government committed an improper search).

Third, due process requires the Government to disclose evidence favorable to Mr. Adams that is "material either to guilt or to punishment," *Brady*, 373 U.S. at 87, including information affecting the credibility of its witnesses, *Giglio*, 405 U.S. at 153-55.  "The suppression of material evidence helpful to the accused, whether at trial *or on a motion to suppress*, violates due process if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *United States v. Gamez-Orduno*, 235 F.3d 453, 461 (9th Cir. 2000) (emphasis added) (citing *Brady*, 373 U.S. at 87).[4]  "[T]he government must always produce any potentially exculpatory or otherwise favorable evidence without regard to how the withholding of such evidence might be viewed—with the benefit of hindsight—as affecting the outcome of the trial." *United States v. Safavian*, 233 F.R.D. 12, 16 (D.D.C. 2005).  Because the Government's failure to comply with its own policies is favorable to Mr. Adams's suppression argument, any information the Government possesses to that effect must be disclosed under *Brady*.  *See* 373 U.S. at 87.  Similarly, evidence of whether the USAM policy's requirements were or were not met must be produced pursuant to *Giglio* because it would affect Inspector Kroells's credibility.  *See* 405 U.S. at 153-55.

Mr. Adams expects the Government to claim privilege and work product protection with respect to many of these materials,[5] but this argument would be

---

[4] *Accord Smith v. Black*, 904 F.2d 950, 965-66 (5th Cir. 1990), *vacated on other grounds* 503 U.S. 930 (1992).

[5] Mr. Adams acknowledges that Rule 16 exempts from disclosure "reports, memoranda, or other internal government documents made by an attorney for the government or other

misguided.  "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area in which he can analyze and prepare his client's case."  *United States v. Nobles*, 422 U.S. 225, 238 (1975).  Far from existing in a "privileged area," *id.*, however, the execution of a search warrant is a quintessentially public act.  Permitting the Government to claim work product protection over the details of the process for obtaining and executing the search warrant would make it impossible to challenge an improper search.  *See Matter of Up North Plastics, Inc.*, 940 F. Supp. 229, 232-33 (D. Minn. 1996) ("The Fourth Amendment requirement of probable cause is meaningless without some way for targets of the search to challenge the lawfulness of that search").

Similarly, the deliberative process privilege should not apply.  "The deliberative process privilege is a qualified privilege and can be overcome by a sufficient showing of need."  *In re Sealed Case*, 121 F.3d 729, 737-38 (D.C. Cir. 1997).  "For example, where there is reason to believe the documents sought may shed light on government misconduct, 'the privilege is routinely denied,' on the grounds that shielding internal government deliberations in this context does not serve 'the public's interest in honest, effective government.'"  *Id.* (citation omitted).  Here, the only "deliberation" in question is the government's deliberation over whether to abide by its own pre-existing policies, so the public interest favors disclosure.  *See Bank of Dearborn v. Saxon*, 244 F. Supp.

---

government agent in connection with investigating or prosecuting the case."  Fed. R. Crim. P. 16(a)(2).

9

394, 402 (E.D. Mich. 1965) (denying privilege where "the real public interest . . . [wa]s not the agency's interest in its administration but the citizen's interest in due process").

Even if privilege or work product protection arguably applied, the Government has waived it by supporting its opposition to Mr. Adams's Motion to Suppress with the unsubstantiated assertion that the Government did "comply with the requirements for seeking an attorney-related search warrant." (DCD 52-1 at 2-3 (Kroells Decl. ¶ 6)). *See Nobles*, 422 U.S. at 239-40. The Government "can no more advance the work-product doctrine to sustain a unilateral testimonial use of work-product materials than [a person] could elect to testify in his own behalf and thereafter assert [the] Fifth Amendment privilege to resist cross-examination." *Id.* at 240. Like the work product protection, "[t]he attorney client privilege may also be implicitly waived," and "cannot be used as both a shield and a sword." *United States v. Workman*, 138 F.3d 1261, 1263-64 (8th Cir. 1998). The Government here "cannot selectively assert the privilege to block the introduction of information harmful to [its] case after introducing other aspects of [its] conversations with [an attorney] for [its] own benefit." *Id.* at 1264.

And of course, the Government's obligations under *Brady* and the Jencks Act trump any claims of privilege. *See Goldberg v. United States*, 425 U.S. 94, 101-02 (1976) (rejecting argument that attorney work product fell outside required disclosure under Jencks Act); *Morris v. Ylst*, 447 F.3d 735, 742-43 (9th Cir. 2006) (explaining that *Brady* requires disclosure of exculpatory facts contained in a prosecutor's opinions and mental impressions of the case).

If the Court is inclined to accept the Government's privilege claim, however, it should, at a minimum, require the Government to produce a privilege log outlining the specific documents it is withholding and why in sufficient detail for the Court to review these documents *in camera*. *See United States v. Llera Plaza*, 181 F. Supp. 2d 414, 418-20 (E.D. Pa. 2002) (detailing discovery process in which court ordered the government to produce for inspection *in camera* allegedly-privileged communications made between AUSAs and the Attorney General pursuant to the USAM).

## **CONCLUSION**

For the foregoing reasons, Mr. Adams respectfully requests that the Court grant his motion to compel.

Dated: December 13, 2017			Respectfully submitted,

			 /s/ *Lance Wade*
			Joseph G. Petrosinelli (DC Bar #434280)
			Lance Wade (DC Bar #484845)
			Sarah Lochner O'Connor (DC Bar #1012405)
			Gloria Maier (DC Bar # 1012208)
			WILLIAMS & CONNOLLY LLP
			725 Twelfth Street, N.W.
			Washington, DC  20005
			Telephone:  (202) 434-5000
			jpetrosinelli@wc.com
			lwade@wc.com
			soconnor@wc.com

        James L. Volling (#113128)
        Deborah A. Ellingboe (#26216X)
        FAEGRE BAKER DANIELS LLP
        2200 Wells Fargo Center
        90 South Seventh Street
        Minneapolis, MN  55420
        Telephone:  (612) 766-7000
        Facsimile:  (612) 766-1600
        james.volling@faegrebd.com
        debbie.ellingboe@faegrebd.com

        Attorneys for Defendant Edward S. Adams