UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 17-64 (DWF/KMM)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM IN** |
| | ) | **SUPPORT OF** |
| v. | ) | **MOTION TO QUASH** |
| | ) | |
| EDWARD S. ADAMS, | ) | |
| | ) | |
| Defendant. | ) | |

The United States respectfully submits this Memorandum in Support of Motion to Quash.

## SUMMARY OF THE ARGUMENT

Edward Adams has served a subpoena on one of the Assistant United States Attorneys representing the government in this matter. For a number of reasons, the law disfavors attempts by a defendant to call as a witness an Assistant United States Attorney prosecuting the case. To survive a Motion to Quash, Mr. Adams must demonstrate both that the evidence is vital to his case and, even if vital, that there is a compelling need for the AUSA's testimony because the same or similar information cannot be presented from another source. Mr. Adams cannot make such a showing.

In his Responsive Notice of Intent to Call Witnesses, Mr. Adams sets forth several topics about which he seeks to take testimony from AUSA David Maria.   To the extent these topics are relevant to the Fourth Amendment reasonableness inquiry at issue, AUSA Maria's testimony is not vital on those points, and, even if vital, the same or similar facts can be presented through another source (and often multiple alternative sources). Mr. Adams also included in his Responsive Notice references to post-execution communications between counsel for the parties that are irrelevant to the manner in which the warrant was executed and that provide no basis for compelling AUSA testimony.   The Court and counsel have substantial and complete direct evidence about the manner in which the warrant was executed, which is the issue before the Court at the hearing; later emails between counsel do nothing to further illuminate the already full description of the execution itself.

Mr. Adams' inability to demonstrate a compelling need to call AUSA Maria as a witness is a result, in part, of the extensive, transparent government disclosures made in connection with the motion to suppress regarding the execution of the warrant.   The process used to conduct the search of Mr. Adams' email accounts has been broadly and deeply

documented and disclosed, and demonstrates a deliberate, good faith effort to filter out potentially privileged emails and thereafter conduct a search for evidence of fraud, as permitted by the warrant. The government's disclosures to Mr. Adams include declarations from three law enforcement agents and from United States Attorney's Office ("USAO") litigation support staff. The government has also provided to the defense (and attached to this filing) the email communications that document the search process at issue. The government is in the process of disclosing database records of the searches conducted by members of the prosecution team and by USAO litigation support staff during execution of the warrant. Those disclosures will include the specific search terms used by prosecution team members in searching the filtered, "For Review Database." Further, the government will disclose database activity logs for prosecution team members and USAO litigation support staff. Those logs will reflect dates and times when the prosecution team was active in executing the warrant. The manner in which the government executed the warrant is more than amply documented without resort to the extraordinary and unwarranted step of compelling AUSA testimony.

Under these circumstances, Mr. Adams has failed to demonstrate that AUSA Maria's testimony is vital and, even if vital, that the same or similar information cannot be presented from other sources. The government therefore respectfully requests the Motion to Quash be granted.

## PROCEDURAL BACKGROUND

### Motion to Suppress

This Motion to Quash arises out of the litigation of Mr. Adams' Motion to Suppress [Docket No. 37]. Mr. Adams seeks suppression of emails seized pursuant to search warrant based upon two alleged Fourth Amendment grounds, claiming that "the search warrant amounted to an unconstitutional general warrant" and that "the warrant was executed in an unreasonable manner." Def. Mem. In Support of Motion to Suppress, Docket No. 37 at 3.

### Government's Notice of Intent to Call Witnesses

As to the reasonableness of the manner in which the warrant was executed, the government filed its Notice of Intent to Call Witnesses on November 30, 2017. *See* Government's Notice of Intent to Call Witnesses, DCD 52. The government noticed four potential witnesses. *Id.* The witnesses include three law enforcement agents (Postal Inspector Christie Kroells, FBI Special Agent Jennifer Khan, and United States Deputy Marshal,

4

formerly IRS Special Agent, Brandon Belich) and one USAO litigation support staff member (Mark Zeitz).  *Id.*

## Witness Declarations and Documentary Evidence

The government made extensive disclosures in connection with the noticed witnesses.  First, the government filed a declaration for each of the four witnesses. *See* Attachments to Government's Notice of Intent to Call Witnesses, DCD 52-1 (Declarations of Kroells, Khan, Belich, and Zeitz).  The witness declarations provide detailed descriptions of the manner in which the warrant was executed.  *Id.*  As part of those descriptions, the witnesses extensively recount the processes used to filter the emails and execute the search.  *Id.*  The witnesses can be examined on these subjects at the hearing.

