UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 17-64 (DWF/KMM)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>EDWARD S. ADAMS,<br><br>        Defendant. | **GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL HEARING DOCUMENTS** |

The United States of America, by and through its attorneys, Gregory G. Brooker, Acting United States Attorney for the District of Minnesota, and Assistant United States Attorneys David J. MacLaughlin, John E. Kokkinen and David M. Maria, respectfully submits its Memorandum in Opposition to Motion to Compel Hearing Documents (ECF No. 64) in the above-captioned case.

## INTRODUCTION

Mr. Adams has moved the Court to compel the United States to produce "certain documents," including "memoranda and correspondence, relating to Inspector Kroells's statement in her declaration that she understood from AUSA Kokkinen 'that he complied with the requirements for seeking an attorney-related search warrant.'"

Mr. Adams correctly identifies those "requirements" (which are entirely internal to the United States Department of Justice ("DOJ")) as emanating from United States Attorneys' Manual ("USAM") ¶ 9-13.420, a section of the USAM entitled "Searches of Premises of Subject Attorneys" (the "Subject Attorney Provision"). The Subject Attorney Provision also applies to searches of emails belonging to subject attorneys.

The Subject Attorney Provision sets forth DOJ policy that, prior to obtaining a search warrant with respect to a subject attorney:

- that prosecutors should talk to each other about whether a less intrusive tool than a search warrant might be sufficient;

- if a search warrant is necessary, that the prosecutors should talk to the United States Attorney to obtain his or her "express approval" of the proposed warrant;

- if these hurtles have been cleared, that the prosecutor should "consult with the criminal division" about the warrant (this consultation occurs, in practice, between the line Assistant United States Attorney and attorneys in the Policy and Statutory Enforcement Unit of the Criminal Division); and

- finally, that the prosecutors should talk to each other to design procedures, consistent with the facts of the case and the requirements and judicial preferences of the prosecuting district, to avoid exposing the prosecution team to "privileged material relating to relating to the investigation or defense strategy."

Mr. Adams's motion seeks to compel the government to produce documents reflecting whether "those requirements were or were not met." In effect, Mr. Adams wants to root around in the internal communications in this case between Department of Justice attorneys, here in Minneapolis and in Washington, D.C., and to use them as "hearing documents" at the January 8, 2018 hearing on his motion to suppress.

Mr. Adams claims that the attorneys' internal communications are relevant, and should be disclosed, under Rules 16 and 26.2, *Brady, Giglio,* and *Jencks*. Mr. Adams is wrong at each turn.

## ARGUMENT

First, the requested internal communications are not relevant to the reasonableness of the government's execution of the Yahoo! search warrant. What will be relevant at the

hearing is what the government actually did in executing the warrant, not what attorneys in Minneapolis and Washington, D. C. said to each other before the warrant was even obtained.

The government has made very broad disclosures about what is really relevant here – the manner of its execution of the warrant. It has publicly filed five declarations of government personnel who executed or assisted in executing the warrant, and it has noticed the testimony of four of those persons for the January 8 hearing. ECF No. 52 and 52-1. Email communications between prosecution team members about the execution of the warrant have also been disclosed. ECF No. 67. In addition, on Friday, December 15, 2017, the government disclosed extensive, native search data to Mr. Adams, detailing the *actual search terms* used by the Automated Litigation Support team to filter, and by the prosecution team to search, the Yahoo! database, as well as activity logs showing when members of the prosecution team had access to the emails. The government has elected to meet Mr. Adams' motion to suppress with full transparency about how it actually executed the search warrant.[1] Mr. Adams has all of the relevant information he needs to litigate about whether the government executed the warrant reasonably.

---

[1] The government's election to reference its agents' understanding that AUSA Kokkinen "had engaged in a process related to attorney-involved searches" prior to seeking the warrant in this case was part of its effort at full transparency. *See, e.g.,* Kroells Declaration, ¶ 6. The government did not put its private, deliberative communications between its lawyers "at issue" (Adams Motion to Compel at 5), or concede their relevance, by adverting to the fact that such communications occurred in two of its witnesses's declarations.

