UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 17-64 (DWF/KMM)

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>EDWARD S. ADAMS, )<br>)<br>Defendant. ) | **REPLY MEMORANDUM IN SUPPORT OF MOTION TO QUASH** |

Mr. Adams has not demonstrated that the testimony of AUSA David M. Maria is vital and supported by compelling need. Importantly and at the threshold, "[t]he test for whether the execution of a search warrant was reasonable is an objective one that ignores the subjective intent of the officers." *United States v. Merrill*, 88 F.Supp.3d 1017, 1031 (D. Minn. 2015) (DSD/JJK) (citing *Lykken v. Brady*, 622 F.3d 925, 930 (8th Cir. 2010)). All of the facts necessary to apply that objective test are available through sources other than compelled testimony from a prosecuting attorney. There is no legally supported, factually vital, and compelling basis upon which to permit the defense to force AUSA Maria to testify. The Motion to Quash should be granted.

What is truly relevant to the Court's objective inquiry is the actual manner in which the government executed the search warrant. The actual manner of execution has been extensively disclosed in a number of ways. The government

has produced multiple declarations, prosecution team emails, Automated Litigation Support ("ALS") emails, and Relativity database records, including the actual search terms used by the prosecution team and the record of all user activity. Agents Kroells, Khan, and Belich, and ALS Supervisor Zeitz have been noticed by the government as evidentiary hearing witnesses. These disclosures give the defense and the Court an unprecedented record to rely upon in applying the objective reasonableness test to the actual manner in which the email warrant was executed.

Given the extensive documentation of how the government actually conducted the search, Mr. Adams cannot demonstrate a vital and compelling need for testimony from AUSA Maria. Mr. Adams instead focuses on accusations about AUSA Maria's state of mind during and after execution of the search warrant. None of Mr. Adams' purported grounds for compelled AUSA testimony satisfy the "vital plus compelling need" standard that applies to this disfavored attempt to compel AUSA testimony.

## ARGUMENT

### I.   MR. ADAMS' ATTACKS ON AUSA MARIA DO NOT JUSTIFY HIS EFFORT TO COMPEL AUSA MARIA'S TESTIMONY.

After setting forth in his Responsive Notice of Intent to Call Witnesses his purported grounds for compelling AUSA Maria's testimony, Mr. Adams now abandons those grounds in his Opposition Memorandum. *See* Opp. To Motion to

2

Quash ("Opp. Mem."), DCD 69 at 7 n.2.  Nor does Mr. Adams in his Opposition Memorandum identify any facts about the actual execution of the warrant that are vital and unavailable through a source other than testimony from AUSA Maria. Indeed, Mr. Adams' own summaries of the actual manner in which the warrant was executed are drawn or could be drawn from sources other than AUSA hearing testimony.  *See* Responsive Notice of Intent to Call Witnesses, DCD 54 at 1-6; Gov't Memorandum in Support of Motion to Quash, DCD 66 at 15-22 (reviewing sources other than AUSA Maria for evidence of actual manner of execution); Opp. Mem. at 7-10 (summarizing what government disclosures have established regarding manner of execution).

Rather, Mr. Adams now seeks to justify his subpoena of a prosecuting attorney primarily through resort to accusations about AUSA Maria's subjective intent.  Mr. Adams principally contends that AUSA Maria must be compelled to testify about the seizure of emails in April 2017 based upon wholly unsupported accusations that AUSA Maria subjectively intended the seizure to be a sham.  *See* Opp. Mem., DCD 69 at 1-3, 13-14.  Contemporaneous records fully document the manner in which the government seized emails.  A February 28, 2017, email from AUSA Maria to ALS staff reflects the request for a final relevance cull of emails contained in the For Review Folder:

> We need to run one more set of search terms on the 'Adams II' email
> database in Relativity.  This should be the final set.  These are our

3

> search terms to cull this down to the relevant documents. Unlike the searches that we ran for potentially privileged documents, the docs that hit on these search terms should remain in the database, and those that don't should be excluded. Once you have run them, let me know, and I will do some spot checking based on certain documents that I have already pulled.

Gov't Mem. in Support of Motion to Quash, DCD 66, Attachment C. The search terms used to conduct the final relevance cull are also set forth in the same February 28 email. *See id.* ALS staff conducted the final relevance cull in April 2017. Documents that contained one or more of the final relevance search terms were retained in the For Review Folder, and the government provided that folder to the defense as the set of documents seized pursuant to Part II of Attachment B to the search warrant. There is no dispute about the facts set forth in the declarations, all of which are contemporaneously documented. Whether they demonstrate an objectively reasonable conclusion to the execution of the email warrant in this matter – and they do – does not and cannot depend upon the subjective intent of the prosecution team.

