## SUPPLEMENTAL DECLARATION OF DAVID M. MARIA

Pursuant to 28 U.S.C. Section 1746, I, David M. Maria, Assistant United States Attorney for the District of Minnesota, hereby declare under penalty of perjury as follows:

1.     On November 30, 2017, I swore out a declaration ("Original Declaration"), subsequently filed with the Court as ECF No. 52-1, to which this declaration is a supplement.

SUPPLEMENTAL AVERMENTS REGARDING MR. ADAMS' ATTORNEY-
CLIENT PRIVILEGE ANDTHE ATTORNEY-CLIENT
PRIVILEGE OF HIS CLIENTS

2.     Since swearing out the Original Declaration, I have reviewed pleadings filed in this case by Williams & Connolly, counsel to Mr. Adams in this matter.  This purpose of the following paragraphs of this supplemental declaration is to provide context for, and to respond to, various assertions made in those pleadings.

3.     On December 4, 2017, Mr. Adams, through his attorneys at Williams & Connolly, LLP, served a subpoena on me (the "Subpoena"), purporting to command me to appear and provide testimony at the hearing on Mr. Adams' motion to suppress scheduled to occur before this Court on January 8, 2018 at 9:00 a.m.

4.     On the same day, Mr. Adams filed a pleading called "Responsive Notice of Intent to Call Witnesses" ("Responsive Notice") (ECF No. 54), in which Mr. Adams made assertions about my conduct which, he contended, were sufficiently "troubling" to justify calling me as a witness at the hearing.

5.     On December 13, 2017, my office filed a motion to quash the Subpoena.

6.     On December 20, 2017, Mr. Adams filed his "Opposition to Motion to Quash" (ECF No. 69) ("Opposition Memo.")

7.     Read together, Mr. Adams' Responsive Notice and Opposition Memo appear to accuse me of five types of wrongdoing.

8.     First, Mr. Adams appears to accuse me of invading his privileges generally, and his attorney-client privilege, particularly.  In addition, he appears to accuse me of invading the attorney-client privilege of his own clients.

9.     Second, Mr. Adams appears to accuse me of having converted the Yahoo! email warrant into an unconstitutional general warrant:  "[AUSA Maria should be made to testify about] his own extensive rummaging within the review database."  Opposition Memo at 12.

10.    Third, Mr. Adams appears to accuse me of improperly stonewalling his attorneys' requests for information about how the government executed the search warrant to conceal the government's treatment of it as a general warrant.

11.    Fourth, Mr. Adams appears to accuse me of mischaracterizing the final relevance filtering of the Yahoo! Database as a "seizure" to conceal the government's purported general rummaging in the Yahoo! Database.

12.    Fifth, Mr. Adams accuses me of intentionally misleading the defense into believing that the prosecution team never had access to the emails that existed in the Yahoo! database prior to the final relevance cull.

13.    With respect to the attorney-client privilege belonging to Mr. Adams' clients, the prosecution team decided not to seek search warrants for certain email account[s]

controlled by Mr. Adams *as a lawyer*.  Instead, the government sought search warrants only for Mr. Adam's personal email accounts, edwardadams@yahoo.com and jafman1@yahoo.com.  I knew, for example, that Mr. Adams had an email account he used in connection with his law firm, Adams Monahan LLC.  Although it was possible that the contents of this email account would include evidence helpful to the government's case, the government chose not to seek a search warrant for this account in order to avoid intruding into the private communications between Mr. Adams with his own clients. Moreover, even with respect to the personal email accounts identified above, the government used the search terms "adamsmonahan," "adamsgrumbles" and "amllp" to cull out private communications Mr. Adams may have had with his own clients at the Adams Monahan law firm.

