UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | 17-cr-64-DWF-KMM |
| ) | |
| v. ) | **DECLARATION OF** |
| ) | **THOMAS BREVER, ESQ.** |
| EDWARD S. ADAMS, ) | |
| ) | |
| Defendant. ) | |

1. I am an attorney at the law firm of Foster Brever Wehrly, PLLC (formerly Foster & Brever, PLLC) ("Foster Brever Wehrly"), where I concentrate my practice in tax law and white-collar criminal matters, among others. I have practiced tax law for approximately 39 years. I previously was tax counsel to several corporations and a Senior Trial Attorney for the Internal Revenue Service. I am not an accountant; I provide legal advice on tax issues.

2. I was retained by Edward S. Adams on September 24, 2014 to represent him in connection with legal issues on tax and related matters. Ex. A. We had at least 10 telephone discussions between September 22 and October 13, 2014. In light of complex tax and accounting issues involved in this representation and their impact on my legal advice to Mr. Adams, I determined that it was essential to retain an accounting firm to assist me in providing legal counsel to Mr. Adams on certain tax matters— ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮

PUBLIC VERSION

3. On October 28, 2014, my firm and I retained Murry & Associates, LLC ("Murry LLC") as an "independent contractor" to Foster Brever Wehrly ("the *Kovel* Engagement"). As specified in the retention agreement, I retained Murry LLC "in the matter of rendering legal advice and assistance in connection with the determination, reporting and payment of federal and state income and other taxes of [Mr. Adams], and entities in which he has a majority ownership." Ex. B (ECL-00030157). The retention letter further provided that Murry LLC would "assist Foster & Brever, PLLC in providing professional services, possibly including research and development of positions on tax and other matters that may result in litigation. It is anticipated that the engagement may also entail correction or amendment of documents." *Id.* I authorized Murry LLC, as my agent, to "communicate requests for documentation and information directly to the client," but required them to keep me apprised of their work. *Id.* I also instructed Murry LLC that information they received pursuant to the engagement would be "subject to the attorney-client privilege and also potentially subject to work product and other privileges" and would have to be returned to Foster Brever Wehrly upon completion of the engagement. *Id.*

4. On October 28, 2014, I also informed Mr. Adams that "Pat [Murry] and his firm have been retained under the Kovel doctrine to render legal advice. You may speak to them candidly." Ex. C.

5. In my practice it is common to retain accounting firms under the type of arrangement contemplated in *United States v. Kovel*, 296 F.2d 918 (1961), to assist in providing legal tax advice to clients. I have used Murry LLC to provide such services on

PUBLIC VERSION

numerous occasions. Accounting advice is important to the rendering of legal advice in this context. The viability and strength of potential legal arguments and defenses are often underpinned by complex accounting rules and justifications, and it can be necessary for me to review, consider, and test hypothetical amended returns, tax workpapers and/or other tax analyses in order to effectively counsel my clients on legal proceedings like tax investigations or charges or the voluntary disclosure process with the IRS. It also can be critical to engage an accountant to help decipher tax-related information provided to me by a client.

6. In this particular case, the legal advice I provided to Mr. Adams involved ███ ███████████████████████████████████████████████████████████ Murry LLC's advice and assistance assessing these technical accounting issues and deciphering relevant factual materials was essential to informing my legal advice in these areas.

7. Throughout the duration of the *Kovel* Engagement, █████████████ █████████████████████████████████. More specifically, I had teleconferences (sometimes several a day) with Mr. Murry on October 29 and 30 and November 3, 4, 6, 11, 12, 17, and 19, and

3

PUBLIC VERSION

exchanged emails on November 6, 8, 10, and 19.  In these communications, Mr. Murry was frequently conveying to me, and helping me decipher, the accounting and tax implications of factual information that was being provided by Mr. Adams to Murry LLC during this same time period.  I would not have been able to adequately advise Mr. Adams on a proper legal strategy without Mr. Murry's assistance assessing this information provided by Mr. Adams to Murry LLC and explaining how it translated to various tax and accounting principles that I needed to incorporate into my legal advice.

8.      Throughout this time, I had frequent teleconferences with Mr. Adams to discuss the information and guidance I had received from Murry LLC and to provide legal counsel.  For example, in addition to my email communications with Mr. Adams, I spoke with him by telephone on October 29, November 4, 6, 8, 11, 12, 18 and 20, and December 3, 11, 15, and 29, 2015.

