UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 17-00064 (DWF/KMM)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | **GOVERNMENT'S OBJECTIONS** |
| | ) | **TO MARCH 12, 2018 REPORT** |
| v. | ) | **AND RECOMMENDATION** |
| | ) | |
| EDWARD S. ADAMS, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America, by and through its attorneys, Gregory G. Brooker, United States Attorney for the District of Minnesota, and David M. Maria and John Kokkinen, Assistant United States Attorneys, respectfully submits these objections to the Court's March 12, 2018 Report and Recommendation ("R&R") addressing Defendant Edward Adams's Motion Asserting Certain Privileges.

## SUMMARY

In the R&R, the Court found (1) that there exists no privilege that Mr. Adams can assert relating to the communications between Mr. Adams and the Apollo entities, and (2) that the communications between Mr. Adams, Thomas Brever, and accounting firm Murry & Associates are protected by the attorney-client privilege. As to the Court's finding and recommendation regarding the Apollo communications, the government has no objection. As to the Court's finding that the communications among Mr. Adams, Mr. Brever, and

Murry may be privileged,[1] the government respectfully objects on the grounds that, in making this determination, the Court misapplied the Eighth Circuit's reasoning in *United States v. Cote*, 456 F.2d 142 (8th Cir. 1972).  While the government does not disagree that some of the communications between Mr. Adams and Mr. Brever could discuss legal advice and could potentially be privileged, based on the record available to the government, there is no basis to find that the communications between Mr. Adams and Murry (of which there are only seven emails at issue) are protected by the attorney-client privilege. Secondly, the government respectfully objects that the privilege determination did not involve review of the contemporaneous communications among Mr. Adams, Mr. Brever, and Murry to assess the purpose and nature of the relationship and, instead, relied on the recently prepared declarations by Mr. Brever.

## I.     Application of *Cote* to the Engagement of Murry & Associates

In support of its finding that a privilege may apply to the communications, the Court highlights the fact that "Mr. Adams retained counsel before any decision was made to file the amended tax returns and that counsel provided advice outside the narrow, accounting-service scope of preparing and filing amended returns." (R&R, at 13.)  *Cote* provides instead that the relevant inquiry is whether the lawyer retained and utilized the services of the accountant prior to making the decision or recommendation to amend the returns, not whether the client retained the lawyer prior to deciding to amend the returns. (*See* Gov't

---

[1] While the Court found that a privilege applied, the Court did not make a determination that any specific document was, in fact, privileged and reserved making any specific privilege determinations until after the submission of privilege logs by Mr. Adams. (R&R, at 4 n.3.)

2

Response, p. 22.)  Specifically, the *Cote* court found that, if the decision to file the returns was made prior to the retention of the accountant, the communications with the accountant would not be privileged:

> We would agree that if the advice to file the returns was first given by [the lawyer] and thereafter the accountant was employed simply to make the correct mechanical calculations, the privilege would not apply.

*Cote*, 456 F.2d at 144.

This hypothetical posed by *Cote* mirrors the events that happened here.  As set forth in the following chronology, the documents produced by Mr. Brever reflect that he was retained first and that he retained the accounting firm – Murry – *after* Mr. Brever had determined that Mr. Adams should amend his returns:

- **September 24, 2014**: Mr. Adams retains Mr. Brever.   (Brever First Declaration, ¶ 2.)

- **October 27, 2014**: Patrick Murry emails Mr. Brever, explaining: "We would be happy to prepare any amended returns that are required.  If we can get all of the necessary information . . . we can get right on preparing the returns." (Exhibit 1.)

- **October 27, 2014**: In a subsequent email in the same chain, Patrick Murry emails Mr. Adams, asking: "Would you be available tomorrow afternoon for [*sic*] phone call to discuss the amended returns that you need prepared?" (*Id.*)

- **October 28, 2014**: Mr. Brever retains Murry & Associates.  (Exhibit 2.)

