UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 17-cr-64-DWF-KMM |
| Plaintiff, | ) | |
| | ) | **DEFENDANT'S PARTIAL** |
| v. | ) | **OBJECTION** |
| | ) | **TO REPORT AND** |
| EDWARD S. ADAMS, | ) | **RECOMMENDATION FOR ORDER** |
| | ) | **DENYING IN PART DEFENDANT'S** |
| Defendant. | ) | **MOTION ASSERTING CERTAIN** |
| | ) | **PRIVILEGES IMPLICATED BY** |
| | ) | **YAHOO! EMAIL SEIZURE** |

Mr. Adams respectfully files this limited objection to the Report and Recommendation (ECF 117) (the "R&R"), which recommended that the Court grant in part and deny in part Mr. Adams's Motion Asserting Certain Privileges Implicated By Yahoo! Email Seizure (ECF 89 & 90).

Mr. Adams objects to the recommendation that the Motion be denied in part.[1] In particular, Mr. Adams seeks review of the Magistrate Judge's conclusion that Mr. Adams cannot validly assert the legal privileges of Apollo Diamond, Inc. ("ADI"), or Apollo Diamond Gemstone Corporation ("ADGC") (collectively, "Apollo"). The R&R concluded that Scio Diamond Technology Corporation ("Scio"), which acquired certain assets from Apollo in 2011 and 2012, "is a successor for privilege purposes" to Apollo, and thus can waive Apollo's attorney-client privilege and attorney work product

---

[1] Mr. Adams does not object to the portion of the Magistrate Judge's R&R that recommends that the Motion be granted as to other documents.

protection. R&R 8. The undisputed facts demonstrate that Apollo's privileges were not Scio's to waive. As a matter of law, control over Apollo and its business operations did not pass to Scio through the asset purchase transactions. Rather, Scio's acquisition of certain Apollo assets was, in Scio's words, "the first step in an overall plan to build a new business." ECF 91-6 at 4.

In the alternative, if the Court does not overrule the R&R's finding as to the Apollo privileges in its entirety, the Court should overrule the R&R's conclusion for two particular categories of documents: (1) confidential communications between Apollo and its counsel for the purpose of providing legal advice relating to the negotiation of the asset purchase agreements themselves, in which Scio was the adverse party, and (2) confidential communications for the purpose of legal advice between Mr. Adams and Mr. Robert Linares, Apollo's remaining director, after the asset purchase transactions. The law is clear that, in the asset purchase context, privileged communications as to those two matters do not transfer to the acquirer.

## BACKGROUND

The material facts are not disputed. Mr. Adams and his law firm provided legal services to Apollo since at least 2006. R&R 2. ADI was in the business of researching and developing a proprietary chemical process to produce man-made diamonds, and ADGC was in the business of manufacturing and marketing the diamonds. ECF 91-1 at 1; ECF 91-2 at 1. In 2011 and 2012, Apollo entered into asset purchase agreements ("APAs") with Scio that transferred to Scio "certain" assets, namely, intellectual property, diamond growing equipment, and inventory. R&R 2-3; ECF 91-1 & 91-2.

Both APAs excluded other assets and provided that Apollo retained all liabilities. R&R 3, 8.

In 2012, Mr. Linares, in his capacity as sole director of Apollo, entered into an agreement with Mr. Adams providing that, "for a period of five years E. Adams will serve as an advisor to Corporation and assist the Corporation with respect to issues—legal, business, and otherwise—that might arise." ECF 92 & 92-1. Thereafter, Apollo faced liabilities and legal issues, including lawsuits, potential tax liability, and threats from Scio and creditors. ECF 90 at 10-11.

Meanwhile, Scio moved Apollo's equipment to a different state, hired new employees, and began operations under a new management team and board. ECF 90 at 8-9; ECF 91-6 at 3-6. Scio (which is a public company) informed the SEC in regulatory filings that "there has been no continuity of Apollo's operations after the acquisition," ECF 91-6 at 4, and Scio sent letters to Apollo demonstrating its acknowledgment that Apollo remained a freestanding entity with independent finances and responsibilities, ECF 90 at 9-10.

