UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 17-00064 (DWF/KMM)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | **GOVERNMENT'S RESPONSE TO** |
| | ) | **DEFENDANT'S PARTIAL** |
| v. | ) | **OBJECTION TO MARCH 12, 2018** |
| | ) | **REPORT AND** |
| EDWARD S. ADAMS, | ) | **RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

The United States of America, by and through its attorneys, Gregory G. Brooker, United States Attorney for the District of Minnesota, and David M. Maria and John Kokkinen, Assistant United States Attorneys, respectfully submits this response to Defendant's Partial Objection to Report and Recommendation ("R&R") for Order Denying in Part Defendant's Motion Asserting Certain Privileges Implicated by Yahoo! Email Seizure ("Def. Obj." (Docket No. 120)).

In his objection, Mr. Adams "requests that the Court modify the R&R and conclude that Scio was not authorized to waive the privileges that it purported to waive, and that such privileges still belong to Apollo and can be asserted by Mr. Adams." (Def. Obj. at 9.) Mr. Adams also seeks to carve out two categories of Apollo communications that he contends remain privileged, asserting that Scio would have no basis to waive privilege over: (1) communications pertaining to the Scio transaction, because Scio is purportedly an "adverse party," and (2) communications regarding the legal affairs of Apollo after the Scio transaction. Magistrate Judge Menendez correctly held in the R&R that Apollo retained no attorney-client privilege subsequent to the Scio transaction, and the Court

should hold, as recommended in the R&R, that Scio's waiver of privilege with Adams and his law firm was valid.  (R&R at 11.)  As to Mr. Adams's new arguments that certain communications would not fall under that waiver, there is also no valid privilege that can be asserted over these document (by Mr. Adams or anyone else).  Even if Magistrate Judge Menendez had found that Apollo retained some privilege subsequent to the 2011 transaction with Scio, that privilege would have expired long ago, because Apollo – even assuming as true the facts posited by Mr. Adams – has been defunct for several years.

While it does not appear that the Eighth Circuit has addressed this issue, other courts have routinely held that a corporation that is defunct cannot assert the attorney-client privilege.  *See*, *e.g.*, *United States v. Roscoe*, No. CR-07000373 RMW, 2011 WL 13143140, at *3 (N.D. Cal. Dec. 21, 2010) (company that "is defunct for all practical purposes" cannot assert the corporate attorney client privilege); *City of Rialto v. U.S. Dept. of Defense*, 492 F. Supp. 2d 1193, 1199 (C.D. Cal. 2007) (company "lost its right to assert the attorney-client privilege when its dissolution was complete"); *Gilliland v. Geramita*, No. 2:05-CV-01059, 2006 WL 2642525, at *4 (W.D. Pa. Sept. 14, 2006) (attorney-client privilege is no longer viable after a corporate entity ceases to function, unless a party seeking to establish the privilege demonstrates "authority and good cause"); *Lewis v. United States*, No. 02-295B/AN, 2004 WL 3203121, at *4 (W.D. Tenn. Dec. 7, 2004) (attorney-client privilege cannot be applied to a defunct corporation that "has no assets, liabilities, directors, shareholders, or employees").  As the *Gilliland* court explained:

> The better rule, in the Court's view, is that there should be a presumption that the attorney-client privilege is no longer viable after a corporate entity ceases to function, unless a party seeking to establish the privilege demonstrates authority and

good cause. This rule is consistent with the principle that the attorney-client privilege should be given the narrowest interpretation consistent with its purpose. No real purpose would be served by continuing the privilege after operations cease, as the corporation would no longer have any goodwill or reputation to maintain.

*Gilliland*, 2006 WL 2642525, at \*4 (internal citations omitted).

There can be no credible argument by Mr. Adams (and he does not appear to be making the argument) that Apollo exists or operates today in any form. In fact, according to records from the Delaware Secretary of State, where Apollo was incorporated, the status of Apollo became "Void, AR's or Tax Delinquent" on March 1, 2011. (Exhibit 1.) Similarly, records from the Commonwealth of Massachusetts, where Apollo was located, reflect that Apollo's registration was involuntarily revoked on June 30, 2014. (Exhibit 2.) Even if, as Mr. Adams asserts, certain liabilities were paid and litigation was addressed in the first year or two after the Scio transaction, that process concluded long ago, and Apollo has been defunct for several years. Mr. Adams, himself, explained that, in exchange for the $300,000 that he was to receive, one of his responsibilities in the January 2, 2012 agreement was to dissolve Apollo:

> So I said, look, I will try to shepherd the thing going forward through whatever issues; dissolving the company; dealing with anybody that comes out of the woodwork as a creditor, as a shareholder who's got a problem, and I will basically absorb the liabilities up to this amount.

