

**U.S. Department of Justice**

United States Attorney
District of Minnesota

| | |
|---|---|
| 600 United States Courthouse | Telephone: (612) 664-5600 |
| 300 South Fourth Street | Fax: (612) 664-5787 |
| Minneapolis, MN  55415 | |

April 10, 2018

<u>**Via ECF**</u>

The Honorable Katherine M. Menendez
United States Magistrate Judge
300 South Fourth Street, Suite 8E
Minneapolis, MN 55415

  Re:  *United States v. Edward S. Adams*
     Criminal No. 17-64 (DWF/KMM)

Dear Judge Menendez:

  In response to the Court's request on the April 6, 2018 conference call, the government respectfully submits this letter brief, addressing Mr. Adams's contention that he is entitled to disclosure of an "unredacted Relativity activity database log," showing every instance in which a member of the prosecution team viewed a document in the database, when that document was viewed, and how long the viewer remained open on that particular document.  Counsel for Mr. Adams contends that this computer data generated by the government is relevant to a determination of the reasonableness of the execution of the search and seizure warrant on Mr. Adams's two personal Yahoo! email accounts. Mr. Adams seeks this information not just for the emails that were searched but not ultimately seized by the government (the "excluded documents"), but also for the documents that reside in the final "review database" seized and retained by the government (the "seized documents").  As the government explained on the call, the government does not believe that Mr. Adams is entitled to any of this information, as it is clearly work product.  Moreover, the government does not believe that this information is relevant to the inquiry of reasonableness of the execution of the search warrant.

  As to the seized documents, counsel for Mr. Adams has all of the information necessary to argue, and the Court has all of the information necessary to determine, the reasonableness of the seizure.  The process has been laid out and discussed in great detail, both in the filings leading up to the January evidentiary hearing, as well as in testimony at the hearing.  Mr. Adams knows every single search that any member of the prosecution

team ran on the Relativity database – including when each search was run and how many times any given search was run.  The government is unaware of a single instance in which a defendant has been provided with this type and level of information, let alone the additional work product that Mr. Adams now seeks.  As to the reasonableness of the seizure itself, what is in the final review database (i.e., what was seized) speaks for itself.  The Court is fully apprised of the search terms that the government ran to determine the final population of seized documents, and the Court can appropriately determine if that process was reasonable.  As noted on the conference call, the data Mr. Adams seeks relating to the seized documents will show what documents the government viewed most frequently and, accordingly, deemed most important.  He is not entitled to this information.

The information that Mr. Adams seeks also is not relevant.  As the government explained on the conference call, what the government knew of Mr. Adams's crimes evolved over the course of the investigation.  This resulted in new searches being run, as well as determining that other areas and terms that it initially may have believed were relevant were not.  This does not mean that the government was expanding the scope of the search warrant; instead, it was able to more accurately determine what actually was in the scope of the crimes being investigated as set forth in the search warrant.  Thus, even if the government reviewed an ultimately irrelevant document on multiple occasions before being able to determine that it was not relevant, that does not bear on the reasonableness of the search.  And, if certain documents that were ultimately not seized shed light on the criminal conduct outlined in the search warrant and gave rise to search terms that related to the scope of the search warrant, again, there is nothing improper or unreasonable about conducting the search in that manner.  Courts assessing the reasonableness of email search warrants have routinely held as such.

For example, in *United States v. Lustyik*, No. 2:12-CR-645-TC, 2014 WL 1494019 (D. Utah Apr. 16, 2014), the government had executed search warrants on several Hotmail and Yahoo! accounts and had conducted an initial document-by-document relevance review.  The government retained access to the database of documents marked "not relevant," and, over the course of the investigation, went back in and conducted targeted searches of the documents originally deemed not relevant.  The court found that the additional targeted searches were not outside of the scope of the warrant, explaining: "Here, as the document review progressed, those executing the warrants gained a better understanding of the illegal conduct at issue in the warrants.  The additional targeted searches were a reasonable method for locating documents responsive to the warrants."

*Id.*at *13 (internal record cites omitted.)  Unlike a case where the government abandoned its search for evidence of the crimes in the scope of the search warrant and looked for evidence of other unrelated crimes, the court found that "the review and subsequent targeted searches were conducted for the purpose of finding documents responsive to the warrants." *Id.* at 14.

