LAW OFFICES
# WILLIAMS & CONNOLLY LLP
725 TWELFTH STREET, N.W.
WASHINGTON, D. C. 20005-5901
(202) 434-5000
FAX (202) 434-5029

LANCE A. WADE
(202) 434-5755
lwade@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

April 10, 2018

<u>Via Email and ECF</u>

Hon. Kate M. Menendez
United States District Court
District of Minnesota
8E U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

    Re:    <u>United States of America v. Edward S. Adams</u>, Case No. 17-cr-64

Dear Judge Menendez:

    Pursuant to the Court's order during the April 6, 2018 telephonic hearing in the above-captioned matter, I write to provide the Court with a summary of Mr. Adams's argument as to why the government should be compelled to produce unredacted database activity logs.

    By way of background, in advance of the January 8, 2018 evidentiary hearing relating to Mr. Adams's Motion to Suppress (ECF 36), the government disclosed to Mr. Adams activity logs from its Relativity database of Yahoo! emails.[1] These activity logs reflect the government's execution of the search warrant between May 2016 and April 2017, when the government claims that it finally "seized" the emails. *See* ECF 52-1 (AUSA Maria Decl.) at ¶¶ 13-14. The activity logs show (1) who performed an action in the database; (2) when that person performed the action; and (3) which action they performed (view, query, print, etc.). *See* DX 74. But as produced by the government, these logs do not identify which documents were the subject of the activity. That information was redacted. *See* Jan. 9, 2018 Hr'g Tr. at 140:1-3 ("[W]e've redacted out document identification numbers, right? A. That is correct.").

    The government should be ordered to produce the Relativity activity logs in a manner that includes all omitted document identifiers. This information is material to Mr. Adams's pending motion to suppress and his anticipated motion to disqualify members of the prosecution team, and is thus discoverable under Federal Rule of Criminal Procedure 16. Additionally,

---

[1] *See* DX 74 (thumb drive containing all activity logs as produced to Mr. Adams by the government); *see also* DX 78 (AUSA Maria activity); DX 80 (Inspector Kroells); DX 82 (Agent Khan); DX 84 (Marshal Belich). References to "DX" herein refer to the numbered exhibits Mr. Adams offered in connection with the January 2018 evidentiary hearing.

April 10, 2018
Page 2

*Brady* and *Giglio* require disclosure of evidence favorable to Mr. Adams, including information affecting the credibility of the government's hearing witnesses.

**I.      The unredacted database logs are material to the defense and should be produced pursuant to Rule 16.**

Under Rule 16, the Court may compel the government to produce documents or data that are "material" to preparing Mr. Adams's defense, including his suppression argument. *See* Fed. R. Crim. P. 16(a)(1)(E)(i). "[M]aterial" means "helpful to the defense," *United States v. Vue*, 13 F.3d 1206, 1208 (8th Cir. 1994), and "[t]he materiality hurdle is not intended to be a high one," *United States v. Jean*, No. 5:15-CR-50087, 2016 WL 6886871, at *4 (W.D. Ark. Nov. 22, 2016); *see also United States v. Virgen-Nunez*, No. 4:09-CR-16, 2009 WL 10678145, at *2 (S.D. Iowa June 26, 2009) (finding evidence material because it made it more likely that the government executed an improper search).

The government has previously conceded that "what the government actually did in executing the warrant" is information that is "relevant to the reasonableness of the government's execution of the Yahoo! search warrant." ECF 68 at 2-3 (Opp. to Mot. to Compel).  Specifically, the information Mr. Adams seeks—the unredacted database logs—would be helpful to the defense's argument that the government failed to act reasonably and in good faith when executing the warrant. *See Vue*, 13 F.3d at 1208. These logs would permit Mr. Adams to:

- Identify which documents the government viewed repeatedly or for longer durations of time. Repeated or lengthy document views would tend to show that the government was not (as it has argued) merely conducting a "brief perusal" of each document to determine whether it should be seized because it fell within the scope of the warrant. *United States v. Heldt*, 668 F.2d 1238, 1267 (D.C. Cir. 1981);[2] *see also United States v. Dahl*, No. 13-cr-139, 2013 WL 6175711, at *9 (D. Minn. Nov. 26, 2013) ("The Eighth Circuit has not mandated a particular search protocol for computers, and other courts to consider the issue have similarly taken a common-sense approach, allowing for the *cursory* search and opening of files to determine if they contain evidence within the scope of the warrant" (emphasis added)). Particularly in the case of documents outside the scope of the warrant or privileged documents,[3] repeated or lengthy viewings would evidence that in executing the warrant, the government acted unreasonably. Unreasonable, reckless, or flagrant disregard for the terms of the warrant or Rule 41 can support suppression. *See United States v. Freeman*, 897 F.2d 346, 349 (8th Cir. 1990) (recognizing that reckless disregard of Rule 41 requirements merits suppression); *Marvin v. United States*, 732 F.2d 669, 673-74 ("A flagrant disregard for the limitations of a

