UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| United States of America, | Case No. 0:17-CR-00064-DWF-KMM |
| Plaintiff, | |
| v. | **ORDER** |
| Edward S. Adams, | |
| Defendant. | |

---

David M. Genrich, David J. MacLaughlin, David M. Maria, John E. Kokkinen, Assistant United States Attorneys, counsel for the government

Deborah A. Ellingboe, James L. Volling, Faegre Baker Daniels LLP, Gloria K. Maier, Joseph G. Petrosinelli, Lance A. Wade, Sarah Lochner O'Connor, counsel for defendant

---

On April 6, 2018, the Court conducted a telephone conference to discuss a discovery dispute and then ordered letter briefs. At issue is whether the government must disclose additional information about the execution of a search warrant. Min., ECF No. 129; Gov't Letter to Mag. J., ECF No. 127; Adams Letter to Mag. J., ECF No. 128.

After receiving materials from Yahoo! in response to a search warrant, the government created a database containing the emails it received. *See* Adams Letter at 1. The database product used by the government to review and organize the emails allows for the production of logs that document activity within the database. The government has produced logs documenting database activity between May 2016 and April 2017. *Id.* The already produced logs "show (1) who performed an action in the database; (2) when that person performed the action; and (3) which action they performed (view, query, print, etc.)." *Id.* Though the database also tracks which specific documents were viewed, at which times, and by whom, the log produced by the government was redacted to exclude that information. *Id.*

Mr. Adams now seeks to compel the government to disclose the redacted material. Adams Letter at 1. He argues that the complete logs contain information relevant to both his currently-pending suppression motion, which alleges that the search warrant was executed in a manner that violates the Fourth Amendment, and to a forthcoming motion related to attorney-client privilege. Mr. Adams asserts that the unredacted logs would enable him to identify which documents were viewed multiple times or for a longer duration than expected; would show the sequence of the government's searches and views; and would indicate which prosecution team members viewed privileged documents, for purposes of determining whether any team members are tainted by alleged constitutional violations in the execution of the warrant and assessing witness credibility. *Id.* at 2-4. In response, the government provides two reasons for nondisclosure: the information is "clearly work product" and not "relevant to the inquiry of reasonableness of the execution of the search warrant." Gov't Letter at 1. The Court concludes that neither of the government's arguments carries the day and disclosure is required.

**Work Product**

Though the government invokes the label "work product" to describe the information sought, it provides no meaningful argument or evidence in support of the assertion that the information actually constitutes work product and is therefore entitled to protection.[1] Nor does the government point to any authority for the idea that the work product doctrine applies to information about which members of a prosecution team looked at a given document during the execution of a search warrant, or how often and for how long they did so. And the party asserting work product protection must support its applicability. 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2016.1 & n.25 (3d ed. 1998) (citing *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251 (D. Md. 2008) for the proposition that the party who asserts privilege, when the privilege is challenged, "bears the burden of establishing an evidentiary basis for each element of each privilege/protection claimed"). As a result,

---

[1] Although the government suggests that the work-product doctrine applies, it instead focuses almost all of its advocacy on persuading the Court that the search at issue was in fact reasonable. Of course, that is the ultimate question the Court will have to decide. But that reality only strengthens rather than undermines Mr. Adams' position.

the government has failed to demonstrate the applicability of the work-product doctrine to the information in question.

Even if the government had attempted to meet its burden to demonstrate the application of the work-product doctrine, the Court finds the core of the government's proposition questionable. The government has cited no case holding that the work-product doctrine protects from disclosure the actions the government takes when executing a search warrant. Mr. Adams notes that in the context of evaluating prosecutorial immunity, courts view a prosecutor's participation in a search as an investigative function, which distinguishes it from actions taken in the prosecutor's quasi-judicial capacity, such as charging decisions. *See* Adams Letter at 5 (citing *United States v. Heldt*, 668 F.2d 1238, 1276 (D.C. Cir. 1981) ("[W]hen a prosecutor actually participates in a search he is engaging in investigative rather than quasi-judicial activity, . . . and therefore loses his absolute immunity from suit if he actually participates in a search. . . .")).

Even if the database activity log constituted ordinary work product, this Court must nonetheless order disclosure of work product information in criminal cases when due process so requires. *See United States v. Nobles*, 422 U.S. 225, 249 (1975) ("Indeed, even in the pretrial discovery area in which the work-product rule does apply, work-product notions have been thought insufficient to prevent discovery of evidentiary and impeachment material."). As discussed below, due process requires disclosure of the information in this case, and Mr. Adams would likely satisfy his burden to overcome work-product protection were this Court to find it applied. *See* 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2025 (3d ed. 1998) (noting that ordinary work product protection can be overcome where "the party seeking the work product shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent" (quotation omitted)). But because the Court finds that the government has not even attempted to meet its burden to establish work-product protection, the Court need not consider the substantial-need test any further.

### Relevance of the Requested Information

The rules of criminal procedure require *inter alia* disclosure of documents and objects that are in the government's possession or control and which are material to preparing a defense. Fed. R. Crim. P. 16(a)(1)(E). Evidence is material if it is helpful

to the defense. *United States v. Vue*, 13 F.3d 1206, 1208 (8th Cir. 1994). And under *Brady*, *Giglio*, and their progeny, the government must disclose information that is both favorable to the defendant and material to guilt, and evidence that affects the credibility of prosecution witnesses. *United States v. Beckman*, 787 F.3d 466, 492 (8th Cir. 2015).