Second, the government has provided to the defense extensive documentation of the manner in which the government executed the warrant.  Email communications contemporaneous with the facts described in the Declarations document the process, and the government disclosed them to the defense at the same time as the Notice of Intent to Call Witnesses and the Declarations.  They are also attached to this Memorandum.  *See* Attachment A.  Those emails include communications regarding the search process between prosecution team members, between prosecution team

5

members and USAO litigation support staff, and between USAO litigation

support staff and the Department of Justice's Litigation Technology Support

Center ("LTSC") in South Carolina.

## Declaration of AUSA Maria

In addition to the above, the government also provided a declaration

from AUSA Maria. *Id.*, DCD 52-1 (Maria Declaration). The Declaration of

AUSA Maria provides a basis for the Court to ascertain whether Mr. Adams

has demonstrated that AUSA Maria's testimony is both vital and supported

by compelling need that is unattainable from another source. *See United*

*States v. Reid*, 2006 WL 1751789 at *5 (D.N.H. Jun 21, 2006) (considering

Affidavit of AUSA whose testimony was sought by defendant in concluding

that defendant had failed to demonstrate a compelling need for the AUSA's

testimony). The declaration is also in keeping with the government's

transparency about the manner in which the warrant was executed.

## Mr. Adams' Responsive Notice of Intent to Call Witnesses

On Friday, December 1, 2017, the defense notified the government that

it intended to notice AUSA Maria and AUSA John E. Kokkinen as defense

witnesses in its Responsive Notice of Intent to Call Witnesses. On Monday,

December 4, the government replied that it did not believe AUSAs Maria

6

and Kokkinen could be called as witnesses under relevant Eighth Circuit authority, that *Touhy* regulations would apply, and that the matter would need to be litigated.

Later on December 4, Mr. Adams filed a Responsive Notice of Intent to Call Witnesses. *See* Responsive Notice of Intent to Call Witnesses, DCD 54. Mr. Adams asserted that the government disclosures reflected additional evidence relevant to his Motion to Suppress. *See id.* at 1. Specifically, Mr. Adams included twenty paragraphs identifying evidence disclosed by the government. *See* Responsive Notice of Intent to Call Witnesses, DCD 54 at 1-6. Those paragraphs are discussed below in the relevant argument sections.

Mr. Adams concluded by noticing his intent to cross-examine or call the witnesses noticed by the government. *Id.* at 7. Mr. Adams also noticed AUSA Maria as a witness, but not AUSA Kokkinen. *Id.*

Mr. Adams served a subpoena on AUSA Maria on December 4 through agreed-upon means (specifically, email attachment with service accepted by the government). Mr. Adams also provided a *Touhy* letter to the government. *See* Attachment B (*Touhy* letter). Mr. Adams attached to the *Touhy* letter the email communications produced by the government in

7

connection with its Notice of Intent to Call Witnesses (the same email communications attached as Attachment A to this memorandum).

**Additional Government Disclosures Regarding Manner of Execution**

The government has made and is making a number of additional disclosures in connection with the motion to suppress and additional defense requests.   The government is making extraordinary disclosures, including disclosures that encompass work product, in connection with the motion.

For example, the government is turning over records of the database searches (including search terms) conducted during execution of the warrant. Specifically, the government is compiling and will turn over to the defense before the motions hearing the database records of searches conducted by prosecution team members and USAO litigation support staff during execution of the Yahoo! warrant.  The production will include the search terms used by the prosecution team to search the "For Review Folder" in executing the warrant.