3

The irrelevance of the attorney-to-attorney communications by and among government personnel in this case is highlighted by the unanimous chorus of holdings by both the Courts of Appeals and numerous district courts that internal Department of Justice guidelines and policies (such as United States Attorney Manual 9-13.420) create neither substantive nor procedural rights for criminal defendants. *United States v. Lee,* 274 F.3d 485, 493 (8th Cir. 2001); *United States v. Cooks*, 589 F.3d 173, 184 (5th Cir. 2009), *citing United States v. Fernandez,* 221 F.3d 1240, 1246 (9th Cir. 2000) ([T]he USAM does not create any substantive or procedural rights, including discovery rights); *United States v. Blackley*, 167 F.3d 543, 548-49 (D.C. Cir. 1999); *United States v. Myers*, 123 F.3d 350, 356 (6th Cir. 1997); and *United States v. Craveiro*, 907 F.2d 260, 260 (1st Cir. 1990). *See also United States v. Pungitore,* 910 F.2d 1084 (3rd Cir. 1990) (government's Petite policy does not create substantive rights); and *United States v. Esposito,* 633 F.Supp. 544, 547-48 (S.D.N.Y. 1986) (United States Attorneys' Manual is irrelevant and not subject to discovery under Rule 16).

Significantly, Mr. Adams cites only one case, *United States v. Baker*, 16 F.3d 854, 856 n. 1. (8th Cir. 1994), in support of the central tenet of his motion to compel – that "the Government's compliance with its own internal policies is relevant and material to determining whether it acted reasonably and in good faith" in its execution of the warrant. *Baker* stands for the unremarkable proposition that *illegal* conduct by the police in executing a search warrant may be relevant to whether that execution was reasonable for Fourth Amendment purposes. Yet *Baker* provides no support whatsoever for the

4

proposition that what government attorneys say to one another in preparing to obtain a warrant is relevant to any Fourth Amendment interest.

Second, the private attorney-to-attorney communications Mr. Adams seeks to discover are protected by the attorney-client privilege, the work product doctrine and the deliberative process privilege. *United States v. Fernandez*, 231 F.3d 1240 (9th Cir. 2000). Nothing in Rule 16 trumps either of these doctrines. In fact, Rule 16(a)(1)(G)(2) expressly preserves and protects these doctrines:

> [T]his rule does not authorize the discovery of inspection of reports, memoranda, or other internal government documents made by an attorney for the government . . . in connection with investigating or prosecuting the case.

Mr. Adams argues, of course, that the requested attorney-to-attorney communications are "material to preparing the defense" and thus disclosable under Rule 16(a)(1)(E). But that rule relates to "documents and objects" arising out of the evidence in the case itself, not government communications about the case further to its investigation. That point aside, the government repeats that Mr. Adams has everything relevant to "prepare the defense," even if that phrase means materials relevant to litigate whether the government executed the warrant reasonably in this case.

Moreover, the private attorney-to-attorney communications sought by Mr. Adams are not *Jencks, Brady or Giglio* materials. The statements by Inspector Kroells and Deputy Belich about their understanding of AUSA Kokkinen's compliance with DOJ policy have already been turned over in their declarations. There is no further *Jencks* material to disclose. Nor does the government possess any *Giglio* material that reflects negatively on

5

the credibility of Kroell's and Belich's respective statements that they understood that AUSA Kokkinen had complied with DOJ requirements for seeking an attorney-related search warrants. Finally, as noted repeatedly above, the United States has provided Mr. Adams with a full, transparent picture of how the search warrant was executed. There is no *Brady* material to turn over.[2]

For the reasons stated above, Mr. Adams has all of the relevant information he needs to litigate about whether the government executed the warrant reasonably in this case. Thus, Mr. Adams' motion to compel the government to disclose its private, internal, attorney-to-attorney communications that occurred *before* the search warrant was even obtained should be denied.