Mr. Adams also contends that the final relevance search terms were too broad and that the final relevance search was not a "real" seizure because the prosecution team had extensive activity in the database for thirteen months before the April 2017 cull. *See* Opp. Mem. at 13-14. In fact, the direction to ALS staff by the prosecution team took place in February 2017, not April. The breadth of the search terms, the extent of prosecution team activity, and the length of time the

4

prosecution team took to conduct the search during the investigation of this highly complex, white collar investigation are all amply reflected in records other than AUSA testimony. In light of the complexity of the investigation, a period of less than a year to review an email account of over 100,000 emails and to make informed decisions about relevance is not unreasonable.[1]

Mr. Adams cannot satisfy his "vital plus compelling need" burden by hurling accusations at AUSA Maria about a subjective intent to engage in a sham seizure and then claiming only AUSA Maria can dispel them. On this point, like in his Responsive Notice of Intent to Call Witnesses, Mr. Adams seeks to divert litigation of the motion away from the objective reasonableness of the manner of execution and toward arguments about post-execution communications between counsel. *See* Opp. Mem. at 14 (claiming that post-execution communications

---

[1] The advisory committee notes to the 2009 amendments to Rule 41 contemplate no particular time-frame for completing the so-called "second step":

> In addition to addressing the two-step process inherent in searches for electronically stored information, the Rule limits the 14-day execution period for the actual execution of the warrant and the on-site activity. While consideration was given to a presumptive national or uniform time period within which any subsequent off-site coping or review of the media or electronically stored information would take place, the practical reality is that there is no basis for a "one size fits all" presumptive period. A substantial amount of time can be involved in the forensic imaging and review of information. This is due to the sheer size of the storage capacity of media....

reflect "consciousness that the execution of the warrant had not been reasonable, negating any argument of good faith"). *Id.* at 14.[2] As a legal matter, Mr. Adams' accusations about post-execution communications do not bear on the objective reasonableness standard and provide no basis for compelled testimony. Either the warrant was actually executed in an objectively reasonable manner (as it was here) or it was not, and post-execution communications do not inform the Court's determination of that question.[3]

As a second purported justification for subpoenaing of a prosecuting attorney, Mr. Adams asserts that AUSA Maria's testimony is vital and the same or similar information is otherwise unavailable with respect to how potentially privileged documents were filtered. *Id.* at 15-16. Mr. Adams' assertion does not

---

[2] Mr. Adams' reference to good faith is misplaced. As Mr. Adams has previously noted, the *Leon* good faith standard does not apply to the manner in which a warrant is executed. *See* Def. Mem. in Support of Motion to Suppress, DCD 37 at 34; *see generally* Gov't Mem. in Opp. To Motion to Suppress, DCD 49 at 22-23 (distinguishing inapplicability of *Leon* exception to exclusionary rule with respect to manner of execution from more limited remedies for alleged seizure of items outside the scope of a sufficiently particularized warrant). The only case Mr. Adams cites in support of his "good faith" allusion is *United States v. Rogers*, a *Leon* case with no applicability to manner of execution.

[3] Although not legally relevant to the Motion to Quash or the Motion to Suppress and not a basis to compel AUSA testimony, the accusations against AUSA Maria, which have been made as a matter of public record, are wrong and cannot go unanswered. The attached Supplemental Declaration is submitted solely to address those public accusations.

bear scrutiny. How potentially privileged documents were filtered during execution of the warrant has been documented a number of different (and unprecedented) ways, none of which require compelled testimony from a prosecuting attorney. The matters cited by the defense — communications with Agent Kroells, the privilege search terms applied to the database, the treatment of potentially privileged documents involving communications with Mr. Hopeman and Mr. Brever, and the Scio privilege waiver — are all reflected in Declarations of non-AUSA witnesses and/or in contemporaneous documents. *Id.* at 15-16 (defense listing of privilege-related matters).[4] The Court will have more than ample basis to evaluate the objective reasonableness of the prosecution team's effort to filter out potentially privileged emails based upon the actual methodology used.