14.     The government was even more solicitous of Mr. Adams' own attorney-client relationships in his capacity as a client and the resulting privileges arising out of his relationships with his own attorneys.  Upon being assigned to this matter, I was provided with materials related to a parallel investigation of Mr. Adams by the Securities and Exchange Commission ("SEC"), as well as materials related to civil litigation regarding issues surrounding the Scio transaction and corporate governance disputes at Scio.  The SEC materials reflected that Mr. Adams was represented by John Sikora and James Farrell of Latham & Watkins and James Kopecky of Kopecky Schumacher Bleakley & Rosenburg.  Public filings reflected that Latham & Watkins had also represented Mr. Adams in connection with a complaint filed by a former Apollo shareholder.  Accordingly, I included these attorneys, as well as the domain names from their law firms ("lw.com"

and "ksb.legal") as search terms for the first round filtering ("First Privilege Filter")
described in paragraph 15 of the Declaration of Mark Zeitz.  I was also aware that a lawyer
with the last name Zouvas had been involved with the reverse merger that resulted in the
publicly traded entity that ultimately became Scio, and thus included the name "zouvas" as
a search term in the First Privilege Filter.  Finally, during the course of my review of the
SEC materials, including exhibits to the testimony before the SEC, as well as my
discussions with (1) other Assistant U.S. Attorneys who had previously worked on the
investigation of Mr. Adams, (2) attorneys who had been involved in the related civil
lawsuits, and (3) one of the attorneys who had represented Mr. Adams in the SEC
proceedings, to the extent that I encountered the name of a lawyer or law firm who had
represented Apollo or Mr. Adams, I added the name of that lawyer or law firm to the list
of search terms to be applied in the First Privilege Filter.  As recounted elsewhere, the First
Privilege Filter resulted in the removal of approximately 32,000 of that approximately
146,000 emails in the raw Yahoo! database on May 4, 2016.

15.    I did not include the name Jon Hopeman, or his then law firm, Felhaber
Larson, as a search term for the First Privilege Filter because I did not expect either Yahoo!
email account to include any communications between Mr. Adams and Mr. Hopeman or
his firm.  This was because Magistrate Rau issued the search warrant on January 7, 2016,
and authorized the seizure of emails stored at Yahoo! *as of that date*.  Mr. Hopeman
contacted me about this matter for the first time in March 2016, and I understood that Mr.
Adams had retained Mr. Hopeman at or just before that time.  I had no reason to believe
that Mr. Hopeman represented Mr. Adams prior to January 7, 2016, the last day covered

4

by the search warrant. However, when the government discovered Mr. Hopeman's name, and the names of other apparent attorneys, in its searching of the once-filtered database, the government conducted a second round filtering ("Second Privilege Filter"), that resulted in the removal of an additional 1,000 emails on June 10, 2016.

16.     I acknowledge that the process of *producing* the fruits of the search warrant to Mr. Adams, which occurred after the *execution* of the warrants that yielded those fruits, was fraught with communication errors both within my office, and with Mr. Adams' various counsel. I take responsibility for those errors, which are detailed in the email string appended as Exhibit 11 to Mr. Adams' motion to suppress (ECF No. 41-1, pp. 124-42). The upshot of the errors was that our office gave the impression that the government had had access to, and had reviewed, databases that contained the 32,000 emails that had been culled out in the First Privilege Filter and the 1,000 emails that had been culled out in the Second Privilege Filter. However, that was not true. As I ultimately explained to Mr. Adams' counsel in an email dated June 5, 2017, the only database produced to the defense to which the government retained access was (mistakenly) labelled "Adams_Yahoo_Unfiltered." The government never had access to any of the initially-removed 32,000 emails after the First Privilege Filter and did not have access to any of the subsequently-removed 1,000 emails after the Second Privilege Filter.

17.     Lance Wade, counsel to Mr. Adams, informed me in an email dated June 22, 2017 that Williams & Connolly had "identified numerous privileged and/or work product protected documents in the database to which you say the prosecution team has access. The privileged materials in that database appear to include documents directly related to

the allegations in the indictment . . ."  Despite my repeated requests for information that would allow the government to further filter the database for the "numerous" documents Mr. Wade mentioned in his email, Mr. Wade has not identified any documents which he asserts are privileged.