9.      ███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████.  On August 26, 2015, the IRS officially approved the "Closing Agreement" for Mr. Adams's amended returns for 2008, 2009, and 2010.

10.     On November 4, 2016, Murry LLC received a grand jury subpoena for documents from Assistant United States Attorney Mr. David Maria, Esq. ("AUSA Maria").  *See* Ex. D.  Many of the documents called for by the subpoena were privileged

4

and work product protected. On December 1, 2016, I wrote a letter to AUSA Maria, on behalf of Murry LLC. *See* Ex. E (ECL-00030154). In my letter, I explained that Murry LLC had been "hired under a Kovel arrangement by our firm for the purpose of assisting in rendering legal advice" to Mr. Adams. *Id.* On behalf of Murry LLC, I produced electronic documents that were not attorney-client privileged or work product protected. I also provided AUSA Maria with a privilege log identifying documents that are protected from disclosure because they are privileged or work product protected. *Id.* The individuals identified by initials in the privilege log are: Patrick Murry ("PJM") and Ashley Miller ("AM") of Murry LLC, myself ("TEB"), and Edward Adams ("EA").

11.     Pursuant to attorney-client privilege, I withheld from that production interview notes, summaries, correspondence between Murry LLC, Foster Brever Wehrly, and Mr. Adams, and certain confidential documents collected in folders (labelled by tax year) that Murry LLC analyzed and discussed with me in the course of the *Kovel* Engagement. *Id.* The non-privileged, non-work-product materials I produced in response to the subpoena included: (1) tax returns and other records from Mr. Adams's accountants at Clifton Larson Allen LLP; (2) filed copies of Mr. Adams's amended returns; (3) non-privileged financial records; (4) records that were merely computational in nature, and therefore not privileged or work product protected under applicable case law; and (5) records relating to a separate engagement by which Mr. Adams retained Murry LLC to prepare his 2015 tax returns ("the 2016 Engagement"). The 2016 engagement was not covered by a *Kovel* agreement with Foster Brever Wehrly.

PUBLIC VERSION

12. On December 16, 2016, I had a teleconference with Assistant United States Attorney John Kokkinen ("AUSA Kokkinen") regarding the grand jury subpoena issued to Murry LLC and my response on Murry LLC's behalf. I discussed with Mr. Kokkinen the *Kovel* arrangement with Murry LLC and our bases for the assertions of the attorney-client and work product privileges, including my reliance on *Kovel*-related case law in making those determinations. We agreed to resolve any disputes over the application of the privileges to particular documents through an *in camera* submission of disputed documents to the district court, if necessary. This process was never used, and I was never advised by Mr. Kokkinen or anyone else at the government that they had any disputes regarding the application of privileges to particular documents identified in my privilege log. During my conversation with Mr. Kokkinen, I also agreed to re-review the documents over which privileges had been asserted to confirm that all non-privileged documents had been produced.

13. As a result of that telephone discussion, I re-reviewed the documents I previously had withheld from the Murry LLC production, mindful of the distinction drawn in case law between computational documents used to generate tax returns, on the one hand, and communicative documents used to solicit, inform, or convey legal advice, on the other hand. I determined that an additional 31 email strings could be produced because they did not implicate Mr. Adams's attorney-client privilege with me and Foster Brever Wehrly, the privilege with Murry LLC, or any work product protections. *See* Ex. F (ECL-00033048).

PUBLIC VERSION

14. On December 20, 2016, I made a second production of documents on Murry LLC's behalf, accompanied by a letter to AUSA Maria listing the documents I was producing and re-asserting that all remaining correspondence was "privileged under the grounds earlier indicated" in my December 1, 2016 letter. *Id.* The communications I produced on December 20, 2016 generally fall into two categories: (1) logistical, administrative, and transmittal correspondence with substantive attachments removed; and (2) correspondence among Murry LLC personnel and Mr. Adams regarding his 2016 engagement (non-*Kovel*) of Murry LLC for tax preparation services relating to his 2015 tax return. *Id.*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 5th day of February, 2018.

*[signature]*

Thomas Brever, Esq.

PUBLIC VERSION