- **November 12, 2014**: Mr. Brever emails Mr. Adams, informing him that Murry has completed the amended returns: "Pat has prepared the amended returns based on the documents and information provided.  They can be signed by you and your wife." (Exhibit 3.)

Given the content and timing of these communications, it is evident that the decision to file the amended returns had been made by October 27, and Murry was retained the next

day for the primary, if not sole, purpose of preparing those returns.  Indeed, just over two

weeks later, Murry had completed the task of preparing those amended returns.  To the

extent that Mr. Brever's declaration describes the sequence of events differently, those

assertions are belied by the contemporaneous documents.  Thus, given the Eighth Circuit's

guidance in *Cote*, no privilege can attach to any communications between Mr. Adams and

Murry during the period from October 27, 2014, through November 12, 2014, as all such

documents appear to relate solely to the preparation and filing of the amended returns.  The

government respectfully suggests that this includes all of the documents on the privilege

log that Mr. Adams appended to his motion.  (Docket No. 91, Exh. 20.)  Accordingly, the

Court should find that these documents are not privileged and can be viewed by the

government.[2]

## II.      Reliance on the Brever Declarations Instead of Contemporaneous Documents

In support of his motion, Mr. Adams submitted two declarations from Mr. Brever

but, aside from an engagement letter, did not include other contemporaneous

communications with Mr. Brever for the Court's review, including any communications

leading up to the retention of Mr. Brever by Mr. Adams.  Without being provided with

---

[2] As to the communications that include Mr. Brever, the government, of course, does not disagree that there may exist communications that discuss legal advice and that certain communications may, therefore, be privileged.  Similarly, if Mr. Brever utilized Murry to perform additional services relating to Mr. Adams, beyond the preparation of these amended returns (though no such documents appear on Mr. Adams's privilege log), those subsequent communications (after November 2014) could also potentially be privileged. As noted by the Court, these issues can be resolved later, upon the completion and submission of Mr. Adams's privilege log.  At that time, the government submits that a government filter team could properly be permitted to view the documents over which a privilege is asserted to determine if those documents are, in fact, privileged.

these communications, the Court appears to have premised its determination that the Murry communications could be privileged in large part, if not exclusively, on the declarations submitted by Thomas Brever and exhibits to those declarations.[3]  While the Brever declarations contain Mr. Brever's characterization of the relationship and the services provided several years ago, the more accurate and reliable evidence of the purpose and nature of the relationship among Mr. Adams, Mr. Brever, and Murry is the contemporaneous communications between these parties prior to, and during, the engagement in question.   Accordingly, prior to the Court having to make further determinations about the existence or lack thereof of a *Kovel* arrangement that would potentially merit attorney-client privilege, there should be an independent assessment by the Court of the actual communications between Mr. Adams and Mr. Brever that preceded and resulted in the engagement of Mr. Brever and, later, Murry.

For these reasons, counsel for Mr. Adams should be ordered to produce for the Court's review all contemporaneous communications relating to the engagement of Mr. Brever and Murry.  Only then would the Court have the complete picture of "the services provided and the manner in which they were sought."  (R&R, at 12.)

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court (1) hold that the communications between Mr. Adams and Murry, including the seven

---

[3] As an initial matter, the government was not privy to large portions of those materials (including any substantive information that would support the conclusion that the attorney-client privilege would apply).

documents listed on the privilege log, are not privileged, and (2) order counsel for Mr. Adams to submit to the Court all other communications among Mr. Adams, Mr. Brever, and Murry, so that the Court may have the opportunity to assess more fulsomely the specific nature and circumstances of the Brever/Murry engagement before making the document-specific privilege determinations that will arise upon the completion and submission of Mr. Adams's privilege log.

Dated: March 19, 2018

Respectfully submitted,

GREGORY G. BROOKER
United States Attorney

/s/ David M. Maria

BY:     DAVID M. MARIA
JOHN E. KOKKINEN
Assistant U.S. Attorneys