In early 2016, the government obtained a search warrant to seize the contents of Mr. Adams's Yahoo! email accounts. *See* ECF 37. In connection with the government's review of Mr. Adams's emails, and at the government's request, a representative of Scio purported to waive Apollo's attorney-client privilege over work performed by Mr. Adams and his law firm for Apollo, including in connection with "the transactions by which the assets . . . were transitioned to or acquired by [Scio]." ECF 91-19. The government never sought a waiver from Apollo. Mr. Adams, as Apollo's counsel, has repeatedly

3

asserted the Apollo privileges, and Mr. Linares has confirmed that Mr. Adams was at all times authorized to do so. ECF 90 at 11-13; ECF 92 ¶ 2.

Additional relevant background is set forth in Mr. Adams's Motion and is incorporated herein. *See* ECF 90 at 5-13.

## LEGAL STANDARD

"The district judge must consider de novo any objection to the magistrate judge's recommendation. The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions." Fed. R. Crim. P. 59(b)(3); *see also* 28 U.S.C. § 636(b)(1); LR 72.2(b)(3).

## ARGUMENT

The R&R concluded that, under *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343 (1985), Scio obtained via the APAs the authority to waive Apollo's attorney-client privilege. Mr. Adams seeks review of the application of the law to the undisputed facts on that issue. The Court should find that Apollo's legal privileges were not conveyed to Scio via the APAs. At a minimum, Scio had no right to waive Apollo's privileges as to certain subcategories of communications between Mr. Adams and Apollo.

### A. Scio did not obtain control over the Apollo entities such that it also obtained control over Apollo's privileges.

The record demonstrates that Scio built a new company using Apollo's equipment and intellectual property (having only acquired certain Apollo assets and no liabilities), and that Apollo continued to exist to manage its remaining obligations after the APAs

4

were executed. As a result, Scio has no standing to waive Apollo's pre-APA legal privileges.[2]

The parties and the Magistrate Judge agree on the law applicable to this question. "The cases agree that a mere transfer of some assets without more does not transfer the attorney-client relationship." *Parus Holdings, Inc. v. Banner & Witcoff, Ltd.*, 585 F. Supp. 2d 995, 1002 (N.D. Ill. 2008). "If the practical consequences of the transaction result in the transfer of control of the business and the continuation of the business under new management, the authority to assert or waive the attorney-client privilege will follow as well." *Soverain Software LLC v. Gap, Inc.*, 340 F. Supp. 2d 760, 763 (E.D. Tex. 2004).

The rationale behind this "practical consequences" rule is that, where the acquiring company requires privileged information in order to defend liabilities or pursue rights it inherited from the seller, then the acquiring company also should inherit control over the seller's privileged information. *See Tekni-Plex, Inc. v. Meyner & Landis*, 674 N.E.2d 663, 669 (N.Y. 1996) ("[N]ew Tekni–Plex possessed all of the rights, privileges, liabilities and obligations of old Tekni–Plex, in addition to its assets. Certainly, new Tekni–Plex is entitled to access to any relevant pre-merger legal advice rendered to old Tekni–Plex that it might need to defend against these liabilities or pursue any of these rights."). That is not the situation here. The privileged communications at issue—emails

---

[2] The R&R notes that Mr. Adams did not establish a basis for his assertion of the work product doctrine, R&R 11 n.5, but the sample privilege log submitted by Mr. Adams contained an example of a communication protected by that doctrine. ECF 91-5 at Tab 4.

from 2006 to 2016 in Mr. Adams's email account—are not communications that relate to any of the rights, liabilities, or ongoing business that Scio acquired from Apollo. For one thing, Scio did not inherit *any* of Apollo's liabilities. ECF 91-1 & 91-2 §§ 2.4. And Scio itself recognized that there was "no continuity of Apollo's operations after the acquisition." ECF 91-6 at 4. Under the "practical consequences" test, therefore, there was no reason for Scio to obtain Apollo's privileges, and it did not. In fact, Scio explicitly refused to waive its privileges with respect to the one category of legal advice that *does* relate to the assets that it acquired from Apollo: advice regarding Apollo's—now Scio's—intellectual property. *See* ECF 91-19 ("The waiver of any attorney-client privilege does not include any work performed in connection with patent matters or matters relating to Scio's ongoing business."). Permitting Scio to waive Apollo's privileges applicable to emails in Mr. Adams's possession reflecting legal advice concerning the Apollo entities and the APAs—communications that have no bearing on Scio's ongoing business—is inconsistent with the law.