(Exhibit 3 (E. Adams Aug. 27, 2015 SEC Transcript at 267:18-22).)

Because Apollo is now indisputably defunct, in accordance with this prevailing case law, even if a privilege may have once applied to either Apollo's communications about

3

the Scio transaction or post-transactional communications about Apollo's legal affairs, it expired with the dissolution of the corporation. There has been no good cause shown to extend the attorney-client privilege to communications relating to a company that has had no meaningful operations for over six and a half year and that has been defunct for almost as long. Moreover, only Mr. Adams – and nobody from Apollo – is seeking to assert the privilege.

Although Mr. Adams's assertion that the Apollo communications about the Scio transaction should be privileged because "Apollo and Scio were in an adversarial relationship" during negotiations (Def. Obj. at 11) has no bearing on this analysis due to the defunct nature of Apollo, this misleading contention merits a response. There was no adversarial relationship, because Mr. Adams negotiated the transaction for both Apollo and Scio. Although the APA was signed by Robert Linares on behalf of Apollo and by Joseph Lancia on behalf of Scio, each of them provided sworn testimony to the SEC that they had no involvement in negotiating the terms of the APA. Mr. Linares testified that he had no involvement in Apollo after March of 2011 and that he had no interactions with Mr. Lancia or anyone at Scio about the transaction. (Exhibit 4 (R. Linares SEC Transcript at 268:3-18).) Mr. Lancia testified that, although he believed that he signed the APA, he "had no input on any of the terms" and did not even recall seeing the document. (Exhibit 5 (J. Lancia SEC Transcript at 262-64).) Mr. Linares's testimony also undercuts Mr. Adams argument regarding communications about Apollo's "legal affairs" after the transaction. As Mr. Linares testified, he had no involvement in the affairs of Apollo after March 2011 – five months before the Scio transaction was consummated. Thus, any communications

between Mr. Linares and Mr. Adams after that time could not have related to Apollo's "legal affairs."

As noted, Mr. Adams seeks not only to establish that a privilege exists for Apollo but that *he* can assert that privilege on behalf of the defunct company.  Under no circumstance should Mr. Adams be entitled to assert a privilege on behalf of Apollo, as it is evident that his privilege assertions are intended for his own personal benefit and are not an effort to fulfill any fiduciary obligations to Apollo.  To clarify, Mr. Adams seeks to assert a privilege on behalf of a company that he is accused of defrauding, in order to suppress communications that he, personally, had with individuals at Apollo.  Indeed, Mr. Adams has not identified any reason – let alone good cause – why Apollo would have any interest in the assertion of the attorney-client privilege, well over six years after it ceased its operations, to protect communications with the person who defrauded the company.  Only one person could potentially benefit from the assertion of the privilege and the suppression of these documents – and that is Mr. Adams.

As the Supreme Court explained in *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343 (1985), when a corporate privilege does exist, the managers with authority to exercise the privilege can only do so when it is "in the best interests of the corporation and not of themselves as individuals."  *Weintraub*, 471 U.S. at 348-49.  In *Roscoe*, when two defendants in a bank fraud case who were former managers of a company that was "defunct for all practical purposes" attempted to invoke the company's attorney-client privilege to shield various communications, the court explained:

> Defendants have not identified a reason why at this time [the company] would have any interest in the assertion of the

attorney-client privilege.  In light of the fact that [the company]
is defunct, as addressed below, it would appear that the only
reason the defendants are purporting to assert the privilege is
to benefit themselves as individuals.

*Roscoe*, 2011 WL 13143140, at *3.  The situation here is the same.  Mr. Adams has not

identified any reason why Apollo would have any interest in asserting the attorney-client

privilege as to communications that the company had with Mr. Adams or his law firm.

Only Mr. Adams would benefit from the invocation of the privilege and the suppression of

these communications.  Accordingly, even if Apollo somehow retained a privilege, under

no circumstance could Mr. Adams assert the privilege to benefit himself.

## CONCLUSION

For the foregoing reasons, the Court should adopt the finding and recommendation

in the R&R that Apollo's attorney-client privilege passed to, and was validly waived by,

Scio and should reject the arguments that Apollo retains any valid privilege over the Scio

transactional communications and post-transaction communications and that any corporate

privilege can be asserted by Mr. Adams.

Dated: March 26, 2018

Respectfully submitted,

GREGORY G. BROOKER
United States Attorney

/s/ David M. Maria

BY:    DAVID M. MARIA
JOHN E. KOKKINEN
Assistant U.S. Attorneys