Similarly, in *In the Matter of a Warrant for All Content and other Information Associated With the Email Account xxxxxxx@gmail.com Maintained at Premises Controlled by Google*, 33 F. Supp.3d 386 (S.D.N.Y. 2014), the court noted its recognition "that the Government has a need to retain materials as an investigation unfolds for the purpose of retrieving material that is authorized by the warrant." *Id.*at 398.  Specifically, the court provided the example that "it might be obvious based on information from an informant or other source that emails referring to the purchase or importation of 'dolls' refers to cocaine, but investigators might only learn as the investigation goes on that a seemingly innocuous email referring to purchase of 'potatoes' also refers to a cocaine shipment." *Id.*

In *United States v. Harder*, Slip Copy, Crim. No. 15-1, 2016 WL 7647635 (E.D. Pa. Apr. 18, 2016), the court denied a motion to suppress an email search and seizure where the government employed a process similar to the government's process here.  After a filter team removed potentially privileged documents,[1] an FBI agent conducted targeted searches for documents that fell within the scope of the criminal conduct outlined in the search warrant.  *Id.* at *3.  While *Harder* does not indicate how long the FBI had access to the database while running the searches, the court does quote the *Gmail/Google Warrant* case cited above, recognizing "that the Government has a need to retain materials as an investigation unfolds for the purpose of retrieving material that is authorized by the warrant." *Harder*, 2016 WL 7647635, at *6.

These cases, and the government's process in the present case, stand in stark contrast to the cases in which a court has found the government's actions to be unreasonable and suppressed an email search warrant.  In *United States v. Metter*, 860 F. Supp. 2d 205 (E.D.N.Y. 2012), the government seized multiple hard drives and an email account pursuant to search warrants, and fifteen months after the execution of the warrants, "the

---

[1] Here, instead of using a filter team, the government employed a broad set of keyword searches in an effort to segregate potentially privileged documents, removing those documents from the access of the prosecution team.

government had not conducted its review of the evidence seized and imaged to determine whether any of that evidence fell outside of the scope of the search warrant." *Id.* at 211. The court noted that the "government failed to commence the review, despite repeated requests from defense counsel and directions from the Court to do so" and that "the government seemed shocked that the Court would require such a review." *Id.* at 216.

In *United States v. Ganias*, 755 F.3d 125 (2d Cir. 2014), the Second Circuit found a constitutional violation when the government retained materials determined not to fall under the scope of the search warrant and subsequently used those materials in a prosecution relating to a different subject matter and a different defendant. The court held that "the Government clearly violated [the defendant's] Fourth Amendment rights by retaining the files for a prolonged period of time and then using them in a future criminal investigation." *Id.* at 138. And, while the court initially upheld the district court's suppression of the electronic data, an *en banc* panel of the Second Circuit ultimately reversed this decision, determining that *Leon* good faith applied to the government's conduct and that suppression was not warranted. *United States v. Ganias*, 824 F.3d 199, 225 (2d Cir. 2016).

Here, as the Court is aware, the government possessed the Yahoo! email data for approximately a year, during which time it took multiple steps to segregate privileged data and to identify the relevant data that fell within the scope of the search warrant. Over this time, as in the *Lustyik* case, the government gained a better understanding of the criminal conduct at issue in the warrant, and it premised its final seizure – the second step in the process outlined in Rule 41 – on that understanding. The government did not fail to conduct the second step, as was the case in *Metter*, nor did it knowingly retain materials outside of the scope of the warrant, let alone use that information in a subsequent prosecution, as was the case in *Ganias* (and which, in any event, did not warrant suppression in that case).

For these reasons, the government's viewing activity with respect to any specific document is not relevant to Mr. Adams's forthcoming suppression motion or to the Court's analysis of these issues, and the Court should, accordingly, deny Mr. Adams's request for this information.

Nevertheless, the government is willing to provide this information for the excluded documents. While the government does not concede that this information is relevant to the reasonableness inquiry or that it falls under Rule 16, it will permit Mr. Adams's counsel to

determine if the government viewed non-relevant documents, or documents that fall outside of the scope of the search warrant,[2] multiple times, or for lengthy periods of time. On the call, Mr. Wade estimated that of the approximately 7,100 documents viewed by the government, approximately 5,500 are the seized documents, and approximately 1,600 are the excluded documents.  The government can prepare an unredacted Relativity activity database log as to these 1,600 documents but to do so will require the government's IT staff to access the databases to determine which documents fall into that category so that the Relativity activity can be determined.  Moreover, if Mr. Adams provides a list of document identification numbers that contain Mr. Hopeman's or Mr. Brever's name, the government will provide the viewing data relating to those documents.

Sincerely,

GREGORY G. BROOKER
United States Attorney

/s/ David M. Maria

BY: DAVID M. MARIA
JOHN KOKKINEN
Assistant U.S. Attorneys

---

[2] The government also does not concede that all of the excluded documents are necessarily outside of the scope of the search warrant.  In other words, just because the government's final list of search terms may not have hit on a document and resulted in the document being seized, that does not necessarily mean that the document is outside of the scope of the search warrant.  Indeed, it is likely that documents within the scope of the warrant were excluded.