---

[2] The relevant Department of Justice guide identifies *Heldt* as "[t]he leading case" on the search of commingled records. *See* Dep't of Justice, *Searching and Seizing Computers & Obtaining Elec. Evidence in Criminal Investigations* 87–89 (2009), https://www.justice.gov/sites/default/files/criminal-ccips/legacy/2015/01/14/ssmanual2009.pdf (collecting cases allowing for a "brief perusal," "brief[] review," or "brief[] examin[ation]" of commingled computer records).

[3] Such documents are found both in the set of documents that the government viewed and seized, and in the set of documents that the government viewed and excluded.

search warrant might make an otherwise valid search an impermissible general search and thus require the suppression or return of all evidence seized during the search.").

- Show the sequencing of the government's searches, and how those searches were influenced by the government's review of privileged documents or documents outside the scope of the warrant. Members of the prosecution team have testified that the government's theory of its case against Mr. Adams was "evolving." Jan. 8, 2018 Hr'g Tr. at 206:19-207:1. With the unredacted database log, Mr. Adams could show when particular privileged documents (like the Murry/Brever tax communications), or documents outside the scope of the warrant, were viewed. Mr. Adams could then compare the contents of those documents to the government's subsequent search terms to demonstrate that the government used privileged information or information contained in documents outside the scope of the warrant to further its search and investigation. Such conduct would demonstrate unreasonableness in the execution of the warrant. *See United States v. Wey*, 256 F. Supp. 3d 355, 406-07 (S.D.N.Y. 2017) ("[T]he Court is aware of, no authority suggesting that . . . the Government is permitted to return to the proverbial well . . . to make another sweep for relevant evidence, armed with newly refined search criteria and novel case theories. . . . [The] searches are akin to the Government seizing some hard-copy notebooks while leaving others it deemed unresponsive behind, and then returning to the premises two years later to seize the left-behind notebooks based on investigative developments but without seeking a new warrant.").

- Sequencing information will also be essential should the government argue that the plain view exception permitted it to seize emails outside the scope of the warrant. This exception only applies if, among other things, the criminal nature of seized email was "immediately apparent." *Brayman v. United States*, 96 F.3d 1061, 1065 (8th Cir. 1996). That means the government must have had probable cause to associate the [email] with criminal activity." *United States v. Hatten*, 68 F.3d 257, 261 (8th Cir. 1995). And it must have had this probable cause *while performing the brief perusal contemplated by Heldt, Dahl, and other cases involving commingled records*. *See* note 2, *supra*; *see also, e.g., Wey*, 256 F. Supp. 3d at 406; *United States v. Jefferson*, 571 F. Supp. 2d 696, 704 (E.D. Va. 2008) (stating that if the initial examination of a document "discloses neither that the document is within the scope of the warrant, nor that there is probable cause to seize it under the plain view doctrine, agents may not seize the document's information by . . . making notes of it" and while "the agents are not required to erase from their memories what they saw in the documents," "if they *subsequently* obtain information that, coupled with what they saw, gives them probable cause to seize the documents, they may then *seek a warrant* to seize the documents" (emphasis added)). The government is not permitted to review the contents of thousands of files under the guise of executing a warrant, decide that a crime not specified in the warrant has been committed, and then go back, re-review, and seize selected files that are supposedly in plain view. Sequencing information is therefore essential to evaluating any plain view argument by the government.

**II.     The unredacted database logs should be produced pursuant to *Brady* and *Giglio*.**

Aside from Rule 16, due process requires the government to disclose evidence favorable to Mr. Adams that is "material either to guilt or to punishment," *Brady v. Maryland*, 373 U.S. 83,

April 10, 2018
Page 4

87 (1963), including information affecting the credibility of its witnesses, *Giglio*, 405 U.S. 150, 153-55 (1972). "The suppression of material evidence helpful to the accused, whether at trial or on a motion to suppress, violates due process if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *United States v. Gamez-Orduno*, 235 F.3d 453, 461 (9th Cir. 2000) (emphasis added) (citing *Brady*, 373 U.S. at 87). "[T]he government must always produce any potentially exculpatory or otherwise favorable evidence without regard to how the withholding of such evidence might be viewed—with the benefit of hindsight—as affecting the outcome of the trial." *United States v. Safavian*, 233 F.R.D. 12, 16 (D.D.C. 2005).