Here, while Mr. Adams certainly already has a wealth of information regarding the execution of the search warrant, the additional redacted information meets the low threshold of materiality. *See* 2 C. Wright, *Fed. Prac. & Proc. Crim.* § 254 (4th ed.) ("Too much should not be required in showing materiality."). The reasonableness of the government's execution of the search warrant is at issue in Mr. Adams's motion to suppress. The order in which the government viewed certain documents, the frequency with which they did so, and the duration of examination of nonresponsive or privileged documents would inform the Court's determination as to whether the search violated Mr. Adams' Fourth Amendment rights or attorney-client privilege, and would inform any findings about whether any mistakes were the product of recklessness or even flagrance. *See United States v. Tenerelli*, 614 F.3d 764, 771 (8th Cir. 2010) (noting that the flagrant disregard standard applies where the government searches unauthorized places). And while the government argues that the information sought is not relevant because the government is allowed to generate search terms based on terms found in documents not ultimately seized, this argument is more relevant to the ultimate question of the reasonableness of the warrant's execution than to the discoverability of the information contained in the logs. *See* Gov't Letter at 2. Rather than suggesting that the unredacted logs are not relevant, the government instead avers that the requested information will ultimately vindicate the lawfulness of the search. Such an argument plainly favors disclosure. *See* 2 C. Wright, *Fed. Prac. & Proc. Crim.* § 254 (noting that inculpatory evidence may assist the defense for Rule 16 purposes).

Moreover, the evidence at issue is clearly material to Mr. Adams's likely forthcoming motion to disqualify certain members of the prosecution team. *See* Adams Letter at 4. To adequately assess the presence and scope of alleged taint resulting from exposure to privileged information in the database, Mr. Adams seeks to learn to what extent individual members of the prosecution team viewed specific privileged documents. The government offers no argument specifically addressing the relevance, or lack thereof, of the sought information to the motion to disqualify.

The Court finds that the requested information is discoverable under Fed. R. Crim. P. 16. But it is also true that the Court possesses the authority to order discovery beyond the minimum required by the Rule. *See* 2 C. Wright, *Fed. Prac. & Proc. Crim.* § 254 ("The rule is intended to prescribe the minimum amount of discovery to which the parties are entitled. It is not intended to limit the judge's discretion to order broader discovery in appropriate cases." (quoting Fed. R. Crim. P. 16 advisory committee's note (1975))). To the extent that Rule 16 could be read to not require disclosure of the unredacted database activity log, the Court exercises its authority to order its disclosure nonetheless.

Finally, *Giglio v. United States*, may mandate disclosure of the sought information. 405 U.S. 150 (1972). As Mr. Adams asserts, Inspector Christie Kroells testified that she typically stopped reviewing documents if she believed them to be privileged. *See* Adams Letter at 4. Mr. Adams argues that if the unredacted logs show that the inspector in fact repeatedly viewed privileged documents, that information could potentially undermine her credibility. *Id.* The Court agrees. And "evidence tending to impeach the credibility of prosecution witnesses may be subject to the disclosure requirements of *Brady*" and *Giglio*. *Pederson v. Fabian*, 491 F.3d 816, 826 (8th Cir. 2007). Again, the government offers no argument specifically addressing the applicability of *Giglio* to the unredacted database beyond a standard assertion that there is no *Brady* material to disclose. Gov't Mem. in Opp. Def.'s Mot. to Compel, ECF No. 68 at 6. Should the unredacted logs reveal information that tends to impeach the credibility of prosecution witnesses, the government would be obligated to provide the sought information pursuant to *Giglio*.

The Court observes that the government does not seek to show that the production will be unduly burdensome in any way. Indeed, it appears that the government already has access to the information at issue, having redacted it from the original disclosures. Instead, in arguing why the information should not be disclosed, the government alleges only that the defense will be able to learn ahead of time which documents were of greatest interest to the prosecution team during the execution of the search warrant. It is difficult to imagine that great secrets will be revealed when the government has already prepared a very detailed Indictment that contains a roadmap to its theory of prosecution, as well as information about precisely what search terms were used in exploring the database. To the extent that Mr. Adams' team is able to make an early prediction about the documents that will appear on the

government's exhibit list, that seems like an insignificant tactical advantage in the face of the volumes of information the defense already possesses.

In sum, the sought information must be disclosed pursuant to Rule 16, and the Court exercises its power to order disclosure beyond the minimum required by that rule. *Giglio* may also mandate disclosure. The Court finds the government's argument that the sought information is not relevant to the motions at issue unpersuasive. And the government has failed to meet its burden to establish the protection of the work-product doctrine. To allow time for the government to prepare the sought information and for Mr. Adams to review it prior to submitting additional motions and memoranda, the Court extends the briefing deadlines.

Based on the foregoing reasons, the government is **HEREBY ORDERED THAT:**

1. The government shall disclose the sought unredacted database activity logs **on or before April 25, 2018**.
2. The briefing schedule set forth in this Court's January 23, 2018 order is modified as follows:
    a. Mr. Adams shall file any additional motions and supporting memoranda as well as any memoranda in support of existing motions **on or before May 9, 2018**.
    b. The government shall file a response to both new motions and posthearing memoranda as to pending motions **on or before June 6, 2018**.
    c. Mr. Adams shall file a reply **on or before June 20, 2018**.

Date: April 20, 2018

*s/Katherine Menendez*
Katherine Menendez
United States Magistrate Judge