The government will also turn over logs of database activity. Specifically, the government is compiling and will turn over to the defense before the motions hearing database logs of activity of prosecution team

8

members and USAO litigation support staff during execution of the warrant. The production will show specifically when prosecution team members with access to the For Review Folder were active in it during execution of the warrant.

If there are additional disclosures to be made as preparation for the hearing continues, the government will make them.

The available witnesses, declarations of those witnesses, and the extensive documentary evidence of the manner of execution are not only more than sufficient to litigate the motion to suppress, they represent a complete record on which the Court can rely to make its determination.  For the reasons noted below, Mr. Adams has not demonstrated that AUSA Maria's testimony is both vital and that there is a compelling need for the extraordinary step of requiring testimony from counsel for one of the parties to the case.

## ARGUMENT

**I.  AUSA MARIA'S TESTIMONY IS NEITHER VITAL FOR ANY RELEVANT MATTER NOR IS THERE A COMPELLING NEED FOR IT IN LIGHT OF OTHER EVIDENCE.**

### A.  Legal Standard.

Requests for the testimony of a prosecuting attorney are disfavored. *United States v. Watson*, 952 F.2d 982, 986 (8th Cir. 1991); *see also United States v. Ziesman*, 409 F.3d 941, 950 (8th Cir. 2005) (same).  "The party seeking such testimony must demonstrate that the evidence is vital to his case, and that his inability to present the same or similar facts from another source creates a compelling need for that testimony."  *Watson*, 952 F.2d at 986; *see also Ziesman*, 409 F.3d at 950 (same).  The compelling need standard has been widely applied by courts.  *See generally United States v. Jansen*, 2015 WL 1326150 at *1 (N.D. Ill. March 13, 2005) (unpublished) (citing *Watson* and other cases for the proposition that "[t]he Seventh Circuit, as well as other circuits, have universally recognized that a defendant who wishes to call a prosecutor as a witness must demonstrate a compelling and legitimate need for the testimony").

Courts apply this demanding standard in both the trial and motions hearing contexts.  *See id.* (applying compelling need standard in motions

hearing context and citing additional cases for proposition that "[t]he same [compelling need] standard applies whether the defendant attempts to call the prosecutor at trial or at a motion hearing"); *see also, e.g., United States v. Kendricks*, 2017 WL 3877645 at *6 - *7 (M.D. Florida Sept. 5, 2017) (applying compelling need standard in motion to suppress context); *United States v Bailin*, 1990 WL 16435 at *1-2 (N.D. Ill. Jan. 22, 1990) (unpublished) (applying compelling need standard in motion to suppress context); *see generally United States v. Johnston*, 690 F.2d 638, 642-46 (7th Cir. 1982) (en banc) (reviewing reasons for heightened standard and rejecting government argument that advocate-witness rule should not apply when government seeks AUSA testimony at suppression hearings). The conjunctive nature of the standard, requiring vitality *and* compelling need, applies to efforts by a defendant to compel the testimony of a prosecuting attorney at a motions hearing for reasons that go to the heart of the administration of justice and the adversary system. *See generally United States v. Bin Laden*, 91 F.Supp.2d 600, 623-24 (S.D.N.Y. 2000) ("The prohibition on a lawyer appearing as a witness in a case in which he is also serving as an advocate is grounded in important and legitimate concerns with respect to the proper functioning of the adversary system."). Defense efforts to compel an AUSA to testify require heightened

11

standards to protect against the potential for abuse and distortion of the adversary process. *See id.* at 623 (noting heightened standard required in part because attempts to force an AUSA to testify "carries the potential to be abused and invoked in a manner that actually distorts the adversary process" given possibility of disqualification). Allowing defendants to compel AUSA testimony on some lesser showing, when the testimony is not vital, or, even if vital, when the same or similar information is available from other sources, would be fraught with potential for abuse and severely undermine the administration of justice and the adversary system.