---

[2] This discussion of *Brady and Giglio* materials in the context of a motions hearing presupposes that *Brady and Giglio* apply in the context of a motions hearing.

The government, however, is not aware of any Eighth Circuit cases holding that *Brady* and *Giglio* apply to suppression hearings. *See generally United States v. Thomas*, 835 F.3d 730, 734 (7th Cir. 2016) ("It is an unsettled question whether *Brady* applies to pretrial suppression hearings."). In *United States v. Pulliam*, the Eighth Circuit denied a *Brady* claim lodged, in part, as to a pretrial suppression hearing, but the court was not asked to decide if *Brady* applies to pretrial proceedings. See *United States v. Pulliam*, 566 F.3d 784, 787 (8th Cir. 2009). The continued validity of case law in some circuits that applied Brady under particular pretrial circumstances is uncertain in light of the Supreme Court's decision in *United States v. Ruiz*. See generally *United States v. Welton*, 2009 WL 2390848 at *8 (C.D. California August 1, 2009) (unpublished) (noting continued validity of Ninth Circuit's extension of *Brady* to some pretrial circumstances may be questionable in light of *Ruiz*).

In any event, however, as a matter of practice and out of an abundance of caution, the government has assured counsel to Mr. Adams that it has and will continue to produce to the defense (1) material evidence of which it is aware that may be favorable to the defense in connection with the motion to suppress, and (2) information that may be impeachment of which it is aware relating to the government's suppression hearing witnesses.

POSTSCRIPT TO THIS MEMORANDUM

On November 30, 2017, in an *ex parte* application to the Court authorized by Rule 16(d)(1), the government reported that it had certain materials relating to the Subject Attorney Provision, and asked the court to authorize nondisclosure of those materials on the grounds set forth above in this memorandum. The *ex parte* application included attachments. On Friday, December 1, 2017, Mr. Adams' counsel asked for the production of what appeared to be the same set of materials referenced in the government's *ex parte* letter. On Sunday, December 3, 2017, the government submitted to the Court a supplement to the *ex parte* letter, informing the Court that Mr. Adams had made that Friday request, and indicating that Mr. Adams may bring a formal motion to compel, which would result in full briefing of the issues raised in the government's *ex parte* letter.

On December 13, 2017, Mr. Adams, in fact, filed his motion to compel (in ECF No. 64, the motion to which this memorandum responds). Since the issue is now formally joined before the Court, the government is disclosing to Mr. Adams the fact of its November 30, 2017 *ex parte* letter to the Court and its December 3, 2017 supplement to that letter. In a brief *ex parte* teleconference with the Court on the date of this submission, the Court agreed that such a disclosure was appropriate. Accordingly, the purpose of this postscript is to disclose to Mr. Adams the fact that the November 30, 2017 and December 3, 2017 *ex parte* submissions occurred.

In an *in camera* filing with this memorandum, the government has submitted to the Court, under seal, precisely the same materials previously submitted to the Court *ex parte*, including the *ex parte* letter itself, the attachments to that letter, and the December 3, 2017

7

supplement to the letter.  In addition, the government's *in camera* submission includes two documents, not included in the original *ex parte* submission, which relate to the Subject Attorney Provision.  These materials have not been disclosed to Mr. Adams.

The government has filed a motion to seal its *in camera* submission under LR 49.1, pending disposition of Mr. Adams' motion to compel.  In the event the Court denies Mr. Adams' motion to compel, the government would respectfully request that its *in camera* submission and its *ex parte* submission both remain under permanent seal.

Dated:  December 20, 2017　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　GREGORY G. BROOKER
　　　　　　　　　　　　　　　　　　　　Acting United States Attorney

　　　　　　　　　　　　　　　　　　　　s/ David J. MacLaughlin

　　　　　　　　　　　　　　　　　　　　BY: DAVID J. MacLAUGHLIN
　　　　　　　　　　　　　　　　　　　　JOHN E. KOKKINEN
　　　　　　　　　　　　　　　　　　　　DAVID M. MARIA
　　　　　　　　　　　　　　　　　　　　Assistant U.S. Attorneys