As a third rationale for compelling testimony, Mr. Adams argues that the fact AUSA Maria actively reviewed emails during the period in which the warrant was executed is a basis to compel his testimony. *Id.* at 16-17. However, all of

---

[4] Mr. Adams also cites the USAM provision that is the subject of the parties' separate briefing in connection with Mr. Adams' pending Motion to Compel. *See* DCD 64 (Motion to Compel), 68 (Gov't Opposition). Even if the USAM provision was relevant to actual execution of the warrant (and it is not for the reasons stated in the government's Opposition to the Motion to Compel), testimony from an AUSA would not be required. The USAM provision and the actual execution of the warrant could be compared without AUSA testimony about either subject.

AUSA Maria's activity, including the search terms he (and all other prosecution team members) used during execution of the warrant, is independently documented in the Relativity database and has been disclosed. The method of conducting the search, the quantity of documents reviewed, and the level of activity in the For Review Folder is wholly uncontested. No testimony from AUSA Maria is required.[5]

In addition to being uncontested, there is nothing unlawful about the number of documents reviewed and level of activity in the filtered, For Review Folder. AUSA Maria accessed the For Review Folder after the raw email database had been filtered to exclude emails that hit on one of the specific lawyer/law firm search terms. AUSA Maria (and the other members of the prosecution team) could have engaged in a document-by-document review of the filtered For Review Folder. *See Andresen v. Maryland*, 427 U.S. 463, 482 n. 11 (1976) ("In searches for

---

[5] Mr. Adam claims that AUSA Maria must be compelled to testify because he participated in executing the warrant, citing *Riboni*, a state court case out of Colorado. *See* Opp. Mem. at 17. *Riboni*, however, supports the government's position. In *Riboni*, the prosecutor was present when an investigator interviewed a witness, and the defendant sought to compel testimony from the prosecutor about the interview. *Riboni v. District Court*, 586 P.2d 272, 274-75 (Colo. 1978) (en banc). The trial court denied defendant's request to compel testimony from the prosecuting attorney given the content of the statement was undisputed and the investigator was available to testify about the interview. *Id.* The Colorado Supreme Court affirmed the trial court's decision. *Id.* Here, as in *Riboni*, there is an alternative to testimony from a prosecuting attorney, namely the activity log from the Relativity database, which contains a detailed record of all activity by AUSA Maria (and everyone else) who accessed the For Review Folder.

papers, it is certain that some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized."); *United States v. Stabile,* 633 F.3d 219, 237 (3rd Cir. 2010) (approving a cursory review of every file on a computer to determine what was within scope of warrant); *In the Matter of A Warrant For All Content And Other Information Associated With The Email Account Xxxxxxx@Gmail.Com Maintained At Premises Controlled By Google, Inc.*, 33 F.Supp.3d 386, 394 (S.D.N.Y. 2014) ("Notably, every case of which we are aware that has entertained a suppression motion relating to the search of an email account has upheld the Government's ability to obtain the entire contents of the email account to determine which particular emails come within the search warrant" (gathering cases)); *United States v. Brown*, 2013 WL 5508676 at *5-*6 (E.D. Pennsylvania Oct. 4, 2013) (unpublished) (gathering cases); *United States v. Fumo*, 2007 WL 3232112 at *6 (E.D. Pennsylvania Oct. 30, 2007) (unpublished) ("Regardless of the search protocols or keywords used by the government, the government may open and briefly examine each computer file to determine whether it is within the description recited in the warrant"); *see generally United States v. Beckmann,* 786 F.3d 672, 680 n. 6 (8th Cir. 2015) (reviewing two-step process). The prosecution team instead used search terms, reviewing only a fraction of the emails (approximately 10%) in the For Review Folder. There would have been nothing unlawful about engaging in a

9

document-by-document review. There is certainly nothing unlawful about what is factually undisputed here, namely the number of documents actually reviewed or the level of actual activity in the database.[6]

The remainder of Mr. Adams' Opposition Memorandum focuses on compulsory process and the Confrontation Clause in the suppression hearing context (Opp. Mem. at 18-19) and then on efforts to distinguish authority supporting the quashing of Mr. Adams' subpoena of AUSA Maria (Opp. Mem. at 21-25). As to compulsory process and the Confrontation Clause, whether AUSA Maria may be compelled to testify and examined by defense counsel is governed

---

[6] Nor is there anything unlawful about the scope or duration of the search of the For Review Folder. Indeed, had the prosecution team undertaken a document-by-document review of the For Review Folder, the search would have resulted in much more database activity and taken longer. In any event, this is a highly complex, white-collar matter. It is normal that as the investigation proceeds, witnesses are interviewed, and more information about a criminal scheme is gathered, the prosecution team gains a better understanding of alleged fraud and improves its ability to effectively search emails for relevant evidence. There is nothing unusual or unlawful about the scope or duration of execution under the circumstances here.