18.    Instead of identifying for the government the purportedly privileged documents the government's search terms missed, Mr. Adams repeatedly demanded to know what the government's search terms were.  I declined to disclose the government's search terms.  I understood that the list of search terms any party to a litigation uses to search electronically stored documents is that party's work product.  I found no authority, and Williams & Connolly provided me with no authority, requiring the government to disclose its private thoughts about this case in the form of the actual search terms it employed in searching the Yahoo! database.  Nevertheless, the government ultimately disclosed the list of its search terms to Mr. Adams as a result of Mr. Adams' motion to suppress.

19.    Mr. Adams criticizes the government for not using a taint team to review the 33,000 emails removed from the Yahoo! database as potentially privileged.  However, the prosecution team decided simply not to review, look at or in any way use those filtered emails.  There was no reason to use a taint team to sort through documents the government had abandoned as evidence.

20.    Mr. Adams refers in his pleadings to paragraph 9 of Agent Kroells' Declaration, in which she states:

Sometime before I began searching the flash drive, possibly even before I received the flash drive, I spoke with AUSA David Maria, and we discussed reviewing communications between Mr. Adams and the employees of the Apollo/Scio entities.  I was told by AUSA Maria that I could review them, that it was a non-issue, and the company would be waiving the privilege, if any, in any event.

21.     Although I do not independently recollect the conversation Inspector Kroells recounts, I have no reason to believe that it did not occur as she describes in paragraph 9 of her declaration. Moreover, her account is consistent with my main focus in this matter with respect to privilege issues, which was to protect the attorney-client privilege of *Mr. Adams, himself.*  In this vein, I note that the Apollo/Scio entities, and their investors, were the *victims* in this case and were cooperating with the investigation.  I believed that Scio, the only entity that still in some sense exists, and which succeeded to whatever attorney-client privilege formerly possessed by Apollo, would waive the attorney-client privilege, which it subsequently did.

### SUPPLEMENTAL AVERMENTS REGARDING REASONABLENESS OF EXECUTION

22.     Mr. Adams asserts that the government knowingly engaged in an illegal, general rummaging in the Yahoo! database between May 3, 2016, when the results of the Frist Privilege Filter became available to the prosecution team, and April 4, 2017, when the final relevance filter occurred and the seizure took place.

23.     Mr. Adams' argument is contrary to the law as I understood and continue to understand it. Putting privilege issues aside, in executing an email search warrant with voluminous documents, the government is entitled to look at every email in the raw database to determine which emails fall within the scope of the warrant.  Moreover, I am

not aware of any case law which imposes time limits on this process, or which imposes a requirement that the final seizure occur before or after other events in the case, including the return of an indictment.  This is a large, complex case, and it is, in my experience, entirely reasonable for the government to take a year to cull 146,000 raw emails down to a group of 43,000 for seizure.  In any complex case, it takes time to develop an understanding of significant events, transactions, documents, communications, and people – and the evolution of this understanding informs decisions about the significance, and relevance, of all evidence, including emails.  Accordingly, the review of an email account containing thousands of emails (or, in this case, tens of thousands of emails) requires significant time before a final relevance filter can take place, as required by Attachment B, Part II, of the warrant.

24.     Finally, I requested the final relevance filter be undertaken in an email to our ALS staff on February 28, 2017, not April 4, 2017, as I previously averred (Original Declaration ¶ 13).

25.     Mr. Adams appears to accuse me of lying about the government's execution of the search warrant, purportedly to conceal the government's asserted treatment of it as a general warrant.  For example, he asserts that, in an email I wrote to him dated August 23, 2017,  I misled him into believing that "nobody on the prosecution team has had, or will have, access to" the relevance documents filtered from the database on April 4, 2017. In response, I simply note that that email responded to a long string of emails from Mr. Adams' counsel raising *privilege* issues, not general rummaging issues.  My mindset when I wrote that email was that the prosecution team had not had, and would not have, access

to the 33,000 emails pulled out of the Yahoo database after the First Privilege Filter and the Second Privilege Filter, and that was entirely true.  I certainly made no deliberate misrepresentations to conceal what I considered and continue to consider the government's reasonable execution of the search warrant in this case.

The foregoing is true and correct to the best of my knowledge and recollection.

Executed this 27th day of December, 2017.

s/ David M. Maria
DAVID M. MARIA