Most of the cases discussed in the R&R arise in the bankruptcy or merger context, where the transactions at issue are entirely different. For example, in *Soverain Software*, the issue was whether Soverain, which acquired patent assets and continued to operate a software business after the original owners declared bankruptcy, could assert the attorney-client privilege relating to the assets and software business that Soverain acquired and continued to operate. *See* 340 F. Supp. 2d at 762-64. The court concluded it could. *Id.* Here, in contrast, Scio's purported waiver did not relate to communications concerning the ongoing operation of Scio's business and the assets that Scio acquired.

6

The R&R notes that, according to *Soverain*, "'[t]he desire of the purchaser of a bankrupt's assets to not acquire the bankrupt's liabilities should not lead, by that fact, to the waiver of all privileges attendant to the assets,'" R&R 8, but the issue here is whether Scio can waive privileges relating to the *liabilities* that it did not acquire (since Scio has not waived privileges relating to the patent assets that it did acquire). *Soverain* does not provide support for permitting Scio to do so.

Similarly, in *John Crane Production Solutions, Inc. v. R2R & D, LLC*, No. 3:11-CV-3237-D, 2012 WL 3453696 (N.D. Tex. Aug. 14, 2012), a case that arose in a non-bankruptcy APA context, a number of factors not present here yielded the conclusion that the privileges transferred. "First, the APA specifically stated that [the buyer] received the 'business and operations of [the seller] *as a going concern*.'" *Id.* at *4. Here, the APAs contained no such provision, and Scio told the SEC that it "did not seek out Apollo Diamond or its business as a going concern." ECF 91-6 at 4. None of the other facts discussed by the *John Crane* court—including continuity of contractual business obligations, employees, operations at the same locations, customers, and sales—are present. *See John Crane*, 2012 WL 3453696, at *4. Scio's April 2012 letter to the SEC makes that clear. ECF 91-6 at 3-6; ECF 90 at 13, 16. This letter explained the lack of continuity in the management team, employees, customer base, physical location, and trade names used by Apollo and Scio.[3] *Id.* And other facts discussed in the R&R

---

[3] The R&R notes that the primary factor at issue before the SEC was continuity in revenue-producing activity. R&R 10. But Scio's letter to the SEC also addressed a number of additional factors relevant to the present inquiry.

7

demonstrate that Scio's business plan was different from Apollo's: Apollo focused on "'research and development,'" whereas Scio had a "'myopic focus on manufacturing.'" R&R 3 (quoting ECF 109-3).

Thus, the "practical consequences" of the APA at issue in *John Crane* were different than those that followed from the Apollo-Scio APAs. *See also Am. Int'l Specialty Lines Ins. Co. v. NWI-I, Inc.*, 240 F.R.D. 401, 407 (N.D. Ill. 2007) (entities that "concede[d] that they . . . have no connection to the business operations" of the original entity could not control that entity's legal privileges). The differences between Apollo and Scio and the lack of business continuity after the APAs are inconsistent with a finding that Scio gained control over Apollo and continued the same business under a different name.

The R&R notes that Apollo did not sell any products after the Scio transaction, have any employees, or carry on as a viable business enterprise. R&R 7. But a corporation need not make or sell products or have employees to have a valid corporate existence. *See* 8 Fletcher Cyc. Corp. § 4091 ("Once a corporation has been formed according to law, it is generally presumed to continue in existence").[4] Although the R&R observes that Apollo did not continue to operate "in any meaningful way" after the APAs, R&R 7, there is uncontroverted evidence of Apollo's continued activity, including

---

[4] Even the transfer of all corporate assets—not the case here—does not terminate a corporation's existence. *Id.* § 4087. The law permits even one-person corporations, *see* Fletcher Cyc. Corp. § 88, and many corporations are not revenue-generating, operational entities, but exist for more limited corporate purposes.