The government has represented that it "has provided Mr. Adams with a full, transparent picture of how the search warrant was executed. There is no *Brady* material to turn over." ECF 68 at 6. And yet, the government has refused to disclose the unredacted database activity logs that would, as discussed above, actually provide Mr. Adams with a full picture of how the warrant was executed. The government should honor its commitment to "produce to the defense (1) material evidence of which it is aware that may be favorable to the defense in connection with the motion to suppress, and (2) information that may be impeachment of which it is aware relating to the government's suppression hearing witnesses." ECF 68 at n.2.

It is clear from the record that privileged documents were reviewed. The unredacted database logs would permit Mr. Adams to identify which member(s) of the prosecution team viewed privileged documents, which is relevant to Mr. Adams's anticipated disqualification motion, as it would show who has been tainted from exposure to privileged material. For example, Inspector Kroells testified that she understood that she was permitted to review privileged communications "[i]f they related to the fraud scheme." Jan. 8 Hr'g Tr. at 145:24 – 146:22. Mr. Adams should be permitted, pursuant to *Brady*, to learn which privileged documents were viewed by Inspector Kroells, and to move for her disqualification on that basis.

And evidence of which privileged documents were viewed by which member of the prosecution is relevant to the credibility of the witnesses, and therefore must be produced pursuant to *Giglio*. *See* 405 U.S. at 153-55. For example, Inspector Kroells testified that while searching through the database, her usual practice was to "stop reviewing" when she came across a potentially privileged document. Jan. 8 Hr'g Tr. at 115:7-13. If the unredacted activity logs reflect that Inspector Kroells viewed privileged documents repeatedly, that information would undermine her credibility, and might impact the scope of relief that is warranted.

**III.   The work product doctrine does not apply to the unredacted database logs.**

Although Rule 16 exempts from disclosure "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case," Fed. R. Crim. P. 16(a)(2), the work product doctrine should not shield the unredacted database logs from production.

"At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area in which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). Mr. Adams has previously argued that, far from existing in

April 10, 2018
Page 5

a "privileged area," the execution of a search warrant is a "quintessentially public act." ECF 64. This Court has agreed "that the execution of a search warrant itself may be public," although "the discussions held ahead of that execution are definitely not." ECF 100 at 6. Mr. Adams is not presently seeking information about discussions or memoranda reflecting the thought processes of the government lawyers prior to the execution of the search warrant.[4] Instead, Mr. Adams is seeking the document IDs that correspond to the database activity of members of the prosecution team—both lawyers and non-lawyers—while they were allegedly in the process of executing the second step of the two-step warrant. The government should not be permitted to cloak their execution of the search warrant between May 2016 and April 2017, when the purported seizure took place, *see* ECF 52-1 at ¶¶ 13-14, with the work product protection. *Cf. Heldt*, 668 F.2d at 1276 ("[W]hen a prosecutor actually participates in a search he is engaging in investigative rather than quasi-judicial activity and therefore loses his absolute immunity from suit if he actually participates in a search . . . .").

It is the government's burden to demonstrate the application of the work product doctrine, *see PepsiCo, Inc. v. Baird, Kurtz & Dobson LLP*, 305 F.3d 813, 817 (8th Cir. 2002), and the government has failed to do so here. The document IDs corresponding to the database activity—particularly for those who are not legal counsel—do not conceivably reveal "counsel's mental impressions, conclusions, opinions or legal theories," and thus are not opinion work product. *See Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000). And even if this "factual information" about the government's conduct in executing the search were considered "ordinary work product," it would be discoverable due to Mr. Adams's substantial need for the information and the fact that he cannot obtain the substantial equivalent of the materials by other means. *See id.* The government's obligations under *Brady* trump any claims of privilege. *See United States v. Kohring*, 637 F.3d 895, 907-08 (9th Cir. 2011) (explaining that *Brady* requires disclosure of exculpatory facts contained in a prosecutor's opinions and mental impressions of the case). Counsel for Mr. Adams is unaware of a single case holding that search activity is protected by the work product doctrine, nor are we aware of any case that has held that evidence of which documents were viewed during a search is work product.

\* \* \*

Mr. Adams respectfully requests that the Court compel the government to produce unredacted versions of the Relativity activity logs previously produced.

Respectfully submitted,

/s/ Lance A. Wade

---

[4] Nor is Mr. Adams seeking information from *after* the purported seizure, except to the extent that the government searched for and viewed privileged documents. *See* DX 81 (reflecting searches by Inspector Kroells for "Murry" on April 27, 2017).