Nor is the appearance of justice served by a prosecuting attorney assuming the role of a witness. *See United States v. Birdman*, 602 F.2d 547, 545 (3d Cir. 1979) (noting that the "most frequently cited justification for the [advocate-witness] rule reflects a broader concern for public confidence in the process of justice"). Having a prosecuting attorney testify in his or her criminal matters threatens public confidence in the fairness of the proceedings. Courts emphasize the need for the heightened standard given that "[w]hen a defendant seeks to call a prosecuting attorney to be a witness in a proceeding before the court, the inherent incompatibility between the traditional roles of an advocate and that of a witness are present." *Bailin*,

1990 WL 16435 at *1 (going on to note ethical underpinnings of advocate-witness rule); *see generally* Ethical Consideration 5-9, ABA Code of Professional Responsibility ("The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state the facts objectively").

The decision whether a prosecuting attorney may be called to testify is within the discretion of the district court. *United States v. Watson*, 952 F.2d 982, 986 (8th Cir. 1991). The district court's ruling will not be reversed "absent a clear and prejudicial abuse of discretion." *Id.* (internal quotation marks and citations omitted); *see also United States v. Ziesman*, 409 F.3d 941, 950 (8th Cir. 2005).

### B.   The Testimony Of AUSA Maria Is Neither Vital Nor Is There A Compelling Need For It.

Mr. Adams has not demonstrated that the testimony of AUSA Maria is vital and that his inability to present the same or similar facts from another source creates a compelling need for that testimony. Mr. Adams sets forth a number of factual propositions in support of his notice of AUSA Maria as a witness. Mr. Adams does not, however, demonstrate why AUSA Maria's testimony is vital, and there is no showing of compelling need for AUSA

testimony because every relevant assertion in Mr. Adams' Responsive Notice can be supported with non-AUSA witnesses and documents. Moreover, in a number of instances and particularly with respect to post-execution communications between counsel about the production of email databases, the matters set forth in Mr. Adams' Responsive Notice are entirely irrelevant to the manner of execution. Accordingly, Mr. Adams' subpoena seeking to compel the testimony of a prosecuting AUSA should be quashed.

Mr. Adams asserts that government disclosures reflect "additional evidence" relevant to his Motion to Suppress and includes twenty paragraphs identifying evidence disclosed by the government. *See* Responsive Notice of Intent to Call Witnesses, DCD 54 at 1-6. The factual assertions made in those twenty paragraphs fall into three categories: assertions about the execution of the warrant for which AUSA Maria's Declaration is not cited at all; assertions about the execution of the warrant for which AUSA Maria's Declaration is cited alone or together with other Declarations; and assertions about post-execution communications between counsel. AUSA Maria's testimony is not necessary as to any of the

categories, and the post-execution communications are particularly irrelevant.

### 1. Facts for which AUSA Maria's Declaration is not cited in support.

The Declaration of AUSA Maria is not cited at all with respect to many of the facts in Mr. Adams' Responsive Notice.  Rather, the Declarations of law enforcement agents and USAO litigation support staff are cited in support (and, in many instances, the assertions are further documented by disclosed email communications).  *See* Responsive Notice to Intent to Call Witnesses, DCD 54 at 1-6, ¶¶ 1-3, 5, 6 (AUSA Maria cited as to some but not all facts), 7-9, 12, 14-16, 18.  The testimony of AUSA Maria is not necessary and Adams has demonstrated no compelling need as to any of the assertions for which other evidence is cited in support.

### 2. Facts for which AUSA Maria's Declaration is cited in support either together with other Declarations or alone.

Setting aside the paragraphs in which no citation to the Maria Declaration is made, Mr. Adams cites to the Maria Declaration seven times. *Id.* at ¶¶ 4, 6 (cited twice), 10, 11, and 13 (cited twice).  In three of those seven instances, the citations to the Maria Declaration are accompanied by citation on the same point to an available witness' declaration:

(a)   ¶ 6: Citing Zeitz and Maria Declarations for the proposition that "[t]he application of these search terms resulted in excluding only approximately 32,000, rather than approximately 105,000 emails from the Government's review."

Zeitz is available as a witness and the underlying database documentation and other provided materials reflect the referenced number of emails.