The *Metter* case string cited by Mr. Adams in a footnote does not counsel otherwise. Opp. Mem. at 12 n. 4 (citing *Metter* for proposition that fifteen month delay in reviewing electronic evidence was too long). In *Metter*, the government did not *begin* any search of electronic evidence secured pursuant to search warrants until more than 15 months after the computer hard drives were seized. *United States v. Metter*, 860 F. Supp. 2d 205, 208-11 (E.D.N.Y. 2012). Here, the government began filtering the emails soon after the emails were received, and began searching the filtered emails soon after they were made available to the prosecution team by ALS staff.

by the vital plus compelling need standard. *See generally United States v. Wooten*, 377 F.3d 1134, 1142-43 (10th 2004) (concluding that right to compulsory process and due process not violated where defendant could not satisfy vital plus compelling need standard in connection with effort to compel testimony from prosecutor); *United States v. Reid*, 2006 WL 1751789 at *4 (D.N.H. June 21, 2006) (unpublished) (concluding that Sixth Amendment not violated where defendant could not satisfy compelling need standard in connection with effort to compel testimony from AUSA). For the reasons set forth above and in the government's first submission, Mr. Adams cannot satisfy that standard here.[7]

Mr. Adams' efforts to distinguish apposite authority are not persuasive. First, Mr. Adams cites four federal cases for the proposition that AUSAs have

---

[7] Mr. Adams asserts the Court cannot rely on the Declaration of AUSA Maria because, he claims, there is serious doubt about its truthfulness. *See* Opp. Mem. at 19-20. Nothing in any of Mr. Adams' submissions cast doubt, much less serious doubt, on the content of AUSA Maria's Declaration, which is corroborated by contemporaneous documentation and supplements the record as to the actual manner of execution in ways that are not vital and/or can be presented through other sources. Although the Court is absolutely entitled to rely on the Declaration if it believes necessary, as is noted in the government's first submission and herein, there is no need to rely on AUSA Maria's Declaration given the extensive documentation and other evidence available as to the actual manner in which the warrant was executed.

Nor does the government's submission of an AUSA declaration mean the AUSA is required to testify. Opp. Mem. at 19. They provide a basis for the Court to apply the vital plus compelling need standard, and the filing of them does not, as Mr. Adams seems to suggest, *per se* satisfy Mr. Adams' burden under that standard.

sometimes testified at pretrial hearings in their own cases. *See* Opp. Mem. at 21 (citing *Hare*, *Johnson*, *Wey*, and *Heine*). Although that proposition is true as far as it goes, it does not inform the inquiry here. In none of the four cases is the vital plus compelling need standard cited, discussed, or applied.[8] Accordingly, none of the cases provides any guidance in applying the vital plus compelling need standard in connection with the instant Motion to Quash.[9]

Second, Mr. Adams claims that cases that reject a defendant's effort to compel AUSA testimony are inapposite if they arise from an effort to call an AUSA to testify at trial rather than a pretrial hearing. *See* Opp. Mem. at 22. In each instance, however, the effort to compel was rejected because the same or similar information could be presented from another source and thus the vital plus compelling need standard could not be satisfied as to AUSA testimony. Just so

---

[8] That includes the *Heine* case, notwithstanding Mr. Adams' citation to the district court's Order in *Heine* denying the government's Motion to Quash. The government did not assert the vital plus compelling need standard in its Motion. *United States v. Heine*, District of Oregon Case No. 3:15-cr-238, District of Oregon ECF at DCD 400. Instead, the government cited a civil case and discussed the limits of Rule 17 subpoenas. *Id.* The district court followed suit in its Order, addressing the civil case and Rule 17, not the vital plus compelling need standard or the cases construing that standard. *Id.* at DCD 402 (Order).

[9] Mr. Adams cites in a footnote four state court cases in which a prosecuting attorney testified, claiming they demonstrate that prosecuting attorney testimony in state court is "common." Opp. Mem. at 21 & n.8. Prosecuting attorneys do not commonly testify in state (or federal) court, but in any event those cases are, like the federal cases cited by Mr. Adams, do not apply the vital plus compelling need standard and are of no help in construing it.

12

here. The cases are fully instructive as to how the vital plus compelling need prongs are applied in instances, such as this one, where a defendant fails to demonstrate that the testimony is necessary and that the same or similar evidence is unavailable from alternate sources.