8

checks and bank records, the agreement between Mr. Linares (in his Apollo capacity) and Mr. Adams, records from lawsuits naming Apollo, the post-APA letters from Scio to Apollo,[5] and the post-APA payments from Scio to Apollo. *See* ECF 90 at 9-11, 16-17; *see also* ECF 91-3, 91-7, 91-8, 91-9, 91-11, 91-12, 91-13, 91-14, 91-15, 92. The mere fact that Apollo's continued existence was limited does not show that Scio effectively obtained control over it. *See Weintraub*, 471 U.S. at 349.

Mr. Adams requests that the Court modify the R&R and conclude that Scio was not authorized to waive the privileges that it purported to waive, and that such privileges still belong to Apollo and can be asserted by Mr. Adams.

### B. At a minimum, Apollo's privileges were not conveyed to Scio for two categories of communications.

In the alternative, the Court should modify the R&R's recommendation as to two specific categories of privileged communications between Apollo and its counsel.

#### 1. Scio did not acquire, and is not entitled to waive, Apollo's privileges relating to the asset purchase transactions, in which Scio was the adverse party.

The R&R declined to draw a distinction between Apollo's communications with its counsel about its negotiations of the APAs with Scio and communications relating to other topics, finding that Scio acquired Apollo's privileges as to both. R&R 11; *see also* ECF 90 at 18; ECF 110 at 8 & n.6. This conclusion is contrary to law and the APAs.

---

[5] The R&R notes that the APAs required Apollo to "preserve[]" the "purchased assets and business." R&R 6. But that common contractual term is insufficient to demonstrate that Scio gained control over Apollo, and is instead consistent with Scio's post-APA complaints about the condition of the purchased assets. ECF 91-8.

9

Even where an asset purchase transaction conveys privileges, the buying entity obtains control over the "privilege with respect to communications regarding the operation of the business" but not over the "privilege for [the sellers'] communications with counsel relating to the APA." *Postorivo v. AG Paintball Holdings, Inc.,* 2008 WL 343856, at *1, 6 (Del. Ch. Feb. 7, 2008). This is because the seller and buyer in an asset purchase transaction are adverse parties during the negotiations. As *Postorivo* noted, the sellers "were in an adversarial relationship to [the buyer] when the parties negotiated the APA. Consequently, the rights of [the sellers] with regard to disputes arising from the APA are independent from, and adverse to, the rights of [the buyer]." *Id.* at *6. It concluded that "no provision of the APA provides that [the sellers] sold or transferred their respective privileges and rights concerning communications with counsel related to the APA or the negotiations associated with the Agreement," and that "the language of the APA is to the contrary," as the "Excluded Assets" included "[a]ll rights of the Sellers under this Agreement and all agreements and other documentation relating to the transactions contemplated hereby." *Id.* & n.25.[6]

---

[6] The *Postorivo* court relied on *Tekni-Plex*, 674 N.E.2d at 671, which, although involving a merger and not an APA, concluded that the buyer did not obtain the right to waive the seller's privilege regarding communications with counsel about the merger. The merger agreement included mutual indemnification clauses for losses incurred due to misrepresentation or breach of warranty in connection with the merger, and thus contemplated that, in a dispute arising from the transaction, "the rights of the [seller] relating to the transaction would remain independent from and adverse to the rights of the [buyer]." *Id.* at 665, 672. Thus, the court concluded that "grant[ing] new Tekni–Plex control over the attorney-client privilege as to communications concerning the merger transaction would thwart, rather than promote, the purposes underlying the privilege." *Id.* at 671.

So too here.  Apollo and Scio were in an adversarial relationship during when negotiating the APAs.  And the Apollo APAs contain nearly identical language to the *Postorivo* APAs.  Under the Apollo APAs, the "Excluded Assets" included "[a]ll rights of Seller under this Agreement and the other Transaction Documents."  ECF 91-1 § 2.2(a); ECF 91-2 § 2.2(a).  The Apollo APAs also retained all "Transaction Liabilities," defined as "[a]ny and all Liabilities of Seller under the Transaction Documents."  ECF 91-1 & 91-2 §§ 2.4(a)(i).  Thus, Apollo remained potentially liable to Scio if Scio raised a dispute about the terms of the APAs.  Indeed, well after executing the APAs, Scio's CEO contacted Mr. Linares as CEO of Apollo and identified issues "for which we believe the Apollo companies have some liability," including that certain purchased assets allegedly were "missing and/or grossly defective."  ECF 91-8.  In such a dispute arising out of the APAs, it would be contrary to the law of privilege to conclude that Scio would have been entitled to demand and receive Apollo's attorney-client privileged communications relating to the negotiation, drafting, and terms of the APAs, the very matters that would have been the subject of dispute in any litigation between these adversaries.