(b)   ¶ 10: Citing Zeitz and Maria Declarations for proposition that "[a]fter the exclusion of approximately 33,000 potentially privileged documents, the Review Database would have contained approximately 113,000 documents."

Zeitz is available as a witness and the underlying database documentation and other provided materials reflects the referenced number of emails.

(c)   ¶ 11: Citing Kroells, Khan, Belich, Zeitz, and Maria Declarations for proposition that "[t]he Government agents and counsel assigned to the case appear to have routinely accessed and searched the 113,000 documents in the Review Database for investigative purposes as they prepared the case for indictment."

Kroells, Khan, Belich, and Zeitz are available as witnesses and the underlying database documentation and other provided and to-be-provided materials reflect the prosecution team's database access and search activity.

There has been no showing that the testimony of AUSA Maria is vital as to any of the above points or that there is a compelling need for it. To the extent

the propositions in the paragraphs above are relevant to the Fourth Amendment reasonableness inquiry, the evidence can be adduced through other, easily identifiable means.

Nor has Mr. Adams satisfied the vital and compelling need standards in connection with the four points for which AUSA Maria's Declaration is cited alone:

(a)   ¶ 4: Citing Maria Declaration for proposition that "[a]t no time did the Government use a taint team during its search of Attorney Adams's email."

That the government did not use a taint AUSA during its search is uncontested.  That process is thoroughly reflected in the Declarations of available witnesses and supporting documentation.

(b)   ¶ 6: Citing Maria Declaration for proposition that "[t]hose 32,000 emails were excluded from the Government's review database ("Review Database") and moved into a segregated database ("Segregated Database")."

Zeitz is available as a witness on this point and, more important, the underlying, contemporaneously recorded database documentation shows specifically the referenced number of emails.

(c)   ¶ 13: Citing Maria Declaration for proposition that "[o]n April 4, 2017, two weeks after the return of the indictment, and thirteen months after receipt of the Yahoo! documents,

AUSA Maria requested that a list of relevance search terms be applied to the Review Database."

Zeitz is available as a witness on this point and there is an underlying email communication reflecting AUSA Maria's request. *See* Attachment C.[1]

(d)     ¶ 13: Citing Maria Declaration for proposition that "[a]ny document that did not contain one of the relevance search terms was moved from the Review Database to the Segregated Database."

Zeitz is available as a witness on this point and the underlying database documentation reflects the movement of the documents.

Again, there has been no showing that the testimony of AUSA Maria is vital as to any of those points, and, even if it was vital, that there is a compelling need for it. To the extent the propositions in the paragraphs above are relevant to the Fourth Amendment reasonableness inquiry, the evidence can be adduced through other, easily identifiable means.

Even if AUSA Maria was the only source of relevant facts, and he is not, the Maria Declaration itself can also be received and considered by the

---

[1] AUSA Maria actually made this request on February 28, 2017, before the return of the indictment. *See* DCD 52-1 at 32, Zeitz Decl. at ¶ 27; *see also* Attachment C (February 28, 2017, email communication reflecting request). USAO litigation support staff on April 4 asked the LTSC to execute the request. *See* DCD 52-1 at 32-33, Zeitz Decl. at ¶ 28.

Court as one of the alternatives to AUSA testimony. The Rules of Evidence do not apply to the motion to suppress, which calls for the Court's determination, under Rule 104(a), on a preliminary question of fact governing admissibility. *See* Fed. R. Evid. 1101(d)(1); *see United States v. Matlock*, 415 U.S. 164, 172–73 (1974) ("[T]he rules of evidence normally applicable in criminal trials do not operate with full force at hearings before the judge to determine the admissibility of evidence." (discussing Fed.R.Evid. 104(a) & 1101(d)(1)); *see also United States v. Raddatz*, 447 U.S. 667, 679 (1980) ( "At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial."). The Court may accordingly receive and consider the Maria Declaration as part of the evidentiary record developed in connection with the motion to suppress.