Mr. Adams also cites from the portion of the Seventh Circuit's *Johnston* case that discusses why some of the reasons for the advocate-witness rule do not apply to AUSA testimony at a hearings conducted before a judge rather than a jury. See Opp. Mem. at 22-23 (citing *Johnston* for proposition that a judge is not likely confuse the roles of witness and prosecutor like a jury might). However, the *Johnston* court also noted more generally that a number of the reasons for disfavoring AUSA testimony do apply to a hearing before a judge, and the court therefore applied the rule to non-jury proceedings. *See United States v. Johnston*, 690 F.2d 638, 644 (7th Cir. 1982) (noting that advocate-witness rule has application to proceedings before a judge); s*ee generally* Gov't Mem. in Support of Motion to Quash, DCD 66 at 10-13 (reviewing the reasons for the rule that apply in non-jury context and noting that courts apply it to suppression hearings). The vital plus compelling need standard applies here, and Mr. Adams does not contend otherwise.

Third, Mr. Adams asserts that cases in which a defendant was seeking AUSA disqualification are inapposite because "Mr. Adams does not currently seek

13

disqualification." Opp. Mem. at 23. As an initial matter, those cases (*Kendricks* and *Bin Laden*) remain instructive on how courts apply the vital plus compelling need standard. Although application of the standard arose in the context of a motion to disqualify, in each instance the court rejected defendant's effort to satisfy the standard on the ground that the same or similar information could be adduced through other sources – a ground equally applicable here.

As importantly, the thinly veiled reference to the possibility of a future motion to disqualify demonstrates why Mr. Adams' effort to compel AUSA Maria's testimony is so strongly disfavored in the law. Permitting a defendant to compel AUSA testimony is fraught with the potential for abuse. *See* Gov't Mem. in Support of Motion to Quash, DCD 66 at 11-12 (discussing potential for abuse). That potential surfaces where a defendant tactically withholds a motion to disqualify while seeking to compel AUSA testimony, only to bring (or threaten to bring) the same motion later. Mr. Adams has not distinguished cases in which a defendant accompanies an effort to compel AUSA testimony with a motion to disqualify. Rather, Mr. Adams' reference to the possibility of a future disqualification motion demonstrates why the vital plus compelling need standard applies with such force in this context.

Finally, Mr. Adams claims that the *Jansen* and *Bailin* cases support his position. Opp. Mem. at 23-25. Like in *Jansen* and *Bailin*, however, Mr. Adams has

not demonstrated a vital plus compelling need for AUSA testimony. Although Mr. Adams reprises his claim that AUSA Maria is the sole witness on material matters, as is discussed above and in the government's previous submission, the evidentiary record of the manner in which the search was actually executed is fully developed through sources other than AUSA testimony. Like in *Jansen*, *Bailin*, and the other cases cited in the government's opening memorandum, Mr. Adams cannot meet the vital plus compelling need burden that attends his effort to compel testimony from a prosecuting attorney.

## II.   *TOUHY* APPLIES.

As noted in the government's Memorandum in Support of Motion to Quash, the Acting U.S. Attorney has not made a final determination under the DOJ's *Touhy* regulations regarding the request for AUSA Maria's testimony. Mr. Adams, however, incorrectly asserts that the application of DOJ's *Touhy* regulations would violate constitutional rights. *See* Opp. Mem. at 25 n.12 (citing to *United States v. Bahamonde*, 445 F.3d 1225, 1229 (9th Cir. 2006)). The greater weight of the authority conflicts with *Bahamonde*, with four circuits affirming the application of *Touhy* requirements in a criminal case and rejecting or deferring a defendant's constitutional challenge. *United States v. Soriano-Jarquin*, 492 F.3d 495, 504 (4th Cir. 2007); *United States v. Wallace*, 32 F.3d 921, 928-29 (5th Cir. 1994); *United States v. Lyimo*, 574 Fed. App'x 667, 670-71 (6th Cir. 2014) (unpublished); *United States v.*

15

*Allen*, 554 F.2d 398, 406-407 (10th Cir. 1977).  Moreover, there is no authority in the *Touhy* regulations or related case law that the government is aware would allow for the drawing of adverse inferences in the event of a *Touhy* denial of authorization of AUSA Maria's testimony.

## CONCLUSION

The government respectfully requests that its Motion to Quash be granted.

Dated: December 27, 2017                    Respectfully Submitted,

                                            GREGORY G. BROOKER
                                            Acting United States Attorney

                                            */s/ David M. Genrich*

                                  BY:       DAVID M. GENRICH
                                            DAVID J. MACLAUGHLIN
                                            DAVID M. MARIA
                                            JOHN E. KOKKINEN
                                            Assistant U.S. Attorneys