If acquiring companies gained control over selling companies' privileged communications with their lawyers about the negotiation of the acquisition (*e.g.*, what warranties should be made, what liabilities to the acquirer might exist, etc.), no company would retain counsel to advise it in such a transaction.  That cannot be, and is not, the law.  Mr. Adams requests that the Court modify the R&R on this issue and hold that Scio

11

could not waive Apollo's privileges relating to the negotiation and terms of the APAs, and that those privileges may be asserted by Mr. Adams as Apollo's authorized counsel.

### 2. Scio did not acquire, and is not entitled to waive, Apollo's privileges relating to communications between Mr. Adams and Apollo after the APAs.

The R&R also did not address the undisputed fact that Mr. Adams had an ongoing role with respect to the legal affairs of Apollo *after* the APAs. As a result, the R&R could be read to allow the government to review Mr. Adams's communications with Apollo *after* the APAs as a result of Scio's purported waiver of privileges. The R&R should be modified to clarify this issue because such a result would be contrary to the law and would yield a fundamentally illogical result.

The APAs explicitly provided that Apollo was retaining, and Scio was not acquiring, any liabilities of Apollo. ECF 91-1 & 91-2 §§ 2.4. As evidenced by the 2012 agreement between Mr. Adams and Mr. Linares (as director of Apollo), Apollo contemplated that it would have "potential ongoing issues relating to its asset sale and other potential legal, financial, and other issues." ECF 92 & 92-1. Mr. Adams was retained to assist with those issues. *Id.* And the issue was not hypothetical: After the APAs, Apollo faced liability and legal issues—including complaints from Scio and creditors—and Mr. Adams provided responsive advice. ECF 90 at 11.

Counsel for Mr. Adams is aware of no case permitting a buyer to waive the attorney-client privilege of a seller over *post*-transaction communications between the seller and the seller's counsel. Rather, *Weintraub* and its progeny consider whether a successor entity could control the *pre*-transaction attorney-client privilege of the

12

predecessor.  *See* 471 U.S. at 353 (discussing control of the attorney-client privilege regarding "prebankruptcy communications"); *Postorivo*, 2008 WL 343856, at *5 (discussing control of the attorney-client privilege regarding "pre-APA representation"); *Tekni-Plex, Inc.*, 674 N.E.2d at 670 (discussing the "pre-merger attorney-client relationship"); *Am. Int'l Specialty Lines Ins. Co.*, 240 F.R.D. at 406-07 (discussing documents and communications from "pre-bankruptcy or during the bankruptcy").  These authorities provide no support for the proposition that Scio acquired and can waive the privilege over communications made after the APAs between Mr. Adams and his client Apollo regarding the legal affairs of Apollo.

Mr. Adams requests that the Court modify the R&R to clarify that Apollo's privileges relating to Mr. Adams's post-APA communications with Apollo still belong to Apollo, could not be waived by Scio, and can be asserted by Mr. Adams as Apollo's authorized counsel.

## CONCLUSION

Mr. Adams respectfully requests that the Court modify the Report and Recommendation.

Dated:  March 19, 2018                    Respectfully submitted,


                                                  /s/ *Lance Wade*

                                          Joseph G. Petrosinelli (DC Bar #434280)
                                          Lance Wade (DC Bar #484845)
                                          Sarah Lochner O'Connor (DC Bar #1012405)

Gloria Maier (DC Bar # 1012208)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
Telephone:  (202) 434-5000
jpetrosinelli@wc.com
lwade@wc.com
soconnor@wc.com
gmaier@wc.com

James L. Volling (#113128)
Deborah A. Ellingboe (#26216X)
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55420
Telephone:  (612) 766-7000
Facsimile:  (612) 766-1600
james.volling@faegrebd.com
debbie.ellingboe@faegrebd.com

*Attorneys for Defendant Edward S. Adams*