Under the circumstances outlined above – where AUSA Maria's Declaration is not cited at all in support of factual assertions or the same or similar evidence, even if it were vital, is available through other sources – there is no legal support for compelling AUSA testimony. With respect to those propositions that AUSA Maria is not associated with, his testimony is not even arguably material, much less vital. *See, e.g., Ziesman*, 409 F.3d at

950-51 (affirming denial of defendant's effort to call AUSA as a witness where AUSA testimony was not vital); *Watson*, 952 F.2d at 986-87 (affirming denial of defendant's effort to call AUSA as a witness where AUSA testimony was not vital).

For propositions for which the same or similar evidence, even if it were vital, can be presented through other sources, courts have consistently concluded that the defendant has not met the compelling need standard and have rejected efforts to compel AUSA testimony. *See, e.g., United States v. Wooten*, 377 F.3d 1134, 1143 (10th Cir. 2004) (affirming denial of defendant's effort to call AUSA as a witness because no vital need for the testimony given an available written memorandum establishing the same or similar facts was an adequate substitute); *United States v. Atman*, 145 F.3d 1333 (Table), 1998 WL 211767 at *4 (10th Cir. 1998) (unpublished) (affirming denial of defendant's effort to call AUSA as a witness for lack of compelling need where same or similar evidence could be presented through other witnesses and documents); *United States v. Ashman*, 979 F.2d 469, 493-94 (7th Cir. 1992) (considering availability of other witnesses to present same or similar facts in affirming district court's conclusion that defendant had not demonstrated compelling need for AUSA testimony); *United States v. Troutman*, 814 F.2d

20

1428, 1440 (10th Cir. 1987) (affirming denial of defendant's effort to call AUSA as a witness given "[a] number of potential witnesses exist who possess knowledge concerning the actions and recommendations of the Attorney General regarding the awarding of this contract. The defendants are aware of these witnesses. Indeed, the defendants attached to their memorandum in support of this motion a number of official letters between the Attorney General's office and various state agencies and officials concerning the awarding of the contract and the timing thereof."); *United States v. Schwartzbaum*, 527 F.2d 249, 253 (2d Cir. 1975) (considering availability of written memorandum to present same or similar facts in concluding defendant had not demonstrated compelling need for AUSA testimony); *United States v. Beard*, 2016 WL 3964902 at *2 (W.D. Ky. July 18, 2016) (unpublished) ("[The defendant] has not demonstrated that [the AUSA's] testimony is 'vital' to resolving his motion to vacate, set aside, or correct his sentence.  Nor has [the defendant] established an inability to prove the same points through other witnesses or alternative sources of evidence.  There is no compelling and legitimate need to call [the AUSA] as a witness."); *United States v. Reid*, 2006 WL 1751789 at *5 (D.N.H. Jun 21, 2006) (unpublished) (considering availability of other witnesses to present same

or similar facts in concluding defendant had not demonstrated compelling need for AUSA testimony); *United States v. Jansen*, 2015 WL 1326150 at *2-*11 (N.D. Illinois March 13, 2015) (unpublished) (reviewing defendant's twenty-four proffered reasons for attempting to compel AUSA testimony and considering availability of other witnesses and documentary evidence to present same or similar facts in concluding defendant had not demonstrated a compelling need for AUSA testimony); *United States v. Bailin*, 1990 WL 16435, at *1–2 (N.D. Ill. Jan. 22, 1990) (unpublished) (considering availability of other witnesses to present same or similar facts in concluding defendant had not demonstrated compelling need for AUSA testimony).

When a court has compelled AUSA testimony, the showing of compelling need far exceeded the showing made by Mr. Adams here. *See United States v. Prantil*, 764 F.2d 548, 552-54 (9th Cir. 1985) (allowing AUSA testimony where AUSA was the only witness, other than the defendant, to events alleged in the indictment, including AUSA's participation in discussions between himself and defendant that gave rise to the indictment and conviction of defendant for false statements and accessory after the fact).

3.    **Post-execution communications between counsel are not relevant to the manner in which the warrant was executed and provide no basis for calling opposing counsel as a witness.**

Three paragraphs of Mr. Adams' Responsive Notice reference post-execution communications between AUSA Maria and defense counsel. *See* Responsive Notice of Intent to Call Witnesses, DCD 54 at 5-6, ¶¶ 17, 19-20; Attachment D (full email chain including emails cited in paragraphs 19 and 20 of Mr. Adams' Responsive Notice). None of those communications are relevant to the manner in which the warrant was executed. To the extent Mr. Adams intends to suggest AUSA Maria was intentionally misleading in post-execution communications — and he was not — the communications are irrelevant to the manner of execution.

In addition to being irrelevant, Mr. Adams has not demonstrated that AUSA Maria's testimony is vital and, even if it were vital, supported by compelling need. The post-execution communications themselves are documented in the letter and emails referenced in Mr. Adams' Responsive Notice. And if the Court has questions about communications between counsel, the Court can inquire of either or both counsel as officers of the Court. Discovery communications are not valid bases for opposing counsel

to call each other to the witness stand in any context, criminal or civil; otherwise, civil discovery disputes would routinely devolve into attempts to subpoena and cross-examine opposing counsel.  Questions about such communications certainly do not satisfy the vital and compelling need standards that attend extraordinary and disfavored attempts by a defendant to compel a prosecuting attorney to testify.

In sum, Mr. Adams has not demonstrated that the testimony of AUSA is vital and, even if vital, supported by a compelling need.  The same or similar evidence referenced in Mr. Adams' Responsive Notice, to the extent relevant to the Fourth Amendment inquiry at all, can be presented through other sources.  Mr. Adams' subpoena for AUSA Maria should be quashed.

## II.   THE *TOUHY* ISSUE IS NOT, AND MAY NEVER BE, RIPE FOR THE COURT'S CONSIDERATION.

Department of Justice regulations govern Department authorization of testimony by Department employees.   *See* 28 C.F.R. §§ 16.21-29.   The regulations are referred to as the *Touhy* regulations after the Supreme Court case upholding predecessor regulations prohibiting a Department employee from producing documents pursuant to subpoena.  *See U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

Following Mr. Adams' subpoenaing of AUSA Maria and his provision of a *Touhy* letter, the Acting United States Attorney reviewed the authorization considerations set forth in the regulations. *See* 28 C.F.R. § 16.26. The Acting United States Attorney has currently not authorized AUSA Maria to testify. The government does not assert the current denial as a basis for quashing the subpoena. *See generally United States v. Vander Luitgaren*, 2008 WL 2610465 at *3 (M.D. Fla. June 30, 2008) (unpublished) (quashing subpoena in part because "the U.S. Attorney's decision to preclude AUSA Perez's testimony was valid under Touhy"); *id.* at *2 ("Even if it were relevant, the Court would refuse to require AUSA Perez's testimony based on the U.S. Attorney's decision."); *United States v. Mintz*, 1996 WL 666784 at *1 (D. Kan. March 15, 1996) (unpublished) (quashing subpoena for AUSA testimony where "the United States Attorney has not authorized" it).

The denial of authorization is preliminary, as the regulations contemplate final review and decision by the Acting United States Attorney should the Court deny the government's Motion to Quash. *See* 28 C.F.R. § 16.28 (requiring Department employee to "respectfully decline to comply with the demand" to testify "if so directed by the responsible Department

official"). If the Court denies the government's Motion to Quash, the Acting

United States Attorney would review the Court's ruling and any limitation

placed on the scope of AUSA testimony in deciding how to direct AUSA

Maria pursuant to § 16.28.

## CONCLUSION

For the reasons stated herein, the government respectfully requests

that its Motion to Quash be granted.


Dated: December 13, 2017                    Respectfully Submitted,

                                            GREGORY G. BROOKER
                                            Acting United States Attorney

                                            */s/ David M. Genrich*

                                    BY:     DAVID M. GENRICH
                                            DAVID J. MACLAUGHLIN
                                            DAVID M. MARIA
                                            JOHN E. KOKKINEN
                                            Assistant U.S. Attorneys