**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 17-cr-64-DWF-KMM |
| | ) | |
| EDWARD S. ADAMS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**DEFENDANT'S MOTION TO DISMISS THE SUPERSEDING INDICTMENT,**
**OR IN THE ALTERNATIVE FOR DISQUALIFICATION,**
**FOR PRIVILEGE VIOLATIONS**

*INDEX OF EXHIBITS*

| Ex. # | Description |
|---|---|
| 1 | May 15, 2018 Adams revised privilege log of documents viewed and "seized" by the government over which Mr. Adams is asserting his personal attorney-client privilege or attorney work product protection |
| 2 | Adams privilege log of documents viewed but not "seized" by the government over which Mr. Adams is asserting his personal attorney-client privilege or attorney work product protection |
| 3 | April 23, 2015 SEC Subpoena to E. Adams |
| 4 | Excerpts from Relativity log showing the government's activity for selected privileged documents (including *in camera* Exhibits A, D, G, J, K, L, M, N, O, P, R, S, T, U) |
| 5 | February 2, 2018 Email from AUSA A. Bildtsen to L. Wade, G. Maier re: documents provided to Investigator Belich |

1

| Ex. # | Description |
|---|---|
| 6 | February 22, 2018 Email from AUSA D. Maria to L. Wade, G. Maier, cc: AUSA T. Rank, AUSA J. Kokkinen re: post-hearing discovery |
| 7 | February 27, 2018 Email from AUSA D. Maria to L. Wade, cc: AUSA J. Kokkinen, AUSA T. Rank, J. Petrosinelli, G. Maier re: conference call, privilege log |
| 8 | Verified Complaint, *Mack and Rapello v. Adams, et al. and Loblolly, Inc.,* filed May 7, 2012 |
| 9 | August 9, 2016 Email from K. Mack to C. Kroells, cc: P. Rapello re: Scio Diamond (Government Bates ECL-00028914) |
| 10 | May 19, 2016 Email from P. Rapello to C. Kroells, cc: K. Mack re: follow up (ECL-00033416) |

# EXHIBIT 1

*U.S. v. Adams*

Revised Privilege Log of Documents Viewed by Government in "For Review" Folder
E. Adams Personal Attorney-Client Privilege or Attorney Work Product Protection

*5/15/2018*

| Row | Doc ID Beg | Date | Description | Attorney Client Privilege | Attorney Work Product | Email From | Email To | Email CC | Email BCC | Custodian |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 00273305 00273307 (attachment) | 3/13/2008 | Confidential communication with attachment from Edward Adams to J.R. Maddox and Chris Mumm regarding attached draft complaint prepared in anticipation of litigation by Edward Adams against DTLL, Inc. | X | X | Adams Edward <jafman1@yahoo.com> | J.R. Maddox <jmaddox@lexadigm.com> | mumm17 <mumm17@hotmail.com> | | Jafman1 |
| 2 | 00337216 | 9/17/2011 | Confidential communication from Edward Adams to Michael Monahan, prepared in anticipation of Mack and Rapello civil litigation. | | X | Adams Edward <jafman1@yahoo.com> | Michael Monahan <michaelrmonahan@yahoo.com> | | | Jafman1 |
| 3 | 00337229 00439421 (duplicate) | 9/17/2011 | Confidential communication from Michael Monahan to Edward Adams, prepared in anticipation of Mack and Rapello civil litigation. | | X | Michael Monahan <michaelrmonahan@yahoo.com> | Adams Edward <jafman1@yahoo.com> | | | Jafman1 Michael_Monahan |
| 4 | 00337909 | 9/27/2011 | Confidential communication from Edward Adams to Michael Monahan, prepared in anticipation of Mack and Rapello civil litigation. | | X | Adams Edward <jafman1@yahoo.com> | Michael Monahan <michaelrmonahan@yahoo.com> | | | Jafman1 |
| 5 | 00339295 | 10/21/2011 | Confidential communication from Edward Adams to Michael Monahan, prepared in anticipation of Mack and Rapello civil litigation. | | X | Adams Edward <jafman1@yahoo.com> | michaelrmonahan <michaelrmonahan@yahoo.com> | | | Jafman1 |
| 6 | 00339303 | 10/21/2011 | Confidential communication Michael Monahan to Edward Adams, prepared in anticipation of Mack and Rapello civil litigation. | | X | Michael Monahan <michaelrmonahan@yahoo.com> | Adams Edward <jafman1@yahoo.com> | | | Jafman1 |
| 7 | 00339397 00440741 (duplicate) | 10/24/2011 | Confidential communication from Michael Monahan to Edward Adams, prepared in anticipation of Mack and Rapello civil litigation. | | X | Michael Monahan <michaelrmonahan@yahoo.com> | Adams Edward <jafman1@yahoo.com> | | | Jafman1 Michael_Monahan |
| 8 | 00339410 | 10/25/2011 | Confidential communication from Edward Adams to Michael Monahan, prepared in anticipation of Mack and Rapello civil litigation. | | X | Adams Edward <jafman1@yahoo.com> | Michael Monahan <michaelrmonahan@yahoo.com> | | | Jafman1 |
| 9 | 00339485 00440831 (duplicate) | 10/27/2011 | Confidential communication from Michael Monahan to Edward Adams in anticipation of Mack and Rapello civil litigation. | | X | Michael Monahan <michaelrmonahan@yahoo.com> | Adams Edward <jafman1@yahoo.com> | | | Jafman1 Michael_Monahan |
| 10 | 00339770 00441411 (duplicate) | 11/4/2011 | Confidential communication from Michael Monahan to Edward Adams, prepared in anticipation of Mack and Rapello civil litigation. | | X | Michael Monahan <michaelrmonahan@yahoo.com> | Adams Edward <jafman1@yahoo.com> | | | Jafman1 Michael_Monahan |
| 11 | 00042517 (attachment) | 2/10/2012 | Attachment to email from Edward Adams to himself attaching documents, prepared in anticipation of Mack and Rapello civil litigation. | | X | Edward Adams <edwardsadams@yahoo.com> | Adams Edward <jafman1@yahoo.com> | | | Edward_S_Adams |
| 12 | 00444715 (attachment) | 3/2/2012 | Attachment to confidential communication from Michael Monahan to Edward Adams, sent in anticipation of Mack and Rapello civil litigation. | | X | Michael Monahan <michaelrmonahan@yahoo.com> | Adams Edward <jafman1@yahoo.com> | | | Michael_Monahan |

| Row | Doc ID Beg | Date | Description | Attorney Client Privilege | Attorney Work Product | Email From | Email To | Email CC | Email BCC | Custodian |
|---|---|---|---|---|---|---|---|---|---|---|
| 13 | 00348452 | 3/14/2012 | Confidential communication from Michael Monahan to Edward Adams, prepared in anticipation of Mack and Rapello civil litigation. Also discussing litigation regarding a separate client of Adams Monahan LLP (WWEBNET). | | X | Michael Monahan <michaelrmonahan@yahoo.com> | Adams Edward <jafman1@yahoo.com> | | | Jafman1 |
| 14 | 00044962 | 3/20/2012 | Confidential communication from Edward Adams to Michael Monahan, prepared in anticipation of Mack and Rapello civil litigation. | | X | edwardsadams <edwardsadams@yahoo.com> | Michael Monahan <michaelrmonahan@yahoo.com> | | | Edward_S_Adams |
| 15 | 00445466 | 3/20/2012 | Confidential communication from Michael Monahan to Edward Adams, prepared in anticipation of Mack and Rapello civil litigation. | | X | Michael Monahan <michaelrmonahan@yahoo.com> | Edward Adams <edwardsadams@yahoo.com> | | Michael Monahan <michaelrmonahan@ yahoo.com> | Michael_Monahan |
| 16 | 00351976 00446672 (duplicate) | 4/30/2012 | Confidential communication from Michael Monahan to Edward Adams, prepared in anticipation of Mack and Rapello civil litigation. | | X | Michael Monahan <michaelrmonahan@yahoo.com> | Adams Edward <jafman1@yahoo.com> | | | Jafman1 Michael_Monahan |
| 17 | 00446772 | 5/3/2012 | Confidential communication from Michael Monahan to himself, forwarding a February 14, 2017 email from Edward Adams to Michael Monahan, prepared in anticipation of Mack and Rapello civil litigation. | | X | Michael Monahan <michaelrmonahan@yahoo.com> | Michael Monahan <michaelrmonahan@yahoo.com> | | | Michael_Monahan |
| 18 | 00447095 | 5/8/2012 | Confidential communication from Michael Monahan to Aaron Hartman copying Edward Adams for the purpose of obtaining legal advice regarding Mack and Rapello civil litigation. | X | X | Michael Monahan <michaelrmonahan@yahoo.com> | Aaron R. Hartman <AHartman@aoblaw.com> | Edward Adams <edwardsadams@yahoo.co m> | Michael Monahan <michaelrmonahan@ yahoo.com> | Michael_Monahan |
| 19 | 00447097 | 5/9/2012 | Confidential communication from Michael Monahan to Aaron Hartman copying Edward Adams for the purpose of obtaining legal advice regarding Mack and Rapello civil litigation. | X | X | Michael Monahan <michaelrmonahan@yahoo.com> | Aaron R. Hartman <AHartman@aoblaw.com> | edwardsadams@yahoo.com <edwardsadams@yahoo.co m> | Michael Monahan <michaelrmonahan@ yahoo.com> | Michael_Monahan |
| 20 | 00447099 | 5/9/2012 | Confidential communication from Aaron Hartman to Michael Monahan copying Edward Adams for the purpose of obtaining legal advice regarding Mack and Rapello civil litigation. | X | X | Aaron R. Hartman <AHartman@aoblaw.com> | Michael Monahan <michaelrmonahan@yahoo.com> | edwardsadams@yahoo.com <edwardsadams@yahoo.co m> | | Michael_Monahan |
| 21 | 00048044 00447125 (duplicate) | 5/10/2012 | Confidential communication from Edward Adams to Aaron Hartman and Michael Monahan for the purpose of obtaining legal advice regarding Mack and Rapello civil litigation. | X | X | edwardsadams <edwardsadams@yahoo.com> | Michael Monahan <michaelrmonahan@yahoo.com>; Aaron R. Hartman <AHartman@aoblaw.com> | | | Edward_S_Adams Michael_Monahan |
| 22 | 00048045 | 5/10/2012 | Confidential communication from Edward Adams to Aaron Hartman for the purpose of obtaining legal advice regarding Mack and Rapello civil litigation. | X | X | edwardsadams <edwardsadams@yahoo.com> | Aaron R. Hartman <AHartman@aoblaw.com> | | | Edward_S_Adams |

| Row | Doc ID Beg | Date | Description | Attorney Client Privilege | Attorney Work Product | Email From | Email To | Email CC | Email BCC | Custodian |
|---|---|---|---|---|---|---|---|---|---|---|
| 23 | 00447124 | 5/10/2012 | Confidential communication from Michael Monahan to Aaron Hartman copying Edward Adams for the purpose of obtaining legal advice regarding Mack and Rapello civil litigation. | X | X | Michael Monahan <michaelrmonahan@yahoo.com> | Aaron Hartman <AHartman@aoblaw.com> | Edward Adams <edwardsadams@yahoo.com> | | Michael_Monahan |
| 24 | 00447126 | 5/10/2012 | Confidential communication from Aaron Hartman to Michael Monahan copying Edward Adams for the purpose of obtaining legal advice regarding Mack and Rapello civil litigation. | X | X | Aaron R. Hartman <AHartman@aoblaw.com> | Michael Monahan <michaelrmonahan@yahoo.com> | Edward Adams <edwardsadams@yahoo.com> | | Michael_Monahan |
| 25 | 00447128 | 5/10/2012 | Confidential communication from Michael Monahan to Aaron Hartman and Edward Adams for the purpose of obtaining legal advice regarding Mack and Rapello civil litigation. | X | X | Michael Monahan <michaelrmonahan@yahoo.com> | edwardsadams@yahoo.com <edwardsadams@yahoo.com>; Aaron Hartman <AHartman@aoblaw.com> | | | Michael_Monahan |
| 26 | 00447130 | 5/10/2012 | Confidential communication from Aaron Hartman to Michael Monahan and Edward Adams for the purpose of obtaining legal advice regarding Mack and Rapello civil litigation. | X | X | Aaron R. Hartman <AHartman@aoblaw.com> | Michael Monahan <michaelrmonahan@yahoo.com>; edwardsadams@yahoo.com <edwardsadams@yahoo.com> | | | Michael_Monahan |
| 27 | 00447133<br>00447134 (attachment)<br>00447144 (attachment)<br>00447147 (attachment)<br>00447150 (attachment)<br>00447153 (attachment) | 5/10/2012 | Confidential communication with draft document attachments from Aaron Hartman to Michael Monahan and Edward Adams for the purpose of obtaining legal advice regarding Mack and Rapello civil litigation. | X | X | Aaron R. Hartman <AHartman@aoblaw.com> | Michael Monahan (michaelrmonahan@yahoo.com) <michaelrmonahan@yahoo.com>; Edward Adams (edwardsadams@yahoo.com) <edwardsadams@yahoo.com> | | | Michael_Monahan |
| 28 | 00447156<br>00447157 (attachment)<br>00447160 (attachment)<br>00447169 (attachment)<br>00447172 (attachment)<br>00447175 (attachment) | 5/10/2012 | Confidential communication with draft document attachments from Aaron Hartman to Michael Monahan and Edward Adams for the purpose of obtaining legal advice regarding Mack and Rapello civil litigation. | X | X | Aaron R. Hartman <AHartman@aoblaw.com> | Edward Adams (edwardsadams@yahoo.com) <edwardsadams@yahoo.com>; Michael Monahan (michaelrmonahan@yahoo.com) <michaelrmonahan@yahoo.com> | | | Michael_Monahan |
| 29 | 00447178<br>00447179 (attachment)<br>00447189 (attachment)<br>00447192 (attachment)<br>00447195 (attachment)<br>00447198 (attachment) | 5/10/2012 | Confidential communication with draft document attachments from Aaron Hartman to Michael Monahan and Edward Adams for the purpose of obtaining legal advice regarding Mack and Rapello civil litigation. | X | X | Aaron R. Hartman <AHartman@aoblaw.com> | Edward Adams (edwardsadams@yahoo.com) <edwardsadams@yahoo.com>; Michael Monahan (michaelrmonahan@yahoo.com) <michaelrmonahan@yahoo.com> | | | Michael_Monahan |
| 30 | 00048048 | 5/11/2012 | Confidential communication from Edward Adams to Aaron Hartman and Michael Monahan for the purpose of obtaining legal advice regarding Mack and Rapello civil litigation. | X | X | Edward Adams <edwardsadams@yahoo.com> | Aaron R. Hartman <AHartman@aoblaw.com>; Michael Monahan (michaelrmonahan@yahoo.com) <michaelrmonahan@yahoo.com> | | | Edward_S_Adams |
| 31 | 00048051 | 5/11/2012 | Confidential communication from Edward Adams to litigation communications consultant regarding Mack and Rapello civil litigation. | X | X | edwardsadams <edwardsadams@yahoo.com> | Stacey Bettison <Stacy@Bettison.com> | | | Edward_S_Adams |

Revised Privilege Log of Documents Viewed by Government in "For Review" Folder

E. Adams Personal Attorney-Client Privilege or Attorney Work Product Protection

| Row | Doc ID Beg | Date | Description | Attorney Client Privilege | Attorney Work Product | Email From | Email To | Email CC | Email BCC | Custodian |
|---|---|---|---|---|---|---|---|---|---|---|
| 32 | 00447204 | 5/11/2012 | Confidential communication from Michael Monahan to Aaron Hartman and Edward Adams for the purpose of obtaining legal advice regarding Mack and Rapello civil litigation. | X | X | Michael Monahan <michaelrmonahan@yahoo.com> | Aaron R. Hartman <AHartman@aoblaw.com>; Edward Adams (edwardsadams@yahoo.com) <edwardsadams@yahoo.com> | | | Michael_Monahan |
| 33 | 00447206 | 5/11/2012 | Confidential communication from Aaron Hartman to Michael Monahan for the purpose of obtaining legal advice regarding Mack and Rapello civil litigation, in response to (and including) prior communications between Michael Monahan, Aaron Hartman, and Edward Adams. | X | X | Aaron R. Hartman <AHartman@aoblaw.com> | Michael Monahan <michaelrmonahan@yahoo.com> | | | Michael_Monahan |
| 34 | 00447208 00447210 (duplicate) | 5/11/2012 | Confidential communication from Michael Monahan to Aaron Hartman for the purpose of obtaining legal advice regarding Mack and Rapello civil litigation, in response to (and including) prior communications between Michael Monahan, Aaron Hartman, and Edward Adams. | X | X | Michael Monahan <michaelrmonahan@yahoo.com> | Aaron R. Hartman <AHartman@aoblaw.com> | | Michael Monahan <michaelrmonahan@yahoo.com> | Michael_Monahan |
| 35 | 00447212 | 5/11/2012 | Confidential communication from Aaron Hartman to Michael Monahan for the purpose of obtaining legal advice regarding Mack and Rapello civil litigation, in response to (and including) prior communications between Michael Monahan, Aaron Hartman, and Edward Adams. | X | X | Aaron R. Hartman <AHartman@aoblaw.com> | Michael Monahan <michaelrmonahan@yahoo.com> | | | Michael_Monahan |
| 36 | 00447215 00447218 (duplicate) | 5/11/2012 | Confidential communication from Michael Monahan to Aaron Hartman for the purpose of obtaining legal advice regarding Mack and Rapello civil litigation, in response to (and including) prior communications between Michael Monahan, Aaron Hartman, and Edward Adams. | X | X | Michael Monahan <michaelrmonahan@yahoo.com> | Aaron R. Hartman <AHartman@aoblaw.com> | | Michael Monahan <michaelrmonahan@yahoo.com> | Michael_Monahan |
| 37 | 00048049 | 5/11/2012 | Confidential communication from Edward Adams to Aaron Hartman for the purpose of obtaining legal advice regarding Mack and Rapello civil litigation | X | X | edwardsadams <edwardsadams@yahoo.com> | AHartman@aoblaw.com <AHartman@aoblaw.com> | | | Edward_S_Adams |
| 38 | 00447294 | 5/11/2012 | Confidential communication from Aaron Hartman to Michael Monahan for the purpose of obtaining legal advice regarding Mack and Rapello civil litigation. | X | X | Aaron R. Hartman <AHartman@aoblaw.com> | michaelrmonahan@yahoo.com <michaelrmonahan@yahoo.com> | | | Michael_Monahan |

| Row | Doc ID Beg | Date | Description | Attorney Client Privilege | Attorney Work Product | Email From | Email To | Email CC | Email BCC | Custodian |
|-----|-----------|------|-------------|---------------------------|----------------------|-----------|----------|----------|-----------|-----------|
| 39 | 00447318 00447320 (attachment) 00447329 (attachment) 00447332 (attachment) 00447335 (attachment) 00447338 (attachment) 00447341 (attachment) 00447342 (attachment) | 5/11/2012 | Confidential communication with draft document attachments from Michael Monahan to Josh Reilly, forwarding communication from Aaron Hartman to Michael Monahan, regarding Mack and Rapello civil litigation. | X | X | Michael Monahan <michaelrmonahan@yahoo.com> | Josh Reilly <reill097@umn.edu> | | | Michael_Monahan |
| 40 | 00048270 | 5/17/2012 | Confidential communication from Edward Adams to Aaron Hartman and Michael Monahan for the purpose of obtaining legal advice regarding Mack and Rapello civil litigation. | X | X | edwardsadams <edwardsadams@yahoo.com> | AHartman@aoblaw.com <AHartman@aoblaw.com>; Michael Monahan <michaelrmonahan@yahoo.com> | | | Edward_S_Adams |
| 41 | 00051841 | 7/19/2012 | Confidential communication from Edward Adams to Aaron Hartman and Michael Monahan, made for the purpose of obtaining legal advice in anticipation of civil litigation involving certain Apollo investors (Fink litigation). | X | X | Edward Adams <edwardsadams@yahoo.com> | Aaron R. Hartman <AHartman@aoblaw.com>; Michael Monahan <michaelrmonahan@yahoo.com> | | | Edward_S_Adams |
| 42 | 00051875 00051878 (attachment) | 7/20/2012 | Confidential communication with attachment from Edward Adams to Aaron Hartman, made for the purpose of obtaining legal advice in anticipation of civil litigation involving certain Apollo investors (Fink litigation). | X | X | Edward Adams <edwardsadams@yahoo.com> | Aaron R. Hartman <AHartman@aoblaw.com> | | | Edward_S_Adams |
| 43 | 00356085 | 8/1/2012 | Confidential communication from Michael Monahan to Edward Adams, made in anticipation of civil litigation involving certain Apollo investors (Fink litigation). | | X | Michael Monahan <michaelrmonahan@yahoo.com> | Adams Edward <jafman1@yahoo.com> | | | Jafman1 |
| 44 | 00052601 (attachment) 00450205 (duplicate) | 8/4/2012 | Attachment to confidential communication from Edward Adams to Gregory Spitzer (Paul Hastings LLP) copying Michael Monahan, for the purpose of obtaining legal advice in anticipation of civil litigation involving certain Apollo investors (Fink litigation). | X | X | Edward Adams <edwardsadams@yahoo.com> | Gregory E. Spitzer <gregoryspitzer@paulhastings.com> | Michael Monahan <michaelrmonahan@yahoo.com> | | Edward_S_Adams Michael_Monahan |
| 45 | 00052610 00052611 (attachment) | 8/4/2012 | Confidential communication with draft document attachment from Edward Adams to Gregory Spitzer (Paul Hastings LLP) and Michael Monahan, for the purpose of obtaining legal advice, made in anticipation of civil litigation involving certain Apollo investors (Fink litigation). | X | X | Edward Adams <edwardsadams@yahoo.com> | Michael Monahan <michaelrmonahan@yahoo.com>; Gregory E. Spitzer <gregoryspitzer@paulhastings.com> | | | Edward_S_Adams |

U.S. v. Adams

Revised Privilege Log of Documents Viewed by Government in "For Review" Folder
E. Adams Personal Attorney-Client Privilege or Attorney Work Product Protection

5/15/2018

| Row | Doc ID Beg | Date | Description | Attorney Client Privilege | Attorney Work Product | Email From | Email To | Email CC | Email BCC | Custodian |
|---|---|---|---|---|---|---|---|---|---|---|
| 46 | 00052615 00052616 (attachment) | 8/5/2012 | Confidential communication with draft document attachment from Edward Adams to Michael Monahan, copying Gregory Spitzer (Paul Hastings LLP), for the purpose of obtaining legal advice, made in anticipation of civil litigation involving certain Apollo investors (Fink litigation). | X | X | Edward Adams <edwardsadams@yahoo.com> | Michael Monahan <michaelrmonahan@yahoo.com> | Gregory E. Spitzer <gregoryspitzer@paulhastings.com> | | Edward_S_Adams |
| 47 | 00052950 | 8/13/2012 | Confidential communication from Edward Adams to Joseph Lancia and Cory Manning (Nelson Mullins LLP) copying Charles Nichols and John Jennings for the purpose of obtaining legal advice in connection with civil litigation involving certain Apollo investors (Fink litigation). | X | X | edwardsadams <edwardsadams@yahoo.com> | Joseph Lancia <jlancia@sciodiamond.com>; cory.manning@nelsonmullins.com <cory.manning@nelsonmullins.com> | CNichols@sciodiamond.com <CNichols@sciodiamond.com>; John.Jennings@nelsonmullins.com <John.Jennings@nelsonmullins.com> | | Edward_S_Adams |
| 48 | 00052955 | 8/13/2012 | Confidential communication from Edward Adams to Joseph Lancia and Cory Manning (Nelson Mullins LLP) copying Charles Nichols and John Jennings, for the purpose of obtaining legal advice in connection with civil litigation involving certain Apollo investors (Fink litigation). | X | X | edwardsadams <edwardsadams@yahoo.com> | cory.manning@nelsonmullins.com <cory.manning@nelsonmullins.com>; Joseph Lancia <jlancia@sciodiamond.com> | CNichols@sciodiamond.com <CNichols@sciodiamond.com>; John.Jennings@nelsonmullins.com <John.Jennings@nelsonmullins.com> | | Edward_S_Adams |
| 49 | 00052960 | 8/13/2012 | Confidential communication from Edward Adams to Cory Manning (Nelson Mullins LLP) for the purpose of obtaining legal advice in connection with civil litigation involving certain Apollo investors (Fink litigation). | X | X | edwardsadams <edwardsadams@yahoo.com> | cory.manning@nelsonmullins.com <cory.manning@nelsonmullins.com> | | | Edward_S_Adams |
| 50 | 00052965 | 8/13/2012 | Confidential communication from Edward Adams to Cory Manning (Nelson Mullins LLP) for the purpose of obtaining legal advice in connection with civil litigation involving certain Apollo investors (Fink litigation). | X | X | edwardsadams <edwardsadams@yahoo.com> | cory.manning@nelsonmullins.com <cory.manning@nelsonmullins.com> | | | Edward_S_Adams |
| 51 | 00052971 | 8/13/2012 | Confidential communication from Edward Adams to Cory Manning (Nelson Mullins LLP) for the purpose of obtaining legal advice in connection with civil litigation involving certain Apollo investors (Fink litigation). | X | X | edwardsadams <edwardsadams@yahoo.com> | cory.manning@nelsonmullins.com <cory.manning@nelsonmullins.com> | | | Edward_S_Adams |
| 52 | 00052977 | 8/13/2012 | Confidential communication from Edward Adams to Cory Manning (Nelson Mullins LLP) for the purpose of obtaining legal advice in connection with civil litigation involving certain Apollo investors (Fink litigation). | X | X | edwardsadams <edwardsadams@yahoo.com> | cory.manning@nelsonmullins.com <cory.manning@nelsonmullins.com> | | | Edward_S_Adams |

Revised Privilege Log of Documents Viewed by Government in "For Review" Folder
E. Adams Personal Attorney-Client Privilege or Attorney Work Product Protection

| Row | Doc ID Beg | Date | Description | Attorney Client Privilege | Attorney Work Product | Email From | Email To | Email CC | Email BCC | Custodian |
|---|---|---|---|---|---|---|---|---|---|---|
| 53 | 00052992 | 8/14/2012 | Confidential communication from Edward Adams to Cory Manning (Nelson Mullins LLP) for the purpose of obtaining legal advice in connection with civil litigation involving certain Apollo investors (Fink litigation). | X | X | edwardsadams <edwardsadams@yahoo.com> | cory.manning@nelsonmullins.com <cory.manning@nelsonmullins.com> | | | Edward_S_Adams |
| 54 | 00053002 | 8/14/2012 | Confidential communication from Edward Adams to Cory Manning (Nelson Mullins LLP) for the purpose of obtaining legal advice in connection with civil litigation involving certain Apollo investors (Fink litigation). | X | X | edwardsadams <edwardsadams@yahoo.com> | cory.manning@nelsonmullins.com <cory.manning@nelsonmullins.com> | | | Edward_S_Adams |
| 55 | 00053012 | 8/14/2012 | Confidential communication from Edward Adams to Cory Manning (Nelson Mullins LLP) for the purpose of obtaining legal advice in connection with civil litigation involving certain Apollo investors (Fink litigation). | X | X | edwardsadams <edwardsadams@yahoo.com> | cory.manning@nelsonmullins.com <cory.manning@nelsonmullins.com> | | | Edward_S_Adams |
| 56 | 00053016 | 8/15/2012 | Confidential communication from Edward Adams to Michael Monahan, forwarding message from Cory Manning (Nelson Mullins LLP) for the purpose of obtaining legal advice in connection with civil litigation involving certain Apollo investors (Fink litigation). | X | X | edwardsadams <edwardsadams@yahoo.com> | Michael Monahan <michaelrmonahan@yahoo.com> | | | Edward_S_Adams |
| 57 | 00053020 | 8/15/2012 | Confidential communication from Edward Adams to Cory Manning (Nelson Mullins LLP), and Joe Lancia, for the purpose of obtaining legal advice in connection with civil litigation involving certain Apollo investors (Fink litigation). | X | X | edwardsadams <edwardsadams@yahoo.com> | cory.manning@nelsonmullins.com <cory.manning@nelsonmullins.com>; Joseph Lancia <jlancia@sciodiamond.com> | | | Edward_S_Adams |
| 58 | 00053024 | 8/15/2012 | Confidential communication from Edward Adams to John Jennings (Nelson Mullins LLP) for the purpose of obtaining legal advice in connection with civil litigation involving certain Apollo investors (Fink litigation). | X | X | edwardsadams <edwardsadams@yahoo.com> | John.Jennings@nelsonmullins.com <John.Jennings@nelsonmullins.com> | | | Edward_S_Adams |
| 59 | 00053031 | 8/15/2012 | Confidential communication from Edward Adams to Cory Manning (Nelson Mullins LLP) and Joe Lancia, copying Aaron Hartman and Michael Monahan, for the purpose of obtaining legal advice in connection with civil litigation involving certain Apollo investors (Fink litigation). | X | X | edwardsadams <edwardsadams@yahoo.com> | cory.manning@nelsonmullins.com <cory.manning@nelsonmullins.com>; Joseph Lancia <jlancia@sciodiamond.com> | AHartman@aoblaw.com <AHartman@aoblaw.com>; Michael Monahan <michaelrmonahan@yahoo.com> | | Edward_S_Adams |

Revised Privilege Log of Documents Viewed by Government in "For Review" Folder
E. Adams Personal Attorney-Client Privilege or Attorney Work Product Protection

| Row | Doc ID Beg | Date | Description | Attorney Client Privilege | Attorney Work Product | Email From | Email To | Email CC | Email BCC | Custodian |
|---|---|---|---|---|---|---|---|---|---|---|
| 60 | 00053035 | 8/15/2012 | Confidential communication from Edward Adams to Joseph Lancia and Cory Manning (Nelson Mullins LLP), copying Aaron Hartman and Michael Monahan, for the purpose of obtaining legal advice in connection with civil litigation involving certain Apollo investors (Fink litigation). | X | X | edwardsadams <edwardsadams@yahoo.com> | Joseph Lancia <jlancia@sciodiamond.com>; cory.manning@nelsonmullins.com <cory.manning@nelsonmullins.com> | AHartman@aoblaw.com <AHartman@aoblaw.com>; Michael Monahan <michaelrmonahan@yahoo.com> | | Edward_S_Adams |
| 61 | 00053050 | 8/15/2012 | Confidential communication from Edward Adams to Cory Manning (Nelson Mullins LLP) for the purpose of obtaining legal advice in connection with civil litigation involving certain Apollo investors (Fink litigation). | X | X | edwardsadams <edwardsadams@yahoo.com> | cory.manning@nelsonmullins.com <cory.manning@nelsonmullins.com> | | | Edward_S_Adams |
| 62 | 00053069 | 8/16/2012 | Confidential communication from Edward Adams to Cory Manning (Nelson Mullins LLP) for the purpose of obtaining legal advice in connection with civil litigation involving certain Apollo investors (Fink litigation). | X | X | Edward Adams <edwardsadams@yahoo.com> | Cory Manning <Cory.Manning@nelsonmullins.com> | | | Edward_S_Adams |
| 63 | 00053104 00450443 (duplicate) | 8/18/2012 | Confidential communication from Edward Adams to Josh Reilly copying Michael Monahan requesting documents for use in litigation involving certain Apollo investors (Fink litigation). | | X | Edward Adams <edwardsadams@yahoo.com> | Josh Reilly <reill097@umn.edu> | Michael Monahan <michaelrmonahan@yahoo.com> | | Edward_S_Adams Michael_Monahan |
| 64 | 00053113 00450445 (duplicate) | 8/18/2012 | Confidential communication from Edward Adams to Josh Reilly and Michael Monahan requesting documents for use in litigation involving certain Apollo investors (Fink litigation). | | X | edwardsadams <edwardsadams@yahoo.com> | Josh Reilly <reill097@umn.edu>; Michael Monahan <michaelrmonahan@yahoo.com> | | | Edward_S_Adams Michael_Monahan |
| 65 | 00076647 | 12/22/2012 | Confidential communication from Josh Reilly to Edward Adams and Michael Monahan, providing requested documents for use in anticipated litigation against Nelson Mullins LLP. | | X | reill097 <reill097@umn.edu> | edwardsadams <edwardsadams@yahoo.com>; michaelrmonahan <michaelrmonahan@yahoo.com> | | | Edward_S_Adams |
| 66 | 00076649 | 12/22/2012 | Confidential communication from Josh Reilly to Edward Adams and Michael Monahan, providing requested documents for use in anticipated litigation against Nelson Mullins LLP. | | X | reill097 <reill097@umn.edu> | michaelrmonahan <michaelrmonahan@yahoo.com>; edwardsadams <edwardsadams@yahoo.com> | | | Edward_S_Adams |
| 67 | 00076651 | 12/22/2012 | Confidential communication from Edward Adams to Josh Reilly and Michael Monahan, made in anticipation of litigation against Nelson Mullins LLP and regarding requested documents for use in anticipated litigation. | | X | edwardsadams <edwardsadams@yahoo.com> | Josh Reilly <reill097@umn.edu>; Michael Monahan <michaelrmonahan@yahoo.com> | | | Edward_S_Adams |

*U.S. v. Adams*                     Revised Privilege Log of Documents Viewed by Government in "For Review" Folder                     *5/15/2018*
E. Adams Personal Attorney-Client Privilege or Attorney Work Product Protection

| Row | Doc ID Beg | Date | Description | Attorney Client Privilege | Attorney Work Product | Email From | Email To | Email CC | Email BCC | Custodian |
|---|---|---|---|---|---|---|---|---|---|---|
| 68 | 00076653 | 12/22/2012 | Confidential communication from Edward Adams to Josh Reilly, made in anticipation of litigation against Nelson Mullins LLP and regarding requested documents for use in anticipated litigation. | | X | edwardsadams <edwardsadams@yahoo.com> | Josh Reilly <reill097@umn.edu> | | | Edward_S_Adams |
| 69 | 00076655 | 12/22/2012 | Confidential communication from Edward Adams to Gregory Spitzer (Paul Hastings LLP) for the purpose of obtaining legal advice in connection with potential litigation against Nelson Mullins LLP. | X | X | Edward Adams <edwardsadams@yahoo.com> | Gregory E. Spitzer <gregoryspitzer@paulhastings.com> | | | Edward_S_Adams |
| 70 | 00076664 00454458 (duplicate) | 12/22/2012 | Confidential communication from Edward Adams to Jim Evangelista (Harris Penn Lowry), copying Michael Monahan, for the purpose of obtaining legal advice in connection with potential litigation against Nelson Mullins LLP. | X | X | Edward Adams <edwardsadams@yahoo.com> | Jim Evangelista <jim@hpllegal.com> | Michael Monahan <michaelrmonahan@yahoo.com> | | Edward_S_Adams Michael_Monahan |
| 71 | 00076669 00454462 (duplicate) | 12/22/2012 | Confidential communication from Michael Monahan to Edward Adams, made in anticipation of litigation against Nelson Mullins LLP. | X | X | Michael Monahan <michaelrmonahan@yahoo.com> | edwardsadams@yahoo.com <edwardsadams@yahoo.com> | | | Edward_S_Adams Michael_Monahan |
| 72 | 00076672 | 12/22/2012 | Confidential communication from Edward Adams to Michael Monahan, made in anticipation of litigation against Nelson Mullins LLP. | X | X | edwardsadams <edwardsadams@yahoo.com> | Michael Monahan <michaelrmonahan@yahoo.com> | | | Edward_S_Adams |
| 73 | 00076675 00454465 (duplicate) | 12/22/2012 | Confidential communication from Michael Monahan to Edward Adams, made in anticipation of litigation against Nelson Mullins LLP. | X | X | Michael Monahan <michaelrmonahan@yahoo.com> | edwardsadams@yahoo.com <edwardsadams@yahoo.com> | | | Edward_S_Adams Michael_Monahan |
| 74 | 00076681 | 12/22/2012 | Confidential communication from Gregory Spitzer (Paul Hastings LLP) to Edward Adams, for the purpose of obtaining legal advice and made in anticipation of litigation against Nelson Mullins LLP. | X | X | Spitzer, Gregory E. <gregoryspitzer@Paulhastings.com> | edwardsadams <edwardsadams@yahoo.com> | | | Edward_S_Adams |
| 75 | 00076691 00454480 (duplicate) | 12/22/2012 | Confidential communication from Jim Evangelista (Harris Penn Lowry) to Edward Adams, copying Michael Monahan, for the purpose of obtaining legal advice in connection with potential litigation against Nelson Mullins LLP. | X | X | Jim Evangelista <Jim@hpllegal.com> | Edward Adams <edwardsadams@yahoo.com> | Michael Monahan <michaelrmonahan@yahoo.com> | | Edward_S_Adams Michael_Monahan |
| 76 | 00076698 00454487 (duplicate) | 12/22/2012 | Confidential communication from Michael Monahan to Josh Reilly and Edward Adams, made in anticipation of litigation against Nelson Mullins LLP and regarding requested documents for use in anticipated litigation. | X | X | Michael Monahan <michaelrmonahan@yahoo.com> | reill097@umn.edu <reill097@umn.edu>; edwardsadams@yahoo.com <edwardsadams@yahoo.com> | | | Edward_S_Adams Michael_Monahan |
| 77 | 00076701 00454490 (duplicate) | 12/22/2012 | Confidential communication from Josh Reilly to Edward Adams copying Michael Monahan, providing requested documents for use in anticipated litigation against Nelson Mullins LLP. | | X | reill097 <reill097@umn.edu> | edwardsadams <edwardsadams@yahoo.com> | michaelrmonahan <michaelrmonahan@yahoo.com> | | Edward_S_Adams Michael_Monahan |

| Row | Doc ID Beg | Date | Description | Attorney Client Privilege | Attorney Work Product | Email From | Email To | Email CC | Email BCC | Custodian |
|---|---|---|---|---|---|---|---|---|---|---|
| 78 | 00076705 | 12/22/2012 | Confidential communication from Josh Reilly to Michael Monahan, copying Edward Adams, providing requested documents for use in anticipated litigation against Nelson Mullins LLP. | | X | reill097 <reill097@umn.edu> | michaelrmonahan <michaelrmonahan@yahoo.com> | edwardsadams <edwardsadams@yahoo.com> | | Edward_S_Adams |
| 79 | 00076711 00454502 (duplicate) | 12/22/2012 | Confidential communication from Josh Reilly to Edward Adams and Michael Monahan, providing requested documents for use in anticipated litigation against Nelson Mullins LLP. | | X | reill097 <reill097@umn.edu> | michaelrmonahan <michaelrmonahan@yahoo.com>; edwardsadams <edwardsadams@yahoo.com> | | | Edward_S_Adams Michael_Monahan |
| 80 | 00076722 00454513 (duplicate) | 12/22/2012 | Confidential communication from Josh Reilly to Edward Adams and Michael Monahan, providing requested documents for use in anticipated litigation against Nelson Mullins LLP. | | X | reill097 <reill097@umn.edu> | michaelrmonahan <michaelrmonahan@yahoo.com>; edwardsadams <edwardsadams@yahoo.com> | | | Edward_S_Adams Michael_Monahan |
| 81 | 00454446 | 12/22/2012 | Confidential communication from Josh Reilly to Edward Adams and Michael Monahan, providing requested documents for use in anticipated litigation against Nelson Mullins LLP. | | X | reill097 <reill097@umn.edu> | edwardsadams <edwardsadams@yahoo.com>; michaelrmonahan <michaelrmonahan@yahoo.com> | | | Michael_Monahan |
| 82 | 00454448 | 12/22/2012 | Confidential communication from Josh Reilly to Edward Adams and Michael Monahan, providing requested documents for use in anticipated litigation against Nelson Mullins LLP. | | X | reill097 <reill097@umn.edu> | michaelrmonahan <michaelrmonahan@yahoo.com>; edwardsadams <edwardsadams@yahoo.com> | | | Michael_Monahan |
| 83 | 00454450 | 12/22/2012 | Confidential communication from Edward Adams to Josh Reilly and Michael Monahan, made in anticipation of litigation against Nelson Mullins LLP and regarding requested documents for use in anticipated litigation. | | X | edwardsadams <edwardsadams@yahoo.com> | Josh Reilly <reill097@umn.edu>; Michael Monahan <michaelrmonahan@yahoo.com> | | | Michael_Monahan |
| 84 | 00076749 00454522 (duplicate) | 12/23/2012 | Confidential communication from Edward Adams to Josh Reilly and Michael Monahan, made in anticipation of litigation against Nelson Mullins LLP and regarding requested documents for use in anticipated litigation. | | X | edwardsadams <edwardsadams@yahoo.com> | Josh Reilly <reill097@umn.edu>; Michael Monahan <michaelrmonahan@yahoo.com> | | | Edward_S_Adams Michael_Monahan |
| 85 | 00076770 00454529 (duplicate) | 12/23/2012 | Confidential communication from Josh Reilly to Edward Adams and Michael Monahan, made in anticipation of litigation against Nelson Mullins LLP and regarding requested documents for use in anticipated litigation. | | X | reill097 <reill097@umn.edu> | michaelrmonahan <michaelrmonahan@yahoo.com>; edwardsadams <edwardsadams@yahoo.com> | | | Edward_S_Adams Michael_Monahan |

*U.S. v. Adams*

Revised Privilege Log of Documents Viewed by Government in "For Review" Folder
E. Adams Personal Attorney-Client Privilege or Attorney Work Product Protection

*5/15/2018*

| Row | Doc ID Beg | Date | Description | Attorney Client Privilege | Attorney Work Product | Email From | Email To | Email CC | Email BCC | Custodian |
|---|---|---|---|---|---|---|---|---|---|---|
| 86 | 00076919 | 12/26/2012 | Confidential communication from Edward Adams to himself, forwarding himself confidential communication from Josh Reilly to Edward Adams and Michael Monahan, made in anticipation of litigation against Nelson Mullins LLP and regarding requested documents for use in anticipated litigation. | | X | Edward Adams <edwardsadams@yahoo.com> | Edward Adams <edwardsadams@yahoo.com> | | | Edward_S_Adams |
| 87 | 00076961 | 12/26/2012 | Confidential communication from Josh Reilly to Edward Adams and Michael Monahan, made in anticipation of litigation against Nelson Mullins LLP and regarding requested documents for use in anticipated litigation. | | X | reill097 <reill097@umn.edu> | edwardsadams <edwardsadams@yahoo.com>; michaelrmonahan <michaelrmonahan@yahoo.com> | | | Edward_S_Adams |
| 88 | 00077430 | 12/27/2012 | Confidential communication from Edward Adams to Josh Reilly, made in anticipation of litigation against Nelson Mullins LLP and regarding requested documents for use in anticipated litigation. | | X | edwardsadams <edwardsadams@yahoo.com> | Josh Reilly <reill097@umn.edu> | | | Edward_S_Adams |
| 89 | 00077431 | 12/27/2012 | Confidential communication from Edward Adams to Josh Reilly, made in anticipation of litigation against Nelson Mullins LLP and regarding requested documents for use in anticipated litigation. | | X | edwardsadams <edwardsadams@yahoo.com> | Josh Reilly <reill097@umn.edu> | | | Edward_S_Adams |
| 90 | 00086172 | 2/16/2013 | Confidential communication from Edward Adams to Josh Reilly and Michael Monahan, made in anticipation of litigation against Nelson Mullins LLP and regarding requested documents for use in anticipated litigation. | | X | edwardsadams <edwardsadams@yahoo.com> | Josh Reilly <reill097@umn.edu>; Michael Monahan <michaelrmonahan@yahoo.com> | | | Edward_S_Adams |
| 91 | 00086276 (attachment) 00086278 (attachment) 00457334 (duplicate) 00457336 (duplicate) | 2/19/2013 | Attachments to confidential communication from Michael Monahan to Edward Adams, made in anticipation of litigation against Nelson Mullins LLP, and regarding requested documents for use in anticipated litigation | | X | Michael Monahan <michaelrmonahan@yahoo.com> | Michael Monahan <michaelrmonahan@yahoo.com>; edwardsadams@yahoo.com <edwardsadams@yahoo.com> | | | Edward_S_Adams Michael_Monahan |
| 92 | 00129691 00470958 (duplicate) 00480960 (duplicate) | 5/30/2013 | Confidential communication from Michael Monahan to Edward Adams, made in anticipation of civil litigation against Bernard McPheely. | | X | Michael Monahan <michaelrmonahan@yahoo.com> | Ed Adams <edwardsadams@yahoo.com> | | | Edward_S_Adams Michael_Monahan |
| 93 | 00129693 00470962 (duplicate) | 5/30/2013 | Confidential communication from Edward Adams to Michael Monahan, made in anticipation of civil litigation against Bernard McPheely. | | X | Edward Adams <edwardsadams@yahoo.com> | Michael Monahan <michaelrmonahan@yahoo.com> | | | Edward_S_Adams Michael_Monahan |
| 94 | 00129707 00470964 (duplicate) | 5/30/2013 | Confidential communication from Edward Adams to Michael Monahan, made in anticipation of civil litigation against Bernard McPheely. | | X | Edward Adams <edwardsadams@yahoo.com> | Michael Monahan <michaelrmonahan@yahoo.com> | | | Edward_S_Adams Michael_Monahan |

Revised Privilege Log of Documents Viewed by Government in "For Review" Folder
E. Adams Personal Attorney-Client Privilege or Attorney Work Product Protection

| Row | Doc ID Beg | Date | Description | Attorney Client Privilege | Attorney Work Product | Email From | Email To | Email CC | Email BCC | Custodian |
|---|---|---|---|---|---|---|---|---|---|---|
| 95 | 00129724 00470966 (duplicate) | 5/30/2013 | Confidential communication from Michael Monahan to Edward Adams, made in anticipation of civil litigation against Bernard McPheely. | | X | Michael Monahan <michaelrmonahan@yahoo.com> | Edward Adams <edwardsadams@yahoo.com> | | | Edward_S_Adams Michael_Monahan |
| 96 | 00129726 00470968 (duplicate) | 5/30/2013 | Confidential communication from Edward Adams to Michael Monahan, made in anticipation of civil litigation against Bernard McPheely. | | X | Edward Adams <edwardsadams@yahoo.com> | Michael Monahan <michaelrmonahan@yahoo.com> | | | Edward_S_Adams Michael_Monahan |
| 97 | 00129728 00470970 (duplicate) 00470972 (duplicate) | 5/30/2013 | Confidential communication from Michael Monahan to Edward Adams, made in anticipation of civil litigation against Bernard McPheely. | | X | Michael Monahan <michaelrmonahan@yahoo.com> | Edward Adams <edwardsadams@yahoo.com> | | | Edward_S_Adams Michael_Monahan |
| 98 | 00132931 (attachment) | 6/10/2013 | Attachment to confidential communication from Edward Adams to Gregory Spitzer (Paul Hastings LLP), for the purpose of obtaining legal advice and in anticipation of civil litigation against Bernard McPheely. | X | X | edwardsadams <edwardsadams@yahoo.com> | gregoryspitzer <gregoryspitzer@Paulhastings.com> | | | Edward_S_Adams |
| 99 | 00133308 00133309 (attachment) 00471967 (duplicate) 00471968 (duplicate) | 6/11/2013 | Confidential communication with draft outline attachment from Edward Adams to Michael Monahan, made in anticipation of litigation with Nelson Mullins LLP and Bernard McPheely. | | X | Edward Adams <edwardsadams@yahoo.com> | Michael Monahan <michaelrmonahan@yahoo.com> | | | Edward_S_Adams Michael_Monahan |
| 100 | 00210651 00210652 (attachment) | 6/18/2014 | Confidential communication from Edward Adams to himself attaching a confidential draft memorandum for the purpose of obtaining legal advice from his attorneys at Latham Watkins, and made in anticipation of litigation with the SEC and potential criminal investigation, and subsequently transmitted to James Farrell (Latham & Watkins). | X | X | Edward Adams <edwardsadams@yahoo.com> | Edward Adams <edwardsadams@yahoo.com> | | | Edward_S_Adams |
| 101 | 00224269 00224270 (attachment) | 10/28/2014 | Confidential correspondence with "ESA Tax Summary for P. Murry" Excel spreadsheet attachment from Edward Adams to Patrick Murry, copying Ashley Miller, supplying private information in an "ESA Tax Summary for P.Murry" Excel spreadsheet, conveyed to seek legal advice from Foster Brever Wehrly, PLLC. | X | | Edward Adams <edwardsadams@yahoo.com> | Patrick M. Murry <pmurry@murryllc.com> | amiller <amiller@murryllc.com> | | Edward_S_Adams |
| 102 | 00224366 | 10/29/2014 | Confidential correspondence from Edward Adams to Ashley Miller, supplying information conveyed to seek legal advice from Foster Brever Wehrly, PLLC. | X | X | edwardsadams <edwardsadams@yahoo.com> | Ashley Miller <amiller@murryllc.com> | | | Edward_S_Adams |
| 103 | 00224368 | 10/29/2014 | Confidential correspondence from Edward Adams to Ashley Miller, supplying information conveyed to seek legal advice from Foster Brever Wehrly, PLLC. | X | X | edwardsadams <edwardsadams@yahoo.com> | Ashley Miller <amiller@murryllc.com> | | | Edward_S_Adams |

Revised Privilege Log of Documents Viewed by Government in "For Review" Folder
E. Adams Personal Attorney-Client Privilege or Attorney Work Product Protection

| Row | Doc ID Beg | Date | Description | Attorney Client Privilege | Attorney Work Product | Email From | Email To | Email CC | Email BCC | Custodian |
|---|---|---|---|---|---|---|---|---|---|---|
| 104 | 00224409 | 10/29/2014 | Confidential correspondence from Ashley Miller, to Edward Adams posing questions to obtain information to facilitate legal advice from Foster Brever Wehrly, PLLC. | X | X | Ashley Miller <amiller@murryllc.com> | Edward Adams <edwardsadams@yahoo.com> | | | Edward_S_Adams |
| 105 | 00224497 | 11/4/2014 | Confidential correspondence from Edward Adams to Patrick Murry and Ashley Miller, supplying information conveyed to seek legal advice from Foster Brever Wehrly, PLLC. | X | | Edward Adams <edwardsadams@yahoo.com> | Patrick M. Murry <pmurry@murryllc.com>; amiller@murryllc.com <amiller@murryllc.com> | | | Edward_S_Adams |
| 106 | 00224725 | 11/8/2014 | Confidential correspondence from Edward Adams to Patrick Murry and Ashley Miller, supplying information conveyed to seek legal advice from Foster Brever Wehrly, PLLC. | X | | Edward Adams <edwardsadams@yahoo.com> | amiller@murryllc.com <amiller@murryllc.com> | | | Edward_S_Adams |
| 107 | 00224879 | 11/10/2014 | Confidential correspondence from Edward Adams to Patrick Murry, supplying information conveyed to seek legal advice from Foster Brever Wehrly, PLLC. | X | | Edward Adams <edwardsadams@yahoo.com> | Patrick M. Murry <pmurry@murryllc.com> | | | Edward_S_Adams |
| 108 | 00237810 (attachment) 00237827 (attachment) 00237846 (attachment) 00237851 (attachment) | 3/31/2015 | Attachments to confidential email from Tammy Scherling, legal assistant to Sally Grossman (Gray Plant Mooty), to Edward Adams, attaching confidential estate planning documentation. | X | | Scherling, Tammy K. <Tammy.Scherling@gpmlaw.com> | edwardsadams@yahoo.com <edwardsadams@yahoo.com> | | | Edward_S_Adams |
| 109 | 00247582 (attachment) 00247709 (attachment) | 7/7/2015 | Attachments to confidential email from Christopher Bellini (Cozen O'Connor) to Edward Adams, for the purpose of providing legal advice regarding securities transactions. | X | | Christopher Bellini <christopher_bellini@yahoo.com> | Ed Adams <edwardsadams@yahoo.com> | | | Edward_S_Adams |
| 110 | 00248253 (attachment) | 7/9/2015 | Attachment to confidential email from Christopher Bellini (Cozen O'Connor) to Edward Adams, for the purpose of providing legal advice regarding securities transactions. | X | | Christopher Bellini <christopher_bellini@yahoo.com> | edwardsadams@yahoo.com <edwardsadams@yahoo.com> | | | Edward_S_Adams |
| 111 | 00248668 (attachment) | 7/13/2015 | Attachment (draft communication) to confidential communication from Christopher Bellini (Cozen O'Connor) to Edward Adams for the purpose of seeking legal advice regarding securities transactions. | X | | Bellini, Christopher <CBellini@cozen.com> | Edward Adams <edwardsadams@yahoo.com> | | | Edward_S_Adams |
| 112 | 00251386 (attachment) | 8/20/2015 | Attachment (draft communication) to confidential communication from Christopher Bellini (Cozen O'Connor) to Edward Adams, for the purpose of providing legal advice regarding securities transactions. | X | | Bellini, Christopher <CBellini@cozen.com> | Edward Adams <edwardsadams@yahoo.com> | | | Edward_S_Adams |

Revised Privilege Log of Documents Viewed by Government in "For Review" Folder
E. Adams Personal Attorney-Client Privilege or Attorney Work Product Protection

| Row | Doc ID Beg | Date | Description | Attorney Client Privilege | Attorney Work Product | Email From | Email To | Email CC | Email BCC | Custodian |
|---|---|---|---|---|---|---|---|---|---|---|
| 113 | 00251633 (attachment) | 8/24/2015 | Attachment to confidential communication from Edward Adams to Christopher Bellini (Cozen O'Connor) for the purpose of seeking legal advice regarding securities transactions. | X | | Edward Adams <edwardsadams@yahoo.com> | Bellini, Christopher <CBellini@cozen.com> | | | Edward_S_Adams |
| 114 | 00252143 (attachment) | 8/28/2015 | Attachment (draft communication) to confidential communication from Christopher Bellini (Cozen O'Connor) to Edward Adams, for the purpose of providing legal advice regarding securities transactions. | X | | Bellini, Christopher <CBellini@cozen.com> | Edward Adams <edwardsadams@yahoo.com> | | | Edward_S_Adams |
| 115 | 00252265 (attachment) | 8/31/2015 | Attachment to confidential communication from Edward Adams to Christopher Bellini (Cozen O'Connor) for the purpose of seeking legal advice regarding securities transactions. | X | | Edward Adams <edwardsadams@yahoo.com> | Bellini, Christopher <CBellini@cozen.com> | | | Edward_S_Adams |
| 116 | 00252458 00252459 (attachment) | 9/1/2015 | Confidential email with draft analysis attachment from Edward Adams to himself, attaching draft analysis prepared for the purpose of obtaining legal advice from his counsel in the SEC investigation, prepared in anticipation of litigation with the SEC and criminal investigation, and subsequently transmitted to John Sikora (Latham & Watkins) and Jim Kopecky (Kopecky Schumacher Bleakley & Rosenburg, P.C.). | X | X | Edward Adams <edwardsadams@yahoo.com> | Edward Adams <jafman1@yahoo.com> | | | Edward_S_Adams |
| 117 | 00252996 (attachment) | 9/4/2015 | Attachment to confidential communication from Edward Adams to Christopher Bellini (Cozen O'Connor) for the purpose of seeking legal advice regarding securities transactions. | X | | Edward Adams <edwardsadams@yahoo.com> | Bellini, Christopher <CBellini@cozen.com> | | | Edward_S_Adams |
| 118 | 00253676 | 9/10/2015 | Confidential draft correspondence from Edward Adams to his counsel in the SEC investigation for the purpose of obtaining legal advice, made in anticipation of litigation with the SEC and criminal investigation, and subsequently transmitted to John Sikora (Latham & Watkins) and Jim Kopecky (Kopecky Schumacher Bleakley & Rosenburg, P.C.). | X | X | Edward Adams <edwardsadams@yahoo.com> | | | | Edward_S_Adams |
| 119 | 00253677 | 9/10/2015 | Confidential draft correspondence from Edward Adams to his counsel in the SEC investigation for the purpose of obtaining legal advice, made in anticipation of litigation with the SEC and criminal investigation, and subsequently transmitted to John Sikora (Latham & Watkins) and Jim Kopecky (Kopecky Schumacher Bleakley & Rosenburg, P.C.). | X | X | Edward Adams <edwardsadams@yahoo.com> | | | | Edward_S_Adams |

| Row | Doc ID Beg | Date | Description | Attorney Client Privilege | Attorney Work Product | Email From | Email To | Email CC | Email BCC | Custodian |
|---|---|---|---|---|---|---|---|---|---|---|
| 120 | 00253678 | 9/10/2015 | Confidential draft correspondence from Edward Adams to his counsel in the SEC investigation for the purpose of obtaining legal advice, made in anticipation of litigation with the SEC and criminal investigation, and subsequently transmitted to John Sikora (Latham & Watkins) and Jim Kopecky (Kopecky Schumacher Bleakley & Rosenburg, P.C). | X | X | Edward Adams <edwardsadams@yahoo.com> | | | | Edward_S_Adams |
| 121 | 00253679 | 9/10/2015 | Confidential draft correspondence from Edward Adams to his counsel in the SEC investigation for the purpose of obtaining legal advice, made in anticipation of litigation with the SEC and criminal investigation, and subsequently transmitted to John Sikora (Latham & Watkins) and Jim Kopecky (Kopecky Schumacher Bleakley & Rosenburg, P.C). | X | X | Edward Adams <edwardsadams@yahoo.com> | | | | Edward_S_Adams |
| 122 | 00253680 | 9/10/2015 | Confidential draft correspondence from Edward Adams to his counsel in the SEC investigation for the purpose of obtaining legal advice, made in anticipation of litigation with the SEC and criminal investigation, and subsequently transmitted to John Sikora (Latham & Watkins) and Jim Kopecky (Kopecky Schumacher Bleakley & Rosenburg, P.C). | X | X | Edward Adams <edwardsadams@yahoo.com> | | | | Edward_S_Adams |
| 123 | 00253681 | 9/10/2015 | Confidential draft correspondence from Edward Adams to his counsel in the SEC investigation for the purpose of obtaining legal advice, made in anticipation of litigation with the SEC and criminal investigation, and subsequently transmitted to John Sikora (Latham & Watkins) and Jim Kopecky (Kopecky Schumacher Bleakley & Rosenburg, P.C). | X | X | Edward Adams <edwardsadams@yahoo.com> | | | | Edward_S_Adams |
| 124 | 00253682 | 9/10/2015 | Confidential draft correspondence from Edward Adams to his counsel in the SEC investigation for the purpose of obtaining legal advice, made in anticipation of litigation with the SEC and criminal investigation, and subsequently transmitted to John Sikora (Latham & Watkins) and Jim Kopecky (Kopecky Schumacher Bleakley & Rosenburg, P.C). | X | X | Edward Adams <edwardsadams@yahoo.com> | | | | Edward_S_Adams |

Revised Privilege Log of Documents Viewed by Government in "For Review" Folder
E. Adams Personal Attorney-Client Privilege or Attorney Work Product Protection

| Row | Doc ID Beg | Date | Description | Attorney Client Privilege | Attorney Work Product | Email From | Email To | Email CC | Email BCC | Custodian |
|-----|-----------|------|-------------|---------------------------|-----------------------|------------|----------|----------|-----------|-----------|
| 125 | 00253683 | 9/10/2015 | Confidential draft correspondence from Edward Adams to his counsel in the SEC investigation for the purpose of obtaining legal advice, made in anticipation of litigation with the SEC and criminal investigation, and subsequently transmitted to John Sikora (Latham & Watkins) and Jim Kopecky (Kopecky Schumacher Bleakley & Rosenburg, P.C.). | X | X | Edward Adams <edwardsadams@yahoo.com> | | | | Edward_S_Adams |
| 126 | 00253684 | 9/10/2015 | Confidential draft correspondence from Edward Adams to his counsel in the SEC investigation for the purpose of obtaining legal advice, made in anticipation of litigation with the SEC and criminal investigation, and subsequently transmitted to John Sikora (Latham & Watkins) and Jim Kopecky (Kopecky Schumacher Bleakley & Rosenburg, P.C.). | X | X | Edward Adams <edwardsadams@yahoo.com> | | | | Edward_S_Adams |
| 127 | 00253685 | 9/10/2015 | Confidential draft correspondence from Edward Adams to his counsel in the SEC investigation for the purpose of obtaining legal advice, made in anticipation of litigation with the SEC and criminal investigation, and subsequently transmitted to John Sikora (Latham & Watkins) and Jim Kopecky (Kopecky Schumacher Bleakley & Rosenburg, P.C.). | X | X | Edward Adams <edwardsadams@yahoo.com> | | | | Edward_S_Adams |
| 128 | 00253686 | 9/10/2015 | Confidential draft correspondence from Edward Adams to his counsel in the SEC investigation for the purpose of obtaining legal advice, made in anticipation of litigation with the SEC and criminal investigation, and subsequently transmitted to John Sikora (Latham & Watkins) and Jim Kopecky (Kopecky Schumacher Bleakley & Rosenburg, P.C.). | X | X | Edward Adams <edwardsadams@yahoo.com> | | | | Edward_S_Adams |
| 129 | 00253687 | 9/10/2015 | Confidential draft correspondence from Edward Adams to his counsel in the SEC investigation for the purpose of obtaining legal advice, made in anticipation of litigation with the SEC and criminal investigation, and subsequently transmitted to John Sikora (Latham & Watkins) and Jim Kopecky (Kopecky Schumacher Bleakley & Rosenburg, P.C.). | X | X | Edward Adams <edwardsadams@yahoo.com> | | | | Edward_S_Adams |

Revised Privilege Log of Documents Viewed by Government in "For Review" Folder
E. Adams Personal Attorney-Client Privilege or Attorney Work Product Protection

| Row | Doc ID Beg | Date | Description | Attorney Client Privilege | Attorney Work Product | Email From | Email To | Email CC | Email BCC | Custodian |
|---|---|---|---|---|---|---|---|---|---|---|
| 130 | 00260386 (attachment) | 11/12/2015 | Attachment (draft communication) to confidential communication from Christopher Bellini (Cozen O'Connor) to Edward Adams, for the purpose of providing legal advice regarding securities transactions. | X | | Bellini, Christopher <CBellini@cozen.com> | Ed Adams (edwardsadams@yahoo.com) <edwardsadams@yahoo.com> | | | Edward_S_Adams |
| 131 | 00260392 (attachment) | 11/12/2015 | Attachment to confidential communication from Edward Adams to Christopher Bellini (Cozen O'Connor), for the purpose of providing legal advice regarding securities transactions. | X | | Edward Adams <edwardsadams@yahoo.com> | Bellini, Christopher <CBellini@cozen.com> | | | Edward_S_Adams |

# EXHIBIT 2

*U.S. v. Adams*

**Privilege Log of Documents Viewed by Government in Excluded Folder (Not "Seized")**
**E. Adams Personal Attorney-Client Privilege or Attorney Work Product Protection**

| Row | Doc ID Beg | Date | Description | Attorney Client Privilege | Attorney Work Product | Email From | Email To | Email CC | Email BCC | Custodian |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 00270186 | 9/19/2007 | Confidential communication from Edward Adams to Chris Mumm regarding issues relating to Adams's personal holdings in GelStat Corporation. | X | | Adams Edward <jafman1@yahoo.com> | Chris Mumm <mumm17@hotmail.com> | | | Jafman1 |
| 2 | 00352417 | 5/5/2012 | Confidential communication from Michael Monahan to Edward Adams, prepared in anticipation of Mack and Rapello civil litigation. | | X | Michael Monahan <michaelrmonahan@yahoo.com> | Adams Edward <jafman1@yahoo.com> | | | Jafman1 |
| 3 | 00352418 | 5/5/2012 | Confidential communication from Edward Adams to Michael Monahan, prepared in anticipation of Mack and Rapello civil litigation. | | X | jafman1 <jafman1@yahoo.com> | Michael Monahan <michaelrmonahan@yahoo.com> | | | Jafman1 |
| 4 | 00352421 | 5/5/2012 | Confidential communication from Michael Monahan to Edward Adams, prepared in anticipation of Mack and Rapello civil litigation. | | X | Michael Monahan <michaelrmonahan@yahoo.com> | jafman1@yahoo.com <jafman1@yahoo.com> | | | Jafman1 |
| 5 | 00051832 | 7/19/2012 | Confidential communication from Edward Adams to Aaron Hartman and Michael Monahan, made for the purpose of obtaining legal advice in anticipation of civil litigation involving certain Apollo investors (Fink litigation). | X | X | Edward Adams <edwardsadams@yahoo.com> | Michael Monahan <michaelrmonahan@yahoo.com>; Aaron Hartman <AHartman@aoblaw.com> | | | Edward_S_Adams |
| 6 | 00051833 | 7/19/2012 | Confidential communication from Edward Adams to Aaron Hartman, made for the purpose of obtaining legal advice in anticipation of civil litigation involving certain Apollo investors (Fink litigation). | X | X | edwardsadams <edwardsadams@yahoo.com> | AHartman@aoblaw.com <AHartman@aoblaw.com> | | | Edward_S_Adams |
| 7 | 00052193 | 7/31/2012 | Confidential communication from Edward Adams to Michael Monahan, made in anticipation of civil litigation involving certain Apollo investors (Fink litigation). | | X | edwardsadams <edwardsadams@yahoo.com> | Michael Monahan <michaelrmonahan@yahoo.com> | | | Edward_S_Adams |
| 8 | 00052195 | 7/31/2012 | Confidential communication from Edward Adams to Michael Monahan, made in anticipation of civil litigation involving certain Apollo investors (Fink litigation). | | X | edwardsadams <edwardsadams@yahoo.com> | Michael Monahan <michaelrmonahan@yahoo.com> | | | Edward_S_Adams |
| 9 | 00076939 | 12/26/2012 | Confidential communication from Edward Adams to Eric Bland (Bland Richter LLP) for the purpose of obtaining legal advice and made in anticipation of litigation against Nelson Mullins LLP. | X | X | Edward Adams <edwardsadams@yahoo.com> | ericbland@blandrichter.com <ericbland@blandrichter.com> | | | Edward_S_Adams |
| 10 | 00076991 | 12/26/2012 | Confidential communication from Eric Bland (Bland Richter LLP) to Edward Adams, copying Ronnie Richter and Larry Blackmer (both Bland Richter LLP) for the purpose of providing legal advice and made in anticipation of litigation against Nelson Mullins LLP. | X | X | Eric S. Bland <ericbland@blandrichter.com> | Edward Adams <edwardsadams@yahoo.com> | Ronnie Richter <Ronnie@blandrichter.com>; Larry Blackmer <LBlackmer@blandrichter.com> | | Edward_S_Adams |

*U.S. v. Adams*

**Privilege Log of Documents Viewed by Government in Excluded Folder (Not "Seized")**
**E. Adams Personal Attorney-Client Privilege or Attorney Work Product Protection**

| Row | Doc ID Beg | Date | Description | Attorney Client Privilege | Attorney Work Product | Email From | Email To | Email CC | Email BCC | Custodian |
|---|---|---|---|---|---|---|---|---|---|---|
| 11 | 00076995 | 12/26/2012 | Confidential communication from Edward Adams to Eric Bland (Bland Richter LLP), copying Ronnie Richter and Larry Blackmer (both Bland Richter LLP) for the purpose of obtaining legal advice and made in anticipation of litigation against Nelson Mullins LLP. | X | X | Edward Adams <edwardsadams@yahoo.com> | ericbland <ericbland@blandrichter.com> | Ronnie <Ronnie@blandrichter.com>; LBlackmer <LBlackmer@blandrichter.com> | | Edward_S_Adams |
| 12 | 00077000 | 12/26/2012 | Confidential communication from Edward Adams to Michael Monahan regarding confidential communication from Eric Bland (Bland Richter LLP), copying Ronnie Richter and Larry Blackmer (both Bland Richter LLP) for the purpose of obtaining legal advice and made in anticipation of litigation against Nelson Mullins LLP. | X | X | Edward Adams <edwardsadams@yahoo.com> | Michael Monahan <michaelrmonahan@yahoo.com> | | | Edward_S_Adams |
| 13 | 00077005 | 12/26/2012 | Confidential communication from Eric Bland (Bland Richter LLP) to Edward Adams, copying Ronnie Richter and Larry Blackmer (both Bland Richter LLP) for the purpose of providing legal advice and made in anticipation of litigation against Nelson Mullins LLP. | X | X | Eric S. Bland <ericbland@blandrichter.com> | Edward Adams <edwardsadams@yahoo.com> | Ronnie Richter <Ronnie@blandrichter.com>; Larry Blackmer <LBlackmer@blandrichter.com> | | Edward_S_Adams |
| 14 | 00077011 | 12/26/2012 | Confidential communication from Michael Monahan to Edward Adams regarding confidential communication from Eric Bland (Bland Richter LLP), copying Ronnie Richter and Larry Blackmer (both Bland Richter LLP) for the purpose of obtaining legal advice and made in anticipation of litigation against Nelson Mullins LLP. | X | X | Michael Monahan <michaelrmonahan@yahoo.com> | Edward Adams <edwardsadams@yahoo.com> | | | Edward_S_Adams |
| 15 | 00077015 | 12/26/2012 | Confidential communication from Edward Adams to Michael Monahan regarding confidential communication from Eric Bland (Bland Richter LLP), copying Ronnie Richter and Larry Blackmer (both Bland Richter LLP) for the purpose of obtaining legal advice and made in anticipation of litigation against Nelson Mullins LLP. | X | X | edwardsadams <edwardsadams@yahoo.com> | Michael Monahan <michaelrmonahan@yahoo.com> | | | Edward_S_Adams |
| 16 | 00077020 | 12/27/2012 | Confidential communication from Edward Adams to Eric Bland (Bland Richter LLP) for the purpose of obtaining legal advice and made in anticipation of litigation against Nelson Mullins LLP. | X | X | Edward Adams <edwardsadams@yahoo.com> | Eric S. Bland <ericbland@blandrichter.com> | | | Edward_S_Adams |
| 17 | 00077099 | 12/27/2012 | Confidential communication from Edward Adams to Eric Bland (Bland Richter LLP), copying Ronnie Richter and Larry Blackmer (both Bland Richter LLP) for the purpose of obtaining legal advice and made in anticipation of litigation against Nelson Mullins LLP. | X | X | Edward Adams <edwardsadams@yahoo.com> | Eric S. Bland <ericbland@blandrichter.com> | Ronnie Richter <Ronnie@blandrichter.com>; Larry Blackmer <LBlackmer@blandrichter.com> | | Edward_S_Adams |

*U.S. v. Adams*

| Row | Doc ID Beg | Date | Description | Attorney Client Privilege | Attorney Work Product | Email From | Email To | Email CC | Email BCC | Custodian |
|---|---|---|---|---|---|---|---|---|---|---|
| 18 | 00077106 | 12/27/2012 | Confidential communication from Edward Adams to Michael Monahan regarding confidential communication with Eric Bland (Bland Richter LLP), copying Ronnie Richter and Larry Blackmer (both Bland Richter LLP) for the purpose of obtaining legal advice and made in anticipation of litigation against Nelson Mullins LLP. | X | X | Edward Adams <edwardsadams@yahoo.com> | Michael Monahan <michaelrmonahan@yahoo.com> | | | Edward_S_Adams |
| 19 | 00077114 | 12/27/2012 | Confidential communication from Eric Bland (Bland Richter LLP) to Edward Adams, copying Ronnie Richter and Larry Blackmer (both Bland Richter LLP) providing legal advice and made in anticipation of litigation against Nelson Mullins LLP. | X | X | Eric S. Bland <ericbland@blandrichter.com> | Edward Adams <edwardsadams@yahoo.com> | Ronnie Richter <Ronnie@blandrichter.com>; Larry Blackmer <LBlackmer@blandrichter.com> | | Edward_S_Adams |
| 20 | 00077120 | 12/27/2012 | Confidential communication from Edward Adams to Eric Bland (Bland Richter LLP) for the purpose of obtaining legal advice and made in anticipation of litigation against Nelson Mullins LLP. | X | X | edwardsadams <edwardsadams@yahoo.com> | ericbland@blandrichter.com <ericbland@blandrichter.com> | | | Edward_S_Adams |
| 21 | 00077126 | 12/27/2012 | Confidential communication from Edward Adams to Eric Bland (Bland Richter LLP), copying Ronnie Richter and Larry Blackmer (both Bland Richter LLP) for the purpose of obtaining legal advice and made in anticipation of litigation against Nelson Mullins LLP. | X | X | Edward Adams <edwardsadams@yahoo.com> | Eric S. Bland <ericbland@blandrichter.com> | Ronnie Richter <Ronnie@blandrichter.com>; Larry Blackmer <LBlackmer@blandrichter.com> | | Edward_S_Adams |
| 22 | 00077175 | 12/27/2012 | Confidential communication from Eric Bland (Bland Richter LLP) to Edward Adams, copying Ronnie Richter (Bland Richter LLP) providing legal advice and made in anticipation of litigation against Nelson Mullins LLP. | X | X | Eric S. Bland <ericbland@blandrichter.com> | edwardsadams@yahoo.com <edwardsadams@yahoo.com> | Ronnie Richter <Ronnie@blandrichter.com> | | Edward_S_Adams |
| 23 | 00077182 | 12/27/2012 | Confidential communication from Ronnie Richter (Bland Richter LLP) to Edward Adams, copying Eric Bland and Larry Blackmer (both Bland Richter LLP) providing legal advice and made in anticipation of litigation against Nelson Mullins LLP. | X | X | Ronnie Richter <Ronnie@blandrichter.com> | Edward Adams <edwardsadams@yahoo.com> | Eric S. Bland <ericbland@blandrichter.com>; Larry Blackmer <LBlackmer@blandrichter.com> | | Edward_S_Adams |
| 24 | 00077187 | 12/27/2012 | Confidential communication from Edward Adams to Eric Bland (Bland Richter LLP), copying Ronnie Richter (Bland Richter LLP) for the purpose of obtaining legal advice and made in anticipation of litigation against Nelson Mullins LLP. | X | X | Edward Adams <edwardsadams@yahoo.com> | Eric S. Bland <ericbland@blandrichter.com> | Ronnie Richter <Ronnie@blandrichter.com> | | Edward_S_Adams |
| 25 | 00077193 | 12/27/2012 | Confidential communication from Eric Bland (Bland Richter LLP) to Edward Adams, copying Ronnie Richter (Bland Richter LLP) providing legal advice and made in anticipation of litigation against Nelson Mullins LLP. | X | X | Eric S. Bland <ericbland@blandrichter.com> | edwardsadams@yahoo.com <edwardsadams@yahoo.com> | Ronnie Richter <Ronnie@blandrichter.com> | | Edward_S_Adams |

*U.S. v. Adams*

**Privilege Log of Documents Viewed by Government in Excluded Folder (Not "Seized")**
**E. Adams Personal Attorney-Client Privilege or Attorney Work Product Protection**

| Row | Doc ID Beg | Date | Description | Attorney Client Privilege | Attorney Work Product | Email From | Email To | Email CC | Email BCC | Custodian |
|---|---|---|---|---|---|---|---|---|---|---|
| 26 | 00077200 | 12/27/2012 | Confidential communication from Edward Adams to Eric Bland (Bland Richter LLP) for the purpose of obtaining legal advice and made in anticipation of litigation against Nelson Mullins LLP. | X | X | edwardsadams <edwardsadams@yahoo.com> | ericbland@blandrichter.com <ericbland@blandrichter.com> | | | Edward_S_Adams |
| 27 | 00077207 | 12/27/2012 | Confidential communication from Eric Bland (Bland Richter LLP) to Edward Adams, copying Ronnie Richter (Bland Richter LLP) for the purpose of providing legal advice and made in anticipation of litigation against Nelson Mullins LLP. | X | X | Eric S. Bland <ericbland@blandrichter.com> | Edward Adams <edwardsadams@yahoo.com> | Ronnie Richter <Ronnie@blandrichter.com> | | Edward_S_Adams |
| 28 | 00077214 | 12/27/2012 | Confidential communication from Edward Adams to Eric Bland (Bland Richter LLP) for the purpose of obtaining legal advice and made in anticipation of litigation against Nelson Mullins LLP. | X | X | edwardsadams <edwardsadams@yahoo.com> | ericbland@blandrichter.com <ericbland@blandrichter.com> | | | Edward_S_Adams |
| 29 | 00077221 | 12/27/2012 | Confidential communication from Eric Bland (Bland Richter LLP) to Edward Adams, copying Ronnie Richter (Bland Richter LLP) for the purpose of providing legal advice and made in anticipation of litigation against Nelson Mullins LLP. | X | X | Eric S. Bland <ericbland@blandrichter.com> | edwardsadams@yahoo.com <edwardsadams@yahoo.com> | Ronnie Richter <Ronnie@blandrichter.com>; Eric S. Bland <ericbland@blandrichter.com> | | Edward_S_Adams |
| 30 | 00086375 (attachment) | 2/19/2013 | Attachment to confidential communication from Edward Adams to Eric Bland and Ronnie Richter (both Bland Richter LLP) for the purpose of obtaining legal advice and made in anticipation of litigation against Nelson Mullins LLP. | X | X | Edward Adams <edwardsadams@yahoo.com> | ericbland@blandrichter.com <ericbland@blandrichter.com>; Ronnie@blandrichter.com <Ronnie@blandrichter.com> | | | Edward_S_Adams |
| 31 | 00090247 | 3/6/2013 | Confidential communication from Eric Bland (Bland Richter LLP) to Edward Adams and Michael Monahan, copying Ronnie Richter, Larry Blackmer and Scott Mongillo (each of Bland Richter LLP) providing legal advice and made in anticipation of litigation against Nelson Mullins LLP. | X | X | Eric S. Bland <ericbland@blandrichter.com> | edwardsadams <edwardsadams@yahoo.com>; Mike Monahan <MichaelRMonahan@yahoo.com> | Ronnie Richter <Ronnie@blandrichter.com>; Larry Blackmer <LBlackmer@blandrichter.com>; SMMongillo@aol.com <SMMongillo@aol.com> | | Edward_S_Adams |
| 32 | 00090250 | 3/6/2013 | Confidential communication from Eric Bland (Bland Richter LLP) to Edward Adams and Michael Monahan, copying Ronnie Richter, Larry Blackmer and Scott Mongillo (each of Bland Richter LLP) providing legal advice and made in anticipation of litigation against Nelson Mullins LLP. | X | X | Eric S. Bland <ericbland@blandrichter.com> | Eric S. Bland <ericbland@blandrichter.com>; edwardsadams <edwardsadams@yahoo.com>; Mike Monahan <MichaelRMonahan@yahoo.com> | Ronnie Richter <Ronnie@blandrichter.com>; Larry Blackmer <LBlackmer@blandrichter.com>; SMMongillo@aol.com <SMMongillo@aol.com> | | Edward_S_Adams |
| 33 | 00105432 (attachment) | 4/25/2013 | Attachment to confidential communication from Eric Bland (Bland Richter LLP) to Edward Adams, Ronnie Richter, Scott Mongillo, Larry Blackmer and Lisa Lescord (all four of Bland Richter LLP) for the purpose of providing legal advice and made in anticipation of litigation against Nelson Mullins LLP. | X | X | Eric S. Bland <ericbland@blandrichter.com> | Ronnie Richter <Ronnie@blandrichter.com>; Scott Mongillo <Scott@blandrichter.com>; edwardsadams <edwardsadams@yahoo.com>; Larry Blackmer <LBlackmer@blandrichter.com>; Lisa M. Lescord <Lisa@blandrichter.com> | Eric S. Bland <ericbland@blandrichter.com> | | Edward_S_Adams |

*U.S. v. Adams*

**Privilege Log of Documents Viewed by Government in Excluded Folder (Not "Seized")**
**E. Adams Personal Attorney-Client Privilege or Attorney Work Product Protection**

| Row | Doc ID Beg | Date | Description | Attorney Client Privilege | Attorney Work Product | Email From | Email To | Email CC | Email BCC | Custodian |
|---|---|---|---|---|---|---|---|---|---|---|
| 34 | 00107195 (attachment) | 4/30/2013 | Attachment to confidential communication from Larry Blackmer (Bland Richter LLP) to Edward Adams, Michael Monahan, Eric Bland, Ronnie Richter and Scott Mongillo, (all three of Bland Richter LLP), copying Lisa Lescord and Mary-Ellen Shirley (both of Bland Richter LLP) for the purpose of providing legal advice and made in anticipation of litigation against Nelson Mullins LLP. | X | X | Larry Blackmer <LBlackmer@blandrichter.com> | Edward Adams (edwardsadams@yahoo.com) <edwardsadams@yahoo.com>; Michael Monahan (michaelrmonahan@yahoo.com) <michaelrmonahan@yahoo.com>; Eric S. Bland <ericbland@blandrichter.com>; Ronnie Richter <Ronnie@blandrichter.com>; Scott Mongillo <Scott@blandrichter.com> | Lisa M. Lescord <Lisa@blandrichter.com>; Mary-Ellen Shirley <MEFShirley@blandrichter.com> | | Edward_S_Adams |
| 35 | 00111540 | 5/2/2013 | Confidential communication from Edward Adams to Eric Bland (Bland Richter LLP), copying Ronnie Richter (Bland Richter LLP) and Michael Monahan for the purpose of obtaining legal advice and made in anticipation of litigation against Nelson Mullins LLP and Barnes & Thornburg, LLP | X | X | Edward Adams <edwardsadams@yahoo.com> | Eric S. Bland <ericbland@blandrichter.com> | Ronnie Richter <Ronnie@blandrichter.com>; Michael Monahan <michaelrmonahan@yahoo.com> | | Edward_S_Adams |
| 36 | 00113230 | 5/6/2013 | Confidential communication from Michael Monahan to Edward Adams, Ronnie Richter and Eric Bland (both of Bland Richter LLP), copying Scott Mongillo and Lisa Lescord (both of Bland Richter LLP) for the purpose of obtaining legal advice and made in anticipation of litigation against Nelson Mullins LLP | X | X | Michael Monahan <michaelrmonahan@yahoo.com> | edwardsadams <edwardsadams@yahoo.com>; Ronnie Richter <Ronnie@blandrichter.com>; ericbland@blandrichter.com <ericbland@blandrichter.com> | Scott@blandrichter.com <Scott@blandrichter.com>; Lisa Lescord <Lisa@blandrichter.com> | | Edward_S_Adams |
| 37 | 00113495 | 5/7/2013 | Confidential communication from Eric Bland (Bland Richter LLP) to Michael Monahan, Edward Adams, Ronnie Richter (Bland Richter LLP), copying Scott Mongillo and Lisa Lescord (both of Bland Richter LLP) for the purpose of providing legal advice and made in anticipation of litigation against Nelson Mullins LLP | X | X | Eric S. Bland <ericbland@blandrichter.com> | Michael Monahan <michaelrmonahan@yahoo.com>; edwardsadams <edwardsadams@yahoo.com>; Ronnie Richter <Ronnie@blandrichter.com> | Scott Mongillo <Scott@blandrichter.com>; Lisa M. Lescord <Lisa@blandrichter.com> | | Edward_S_Adams |
| 38 | 00113497 | 5/7/2013 | Confidential communication from Michael Monahan to Edward Adams, Ronnie Richter and Eric Bland (both of Bland Richter LLP), copying Scott Mongillo and Lisa Lescord (both of Bland Richter LLP) for the purpose of obtaining legal advice and made in anticipation of litigation against Nelson Mullins LLP | X | X | Michael Monahan <michaelrmonahan@yahoo.com> | Eric S. Bland <ericbland@blandrichter.com>; edwardsadams <edwardsadams@yahoo.com>; Ronnie Richter <Ronnie@blandrichter.com> | Scott Mongillo <Scott@blandrichter.com>; Lisa M. Lescord <Lisa@blandrichter.com> | | Edward_S_Adams |
| 39 | 00123720 | 5/22/2013 | Confidential communication from Eric Bland (Bland Richter LLP) to Edward Adams and Michael Monahan, copying Ronnie Richter, Larry Blackmer and Scott Mongillo (each of Bland Richter LLP) providing legal advice and made in anticipation of litigation against Nelson Mullins LLP. | X | X | Eric S. Bland <ericbland@blandrichter.com> | Edward Adams <edwardsadams@yahoo.com>; Michael Monahan <michaelrmonahan@yahoo.com> | Ronnie Richter <Ronnie@blandrichter.com>; Scott Mongillo <Scott@blandrichter.com>; Larry Blackmer <LBlackmer@blandrichter.com> | | Edward_S_Adams |

*U.S. v. Adams*

**Privilege Log of Documents Viewed by Government in Excluded Folder (Not "Seized")**
**E. Adams Personal Attorney-Client Privilege or Attorney Work Product Protection**

| Row | Doc ID Beg | Date | Description | Attorney Client Privilege | Attorney Work Product | Email From | Email To | Email CC | Email BCC | Custodian |
|---|---|---|---|---|---|---|---|---|---|---|
| 40 | 00123723 | 5/22/2013 | Confidential communication from Ronnie Richter (Bland Richter LLP) to Eric Bland (Bland Richter LLP), Edward Adams and Michael Monahan, copying Larry Blackmer and Scott Mongillo (each of Bland Richter LLP) providing legal advice and made in anticipation of litigation against Nelson Mullins LLP. | X | X | Ronnie Richter <Ronnie@blandrichter.com> | Eric S. Bland <ericbland@blandrichter.com>; Edward Adams <edwardsadams@yahoo.com>; Michael Monahan <michaelrmonahan@yahoo.com> | Scott Mongillo <Scott@blandrichter.com>; Larry Blackmer <LBlackmer@blandrichter.com> | | Edward_S_Adams |
| 41 | 00123729 | 5/22/2013 | Confidential communication from Michael Monahan to Edward Adams and Eric Bland (Bland Richter LLP), copying Ronnie Richter, Scott Mongillo and Larry Blackmer (all of Bland Richter LLP) for the purpose of obtaining legal advice and made in anticipation of litigation against Nelson Mullins LLP | X | X | Michael Monahan <michaelrmonahan@yahoo.com> | Eric S. Bland <ericbland@blandrichter.com>; Edward Adams <edwardsadams@yahoo.com> | Ronnie Richter <Ronnie@blandrichter.com>; Scott Mongillo <Scott@blandrichter.com>; Larry Blackmer <LBlackmer@blandrichter.com> | | Edward_S_Adams |
| 42 | 00123750 | 5/22/2013 | Confidential communication from Michael Monahan to Edward Adams and Eric Bland (Bland Richter LLP), copying Ronnie Richter, Scott Mongillo and Larry Blackmer (all of Bland Richter LLP) for the purpose of obtaining legal advice and made in anticipation of litigation against Nelson Mullins LLP | X | X | Michael Monahan <michaelrmonahan@yahoo.com> | Eric S. Bland <ericbland@blandrichter.com>; Edward Adams <edwardsadams@yahoo.com> | Ronnie Richter <Ronnie@blandrichter.com>; Scott Mongillo <Scott@blandrichter.com>; Larry Blackmer <LBlackmer@blandrichter.com> | | Edward_S_Adams |
| 43 | 00123771 | 5/22/2013 | Confidential communication from Eric Bland (Bland Richter LLP) to Edward Adams and Michael Monahan, copying Ronnie Richter, Larry Blackmer and Scott Mongillo (each of Bland Richter LLP) providing legal advice and made in anticipation of litigation against Nelson Mullins LLP. | X | X | Eric S. Bland <ericbland@blandrichter.com> | Edward Adams <edwardsadams@yahoo.com>; Michael Monahan <michaelrmonahan@yahoo.com> | Ronnie Richter <Ronnie@blandrichter.com>; Scott Mongillo <Scott@blandrichter.com>; Larry Blackmer <LBlackmer@blandrichter.com> | | Edward_S_Adams |
| 44 | 00124495 | 5/23/2013 | Confidential communication from Michael Monahan to Edward Adams and Eric Bland (Bland Richter LLP), copying Ronnie Richter, Larry Blackmer and Scott Mongillo (each of Bland Richter LLP) for the purpose of obtaining legal advice and made in anticipation of litigation against Nelson Mullins LLP. | X | X | Michael Monahan <michaelrmonahan@yahoo.com> | Edward Adams <edwardsadams@yahoo.com>; Eric S. Bland <ericbland@blandrichter.com> | Ronnie Richter <Ronnie@blandrichter.com>; Scott Mongillo <Scott@blandrichter.com>; Larry Blackmer <LBlackmer@blandrichter.com> | | Edward_S_Adams |
| 45 | 00124530 | 5/23/2013 | Confidential communication from Eric Bland (Bland Richter LLP) to Edward Adams and Michael Monahan, copying Ronnie Richter, Larry Blackmer and Scott Mongillo (each of Bland Richter LLP) providing legal advice and made in anticipation of litigation against Nelson Mullins LLP. | X | X | Eric S. Bland <ericbland@blandrichter.com> | Michael Monahan <michaelrmonahan@yahoo.com>; Edward Adams <edwardsadams@yahoo.com> | Ronnie Richter <Ronnie@blandrichter.com>; Scott Mongillo <Scott@blandrichter.com>; Larry Blackmer <LBlackmer@blandrichter.com>; Eric S. Bland <ericbland@blandrichter.com> | | Edward_S_Adams |

*U.S. v. Adams*

**Privilege Log of Documents Viewed by Government in Excluded Folder (Not "Seized")**
**E. Adams Personal Attorney-Client Privilege or Attorney Work Product Protection**

| Row | Doc ID Beg | Date | Description | Attorney Client Privilege | Attorney Work Product | Email From | Email To | Email CC | Email BCC | Custodian |
|---|---|---|---|---|---|---|---|---|---|---|
| 46 | 00124546 | 5/23/2013 | Confidential communication from Edward Adams to Eric Bland and Ronnie Richter (both of Bland Richter LLP), copying Michael Monahan, for the purpose of obtaining legal advice and made in anticipation of litigation against Nelson Mullins LLP and Barnes & Thornburg, LLP | X | X | Edward Adams <edwardsadams@yahoo.com> | Eric S. Bland <ericbland@blandrichter.com>; Ronnie Richter <Ronnie@blandrichter.com> | Michael Monahan <michaelmonahan@yahoo.com> | | Edward_S_Adams |
| 47 | 00125618 | 5/25/2013 | Confidential communication from Edward Adams to Michael Monahan, prepared in anticipation of litigation against Bernard McPheely. | | X | Edward Adams <edwardsadams@yahoo.com> | Michael Monahan <michaelmonahan@yahoo.com> | | | Edward_S_Adams |
| 48 | 00125758 | 5/25/2013 | Confidential communication from Edward Adams to Michael Monahan, prepared in anticipation of litigation against Bernard McPheely. | | X | Edward Adams <edwardsadams@yahoo.com> | Michael Monahan <michaelmonahan@yahoo.com> | | | Edward_S_Adams |
| 49 | 00125828 | 5/28/2013 | Confidential communication from Eric Bland (Bland Richter LLP) to Michael Monahan and Edward Adams for the purpose of legal advice and made in anticipation of litigation against Nelson Mullins LLP | X | X | Eric S. Bland <ericbland@blandrichter.com> | Edward Adams <edwardsadams@yahoo.com>; Michael Monahan <michaelmonahan@yahoo.com> | | | Edward_S_Adams |
| 50 | 00125858 | 5/28/2013 | Confidential communication from Eric Bland (Bland Richter LLP) to Edward Adams for the purpose of legal advice and made in anticipation of litigation against Nelson Mullins LLP | X | X | Eric S. Bland <ericbland@blandrichter.com> | Edward Adams <edwardsadams@yahoo.com> | | | Edward_S_Adams |
| 51 | 00219514 00219515 (attachment) | 9/23/2014 | Confidential correspondence with attachment from Edward Adams to Thomas Brever, Esq. and Jon Hopeman, Esq., supplying a private memo, conveyed to seek legal advice from Foster Brever Wehrly, PLLC and Felhaber Larson, Fenlon, & Vogt, P.A. | X | X | Edward Adams <edwardsadams@yahoo.com> | Jon Hopeman <jhopeman@felhaber.com>; tbrever@fosterbrever.com <tbrever@fosterbrever.com> | | | Edward_S_Adams |
| 52 | 00221001 | 9/25/2014 | Confidential correspondence from Edward Adams to Thomas Brever, Esq., supplying private information to seek legal advice from Foster Brever Wehrly, PLLC. | X | | edwardsadams <edwardsadams@yahoo.com> | Thomas Brever <tbrever@fosterbrever.com> | | | Edward_S_Adams |
| 53 | 00221002 | 9/25/2014 | Confidential correspondence from Edward Adams to Thomas Brever, Esq., supplying private information to seek legal advice from Foster Brever Wehrly, PLLC. | X | | edwardsadams <edwardsadams@yahoo.com> | Thomas Brever <tbrever@fosterbrever.com> | | | Edward_S_Adams |
| 54 | 00221003 | 9/25/2014 | Confidential correspondence from Edward Adams to Thomas Brever, Esq., supplying private information to seek legal advice from Foster Brever Wehrly, PLLC. | X | | edwardsadams <edwardsadams@yahoo.com> | Thomas Brever <tbrever@fosterbrever.com> | | | Edward_S_Adams |
| 55 | 00221257 (attachment) | 10/2/2014 | Attachment to confidential communication from Edward Adams to Jon Hopeman (Felhaber Larson) for the purpose of obtaining legal advice and made in anticipation of litigation with the SEC | X | X | Edward Adams <edwardsadams@yahoo.com> | Jon Hopeman <jhopeman@felhaber.com> | | | Edward_S_Adams |

U.S. v. Adams

**Privilege Log of Documents Viewed by Government in Excluded Folder (Not "Seized")**
**E. Adams Personal Attorney-Client Privilege or Attorney Work Product Protection**

| Row | Doc ID Beg | Date | Description | Attorney Client Privilege | Attorney Work Product | Email From | Email To | Email CC | Email BCC | Custodian |
|---|---|---|---|---|---|---|---|---|---|---|
| 56 | 00224301 00224302 (attachment) | 10/29/2014 | Confidential correspondence with attachment from Edward Adams to Patrick Murry and Ashley Miller, copying Thomas Brever, Esq., supplying private information in an Excel spreadsheet titled "ESA Tax Questions," conveyed to seek legal advice from Foster Brever Wehrly, PLLC. | X | | Edward Adams <edwardsadams@yahoo.com> | Patrick M. Murry <pmurry@murryllc.com>; amiller@murryllc.com <amiller@murryllc.com> | tbrever@fosterbrever.com <tbrever@fosterbrever.com> | | Edward_S_Adams |
| 57 | 00224382 | 10/30/2014 | Confidential correspondence from Ashley Miller to Edward Adams posing questions to obtain information to facilitate legal advice to Mr. Adams from Foster Brever Wehrly, PLLC. | X | | Ashley Miller <amiller@murryllc.com> | Edward Adams <edwardsadams@yahoo.com> | | | Edward_S_Adams |
| 58 | 00224535 | 11/5/2014 | Confidential correspondence from Ashley Miller to Edward Adams requesting information to facilitate legal advice to Mr. Adams from Foster Brever Wehrly, PLLC. | X | | Ashley Miller <amiller@murryllc.com> | Edward Adams <edwardsadams@yahoo.com> | | | Edward_S_Adams |
| 59 | 00224536 | 11/5/2014 | Confidential correspondence from Edward Adams to Ashley Miller supplying information conveyed to seek legal advice from Foster Brever Wehrly, PLLC. | X | | Edward Adams <edwardsadams@yahoo.com> | Ashley Miller <amiller@murryllc.com> | | | Edward_S_Adams |
| 60 | 00224548 | 11/5/2014 | Confidential correspondence from Ashley Miller to Edward Adams posing questions to obtain information to facilitate legal advice to Mr. Adams from Foster Brever Wehrly, PLLC. | X | | Ashley Miller <amiller@murryllc.com> | Edward Adams <edwardsadams@yahoo.com> | | | Edward_S_Adams |
| 61 | 00224633 | 11/6/2014 | Confidential correspondence from Ashley Miller to Edward Adams to facilitate legal advice to Mr. Adams from Foster Brever Wehrly, PLLC. | X | | Ashley Miller <amiller@murryllc.com> | <edwardsadams@yahoo.com> <edwardsadams@yahoo.com> | | | Edward_S_Adams |

# EXHIBIT 3



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Chicago Regional Office
175 W. Jackson Blvd., Suite 900
Chicago, IL 60604

**DIVISION OF ENFORCEMENT**

Kevin A. Wisniewski
Attorney
312-886-0804
wisniewskik@sec.gov

April 23, 2015

**Via Electronic Mail & UPS**
Edward S. Adams
c/o John J. Sikora Jr.
Latham & Watkins LLP
330 North Wabash Ave., Suite 2800
Chicago, IL 60611

Re:   In the Matter of Scio Diamond Technology Corporation (C-08091)

Dear Mr. Sikora:

Pursuant to Rule 8 of the United States Securities and Exchange Commission's Rules Relating to Investigations, 17 C.F.R. § 203.8, and your agreement to accept service, I have enclosed a subpoena for documents and testimony issued to your client, Edward S. Adams ("Adams"), in connection with the above-referenced formal investigation. The subpoena requires Adams to produce documents by May 22, 2015 to the SEC's Chicago Regional Office.

Please send the materials to:

ENF-CPU
U.S. Securities and Exchange Commission
100 F St., N.E., Mailstop 5973
Washington, DC 20549-5973

For smaller electronic productions under 10MB in size, the materials may be emailed to the following email address:  ENF-CPU@sec.gov.

The subpoena also requires Adams to appear for testimony on May 22, 2015 at 9:30 at the address above.

Please carefully read the subpoena attachment, which contains, among other things, important instructions related to the manner of producing documents. In particular, if your client prefers to send us copies of original documents, **the staff requests that you scan and produce hard copy documents, as well as electronic documents, in an electronic format consistent with the SEC Data Delivery Standards attached hereto. All electronic documents**

**responsive to the document subpoena, including all metadata, should also be produced in their native software format.** If you have any questions concerning the production of documents in an electronic format, please contact me as soon as possible and in any event before producing documents.

In your cover letter(s) accompanying the production of responsive documents, please enclose a list briefly describing each item you send. The list should state to which paragraph(s) in the subpoena attachment each item responds. Please also state in the cover letter(s) whether you believe your client has met his obligations under the subpoena by searching carefully and thoroughly for everything called for by the subpoena, and sending it all to us. A copy of the subpoena should be included with the documents that are produced.

Passwords for documents, files, compressed archives, and encrypted media should be provided separately either via email addressed to ENF-CPU@sec.gov, or in a separate cover letter mailed separately from the data.

Please also provide a narrative description describing what was done to identify and collect documents responsive to the subpoena. At a minimum, the narrative should describe:

- ξ   who searched for documents;
- ξ   who reviewed documents found to determine whether they were responsive;
- ξ   which custodians were searched;
- ξ   what sources were searched (e.g., computer files, CDs, DVDs, thumb drives, flash drives, online storage media, hard copy files, diaries, datebooks, planners, filing cabinets, storage facilities, home offices, work offices, voice mails, home email, webmail, work email, backup tapes or other media);
- ξ   what search terms, if any, were employed to identify responsive documents;
- ξ   what firms and/or persons, if any, assisted in analyzing the data collected;
- ξ   what third parties, if any, were contacted to obtain responsive documents (e.g., phone companies for phone records, brokerage firms for brokerage records); and
- ξ   where the original electronic and hardcopy documents are maintained and by whom.

A background questionnaire is also enclosed. During your client's testimony, the staff intends to ask background questions concerning, among other things, your client's residences, telephone numbers, education and employment. To expedite that part of the testimony, we request that your client complete the enclosed questionnaire on a voluntary basis and provide it to the staff prior to your client's testimony

Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

The information your client provides is subject to the Commission's routine uses. A list of those uses is contained in the enclosed copies of SEC Form 1662, which also contain other

Edward S. Adams
April 23, 2015
Page 3

important information.  Please provide a copy of this form to your client. This investigation is confidential and nonpublic and should not be construed as an indication by the Commission or its staff that any violation of law has occurred, nor as a reflection upon any person, entity, or security.


        If you have any other questions, you may call me at (312) 886-0804 or e-mail me at wisniewskik@sec.gov.

                                        Sincerely,


                                        Kevin A. Wisniewski
                                        Attorney
                                        Division of Enforcement


Enclosures:     Subpoena and Attachment
                SEC Data Delivery Standards
                SEC Form 1662
                Background Questionnaire



# SUBPOENA

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

**In the Matter of <u>Scio Diamond Technology Corporation (C-08091)</u>**

To:   Edward S. Adams
      c/o John J. Sikora Jr.
      Latham & Watkins LLP
      330 North Wabash Ave., Suite 28000

☒   **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission, at the place, date and time specified below:

   ENF-CPU, U.S. Securities and Exchange Commission, 100 F St., N.E., Mailstop 5973, Washington, DC 20549-5973, no later than May 22, 2015 at 9:30 a.m.

☐   **YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place, date and time specified below:

**FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.**
Failure to comply may subject you to a fine and/or imprisonment.

By:   _____        Date:  _____April 23, 2015_____
      Kevin A. Wisniewski
      Division of Enforcement
      U.S. Securities and Exchange Commission
      175 W. Jackson Blvd., Suite 900
      Chicago, IL 60606
      (312) 886-0804

I am an officer of the U.S. Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation under: Section 20(a) of the Securities Act of 1933, Section 21(a) of the Securities Exchange Act of 1934.

NOTICE TO WITNESS:      If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

Edward S. Adams
April 23, 2015
Page 2

## SUBPOENA ATTACHMENT FOR EDWARD S. ADAMS
### April 23, 2015
<u>In the Matter of Scio Diamond Technology Corporation (C-08091)</u>

**A.**     <u>**Definitions**</u>

As used in this subpoena, the words and phrases listed below shall have the following meanings:

1.     "Adams" means (1) Edward S. Adams and/or (ii) any present or former representative of Adams.

2.     Apollo Diamond, Inc. ("ADI") means the entity doing business under the name "Apollo Diamond, Inc." including parents, subsidiaries, affiliates, predecessors, successors, acquisitions, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing, including, but not limited to, Apollo Diamond, Inc., Apollo Diamond Gemstone Corp., Loblolly, Inc., and Scio Diamond Technology Corp.

3.     Apollo Diamond Gemstone Corporation ("ADGC") means the entity doing business under the name "Apollo Diamond, Inc." including parents, subsidiaries, affiliates, predecessors, successors, acquisitions, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing, including, but not limited to, Apollo Diamond, Inc., Apollo Diamond Gemstone Corp., Loblolly, Inc., and Scio Diamond Technology Corp.

4.     Scio Diamond Technology Corporation ("Public Scio") means the entity doing business under the name "Scio Diamond Technology Corporation" including parents, subsidiaries, affiliates, predecessors, successors, acquisitions, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing, including, but not limited to, Apollo Diamond, Inc., Apollo Diamond Gemstone Corp., Loblolly, Inc. and Scio Diamond Technology Corp. (also known as "Private Scio" – see Definition #4).

5.     "Private Scio" means Scio Diamond Technology Corp. which is or was a private company acquired by Public Scio, and is currently doing business under the name "Loblolly, Inc."

6.     Adams Monahan, LLP means the Minneapolis-based law firm owned and/or operated (presently or in the past) by Edward Adams and/or Michael Monahan, including parents, subsidiaries, affiliates, predecessors, successors, acquisitions, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of

Edward S. Adams
April 23, 2015
Page 3

the foregoing.

7.     "ESA" means the entity doing business under the name "ESA Consulting
       Services, LLC" including parents, subsidiaries, affiliates, predecessors,
       successors, acquisitions, officers, directors, employees, agents, general partners,
       limited partners, partnerships and aliases, code names, or trade or business names
       used by any of the foregoing

8.     "Private Scio-Apollo Transaction" means any and all transactions between Private
       Scio and ADI and/or ADGC involving the acquisition of all or substantially all of
       ADI's and/or ADGC's assets.

9.     "Public Scio-Apollo Transaction" means any and all transactions between Public
       Scio and ADI and/or ADGC involving the acquisition of all or substantially all of
       ADI's and/or ADGC's assets.

10.    "Person" means a natural person, firm, association, organization, partnership,
       business, trust, corporation, bank or any other private or public entity.

11.    "Document" shall include, but is not limited to, any written, printed, or typed
       matter including, but not limited to all drafts and copies bearing notations or
       marks not found in the original, letters and correspondence, interoffice
       communications, slips, tickets, records, worksheets, financial records, accounting
       documents, bookkeeping documents, memoranda, reports, manuals, telephone
       logs, telegrams, facsimiles, messages of any type, telephone messages, voice
       mails, tape recordings, notices, instructions, minutes, summaries, notes of
       meetings, file folder markings, and any other organizational indicia, purchase
       orders, information recorded by photographic process, including microfilm and
       microfiche, computer printouts, spreadsheets, and other electronically stored
       information, including but not limited to writings, drawings, graphs, charts,
       photographs, sound recordings, images, and other data or data compilations that
       are stored in any medium from which information can be retrieved, obtained,
       manipulated, or translated.

12.    "Communication" means any correspondence, contact, discussion, e-mail, instant
       message, or any other kind of oral or written exchange or transmission of
       information (in the form of facts, ideas, inquiries, or otherwise) and any response
       thereto between two or more Persons or entities, including, without limitation, all
       telephone conversations, face-to-face meetings or conversations, internal or
       external discussions, or exchanges of a Document or Documents.

13.    "Concerning" means directly or indirectly, in whole or in part, describing,
       constituting, evidencing, recording, evaluating, substantiating, concerning,
       referring to, alluding to, in connection with, commenting on, relating to,
       regarding, discussing, showing, describing, analyzing or reflecting.

Edward S. Adams
April 23, 2015
Page 4

14.     An "Agreement" means any actual or contemplated (i) written or oral Agreement; (ii) term or provision of such Agreement; or (iii) amendment of any nature or termination of such Agreement. A request for any Agreement among or between specified parties includes a request for all Documents Concerning (i) any actual or contemplated Agreement among or between such parties, whether or not such Agreement included any other Person; (ii) the drafting or negotiation of any such Agreement; (iii) any actual or contemplated demand, request or application for any such Agreement, and any response thereto; and (iv) any actual or contemplated objection or refusal to enter into any such Agreement, and any response thereto.

15.     The terms "Reviewed" means examined, assessed, considered, analyzed or evaluated.

16.     The term "you" and "your" means the Person or entity to whom this subpoena was issued.

17.     To the extent necessary to bring within the scope of this subpoena any information or Documents that might otherwise be construed to be outside its scope:

        a.      the word "or" means "and/or";
        b.      the word "and" means "and/or";
        c.      the functional words "each," "every" "any" and "all" shall each be deemed to include each of the other functional words;
        d.      the masculine gender includes the female gender and the female gender includes the masculine gender; and
        e.      the singular includes the plural and the plural includes the singular.

**B.   <u>Instructions</u>**

1.      Unless otherwise specified, the subpoena calls for production of the original Documents and all copies and drafts of same. Documents responsive to this subpoena may be in electronic or paper form. Electronic Documents such as email should be produced in accordance with the attached Document entitled SEC Data Delivery Standards. All electronic Documents responsive to the Document subpoena, including all metadata, should also be produced in their native software format.

2.      For Documents in paper format, you may send the originals, or, if you prefer, you may send copies of the originals. The Commission cannot reimburse you for the copying costs. If you are sending copies, the staff requests that you scan (rather than photocopy) hard copy Documents and produce them in an electronic format consistent with the SEC Data Delivery Standards. Alternatively, you may send us

Edward S. Adams
April 23, 2015
Page 5

photocopies of the Documents in paper format.  If you choose to send copies, you <u>must</u> secure and retain the originals and store them in a safe place.  The staff may later request or require that you produce the originals.

3.      Whether you scan or photocopy Documents, the copies must be identical to the originals, including even faint marks or print.  Also, please note that if copies of a Document differ in any way, they are considered separate Documents and you must send each one.  For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

4.      In producing a photocopy of an original Document that contains post-it(s), notation flag(s), or other removable markings or attachments which may conceal all or a portion of the markings contained in the original Document, photocopies of the original Document both with and without the relevant post-it(s), notation flag(s), or removable markings or attachments should be produced.

5.      Documents should be produced as they are kept in the ordinary course of business or be organized and labeled to correspond with the categories in this request.  In that regard, Documents should be produced in a unitized manner, i.e.., delineated with staples or paper clips to identify the Document boundaries.

6.      Documents should be labeled with sequential numbering (bates-stamped).

7.      You must produce all Documents created during, or Concerning, the period January 1, 2004 to the present, unless otherwise specified.

8.      The scope of any given request should not be limited or narrowed based on the fact that it calls for Documents that are responsive to another request.

9.      You are not required to produce exact duplicates of any Documents that have been previously produced to the Securities and Exchange Commission staff **in connection with this matter**.  If you are not producing Documents based upon a prior production, please identify the responsive Documents that were previously produced.

10.     This subpoena covers all Documents in or subject to your possession, custody or control, including all Documents that are not in your immediate possession but that you have the ability to obtain, that are responsive, in whole or in part, to any of the individual requests set forth below.  If, for any reason – including a claim of attorney-client privilege – you do not produce something called for by the request, you should submit a list of what it is not producing.  The list should describe each item separately, noting:

a.      its author(s);

Edward S. Adams
April 23, 2015
Page 6

    b.    its date;

    c.    its subject matter;

    d.    the name of the Person who has the item now, or the last Person known to have it;

    e.    the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents;

    f.    the basis upon which you are not producing the responsive Document;

    g.    the specific request in the subpoena to which the Document relates;

    h.    the attorney(s) and the client(s) involved; and

    i.    in the case of the work product doctrine, the litigation for which the Document was prepared in anticipation.

11.    If Documents responsive to this subpoena no longer exist because they have been lost, discarded, or otherwise destroyed, you should identify such Documents and give the date on which they were lost, discarded or destroyed.

## C.    Documents to be Produced

Financial Statements

1.    For the period of time January 1, 2004 to the present, provide annual and quarterly financial statements for ADI and ADGC.

2.    Audited financial statements of ADI and ADGC from January 2004 to the present.

3.    General ledger of ADI and ADGC sufficient to show all financial transactions of ADI and ADGC from January 1, 2004 to the present.

4.    Documents sufficient to show ADI's and ADGC's outstanding liabilities exceeding $5,000 as of (a) March 1, 2011, (b) August 1, 2011, (c) May 1, 2012, (d) August 1, 2013, (e) January 1, 2013, and (f) the date of this Subpoena.

Fees/Financial Arrangements

5.    Documents sufficient to show all amounts paid to all ADI and ADGC officers, directors and affiliated entities of the officers and/or directors from January 1, 2004 to the present and accounting treatment to record transactions in the books and records of ADI and ADGC.

6.    Documents sufficient to show all accrued and unpaid wages, salary, bonuses, fees, and expenses owed by ADI or ADGC to Adams, Michael R. Monahan ("Monahan"), Robert Linares, Bryant Linares, and any other Person.

Edward S. Adams
April 23, 2015
Page 7

7.   Documents sufficient to show all fees paid by ADI and/or ADGC to Adams
     Monahan LLP from January 1, 2004 to the present.

8.   All billing information and timesheets (redacted as necessary for attorney-client
     privilege) for work performed by Adams Monahan LLP for ADI, ADGC, Public
     Scio, and Private Scio from January 1, 2004 to the present.

9.   Documents sufficient to show all fees paid by ADI and/or ADGC to ESA from
     January 1, 2004 to the present.

10.  All documents relating to any loans, promissory notes, or other debt obligations
     incurred by ADI and/or ADGC with Adams, Monahan, Robert Linares, Bryant
     Linares, or any entities in which those individuals have an interest, including
     financial records reflecting the transfer of any funds associated with such loans to
     ADI and/or ADGC.

## ADI & ADG Shareholders

11.  A register of all ADI and ADGC shareholders as of March 1, 2011.

12.  A register of all ADI and ADGC shareholders as of August 1, 2011.

13.  A register of all ADGC shareholders as of May 1, 2012.

14.  A list of all warrants issued by ADI and ADGC.

15.  All offering memoranda, prospectuses, marketing materials, summaries, and
     financial statements provided to existing and prospective ADI and ADGC
     shareholders.

16.  Documents sufficient to show, as of January 1, 2011: (1) Bryant Linares' and/or
     his spouse's collective ownership interest in ADI and ADGC, (2) Robert Linares'
     and/or his spouse's collective ownership interest in ADI and ADGC, (3) Adams's
     ownership interest in ADI and ADGC, (4) Monahan's ownership interest in ADI
     and ADGC, and (5) minority shareholder's collective ownership interest in ADI
     and ADGC.

17.  Documents and Communications Concerning the September 22, 2011 letter from
     Joseph Lancia to ADI and/or ADGC shareholders stating that in connection with
     Private Scio's and/or Public Scio's acquisition of the assets of ADI and ADGC,
     Public Scio and/or Private Scio would issue warrants to buy Public Scio and/or
     Private Scio common stock at $0.01 per share to such stockholders that were
     accredited investors ("Warrants").

Edward S. Adams
April 23, 2015
Page 8

<u>Private Scio-Apollo Transaction</u>

18.     Documents provided to ADI and ADGC shareholders Concerning the Private
        Scio-Apollo Transaction.

19.     Communications (including, but not limited to e-mails) between ADI and ADGC,
        on the one hand, and their shareholders, on the other hand, Concerning the Private
        Scio-Apollo Transaction.

<u>Public Scio-Apollo Diamond Transaction</u>

20.     Documents provided to ADI and/or ADGC shareholders regarding the Public
        Scio-Apollo Diamond Transaction.

21.     Communications (including, but not limited to e-mails) between ADI and ADGC,
        on the one hand, and their shareholders, on the other hand, Concerning the Public
        Scio-Apollo Transaction.

<u>Agreements</u>

22.     For the time period of January 1, 2002 to the present, produce all Agreements
        between ADI, ADGC, Private Scio and/or Public Scio and:

        (a)     Edward Adams;
        (b)     Adams Monahan, LLP;
        (c)     Robert Linares;
        (d)     Bryant Linares;
        (e)     Any family member related to Robert Linares and/or Bryant Linares;
        (f)     Any entity in which Robert Linares and/or Bryant Linares had a direct or
                indirect financial interest;
        (g)     Any other entity owned, controlled, or operated by Edward Adams;
        (h)     RBE GEM Investment, LLC;
        (i)     ESA;
        (j)     New Englander LLC;
        (k)     DEB Holdings;
        (l)     ADR Investments LLC;
        (m)     Linnise Development Corporation;
        (n)     Linnise LC; and
        (o)     Imagemaker, Inc.

23.     Documents and Communications Concerning the Agreement under which Robert
        C. Linares and Bryant R. Linares directed ADI to advance $400,000 to Edward S.
        Adams.

24.     Documents and Communications Concerning the promissory note between Robert
        C. Linares, Bryant R. Linares, and Edward S. Adams, under which Edward S.

Edward S. Adams
April 23, 2015
Page 9

Adams agreed to pay Robert C. Linares and Bryant R. Linares $400,000
($200,000 each).

25.    Documents and Communications Concerning the Agreement between ADI and
       Edward S. Adams, dated January 2, 2012, in which ADI purchased all of Edward
       S. Adams' Equity Participation for the sum of $300,000.

26.    All Documents sufficient to show agreements and/or transactions, including
       promissory notes, loans, unpaid fees, and accrued by unpaid compensation
       between, (a) ADI or ADGC, on the one hand, and (b) Robert Linares, Bryant
       Linares, Martha Linares, Denise Adams, Edward S. Adams, Michael Monahan,
       Ronald C. Linares, Ronald Linares Jr., Adams Monahan, LLP, RBE GEM
       Investment, LLC, ESA, or any entity, trust, or partnership in which one of the
       individuals listed herein has a direct or indirect financial interest, on the other
       hand.

27.    Documents and Communications Concerning the Consulting Agreement, dated
       March 1, 2004, between Edward S. Adams (in his capacity as President of ESA)
       and ADI, and all services performed by Edward S. Adams under that Agreement.

Miscellaneous

28.    Documents sufficient to show the salary and other compensation received by all
       officers, executives, and directors, by year and job title for ADI and ADGC from
       January 1, 2009 to the present.

29.    Documents and Communications for the time period March 1, 2011 through
       December 31, 2012 Concerning ADI and/or ADGC missing diamond inventory or
       discrepancies in ADI's and/or ADGC's diamond inventory.

## SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## Supplemental Information for Persons Requested to Supply Information Voluntarily or Directed to Supply Information Pursuant to a Commission Subpoena

**A. False Statements and Documents**

Section 1001 of Title 18 of the United States Code provides as follows:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--
> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> (2) makes any materially false, fictitious, or fraudulent statement or representation; or
> (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;
> shall be fined under this title, imprisoned not more than 5 years . . . or both.

**B. Testimony**

If your testimony is taken, you should be aware of the following:

1. *Record*. Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's, direction.

2. *Counsel*. You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony if, during the testimony, you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned once to afford you the opportunity to arrange to be so accompanied, represented or advised.

You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3. *Transcript Availability*. Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

> A person who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of his testimony on payment of the appropriate fees: *Provided, however*, That in a nonpublic formal investigative proceeding the Commission may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4. *Perjury*. Section 1621 of Title 18 of the United States Code provides as follows:

> Whoever--
> (1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

SEC 1662 (09-14)

> (2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true;
>
> is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both.

5.   *Fifth Amendment and Voluntary Testimony*. Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6.   *Formal Order Availability*. If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

## C.  Submissions and Settlements

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

> Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation. Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding. Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

> In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner. It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto. Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

## D.  Freedom of Information Act

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA. That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received. If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self-addressed envelope.

## E.  Authority for Solicitation of Information

*Persons Directed to Supply Information Pursuant to Subpoena.* The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily.* One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

## F.  Effect of Not Supplying Information

*Persons Directed to Supply Information Pursuant to Subpoena.* If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, if the subpoena was issued pursuant to the Securities Exchange Act of 1934, the Investment Company Act of 1940, and/or the Investment Advisers Act of 1940, and if you, without just cause, fail or refuse to attend and testify, or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena, you may be found guilty of a misdemeanor and fined not more than $1,000 or imprisoned for a term of not more than one year, or both.

*Persons Requested to Supply Information Voluntarily.* There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

## G.  Principal Uses of Information

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

## H.  Routine Uses of Information

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1.  To appropriate agencies, entities, and persons when (a) it is suspected or confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the SEC has determined that, as a result of the suspected or confirmed compromise, there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the SEC or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the SEC's efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

2.  To other federal, state, local, or foreign law enforcement agencies; securities self-regulatory organizations; and foreign financial regulatory authorities to assist in or coordinate regulatory or law enforcement activities with the SEC.

3.  To national securities exchanges and national securities associations that are registered with the SEC, the Municipal Securities Rulemaking Board; the Securities Investor Protection Corporation; the Public Company Accounting Oversight Board; the federal banking authorities, including, but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation; state securities regulatory agencies or organizations; or regulatory authorities of a foreign government in connection with their regulatory or enforcement responsibilities.

4.  By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the federal securities laws.

5.  In any proceeding where the federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

6.  In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

7.  To a bar association, state accountancy board, or other federal, state, local, or foreign licensing or oversight authority; or professional association or self-regulatory authority to the extent that it performs similar functions (including the Public Company Accounting Oversight Board) for investigations or possible disciplinary action.

8.  To a federal, state, local, tribal, foreign, or international agency, if necessary to obtain information relevant to the SEC's decision concerning the hiring or retention of an employee; the issuance of a security clearance; the letting of a contract; or the issuance of a license, grant, or other benefit.

9.  To a federal, state, local, tribal, foreign, or international agency in response to its request for information concerning the hiring or retention of an employee; the issuance of a security clearance; the reporting of an investigation of an employee; the letting of a contract; or the issuance of a license, grant, or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

10.  To produce summary descriptive statistics and analytical studies, as a data source for management information, in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies; may also be used to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act.

11.  To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction, or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or pursuant to the Commission's Rules of Practice, 17 CFR 201.100 – 900 or the Commission's Rules of Fair Fund and Disgorgement Plans, 17 CFR 201.1100-1106, or otherwise, where such trustee, receiver, master, special counsel, or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the federal securities laws or the Commission's Rules of Practice or the Rules of Fair Fund and Disgorgement Plans.

12.  To any persons during the course of any inquiry, examination, or investigation conducted by the SEC's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

13.  To interns, grantees, experts, contractors, and others who have been engaged by the Commission to assist in the performance of a service related to this system of records and who need access to the records for the purpose of assisting the Commission in the efficient administration of its programs, including by performing clerical, stenographic, or data analysis functions, or by reproduction of records by electronic or other means. Recipients of these records shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a.

14.  In reports published by the Commission pursuant to authority granted in the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), which authority shall include, but not be limited to, section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78u(a)).

15.  To members of advisory committees that are created by the Commission or by Congress to render advice and recommendations to the Commission or to Congress, to be used solely in connection with their official designated functions.

16.  To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 to 200.735-18, and who assists in the investigation by the Commission of possible violations of the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the federal securities laws.

17.  To a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

18.  To members of Congress, the press, and the public in response to inquiries relating to particular Registrants and their activities, and other matters under the Commission's jurisdiction.

19.  To prepare and publish information relating to violations of the federal securities laws as provided in 15 U.S.C. 78c(a)(47)), as amended.

20.  To respond to subpoenas in any litigation or other proceeding.

21.  To a trustee in bankruptcy.

22.  To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection, including collection by administrative offset, federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

* * * * *

*Small Business Owners*: The SEC always welcomes comments on how it can better assist small businesses. If you would like more information, or have questions or comments about federal securities regulations as they affect small businesses, please contact the Office of Small Business Policy, in the SEC's Division of Corporation Finance, at 202-551-3460. If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR. The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.



# U.S. Securities and Exchange Commission

## Data Delivery Standards

This document describes the technical requirements for paper and electronic document productions to the U.S. Securities and Exchange Commission (SEC).   **Any proposed file formats other than those described below must be discussed with the legal and technical staff of the SEC Division of Enforcement prior to submission.**

General Instructions ..............................................................................................................1

Delivery Formats ...................................................................................  ...............................2

   I.   *Concordance®* Imaged Productions...................................................................2

       1.  Images ..................................................................................................2

       2.  *Concordance Image®*  or Opticon Cross-Reference File ...................2

       3.  *Concordance®* Data File............................................ ....................3

       4.  Text .....................................................................................................3

       5.  Linked Native Files .............................................................................3

   II.   Native File Productions without loadfiles.............................................................3

   III.   Adobe PDF File Productions……………………………………………….3

   IV.   Audio Files ..........................................................................................................4

   V.   Video Files ...........................................................................................................4

   VI.   Electronic Trade and Bank Records .....................................................................4

   VII.   Electronic Phone Records.....................................................................................4

## General Instructions

Electronic files must be produced in their native format, i.e., the format in which they are ordinarily used and maintained during the normal course of business. For example, an MS Excel file must be produced as an MS Excel file rather than an image of a spreadsheet. *(Note:  An Adobe PDF file is __not__ considered a native file unless the document was initially created as a PDF.)*

In the event produced files require the use of proprietary software not commonly found in the workplace, the SEC will explore other format options with the producing party.

The proposed use of file de-duplication methodologies or *computer-assisted review* or *technology-assisted review* (TAR) during the processing of documents must be discussed with and approved by the legal and technical staff of the Division of Enforcement (ENF).  If your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name, and, 2) make that unique metadata part of your production to the SEC.

General requirements for **ALL** document productions are:

1. A cover letter should be included with each production and include the following:
   a. A list of each piece of media included in the production with its unique production volume number
   b. A list of custodians, identifying the Bates range for each custodian.
   c. The time zone in which the emails were standardized during conversion.
2. Data can be produced on CD, DVD, thumb drive, etc., using the media requiring the least number of deliverables and labeled with the following:
   a. Case number
   b. Production date
   c. Producing party
   d. Bates range
3. All submissions must be organized by **custodian** unless otherwise instructed.
4. All document family groups, i.e. email attachments, embedded files, etc., should be produced together and children files should follow parent files sequentially in the Bates numbering.
5. All load-ready collections should include only one data load file and one image pointer file.
6. All load-ready text must be produced as separate text files.
7. All load-ready collections should account for custodians in the custodian field.
8. Audio files should be separated from data files if both are included in the production.
9. Only alphanumeric characters and the underscore character are permitted in file names and **folder names**. Special characters are not permitted.
10. All data productions must be produced using industry standard self-extracting encryption software.
11. Passwords for documents, files, compressed archives and encrypted media must be provided separately either via email or in a separate cover letter from the media.
12. All productions should be produced free of computer viruses.
13. Additional technical descriptions can be found in the addendum to this document.

   \*Please note that productions that come via United States Postal Service are subject to Mail Irradiation, as a result electronic productions may be damaged.\*

**Delivery Formats**

**I.** *Concordance®* Imaged **Productions**
The SEC prefers that all documents and data be produced in a structured format prepared for Concordance. All scanned paper electronic file collections should be converted to TIFF files, Bates numbered, and include fully searchable text files.

   **1. Images**
   a. Black and white images must be 300 DPI Group IV single-page TIFF files.
   b. Color images must be produced in JPEG format.
   b. File names cannot contain embedded spaces or special characters (including the comma).
   c. Folder names cannot contain embedded spaces or special characters (including the comma).
   d. All TIFF image files must have a unique file name, i.e. Bates number.
   e. Images must be endorsed with sequential Bates numbers in the lower right corner of each image.
   f. The number of TIFF files per folder should not exceed 500 files.
   g. Excel spreadsheets should have a placeholder image named by the Bates number of the file.
   h. AUTOCAD/photograph files should be produced as a single page JPEG file.

Rev 10/2014

2. **Concordance Image® OR Opticon Cross-Reference File**
   The image cross-reference file to link the images to the database should be a comma- delimited file consisting of seven fields per line with a line in the cross-reference file for every image in the database with the following format:

   *ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,Pag*

3. *Concordance® Data File*
   The data file (.DAT) contains all of the fielded information that will be loaded into the *Concordance®* database.

   a. The first line of the .DAT file must be a header row identifying the field names.
   b. The .DAT file must use the following *Concordance®* default delimiters:
      Comma ¶ ASCII character (020)
      Quote þ ASCII character (254)
   c. Date fields should be provided in the format: mm/dd/yyyy
   d. Date and time fields must be two separate fields.
   e. If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments.
   f. An OCRPATH field must be included to provide the file path and name of the extracted text file on the produced storage media. The text file must be named after the FIRSTBATES. Do not include the text in the .DAT file.
   g. For production with native files, a NATIVELINK field must be included to provide the file path and name of the native file on the produced storage media.
   h. BEGATT and ENDATT fields must be two separate fields.
   i. A complete list of metadata fields is available in **Addendum A** to this document.

4. **Text**
   Text must be produced as separate text files, not as fields within the .DAT file. The full path to the text file (OCRPATH) should be included in the .DAT file. We require document level ANSI text files, named per the FIRSTBATES/Image Key. (Please note in the cover letter if any non-ANSI text files are included in the production.) Extracted text must be in a separate folder, one text file per document. The number of files per folder should not exceed 500 files. There should be no special characters (including commas in the folder names). For redacted documents, provide the full text for the redacted version.

5. **Linked Native Files**
   Copies of original email and native file documents/attachments must be included for all electronic productions.
   a. Native file documents must be named per the FIRSTBATES number.
   b. The full path of the native file must be provided in the .DAT file for the LINK field.
   c. The number of native files per folder should not exceed 500 files.

II. **Native File Production without Loadfiles**
   With prior approval, native files may be produced without loadfiles. The files must be produced as they are maintained in the normal course of business and organized by custodian-named file folders. When approved, Outlook (.PST) and Lotus Notes (.NSF) email files may be produced in native file format. A separate folder should be provided for each custodian.

III. **Adobe PDF File Production**
   With prior approval, Adobe PDF files may be produced in native file format.
   1. PDF files should be produced in separate folders named by the custodian. The folders should not contain any special characters (including commas).
   2. All PDFs must be unitized at the document level, i.e., each PDF should represent a discrete document.
   3. All PDF files must contain embedded text that includes all discernible words within the document, not selected text or image only. This requires all layers of the PDF to be flattened first.
   4. If PDF files are Bates endorsed, the PDF files must be named by the Bates range.

Rev 10/2014

## IV.   Audio Files

Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™. Additionally, the call information (metadata) related to each audio recording MUST be provided. The metadata file must be produced in a delimited text format. Field names must be included in the first row of the text file. The metadata must include, at a minimum, the following fields:

| | | |
|---|---|---|
| 1) | Caller Name: | Caller's name or account/identification number |
| 2) | Originating Number: | Caller's phone number |
| 3) | Called Party Name: | Called party's name |
| 4) | Terminating Number: | Called party's phone number |
| 5) | Date: | Date of call |
| 6) | Time: | Time of call |
| 7) | Filename: | Filename of audio file |

## V.   Video Files

Video files must be produced in a format that is playable using Microsoft Windows Media Player™.

## VI.   Electronic Trade and Bank Records

When producing electronic trade and bank records, provide the files in one of the following formats:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

2. Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

## VII.   Electronic Phone Records

When producing electronic phone records, provide the files in the following format:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.  Data must be formatted in its native format (i.e. dates in a date format, numbers in an appropriate numerical format, and numbers with leading zeroes as text).

   a. The metadata that must be included is outline in **Addendum B** of this document. Each field of data must be loaded into a separate column.  For example, Date and Start_Time must be produced in separate columns and not combined into a single column containing both pieces of information.  Any fields of data that are provided in addition to those listed in **Addendum B** must also be loaded into separate columns.

## ADDENDUM A

The metadata of electronic document collections should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email<br>**The LASTBATES field should be populated for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email<br>**This PARENT_BATES field should be populated in each record representing an attachment "child" document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments<br>**The CHILD_BATES field should be populated in each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email:  mailbox where the email resided<br>Native: Individual from whom the document originated |
| FROM | John Smith | Email:  Sender<br>Native: Author(s) of document<br>**semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s)<br>**semi-colon should be used to separate multiple entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email<br>Native: Title of document (if available) |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent<br>Native: (empty) |
| TIME_SENT/TIME_ZONE | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which the emails were standardized during conversion.<br>Native: (empty)<br>**This data must be a separate field and cannot be combined with the DATE_SENT field; |
| TIME_ZONE | GMT | The time zone in which the emails were standardized during conversion.<br>Email: Time zone<br>Native: (empty) |

Rev 10/2014

| LINK | D:\001\EDC0000001.msg | Hyperlink to the email or native file document **The linked file must be named per the FIRSTBATES number |
|------|------------------------|----------------------|
| MIME_TYPE | MSG | The content type of an Email or native file document as identified/extracted from the header |
| FILE_EXTEN | MSG | The file type extension representing the Email or native file document; will vary depending on the email format |
| AUTHOR | John Smith | Email: (empty) Native: Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty) Native: Date the document was created |
| TIME_CREATED | 10:25 AM | Email: (empty) Native: Time the document was created **This data must be a separate field and cannot be combined with the DATE_CREATED field |
| DATE_MOD | 10/12/2010 | Email: (empty) Native: Date the document was last modified |
| TIME_MOD | 07:00 PM | Email: (empty) Native: Time the document was last modified **This data must be a separate field and cannot be combined with the DATE_MOD field |
| DATE_ACCESSD | 10/12/2010 | Email: (empty) Native: Date the document was last accessed |
| TIME_ACCESSD | 07:00 PM | Email: (empty) Native: Time the document was last accessed **This data must be a separate field and cannot be combined with the DATE_ACCESSD field |
| PRINTED_DATE | 10/12/2010 | Email: (empty) Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty) Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name. Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb8306d1@MSN> | Email: Unique Message ID Native: (empty) |
| MD5HASH | d131dd02c5e6eec4693d9a0698aff95c 2fcab58712467eab4004583eb8fb7f89 | MD5 Hash value of the document. |
| OCRPATH | TEXT/001/EDC0000001.txt | Path to extracted text of the native file |

Sample Image Loadfile:

```
IMG0000001,,E:\001\IMG0000001.TIF,Y,,,
IMG0000002,,E:\001\IMG0000002.TIF,,,,
IMG0000003,,E:\001\IMG0000003.TIF,,,,
IMG0000004,,E:\001\IMG0000003.TIF,Y,,,
IMG0000005,,E:\001\IMG0000003.TIF,Y,,,
IMG0000006,,E:\001\IMG0000003.TIF,,,,
```

# ADDENDUM B

For Electronic Phone Records, include the following fields in separate columns:

For Calls:

1) Account Number
2) Connection Date – Date the call was received or made
3) Connection Time – Time call was received or made
4) Seizure Time – Time it took for the call to be placed in seconds
5) Originating Number – Phone that placed the call
6) Terminating Number – Phone that received the call
7) Elapsed Time – The length of time the call lasted, preferably in seconds
8) End Time – The time the call ended
9) Number Dialed – Actual number dialed
10) IMEI Originating – Unique id to phone used to make call
11) IMEI Terminating – Unique id to phone used to receive call
12) IMSI Originating – Unique id to phone used to make call
13) IMSI Terminating – Unique id to phone used to receive call
14) Call Codes – Identify call direction or other routing information
15) Time Zone – Time Zone in which the call was received or placed, if applicable


For Text messages:

1) Account Number
2) Connection Date – Date the text was received or made
3) Connection Time – Time text was received or made
4) Originating Number – Who placed the text
5) Terminating Number – Who received the text
6) IMEI Originating – Unique id to phone used to make text
7) IMEI Terminating – Unique id to phone used to receive text
8) IMSI Originating - Unique id to phone used to make text
9) IMSI Terminating- Unique id to phone used to receive text
10) Text Code – Identify text direction, or other text routing information
11) Text Type Code – Type of text message (sent SMS, MMS, or other)
12) Time Zone – Time Zone in which the call was received or placed, if applicable


For Mobile Data Usage:

1) Account Number
2) Connection Date – Date the data was received or made
3) Connection Time – Time data was received or made
4) Originating number – Number that used data
5) IMEI Originating – Unique id of phone that used data
6) IMSI Originating - Unique id of phone that used data
7) Data or Data codes – Identify data direction, or other data routing information
8) Time Zone – Time Zone in which the call was received or placed, if applicable

Rev 10/2014

# EXHIBIT 4

*U.S. v. Adams*

**Excerpt of Relativity Activity Log:**

*In Camera*  **Ex. A (Doc. IDs 00210651 and 00210652)**

| Name | Action | Object Type | User Name | Timestamp | Details |
|------|--------|-------------|-----------|-----------|---------|
| 00210652 | View | Document | Maria, David | 5/4/2016 2:58:41 PM EDT | |
| 00210651 | View | Document | Maria, David | 5/4/2016 3:00:14 PM EDT | |
| 00210652 | View | Document | Maria, David | 5/4/2016 3:00:45 PM EDT | |
| 00210652 | View | Document | Maria, David | 5/4/2016 3:02:39 PM EDT | |
| 00210652 | View | Document | Maria, David | 5/4/2016 3:04:37 PM EDT | |
| 00210652 | View | Document | Maria, David | 5/4/2016 3:09:03 PM EDT | |
| 00210652 | View | Document | Maria, David | 5/4/2016 3:27:23 PM EDT | |
| 00210652 | View | Document | Maria, David | 5/4/2016 4:47:33 PM EDT | |
| 00210652 | View | Document | Maria, David | 6/6/2016 11:13:19 AM EDT | |
| 00210652 | View | Document | Maria, David | 8/30/2016 2:42:21 PM EDT | |
| 00210652 | View | Document | Maria, David | 9/16/2016 12:49:46 PM EDT | |
| 00210652 | View | Document | Maria, David | 9/23/2016 9:48:12 AM EDT | |

Excerpt of Relativity Activity Log:
*In Camera* Ex. D (draft email to Latham)

| Name | Action | Object Type | User Name | Timestamp | Details |
|------|--------|-------------|-----------|-----------|---------|
| 00253676 | View | Document | Maria, David | 9/6/2016 1:30:31 PM EDT | |
| 00253677 | View | Document | Maria, David | 9/6/2016 1:30:46 PM EDT | |
| 00253678 | View | Document | Maria, David | 9/6/2016 1:30:48 PM EDT | |
| 00253679 | View | Document | Maria, David | 9/6/2016 1:30:59 PM EDT | |
| 00253680 | View | Document | Maria, David | 9/6/2016 1:31:02 PM EDT | |
| 00253681 | View | Document | Maria, David | 9/6/2016 1:31:04 PM EDT | |
| 00253682 | View | Document | Maria, David | 9/6/2016 1:31:08 PM EDT | |
| 00253683 | View | Document | Maria, David | 9/6/2016 1:31:10 PM EDT | |
| 00253684 | View | Document | Maria, David | 9/6/2016 1:31:12 PM EDT | |
| 00253685 | View | Document | Maria, David | 9/6/2016 1:31:18 PM EDT | |
| 00253686 | View | Document | Maria, David | 9/6/2016 1:31:19 PM EDT | |
| 00253687 | View | Document | Maria, David | 9/6/2016 1:31:20 PM EDT | |

Excerpt of Relativity Activity Log:
*In Camera*  Ex. G (draft analysis for Latham)

| Name | Action | Object Type | User Name | Timestamp | Details |
|------|--------|-------------|-----------|-----------|---------|
| 00252459 | View | Document | Kroells, Christine | 5/17/2016 2:40:15 PM EDT | |
| 00252458 | View | Document | Kroells, Christine | 5/17/2016 2:40:34 PM EDT | |
| 00252458 | Print | Document | Kroells, Christine | 5/17/2016 2:40:43 PM EDT | <Message><![CDATA[The print dialog box was invoked for Viewer.]]></Message> |
| 00252458 | Print | Document | Kroells, Christine | 5/17/2016 2:40:58 PM EDT | <auditElement><printDetails><printRange>1-1</printRange><printerName><![CDATA[HP LaserJet 4250 PCL 5]]></printerName><setOrder>0</setOrder><printAnnotations>True</printAnnotations><printRedactions>True</printRedactions><stampIdentifier>None</stampIdentifier><slipSheet>none</slipSheet></printDetails></auditElement> |
| 00252459 | View | Document | Kroells, Christine | 5/17/2016 2:41:02 PM EDT | |
| 00252459 | View | Document | Kroells, Christine | 5/17/2016 2:43:10 PM EDT | |

**Excerpt of Relativity Activity Log:**

***In Camera*** **Ex. J (Doc. IDs 00219514 and 00219515)**

| Name | Action | Object Type | User Name | Timestamp | Details |
|---|---|---|---|---|---|
| 00219515 | View | Document | Maria, David | 5/5/2016 11:08:32 AM EDT | |
| 00219515 | Update | Document | Maria, David | 5/5/2016 11:09:12 AM EDT | &lt;auditElement&gt;&lt;field id="1036719" type="8" name="PRIVILEGE" formatstring=""&gt;&lt;setChoice&gt;1036722&lt;/setChoice&gt;&lt;/field&gt;&lt;/auditElement&gt; |
| 00219515 | View | Document | Kroells, Christine | 5/11/2016 3:48:30 PM EDT | |
| 00219515 | View | Document | Kroells, Christine | 5/11/2016 3:57:16 PM EDT | |
| 00219515 | View | Document | Kroells, Christine | 5/11/2016 3:57:22 PM EDT | |
| 00219514 | View | Document | Kroells, Christine | 5/11/2016 3:57:25 PM EDT | |
| 00219515 | View | Document | Kroells, Christine | 5/11/2016 3:57:51 PM EDT | |

*U.S. v. Adams*

**Excerpt of Relativity Activity Log:**

**In Camera Ex. K (Doc. IDs 00224301 and 00224302)**

| Name | Action | Object Type | User Name | Timestamp | Details |
|------|--------|-------------|-----------|-----------|---------|
| 00224302 | View | Document | Maria, David | 5/4/2016 3:49:13 PM EDT | |
| 00224302 | View | Document | Maria, David | 5/4/2016 3:51:00 PM EDT | |
| 00224301 | View | Document | Maria, David | 5/4/2016 3:52:42 PM EDT | |
| 00224302 | View | Document | Maria, David | 5/4/2016 3:54:01 PM EDT | |
| 00224302 | View | Document | Maria, David | 5/4/2016 4:48:18 PM EDT | |
| 00224302 | View | Document | Maria, David | 5/9/2016 5:03:05 PM EDT | |
| 00224302 | View | Document | Maria, David | 6/6/2016 11:13:26 AM EDT | |

**Excerpt of Relativity Activity Log:**
**In Camera Ex. L (Doc. IDs 00221001, 00221002, and 00221003)**

| Name | Action | Object Type | User Name | Timestamp | Details |
|------|--------|-------------|-----------|-----------|---------|
| 00221001 | View | Document | Maria, David | 5/4/2016 3:07:17 PM EDT | |
| 00221003 | View | Document | Maria, David | 5/4/2016 3:09:09 PM EDT | |
| 00221003 | View | Document | Maria, David | 5/4/2016 3:27:34 PM EDT | |
| 00221002 | View | Document | Maria, David | 5/4/2016 4:39:10 PM EDT | |
| 00221002 | View | Document | Kroells, Christine | 5/12/2016 4:54:58 PM EDT | |

*U.S. v. Adams*

**Excerpt of Relativity Activity Log:**
***In Camera*** **Ex. M (Doc. ID 00224366)**

| Name | Action | Object Type | User Name | Timestamp | Details |
|------|--------|-------------|-----------|-----------|---------|
| 00224366 | View | Document | Maria, David | 5/4/2016 3:02:48 PM EDT | |
| 00224366 | Print | Document | Maria, David | 5/4/2016 3:04:21 PM EDT | <Message><![CDATA[The print dialog box was invoked for Viewer.]]></Message> |
| 00224366 | View | Document | Maria, David | 5/4/2016 3:04:44 PM EDT | |
| 00224366 | View | Document | Maria, David | 5/4/2016 3:54:09 PM EDT | |
| 00224366 | View | Document | Maria, David | 9/7/2016 1:05:48 PM EDT | |
| 00224366 | View | Document | Maria, David | 9/23/2016 9:49:01 AM EDT | |
| 00224366 | View | Document | Maria, David | 1/23/2017 10:22:29 AM EST | |
| 00224366 | Conversion Complete | Document | Maria, David | 1/23/2017 10:22:32 AM EST | <auditElement><runAuditId>2037299</runAuditId></auditElement> |

**Excerpt of Relativity Activity Log:**

*In Camera* **Ex. N (Doc. ID 00224368)**

| Name | Action | Object Type | User Name | Timestamp | Details |
|---|---|---|---|---|---|
| 00224368 | View | Document | Maria, David | 5/4/2016 3:54:11 PM EDT | |
| 00224368 | Print | Document | Maria, David | 5/4/2016 3:55:02 PM EDT | <Message><![CDATA[The print dialog box was invoked for Viewer.]]></Message> |
| 00224368 | View | Document | Maria, David | 9/7/2016 1:05:50 PM EDT | |
| 00224368 | View | Document | Maria, David | 9/23/2016 9:49:13 AM EDT | |
| 00224368 | Conversion Complete | Document | Maria, David | 1/23/2017 10:22:33 AM EST | <auditElement><runAuditId>2037300</runAuditId></auditElement> |

**Excerpt of Relativity Activity Log:**

*In Camera*  Ex. O (Doc. ID 00224409)

| Name | Action | Object Type | User Name | Timestamp | Details |
|------|--------|-------------|-----------|-----------|---------|
| 00224409 | View | Document | Maria, David | 5/4/2016 3:55:49 PM EDT | |
| 00224409 | View | Document | Maria, David | 9/7/2016 1:05:53 PM EDT | |
| 00224409 | View | Document | Maria, David | 9/23/2016 9:49:27 AM EDT | |
| 00224409 | Conversion Complete | Document | Maria, David | 1/23/2017 10:22:33 AM EST | <auditElement><runAuditId>2037300</runAuditId></auditElement> |

**Excerpt of Relativity Activity Log:**

*In Camera*  **Ex. P (Doc. ID 00224497)**

| Name | Action | Object Type | User Name | Timestamp | Details |
|---|---|---|---|---|---|
| 00224497 | View | Document | Maria, David | 5/4/2016 3:55:54 PM EDT | |
| 00224497 | View | Document | Maria, David | 9/7/2016 1:05:55 PM EDT | |
| 00224497 | View | Document | Maria, David | 9/23/2016 9:49:31 AM EDT | |
| 00224497 | Conversion Complete | Document | Maria, David | 1/23/2017 10:22:34 AM EST | &lt;auditElement&gt;&lt;runAuditId&gt;2037300&lt;/runAuditId&gt;&lt;/auditElement&gt; |

U.S. v. Adams

CASE 0:17-cr-00064-DWF-KMM  Document 142  Filed 06/01/18  Page 66 of 136
Excerpt of Relativity Activity Log:
*In Camera* Ex. R (Doc. IDs 00224269 and 00224270)

| Name | Action | Object Type | User Name | Timestamp | Details |
|------|--------|-------------|-----------|-----------|---------|
| 00224270 | View | Document | Maria, David | 5/4/2016 3:27:42 PM EDT | |
| 00224269 | View | Document | Maria, David | 5/4/2016 3:29:39 PM EDT | |
| 00224269 | View | Document | Maria, David | 5/4/2016 3:30:51 PM EDT | |
| 00224270 | View | Document | Maria, David | 5/4/2016 3:48:43 PM EDT | |
| 00224270 | View | Document | Maria, David | 5/4/2016 3:49:41 PM EDT | |
| 00224269 | View | Document | Maria, David | 5/4/2016 3:49:47 PM EDT | |
| 00224270 | View | Document | Maria, David | 5/4/2016 3:50:53 PM EDT | |
| 00224270 | View | Document | Maria, David | 5/4/2016 4:47:37 PM EDT | |
| 00224269 | View | Document | Maria, David | 5/4/2016 4:47:48 PM EDT | |
| 00224270 | View | Document | Maria, David | 5/4/2016 4:47:59 PM EDT | |
| 00224270 | View | Document | Maria, David | 5/5/2016 4:48:08 PM EDT | |
| 00224270 | View | Document | Maria, David | 5/25/2016 12:27:30 PM EDT | |
| 00224270 | View | Document | Maria, David | 6/6/2016 11:11:49 AM EDT | |
| 00224270 | View | Document | Maria, David | 6/6/2016 11:13:24 AM EDT | |
| 00224269 | View | Document | Maria, David | 9/7/2016 1:01:17 PM EDT | |
| 00224270 | View | Document | Maria, David | 9/16/2016 12:49:53 PM EDT | |
| 00224270 | View | Document | Maria, David | 9/23/2016 9:48:57 AM EDT | |
| 00224270 | View | Document | Maria, David | 10/6/2016 4:33:00 PM EDT | |
| 00224269 | View | Document | Maria, David | 12/6/2016 11:26:13 AM EST | |
| 00224269 | View | Document | Kroells, Christine | 4/27/2017 2:09:18 PM EDT | |
| 00224269 | View | Document | Kroells, Christine | 4/27/2017 2:22:50 PM EDT | |
| 00224270 | View | Document | Kroells, Christine | 4/27/2017 2:22:58 PM EDT | |

*U.S. v. Adams*

**Excerpt of Relativity Activity Log:**
*In Camera* **Ex. S (Doc. ID 00224725)**

| Name | Action | Object Type | User Name | Timestamp | Details |
|---|---|---|---|---|---|
| 00224725 | View | Document | Maria, David | 9/7/2016 1:10:33 PM EDT | |
| 00224725 | View | Document | Maria, David | 9/7/2016 1:17:29 PM EDT | |

*U.S. v. Adams*

**Excerpt of Relativity Activity Log:**

***In Camera*  Ex. T (Doc. ID 00224879)**

| Name | Action | Object Type | User Name | Timestamp | Details |
|---|---|---|---|---|---|
| 00224879 | View | Document | Maria, David | 9/7/2016 1:17:16 PM EDT | |
| 00224879 | View | Document | Maria, David | 9/7/2016 1:17:22 PM EDT | |
| 00224879 | View | Document | Maria, David | 9/7/2016 1:17:32 PM EDT | |

U.S. v. Adams

*In Camera* Ex. U (certain communications with Mr. Hartman)

| Name | Action | Object Type | User Name | Timestamp | Details |
|------|--------|-------------|-----------|-----------|---------|
| 00447095 | View | Document | Maria, David | 5/24/2016 10:14:23 AM EDT | |
| 00447097 | View | Document | Maria, David | 5/24/2016 10:14:26 AM EDT | |
| 00447095 | View | Document | Maria, David | 5/24/2016 10:14:29 AM EDT | |
| 00447095 | View | Document | Kroells, Christine | 5/25/2016 5:09:45 PM EDT | |
| 00447097 | View | Document | Kroells, Christine | 5/25/2016 5:11:48 PM EDT | |
| 00447099 | View | Document | Kroells, Christine | 5/25/2016 5:12:00 PM EDT | |
| 00048044 | View | Document | Kroells, Christine | 5/25/2016 5:14:05 PM EDT | |
| 00048045 | View | Document | Kroells, Christine | 5/25/2016 5:14:51 PM EDT | |
| 00447124 | View | Document | Kroells, Christine | 5/25/2016 5:15:29 PM EDT | |
| 00447125 | View | Document | Kroells, Christine | 5/25/2016 5:15:31 PM EDT | |
| 00447126 | View | Document | Kroells, Christine | 5/25/2016 5:15:33 PM EDT | |
| 00447128 | View | Document | Kroells, Christine | 5/25/2016 5:15:35 PM EDT | |
| 00447130 | View | Document | Kroells, Christine | 5/25/2016 5:15:38 PM EDT | |
| 00447156 | View | Document | Kroells, Christine | 5/25/2016 5:15:51 PM EDT | |
| 00447157 | View | Document | Kroells, Christine | 5/25/2016 5:15:54 PM EDT | |
| 00447169 | View | Document | Kroells, Christine | 5/25/2016 5:15:56 PM EDT | |
| 00447172 | View | Document | Kroells, Christine | 5/25/2016 5:15:56 PM EDT | |
| 00447175 | View | Document | Kroells, Christine | 5/25/2016 5:15:57 PM EDT | |
| 00447160 | View | Document | Kroells, Christine | 5/25/2016 5:16:05 PM EDT | |
| 00051832 | View | Document | Kroells, Christine | 5/31/2016 11:34:15 AM EDT | |
| 00051833 | View | Document | Kroells, Christine | 5/31/2016 11:34:55 AM EDT | |
| 00051841 | View | Document | Kroells, Christine | 5/31/2016 11:35:07 AM EDT | |
| 00051832 | View | Document | Kroells, Christine | 5/31/2016 12:16:17 PM EDT | |
| 00051833 | View | Document | Kroells, Christine | 5/31/2016 12:16:23 PM EDT | |
| 00051841 | View | Document | Kroells, Christine | 5/31/2016 12:16:26 PM EDT | |
| 00447099 | View | Document | Kroells, Christine | 6/28/2016 10:55:11 AM EDT | |
| 00447095 | View | Document | Kroells, Christine | 12/13/2016 4:24:17 PM EST | |
| 00447097 | View | Document | Kroells, Christine | 12/13/2016 4:24:32 PM EST | |
| 00447099 | View | Document | Kroells, Christine | 12/13/2016 4:24:40 PM EST | |
| 00447156 | View | Document | Kroells, Christine | 12/13/2016 4:25:25 PM EST | |
| 00447156 | View | Document | Kroells, Christine | 12/13/2016 4:53:40 PM EST | |
| 00447156 | View | Document | Kroells, Christine | 12/13/2016 4:53:58 PM EST | |
| 00048045 | View | Document | Kroells, Christine | 12/13/2016 4:58:20 PM EST | |
| 00447126 | View | Document | Kroells, Christine | 12/13/2016 4:58:56 PM EST | |

| 00447156 | View | Document | Kroells, Christine | 12/13/2016 4:59:14 PM EST | |

*U.S. v. Adams*

**Excerpt of Relativity Activity Log: Hartman Search and View Example**

| Name | Action | Object Type | User Name | Timestamp | Details |
|---|---|---|---|---|---|
| LTSC Loading - All Standard Fields | Document Query | View | Kroells, Christine | 5/31/2016 11:30:35 AM EDT | <auditElement><QueryText>/* &lt;Comments&gt;  &lt;ArtifactID&gt;1036689&lt;/ArtifactID&gt; &lt;ArtifactTypeID&gt;10&lt;/ArtifactTypeID&gt;  &lt;UserID&gt;1038246&lt;/UserID&gt; &lt;WorkspaceID&gt;1123952&lt;/WorkspaceID&gt;  &lt;QueryType&gt;IdList&lt;/QueryType&gt; &lt;QuerySource&gt;View or Search&lt;/QuerySource&gt; &lt;/Comments&gt; */  SET NOCOUNT ON ;WITH [SEARCHTABLE_1] AS (SELECT [Key], [RANK] FROM CONTAINSTABLE([Document],([ControlNumber],[ExtractedText],[BegAtt],[ATTACHMENTS],[ATTORNEYNOTES],[AUTHOR],[BCC],[CC],[CUSTODIAN],[DOCEXT],[DOCTITLE],[HEADERDOCTYPE],[FILENAME],[FROM],[PROPERTIES_CATEGORY],[PROPERTIES_COMMENTS],[PROPERTIES_COMPANY],[PROPERTIES_**KEYWORDS**],[SUBJECT],[TO]),'**"ed" AND "settlement" AND "lawsuit"**')) SELECT TOP 1000 [Document].[ArtifactID], CAST([SEARCHTABLE_1].[Rank] AS FLOAT) AS [Rank]  FROM [Document] (NOLOCK) LEFT JOIN [SEARCHTABLE_1] ON  [SEARCHTABLE_1].[Key] = [Document].[ArtifactID] WHERE [SEARCHTABLE_1].[RANK] &gt;= 1 AND [Document].[AccessControlListID_D] IN (1) ORDER BY  [Document].[DATE_CREATED] ,[Document].[ControlNumber] , [Document].[ArtifactID]   ------------------- -- records returned: 225 ------------------- </QueryText><Milliseconds>109</Milliseconds><searchTableReplacements><R1>CONTAINSTABLE([Document],([ControlNumber],[ExtractedText],[BegAtt],[ATTACHMENTS],[ATTORNEYNOTES],[AUTHOR],[BCC],[CC],[CUSTODIAN],[DOCEXT],[DOCTITLE],[HEADERDOCTYPE],[FILENAME],[FROM],[PROPERTIES_CATEGORY],[PROPERTIES_COMMENTS],[PROPERTIES_COMPANY],[PROPERTIES_KEYWORDS],[SUBJECT],[TO]),'"ed" AND "settlement" AND "lawsuit" ) = CONTAINSTABLE([Document],([ControlNumber],[ExtractedText],[BegAtt],[ATTACHMENTS],[ATTORNEYNOTES],[AUTHOR],[BCC],[CC],[CUSTODIAN],[DOCEXT],[DOCTITLE],[HEADERDOCTYPE],[FILENAME],[FROM],[PROPERTIES_CATEGORY],[PROPERTIES_COMMENTS],[PROPERTIES_COMPANY],[PROPERTIES_KEYWORDS],[SUBJECT],[TO]),'"ed" AND "settlement" AND "lawsuit"')</R1></searchTableReplacements></auditElement> |
| ... | ... | ... | ... | ... | ... |
| 00051841 | View | Document | Kroells, Christine | 5/31/2016 11:35:07 AM EDT | |
| ... | ... | ... | ... | ... | ... |

*U.S. v. Adams*

**Excerpt of Relativity Activity Log: Hartman Search and View Example**

| | | | | | |
|---|---|---|---|---|---|
| LTSC Loading - All Standard Fields | Document Query | View | Kroells, Christine | 5/31/2016 12:16:11 PM EDT | <auditElement><QueryText>/* &lt;Comments&gt;   &lt;ArtifactID&gt;1036689&lt;/ArtifactID&gt; &lt;ArtifactTypeID&gt;10&lt;/ArtifactTypeID&gt;   &lt;UserID&gt;1038246&lt;/UserID&gt; &lt;WorkspaceID&gt;1123952&lt;/WorkspaceID&gt;   &lt;QueryType&gt;IdList&lt;/QueryType&gt; &lt;QuerySource&gt;View or Search&lt;/QuerySource&gt; &lt;/Comments&gt; */  SET NOCOUNT ON ;WITH [SEARCHTABLE_1] AS (SELECT [Key], [RANK] FROM CONTAINSTABLE([Document],([ControlNumber],[ExtractedText],[BegAtt],[ATTACHMENTS],[ATTORNEYNOTES],[AUTHOR],[BCC],[CC],[CUSTODIAN],[DOCEXT],[DOCTITLE],[HEADERDOCTYPE],[FILENAME],[FROM],[PROPERTIES_CATEGORY],[PROPERTIES_COMMENTS],[PROPERTIES_COMPANY],[PROPERTIES_**KEYWORDS**],[SUBJECT],[TO]),'"**bribe**"')) SELECT TOP 1000 [Document].[ArtifactID], CAST([SEARCHTABLE_1].[Rank] AS FLOAT) AS [Rank]  FROM [Document] (NOLOCK) LEFT JOIN [SEARCHTABLE_1] ON  [SEARCHTABLE_1].[Key] = [Document].[ArtifactID] WHERE [SEARCHTABLE_1].[RANK] &gt;= 1 AND [Document].[AccessControlListID_D] IN (1) ORDER BY [Document].[ControlNumber] , [Document].[ArtifactID]    ------------------ -- records returned: 11 ------------------<br><br></QueryText><Milliseconds>78</Milliseconds><searchTableReplacements><R1>CONTAINSTABLE([Document],([ControlNumber],[ExtractedText],[BegAtt],[ATTACHMENTS],[ATTORNEYNOTES],[AUTHOR],[BCC],[CC],[CUSTODIAN],[DOCEXT],[DOCTITLE],[HEADERDOCTYPE],[FILENAME],[FROM],[PROPERTIES_CATEGORY],[PROPERTIES_COMMENTS],[PROPERTIES_COMPANY],[PROPERTIES_KEYWORDS],[SUBJECT],[TO]),'"bribe"') = CONTAINSTABLE([Document],([ControlNumber],[ExtractedText],[BegAtt],[ATTACHMENTS],[ATTORNEYNOTES],[AUTHOR],[BCC],[CC],[CUSTODIAN],[DOCEXT],[DOCTITLE],[HEADERDOCTYPE],[FILENAME],[FROM],[PROPERTIES_CATEGORY],[PROPERTIES_COMMENTS],[PROPERTIES_COMPANY],[PROPERTIES_KEYWORDS],[SUBJECT],[TO]),'"bribe"')</R1></searchTableReplacements></auditElement> |
| ... | ... | ... | ... | ... | ... |
| 00051841 | View | Document | Kroells, Christine | 5/31/2016 12:16:26 PM EDT | |

# EXHIBIT 5



*Logout*

## [Not Virus Scanned] [Not Virus Scanned] Adams: additional requested information

**From:**   Ann.Bildtsen@usdoj.gov
**To:**     LWade@wc.com, GMaier@wc.com
**Cc:**
**Sent:**   2/2/2018 5:27:10 PM

**Attachments:**   📄 2008 Amended Adams.pdf   📄 2009 Amended Adams.pdf
📄 2010 Amended Adams.pdf   📄 MN Rev Correspondence dated 8-24-11.pdf
📄 MN Rev Correspondence dated 10-11-11.pdf   📄 Embedded email.pdf
📄 2007 Amended Adams.pdf

This message has not been virus scanned because it contains encrypted or otherwise protected data. Please ensure you know who the message is coming from and that it is virus scanned by your desktop antivirus software.
This message has not been virus scanned because it contains encrypted or otherwise protected data. Please ensure you know who the message is coming from and that it is virus scanned by your desktop antivirus software.

Lance and Gloria:

I understand that you requested the dates the prosecution team provided certain information to Criminal Investigator Brandon Belich in this matter.  I can provide the following:

1)  On 1/5/18 I produced to you a pdf file titled "1.31.09 email".  Postal Inspector Kroells provided this email to Belich on 3/15/16.
2)  On 1/5/18 I produced to you a pdf file titled "1.30.09 emails".  Postal Inspector Kroells provided these emails to Belich on 3/15/16.
3)  On 1/5/18 I produced to you a pdf file titled "Additional 21 pages #1".  AUSA David Maria provided this information to Belich on the following dates:
    a.  Page 1:  5/5/16
    b.  Pages 2-3:  10/11/16
    c.  Pages 4-7:  5/25/16
    d.  Pages 8-11:  1/20/17
    e.  Pages 12-22:  9/7/16.

Finally, I attach 7 additional pdfs.  AUSA Maria provided these materials to Belich on 9/7/16.  I redacted a portion of the file titled "Embedded email" containing AUSA Maria's correspondence to Belich.

I am not copying the prosecution team on this email, but will share with them the cover email without the attachments.

I am sending this email securely.  Please let me know if you have any questions.  Thank you.

**Ann M. Bildtsen | Assistant United States Attorney**

**Deputy Civil Chief**                                                                 Logout

U.S. Attorney's Office  |  District of Minnesota

600 U.S. Courthouse  |  300 South Fourth Street  |  Minneapolis, MN 55415

T:  612.664.5615  |  F:  612.664.5788

ann.bildtsen@usdoj.gov

# EXHIBIT 6

**From:** Maria, David (USAMN) 1 [mailto:David.Maria@usdoj.gov]
**Sent:** Thursday, February 22, 2018 1:21 PM
**To:** Wade, Lance <LWade@wc.com>; Maier, Gloria <GMaier@wc.com>
**Cc:** Rank, Timothy (USAMN) <Timothy.Rank@usdoj.gov>; Kokkinen, John (USAMN) <John.Kokkinen@usdoj.gov>
**Subject:** RE: U.S. v. Adams

Lance—

Our responses are below.  Let me know if you have any questions or if there is anything that we need to discuss.

David

**From:** Wade, Lance [mailto:LWade@wc.com]
**Sent:** Wednesday, February 07, 2018 4:00 PM
**To:** Maria, David (USAMN) 1 <dmaria1@usa.doj.gov>
**Cc:** Maier, Gloria <GMaier@wc.com>; Rank, Timothy (USAMN) <TRank@usa.doj.gov>; Kokkinen, John (USAMN) <jkokkinen@usa.doj.gov>; Wade, Lance <LWade@wc.com>
**Subject:** RE: U.S. v. Adams

David:

This responds to your email below relating to post-hearing discovery.  In it, you identified three follow-up items.  We will first respond to questions regarding those items, then identify the other discovery issues we discussed in our post-hearing calls and our understanding of the status of those requests, and, finally, we will make one additional request – which I believe was made to David Maclaughlin previously, but I want to make sure it is documented here.

**Questions/Comments on Items You Identified**

1. **List of documents viewed in Relativity (by document number)**;

   a. ADAMS RESPONSE: We did agree that you would provide us with a list, which we received.  However, (as noted below), we understood that you were providing us with an unredacted

database activity log, which we have not received.

As you note, we have now provided you with a list of all documents viewed in the database.  We do not plan on providing an unredacted database activity log.

2. **Provide the dates that emails from the Relativity database were sent to Brandon Belich**;

   a. ADAMS RESPONSE: we received materials from Ann Bildtsen. Thank you for the response.  We asked for the transmittal emails themselves, but you have refused to produce them.

   We do not plan on providing the transmittal emails.

3. **Determine (by Taint Team, if necessary) if any Jencks material relating to Brandon Belich's testimony at the hearing exists in any IRS Special Agent Report ("SAR").**

   a. GOVERNMENT POSITION:  "Brandon Belich was not the agent who submitted the SAR to DOJ Tax in this matter, so there exists no Jencks material relating to this request."

   b. ADAMS RESPONSE:  Whether or not IRS Special Agent Belich was the one who "submitted" the report, if he prepared portions of the SAR (we believe he testified he did), it includes his statements.  Those statements, and emails or word documents that reflect sections of the SAR he wrote would similarly include his statements.  Moreover, if the SAR discusses Yahoo-derived evidence, it is also Brady.  Have materials of this kind been analyzed for Jencks and Brady purposes?

   As noted, the SAR was signed and submitted by Special Agent Marcus Lane, and, accordingly, any "statements" for the purpose of Jencks would be his.  If Agent Lane testifies at trial, we will disclose his SAR to you.  We are unaware of any authority to support your assertion above that any input that Belich may have had into the SAR before he left would constitute his "statement" for Jencks/3500 purposes.  To the contrary, as Agent Belich left well before the completion of the SAR, even if he was involved in the preparation of portions

of the SAR, any such "statements" were not "signed or otherwise adopted or approved by him."  *See* 18 U.S.C. § 3500(e)(1).  As to your Brady assertion, it is unclear to us how a discussion of "Yahoo-derived evidence" could be could be exculpatory in any way or could otherwise fall under Brady.  That being said, to the extent there is any actual Brady material in the SAR, it will be disclosed to you.

## Additional Items Discussed, But Not Addressed in Your Correspondence

### 4. Yahoo emails shown to witnesses during interviews

a. ADAMS UNDERSTANDING: It was our understanding that you agreed to produce, through the taint team, any Yahoo emails that were shown to witnesses during interviews.  We asked you to identify which documents were shown to which witnesses.  You refused to identify the witnesses who were shown the documents, but agreed to give us the document ID numbers and the dates they were shown to witnesses.

We are reviewing our reports of interviews, and, to the extent that they append or reference documents that were shown to witnesses, we will identify those documents for you (by document number).  As we discussed earlier though, we cannot represent that this will be a comprehensive list of all documents that were shown to witnesses, because, if the agent drafting the interview report did not include such information, we would have no way of knowing with any certainty which, if any, documents were shown.  (Having not reviewed interview reports in quite some time, I do not know one way or another how many reports reference documents.)

### 5. Jencks Statements/302s

a. ADAMS UNDERSTANDING: We reiterated our request that you disclose these materials now as they likely contain Brady relating to the pending motion, and because we are entitled to know if you did follow-up searching in the database based on information obtained in the interview.  You reiterated the government's refusal to give us the Jencks statements themselves, but said you will prepare a log of the statements – which we understood to mean the date of the interview and witness interviewed.

We do not intend to produce reports of witness interviews at the present time, but

we will provide them well in advance of trial.  We do not recall discussing on the January call that we would provide you with a list of individuals whom we interviewed (or dates of those interviews).   Again, we do not see how the reports could "contain Brady relating to the pending motion," but, to the extent that they contain actual Brady material, such material will be disclosed to you.

## 6.  Unredacted Version of Database Activity Spreadsheet

    a.  ADAMS UNDERSTANDING: It was our understanding from our conversation that you agreed to produce the unredacted log.  We understand that you are taking the position that you only agreed to produce a list of documents you viewed.  We maintain that an unredacted database activity log is essential to the litigation of the forthcoming motions.  If the government maintains its refusal to provide this, we will need to raise this with the Court soon.  Please advise of your position, or if you prefer to confer further on this before going to the Court.

As noted above, the government did not promise to provide, nor will it provide, an unredacted log of activity in the database, as we have already provided to you the full list of documents viewed by the prosecution team.  Providing the unredacted log, which would reflect when, and how many times I, and other members of the team, looked at specific documents, is work product reflecting which documents we found to be most important and which documents we reviewed during the preparation of the indictment.

That being said, If the Court finds certain documents to be privileged after the current round of briefing has concluded, at that time, we will provide you with the specifics as to when, and how many times, we reviewed documents (if any) that are found to be privileged.

## 7.  Emails Transmitting Search Warrants to Agents

    a.  ADAMS UNDERSTANDING: you were searching for these emails.

We did not find any emails transmitting the search warrant to agents after it was signed.  Agent Kroells retained a copies of the signed versions after she appeared before the Magistrate Judge to swear out the affidavits and get the warrants signed.

## **Additional Items**

8. **Please produce, through the taint team, copies of all Yahoo emails/documents that were printed or saved to PDF by members of the investigation team.**

> We will provide you with a list, by document number, of all emails/documents that were printed or saved to PDF.

We stand prepared to meet and confer on any or all of these items.  As explained previously, it would be our preference to record future calls – with your consent.

--Lance

**Lance Wade**
**Williams & Connolly LLP**
725 Twelfth Street, N.W., Washington DC 20005
(P) 202-434-5755 | (F) 202-434-5029
lwade@wc.com  |  www.wc.com/lwade

**From:** Maria, David (USAMN) 1 [mailto:David.Maria@usdoj.gov]
**Sent:** Tuesday, January 30, 2018 1:06 PM
**To:** Wade, Lance <LWade@wc.com>
**Cc:** Maier, Gloria <GMaier@wc.com>; Rank, Timothy (USAMN) <Timothy.Rank@usdoj.gov>; Kokkinen, John (USAMN) <John.Kokkinen@usdoj.gov>
**Subject:** RE: U.S. v. Adams

Lance—

I am happy to have a call, but below is my recollection of what we discussed, and what the government committed to provide, when we spoke.  Because of the allegations that you have made against me in this matter, I have made sure to include others on the calls that we have, as well as the email communications, and I have confirmed with them that their understanding is the same as mine in terms of what was discussed and/or what commitments were made.  Here is what my notes reflect we agreed to provide to you:

1. Provide a list of documents viewed in Relativity (by document number);
   a. STATUS: This was done yesterday by PDF; today in Excel format.
2. Provide the dates that emails from the Relativity database were sent to Brandon Belich;
   a. NOTE: You requested that any cover emails also be produced, but we did not agree to produce such communications.

     b.   STATUS: These materials are being reviewed by Ann Bildtsen, who will be contacting you on this if she has not already; my  understanding is that she will be providing you with the dates of the communications, as well as the documents (or a list of documents by ID number) that were communicated on those dates.

3.   Determine (by Taint Team, if necessary) if any Jencks material relating to Brandon Belich's testimony at the hearing exists in any IRS Special Agent Report ("SAR").

     a.   STATUS: Brandon Belich was not the agent who submitted the SAR to DOJ Tax in this matter, so there exists no Jencks material relating to this request.

Also, per the voice mail that I left you yesterday, we are putting together a list of any discovery materials that have not yet been turned over and will hopefully have that completed and to you this week.

To the extent that you believe that there are communication problems, I would suggest that, after we meet and confer, you provide us with your understanding of what commitments we made within a reasonable time period after the meeting/call, and we can confirm your understanding or note any differences of opinion.  That way, there should not be disagreements weeks later as to what was said.

As noted above, we are happy to have a call to discuss this, and we are available this afternoon or most of the day tomorrow.

David

---

**From:** Wade, Lance [mailto:LWade@wc.com]
**Sent:** Tuesday, January 30, 2018 10:54 AM
**To:** Maria, David (USAMN) 1 <dmaria1@usa.doj.gov>
**Cc:** Maier, Gloria <GMaier@wc.com>; Rank, Timothy (USAMN) <TRank@usa.doj.gov>; Kokkinen, John (USAMN) <jkokkinen@usa.doj.gov>
**Subject:** RE: U.S. v. Adams

David,

When are you available to meet and confer on this and other commitments the government has made to provide additional post-hearing information?  In light of our continued disagreements regarding the commitments the government has made in telephone calls, I would like to make sure we have clarity on your positions, document them in writing, and then bring remaining disagreements to the Court promptly.  I have not had troubles of this kind in prior matters, but perhaps my hearing is failing with age.  Given that, I am happy to consent to the recording of these calls to avoid continued disagreements and miscommunications going forward.  Please advise if the government is willing to do the same.

Thanks.

--Lance

**Lance Wade**
**Williams & Connolly LLP**
725 Twelfth Street, N.W., Washington DC 20005
(P) 202-434-5755 | (F) 202-434-5029
lwade@wc.com  |  www.wc.com/lwade

---

**From:** Maria, David (USAMN) 1 [mailto:David.Maria@usdoj.gov]
**Sent:** Tuesday, January 30, 2018 11:27 AM
**To:** Wade, Lance <LWade@wc.com>
**Cc:** Maier, Gloria <GMaier@wc.com>; Rank, Timothy (USAMN) <Timothy.Rank@usdoj.gov>;
Kokkinen, John (USAMN) <John.Kokkinen@usdoj.gov>
**Subject:** RE: U.S. v. Adams

Lance –

We agreed to produce to you a list of all the documents that were viewed in Relativity and not an
unredacted version of the database activity log.  This is clear from our proposed timeline to the
Court, which provided that the "Government submits list of viewed documents to Adams by Feb. 1,"
as well as the Court's Scheduling Order, which provided that "the government must disclose a list of
all emails form the accounts at issue that were accessed by the government on or before February 1,
2018."

We complied with that obligation when we sent you the PDF list of viewed documents yesterday.
Per your request, here is that list in Excel format.

Thanks,
David

---

**From:** Wade, Lance [mailto:LWade@wc.com]
**Sent:** Monday, January 29, 2018 8:29 PM
**To:** Maria, David (USAMN) 1 <dmaria1@usa.doj.gov>
**Cc:** Maier, Gloria <GMaier@wc.com>; Rank, Timothy (USAMN) <TRank@usa.doj.gov>; Kokkinen,
John (USAMN) <jkokkinen@usa.doj.gov>; Wade, Lance <LWade@wc.com>
**Subject:** RE: U.S. v. Adams

David,

We would prefer it in Excel format.  Thank you.  Also, in our January 12 meet and confer you agreed
to provide the database activity log in unredacted form.  When can we get that?  We would prefer
that in Excel format as well.

Thanks.

--Lance

**Lance Wade**
**Williams & Connolly LLP**
725 Twelfth Street, N.W., Washington DC 20005
(P) 202-434-5755 | (F) 202-434-5029
lwade@wc.com | www.wc.com/lwade

**From:** Maria, David (USAMN) 1 [mailto:David.Maria@usdoj.gov]
**Sent:** Monday, January 29, 2018 4:16 PM
**To:** Wade, Lance <LWade@wc.com>
**Cc:** Maier, Gloria <GMaier@wc.com>; Rank, Timothy (USAMN) <Timothy.Rank@usdoj.gov>;
Kokkinen, John (USAMN) <John.Kokkinen@usdoj.gov>
**Subject:** U.S. v. Adams

Lance,

Attached is a log of all documents (by doc ID number) that were viewed in Relativity.  Let me know if
you want a version of this in Excel instead of as a PDF.

Thanks,
David


David M. Maria
Assistant United States Attorney
District of Minnesota, Criminal Division
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
V: 612.664.5681 | F: 612.664.5787

---

This message and any attachments are intended only for the addressee and may contain information that is privileged and confidential. If you have received this message in error, please do not read, use, copy, distribute, or disclose the contents of the message and any attachments. Instead, please delete the message and any attachments and notify the sender immediately. Thank you.

# EXHIBIT 7

**From:** Maria, David (USAMN) 1 [mailto:David.Maria@usdoj.gov]
**Sent:** Tuesday, February 27, 2018 3:55 PM
**To:** Wade, Lance <LWade@wc.com>
**Cc:** Kokkinen, John (USAMN) <John.Kokkinen@usdoj.gov>; Rank, Timothy (USAMN)
<Timothy.Rank@usdoj.gov>; Petrosinelli, Joe <JPetrosinelli@wc.com>; Maier, Gloria
<GMaier@wc.com>
**Subject:** RE: U.S. V. Adams

Lance:

We are generally available for a conference call.  If the Court determines that a conference call is
necessary, we can respond to the potential dates/times that the Court proposes, as the parties did
with the last conference call.

As to the statement about the privilege log, in the reference to Tab 1 in your privilege log, it provides
a Document ID for the attachment.  If this reflects a single page document for the attachment "ESA
Tax Summary for P. Murry," it is not complete, as the spreadsheet was multiple pages.  Additionally,
it is unclear if you are asserting that the cover email is privileged.  Brever provided the October 28
email in response to the subpoena.  For Tabs 2 and 3, based on the emails provided by Brever, the
October 29 email had an attachment titled "ESA Tax Questions.xlsx," as is evident from the cover
email produced by Brever.  This is not referenced on your privilege log.  Again, though, I do not have
access to the materials on your privilege log, so I cannot tell you definitively if there are errors.  Are
there communications between anyone at Murry and Adams that were in his emails for which you
are not claiming a privilege?

As to your request for the government's communications with Mr. Young, under what rule or legal
theory do you believe that you are entitled to these communications.  If you can provide a valid basis
for their production, we will consider it and may be willing to give you those materials.  Also, are you
seeking all communications with him, or just recent ones relating to the declaration?  Finally, I'm not
sure what you mean by our "default position on these matters."

Thanks,
David

**From:** Wade, Lance [mailto:LWade@wc.com]
**Sent:** Friday, February 23, 2018 3:25 PM
**To:** Maria, David (USAMN) 1 <dmaria1@usa.doj.gov>

**Cc:** Kokkinen, John (USAMN) <jkokkinen@usa.doj.gov>; Rank, Timothy (USAMN)
<TRank@usa.doj.gov>; Petrosinelli, Joe <JPetrosinelli@wc.com>; Maier, Gloria <GMaier@wc.com>
**Subject:** RE: U.S. V. Adams

David:

Thanks for the prompt response.

Please advise of you availability for a conference call with the Court to discuss discovery issues
related to the motion to suppress.  We want to promptly raise the government's unwillingness to
produce an unredacted database log.  If we decide to raise other issues on the call, we will advise
you in advance.  We will contact chambers once we have your availability.

With regard to this statement from your email below -- "(though, based on the privilege log that you
submitted, it does not appear that you provided the complete attachments to the emails)" – please
clarify what you believe was omitted.  It was certainly not our intention to omit anything, and we
have made efforts to double check that we have not.  But if you believe there is an error in the
record, we are happy to look into it and correct the record, if warranted.

Finally, I don't wish to discuss Mr. Young's springing recollections with him at this time.  But so the
record is clear, we request all communication between Mr. Young and the government that are in
the *government's* possession.  I take it from your email that you are refusing to produce those
communications.  If so, we understand that you are assuming your default position on these
matters.

Thanks.

--Lance

**Lance Wade**
**Williams & Connolly LLP**
725 Twelfth Street, N.W., Washington DC 20005
(P) 202-434-5755 | (F) 202-434-5029
lwade@wc.com  |  www.wc.com/lwade

**From:** Maria, David (USAMN) 1 [mailto:David.Maria@usdoj.gov]
**Sent:** Thursday, February 22, 2018 5:47 PM
**To:** Wade, Lance <LWade@wc.com>
**Cc:** Kokkinen, John (USAMN) <John.Kokkinen@usdoj.gov>; Rank, Timothy (USAMN)
<Timothy.Rank@usdoj.gov>; Petrosinelli, Joe <JPetrosinelli@wc.com>; Maier, Gloria
<GMaier@wc.com>
**Subject:** RE: U.S. V. Adams

Lance:

The footnote regarding Mr. Linares speaks for itself.  We do not intend to provide you with his interview report at the present time, but I can assure you that, at no time during our discussions with Mr. Linares or his attorney, Mr. Short, did Mr. Linares assert any privilege on behalf of Apollo.  You, obviously, have access to Mr. Linares, as you submitted a declaration from him, so, if Mr. Linares disagrees with the substance of footnote 7, I expect that you will submit a supplemental declaration along those lines.

As I explained in the response to your email on open discovery requests that I sent you a few minutes ago, we do not intend to provide you with the unredacted database activity log, as we have already provided you with a list of all of the documents that were viewed.  Beyond the lists of (1) searches that were run, and (2) documents that were viewed, the unredacted log would provide you with no additional information regarding the statement in the brief that the keyword "warrants" led to the discovery of the Murry documents.  We believe that Judge Menendez can assess for herself if that word shows up in any of the Murry documents that were submitted to the Court (though, based on the privilege log that you submitted, it does not appear that you provided the complete attachments to the emails).

As to your request for communications with David Young, to the extent that you have questions about what is in his declaration, you can contact Mr. Young directly.

Thanks,
David

---

**From:** Wade, Lance [mailto:LWade@wc.com]
**Sent:** Thursday, February 22, 2018 12:06 PM
**To:** Maria, David (USAMN) 1 <dmaria1@usa.doj.gov>
**Cc:** Kokkinen, John (USAMN) <jkokkinen@usa.doj.gov>; Rank, Timothy (USAMN) <TRank@usa.doj.gov>; Petrosinelli, Joe <JPetrosinelli@wc.com>; Maier, Gloria <GMaier@wc.com>
**Subject:** U.S. V. Adams

David:

I write to raise a few items related to the opposition you recently filed (Doc 109).

First, in footnote 7 you made representations regarding statements Mr. Linares made in his interview.  To the extent that the 302 of that interview contains potentially privileged information, it should be walled off and not reviewed by the prosecution team until there is an order from the court on the motion that is currently being litigated.  In the meantime, however, we are unable to respond to the representations you make in footnote 7 because the 302 of Mr. Linares' interview has not been produced to us.  Please have the taint team produce a copy of the 302 to us promptly so that we can address it in our reply, which is due Monday.

Second, on Page 19 of the motion, you make representations regarding how the Murry documents were discovered by the prosecution team.  We are similarly unable to assess these representations

because you have not yet produced to us the unredacted database activity log.  We reiterate our request for that log, and ask that you produce it by COB tomorrow so that we can prepare our reply in a timely fashion.

Third, on pages 16-17 (and exhibit 7), you have produced a supplemental declaration from David Young and made representations regarding the government's communications with him.  Please produce copies of correspondence between the government and counsel for Scio.

Given that our reply is due on Monday, we would appreciate a prompt response to these requests.

Many thanks.


--Lance

**Lance Wade**
**Williams & Connolly LLP**
725 Twelfth Street, N.W., Washington DC 20005
(P) 202-434-5755 | (F) 202-434-5029
lwade@wc.com | www.wc.com/lwade

---

This message and any attachments are intended only for the addressee and may contain information that is privileged and confidential. If you have received this message in error, please do not read, use, copy, distribute, or disclose the contents of the message and any attachments. Instead, please delete the message and any attachments and notify the sender immediately. Thank you.

# EXHIBIT 8

JS 44   (Rev. 09/11)

# CIVIL COVER SHEET

The JS 44 civil coversheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Kristopher Mac and Paul Rapello, Derivatively on Behalf of Nominal Defendant Loblolly, Inc. (f/k/a Scio Diamond Technology)

**DEFENDANTS**

Edward S. and Denise L. Adams, Michael R. and Julie C. Monahan, Adams Monahan LLC, Joseph Lancia and Scio Diamond Technology Corporation (f/k/a Krossbow Holding Corporation)

**(b)** County of Residence of First Listed Plaintiff   New York County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Hennepin
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Barnes & Thornburg LLP
225 South Sixth Street, Suite 2800
Minneapolis, MN  55402 (612) 331-2111

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION   *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
Plaintiff

☒ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 480 Consumer Credit |
| (Excl. Veterans) | ☐ 345 Marine Product | Liability | | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | Exchange |
| ☒ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 751 Family and Medical | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - | Product Liability | Leave Act | | Act |
| | Med. Malpractice | | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Empl. Ret. Inc. | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate | Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting | Sentence | | or Defendant) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | ☐ 530 General | | 26 USC 7609 | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | |
| | Other | ☐ 560 Civil Detainee - | (Prisoner Petition) | | |
| | ☐ 448 Education | Conditions of | ☐ 465 Other Immigration | | |
| | | Confinement | Actions | | |

## V. ORIGIN   *(Place an "X" in One Box Only)*

☒ 1   Original
Proceeding

☐ 2   Removed from
State Court

☐ 3   Remanded from
Appellate Court

☐ 4   Reinstated or
Reopened

☐ 5   Transferred from
another district
*(specify)*

☐ 6   Multidistrict
Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
15 U.S.C. § 78j

Brief description of cause:
Shareholder Derivative Action

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Kristoffer Mack and Paul Rapello, Derivatively on Behalf of Nominal Defendant Loblolly, Inc. (f/k/a Scio Diamond Technology Corporation), <br><br> Plaintiffs, <br><br> -against- <br><br> Edward S. and Denise L. Adams, Michael R. and Julie C. Monahan, Adams Monahan LLP, Joseph Lancia and Scio Diamond Technology Corporation (f/k/a Krossbow Holding Corporation) <br><br> Defendants, <br><br> -and- <br><br> Loblolly, Inc. (f/k/a Scio Diamond Technology Corporation), <br><br> Nominal Defendant. | Case No.:_____ |

## VERIFIED COMPLAINT

Plaintiffs for their Complaint against Defendants, and each of them, state as follows:

## INTRODUCTION

1.      Edward S. Adams ("**Adams**") and Michael R. Monahan ("**Monahan**") are

attorneys and partners in the law firm, Adams Monahan LLP.   Adams and Monahan collectively

have also owned numerous broker-dealers that have solicited investments for a variety of early

stage companies.  Adams was not only a shareholder and officer of Apollo Diamond, Inc.

("**Apollo Diamond**"), but he was a family member of its founder.  In his own words, Adams

insisted on these roles in order to generate personal profits to the harm of the shareholders of

various entities.

1

2.      Defendant Adams has spent the past decade attempting to work numerous deals through Apollo Diamond for his own personal profit. Apollo Diamond has developed a unique process for creating synthetic diamonds. Even more, Apollo Diamond's unique process purports to produce high quality diamonds with characteristics unique to synthetic diamonds. These unique characteristics are represented to be desirable in the marketplace for diamonds. Various parties have valued the technology developed by Apollo Diamond upwards of $40 million.

3.      Apollo Diamond was controlled by Adams, members of Adams's family, and Adams' related business partners and enterprises. This control existed through various capacities, including the parties' roles as directors, officers, attorneys and placement agents. Using this control and influence, Adams and Monahan concocted and implemented a scheme to defraud shareholders. Having exhausted the market for investment in Apollo Diamond, Adams and Monahan transferred Apollo Diamond assets to an entity originally known as Scio Diamond Technology Corporation (now known as Loblolly, Inc.) ("**Private Scio**") for the purpose of raising further capital and generating additional fees.

4.      After issuing additional shares of Private Scio, Adams and Monahan refined their scheme and acquired control of Krossbow Holding Corporation (now known as Scio Diamond Technology Corporation) ("**Public Scio**")—an entity with publicly traded securities. Adams and Monahan yet again transferred the assets to Public Scio and are continuing to raise capital for these same assets that originated at Apollo Diamond.

5.      In short, Adams and Monahan have now sold the same assets three times while increasing their percentage ownership in the respective entities and extracting professional fees at each stage. The conduct of Adams and Monahan has worked and is continuing to work a fraud on the shareholders in each company.

2

6.      The Plaintiffs are shareholders of Private Scio.  Not only were Defendants Adams and Monahan directors, officers, shareholders and counsel of Private Scio, they have served in these same roles for the other entities described herein as well.  Adams and Monahan abused their influence and control over Apollo Diamond, Private Scio and Public Scio in order to extract improper legal and other fees from the entities while at the same time increasing their percentage ownership, all to the detriment of the various entities and their respective shareholders.

7.      In this action, Private Scio seeks damages and rescission associated with Defendants' wrongful conduct.  The improper transaction between Private Scio and Public Scio should be unwound to place the parties back in the status quo and the Defendants should be compelled to disgorge their improperly obtained fees.

## THE PARTIES

8.      Plaintiff Kristoffer Mack ("**Mack**") is a New York citizen residing at 850 Park Avenue, Apartment 8D, New York, NY 10075.  Mack is currently a shareholder of Private Scio.  Mack owns 125,000 shares of the stock of Private Scio and has continuously owned such shares of stock of Private Scio since April 1, 2011.  Attached as Exhibit A is a true and correct copy of Plaintiff Mack's share certificate in Private Scio.

9.      Plaintiff Paul Rapello ("**Rapello**") is a Tennessee citizen residing at 4208 Estes Road, Nashville, TN 37215.  Rapello is currently a shareholder of Private Scio.  Rapello owns 125,000 shares of the stock of Private Scio and has continuously owned such shares of stock of Private Scio since April 1, 2011.  Attached as Exhibit B is a true and correct copy of Plaintiff Rapello's share certificate in Private Scio.

10.     Defendant Edward Adams ("**Adams**") is a Minnesota citizen with a place of business at 60 South Sixth Street, Suite 2540, Minneapolis, MN 55402. Adams is an attorney and partner in the firm, Adams Monahan LLP.

11.     Defendant Denise L. Adams is a Minnesota citizen with a personal residence at 2010 West 49th Street, Minneapolis, MN 55419.

12.     Defendant Michael Monahan ("**Monahan**") is a Minnesota citizen with a place of business at 60 South Sixth Street, Suite 2540, Minneapolis, MN 55402. Monahan is an attorney and partner in the firm, Adams Monahan LLP.

13.     Defendant Julie C. Monahan is a Minnesota citizen with a personal residence at 4824 Thomas Avenue, Minneapolis, MN 55410.

14.     Defendant Adams Monahan LLP ("**AMLLP**") is a limited liability partnership organized under the laws of the State of Minnesota with its principal place of business at 60 South Sixth Street, Suite 2540, Minneapolis, MN 55402. Upon information and belief, Adams and Monahan are the sole owners of AMLLP.

15.     Defendant Joseph Lancia ("**Lancia**") is a South Carolina citizen residing at residing at 109 Thornblade Avenue, Greer, SC 29650.

16.     Defendant Scio Diamond Technology Corporation (f/k/a Krossbow Holding Corporation) is a corporation organized under the laws of the State of Nevada and is referred to as "**Public Scio**" herein.

17.     Nominal Defendant Loblolly, Inc. is a Nevada corporation with a principal place of business in Minnesota. Loblolly was formerly known as Scio Diamond Technology Corporation and is referred to as "**Private Scio**" herein. According to solicitation documents prepared by AMLLP, Private Scio has no more than 2,530,033 shares issued and outstanding.

4

## JURISDICTION AND VENUE

18.     This Court has jurisdiction pursuant to the Securities Exchange Act of 1934, 15

U.S.C. § 78aa and 28 U.S.C. § 1331.  This Court has jurisdiction to hear and determine

Plaintiffs' pendant state law claims for relief for breach of fiduciary duty and legal malpractice

pursuant to 28 U.S.C. §§ 1331 and 1367 in that such claims arise from a common nucleus of

operative facts and are so intertwined as to make this Court's exercise of jurisdiction

appropriate.

19.     Venue is proper in the District of Minnesota under 28 U.S.C. §1391(b) as some of

the Defendants reside in the District of Minnesota and a substantial part of the events or

omissions giving rise to the claims occurred within the District of Minnesota.

## FACTUAL ALLEGATIONS

20.     This action is a shareholders' derivative action brought pursuant to Rule 23.1 of

the Federal Rules of Civil Procedure.

**A.    Adams' Initial Efforts with Apollo Diamond: the DRI Transaction**

21.     Apollo Diamond, Inc. was formerly known as Linares Management Associates

("**LMA**").  LMA was formed as a Massachusetts corporation in 1990.  LMA was founded by

Robert Linares.  LMA was jointly managed by Robert Linares and Bryant Linares.  Robert

Linares and Bryant Linares are the father-in-law and brother-in-law, respectively, of Adams.

22.     Apollo Diamond developed a process called "chemical vapor deposition" or

"CVD" for the production of synthetic diamond crystals.  Apollo Diamond possesses several

U.S. patents for its CVD process.

23.     Adams' involvement with Apollo Diamond began by 2001.

24.     On or about February 20, 2001, LMA changed its name to Apollo Diamond.

25.     In 2001, Adams was a director and shareholder of Dental Resources Inc. ("DRI") DRI was a publicly listed company that was looking to sell itself to other companies seeking a fast track to become publicly listed.

26.     DRI's auditor for its annual financial statements was Wallace Niedzwiecki.

27.     In 2001, Apollo Diamond entered into an agreement with DRI to become a public company (the "**DRI Transaction**").  A letter of intent between the parties was signed on or about June 26, 2001.  The price for the DRI Transaction in 2001 was $500,000.

28.     Upon information and belief, Adams or an affiliated law firm acted as counsel for Apollo Diamond, DRI, or both, in connection with the DRI Transaction I and received legal fees from the contemplated transaction.

29.     The DRI Transaction was formally cancelled on November 24, 2001 after 9/11 sent the financial markets into turmoil.

**B.     Adams Tries Again: the DRI Transaction II**

30.     Despite the failure of the DRI Transaction, Adams remained a director of DRI. After the cancellation of the DRI Transaction, DRI was involved in a number of other potential deals, including the development of casinos and leisure resorts.  By 2004, DRI had changed its name to DTLL Inc.  (For purposes of continuity, DTLL is referred to as "**DRI**" herein.)

31.     Undaunted by the failure of the DRI Transaction, Adams remained committed in his efforts to take Apollo Diamond public.

32.     A new Apollo Diamond, Inc. was formed on or about January 2, 2004 under the laws of Delaware.  Upon information and belief, the new Apollo Diamond merely continued the business operations of the original Apollo Diamond.  The original Apollo Diamond was dissolved on May 23, 2006—the same date on which the new Apollo Diamond registered to do

business in Massachusetts. (For purposes of continuity, both Apollo Diamond entities are referred to as "Apollo Diamond" herein.)

33.     In 2004, DRI entered into yet another agreement with Apollo Diamond (the "**DRI Transaction II**").

34.     In 2004, DRI and Apollo Diamond signed yet another letter of intent in connection with the DRI Transaction II.

35.     Upon information and belief, Adams or an affiliated law firm acted as counsel for Apollo Diamond, DRI, or both, in connection with the DRI Transaction II and received legal fees from the contemplated transaction.

36.     Adams' brokerage entity, Equity Securities Investments, Inc. ("**ESII**"), acted as advisor for both Apollo Diamond and DRI.

37.     However, no final agreement was reached between Apollo Diamond and DRI with regard to the DRI Transaction II. The letter of intent was cancelled approximately five months after its execution.

**C.     Adams Focuses His Efforts on Apollo Diamond**

38.     Over the same time period that Adams was working on the DRI Transaction I and the DRI Transaction II, he continued to seek to independently raise capital for Apollo Diamond.

39.     Beginning on or about May 8, 2002, Apollo Diamond submitted numerous Regulation D filings with the Securities Exchange Commission in support of an offering of securities. The May 8, 2002 SEC filing indicates that Apollo Diamond was seeking to raise a total of $2.2 million in capital of which it had purportedly already sold $400,000. The May 8, 2002 filing was signed by Denise L. Adams (Adams' wife) in the capacity of Apollo Diamond's General Counsel.

40.     Apollo Diamond's Regulation D filing dated May 8, 2002 identifies ESII as a broker engaged by Apollo Diamond to solicit purchasers of its stock pursuant to the Regulation D filing. Upon information and belief, Adams was a shareholder, director and officer in ESII. The May 8, 2002 filing estimated that $200,000 in sales commissions would be paid to ESII.

41.     Apollo Diamond's Form D filing dated May 8, 2002 also identifies estimated legal fees of $10,000 in connection with the offering.

42.     Apollo Diamond submitted a new Regulation D filing on or about September 30, 2002. Apollo Diamond's Form D filing dated September 30, 2002 represented that it was a "New Filing." Five months after its original Regulation D filing, the Form D filing date September 30, 2002 offered an additional $6 million in securities. Adams' brokerage firm, ESII, remained the broker for the offering and the Form D estimated sales commissions to be $600,000. The September 30, 2002 filing was again signed by Adams' wife in the capacity of Apollo Diamond's General Counsel.

43.     Apollo Diamond's Form D filing dated September 30, 2002 estimated legal fees to be $15,000 in connection with the offering.

44.     Apollo Diamond submitted a new Regulation D filing on or about February 20, 2003. Apollo Diamond's Form D filing dated February 20, 2003 represented that it was a "New Filing." The Form D filing date February 20, 2003 offered an additional $3.5 million in securities. Adams' brokerage firm, ESII, remained the broker for the offering and the Form D estimated sales commissions to be $350,000. The February 20, 2003 filing was again signed by Adams' wife in the capacity of Apollo Diamond's General Counsel.

45.     Apollo Diamond's Form D filing dated February 20, 2003 estimated legal fees to be $15,000 in connection with the offering.

46.     On or about August 27, 2003, Apollo Diamond amended its Regulation D filing dated February 20, 2003.  According to the amendment, $2,012,500 of the $3.5 million offering had already been sold.  The August 27, 2003 amendment reflected a change in the broker for the offering.  The August 27, 2003 amendment states that the broker for the offering was "Oak Ridge Financial (formerly known as Equity Securities)."  The address for Oak Ridge Financial was reported to be the same address that was used by ESII.  Upon information and belief, Adams remained an owner, director and officer of Oak Ridge Financial.  The August 27, 2003 filing was again signed by Adams' wife in the capacity of Apollo Diamond's General Counsel.

47.     Apollo Diamond submitted a new Regulation D filing on or about January 31, 2004.  Apollo Diamond's Form D filing dated January 31, 2004 represented that it was a "New Filing."  The Form D filing date January 31, 2004 offered an additional $7.5 million in securities of which $4.625 million were already purportedly sold.  Oak Ridge Financial remained the broker for the offering and the Form D estimated sales commissions to be $750,000.  The January 31, 2004 filing was again signed by Adams' wife in the capacity of Apollo Diamond's General Counsel.

48.     Apollo Diamond's Form D filing dated January 31, 2004 estimated legal fees to be $25,000 in connection with the offering.

49.     On or about September 15, 2004, Apollo Diamond amended its Regulation D filing dated January 31, 2004.  According to the amendment, $16,043,000 of the $7.5 million offering had already been sold.  The expected sales commissions to Oak Ridge Financial from the offering was increased from $750,000 to $1,604,300.  The September 15, 2004 filing was again signed by Adams' wife in the capacity of Apollo Diamond's General Counsel.

50.     Apollo Diamond submitted a new Regulation D filing on or about October 25, 2006. Apollo Diamond's Form D filing dated October 25, 2006 represented that it was a "New Filing." The Form D filing dated October 25, 2006 offered an additional $11 million in securities of which $1,000,000 was purportedly already sold. The Form D filing dated October 25, 2006 does not identify any broker engaged for the offering or any estimated sales commissions.

51.     Apollo Diamond's Form D filing dated October 25, 2006 identifies Adams as an officer of Apollo Diamond and identifies Adams' address as the same address reported for ESII and Oak Ridge Financial. Apollo Diamond's Form D filing dated October 25, 2006 is signed by Adams in the capacity of Secretary of Apollo Diamond.

52.     Apollo Diamond's Form D filing dated October 25, 2006 estimated legal fees to be $250,000 in connection with the offering.

53.     Apollo Diamond submitted a new Regulation D filing on or about November 13, 2007. Apollo Diamond's Form D filing dated November 13, 2007 represented that it was a "New Filing." The Form D filing dated November 13, 2007 offered an additional $10 million in securities of which $2,400,005 was purportedly already sold. The Form D filing dated October 25, 2006 does not identify any broker engaged for the offering or any estimated sales commissions.

54.     Apollo Diamond's Form D filing dated November 13, 2007 identifies Adams as an officer of Apollo Diamond and identifies Adams' address as the same address reported for ESII and Oak Ridge Financial. Apollo Diamond's Form D filing dated November 13, 2007 is signed by Adams in the capacity of Secretary of Apollo Diamond.

55.     Adams, Monahan, or their firm, AMLLP, was counsel for Apollo Diamond.

Upon information and belief, Adams, Monahan, AMLLP or some other law firm affiliated with

Adams performed the legal services and received the legal fees disclosed in connection with

Apollo Diamond's numerous Regulation D offerings.

56.     Apollo Diamond's auditor during the time period of the efforts to raise capital by

Adams and Monahan was Wallace Niedzwiecki, the same auditor used by DRI.

57.     A media outlet in the industry has reported that the Apollo Diamond technology

cost $40 million to develop.  If Apollo Diamond's securities offerings pursuant to its numerous

Regulation D filings were fully subscribed, Apollo Diamond would have raised $48,743,000 in

capital.  Similarly, Adams' affiliated brokerage firms would have received $2,754,300 in sales

commissions and AMLLP or another law firm affiliated with Adams would have received

$565,000 in legal fees.

58.     Apollo Diamond's Regulation D filings, however, do not accurately state the total

amounts paid to parties related to Adams for such services.  Apollo Diamond's audited financial

statements for the period ending December 31, 2004 state as follows:

**Note 8 – Related Party Transactions**

Minority stockholders received fees for services in the amount of $375,000 in
April 2004.  In addition, since January 9, 2001, commissions of $3,345,825 were
paid to the company of a minority stockholder for services related to investment
activities for Apollo Diamond, Inc.

These figures only represent amounts paid through December 31, 2004.  Accordingly, Apollo

Diamond's Regulation D filings understate the amounts paid to Adams' related brokerage firms

by a minimum of several hundred thousand dollars.

### D.    Adams and Monahan Conjure Up Apollo Gemstone

59.    By 2004, Apollo Diamond was well on its way to raising millions of dollars with the resulting benefit to Adams and Monahan of increased sales commissions and/or legal fees. Despite Apollo Diamond's fundraising successes, Adams and Monahan conceived a new strategy for raising capital and a source for diverting additional fees to themselves.

60.    On or about April 2, 2004, Apollo Diamond formed Apollo Diamond Gemstone Corporation ("**Apollo Gemstone**") under the laws of Delaware.  Apollo Gemstone was a wholly owned subsidiary of Apollo Diamond.

61.    According to Apollo Gemstone's Private Placement Memorandum, Apollo Diamond granted to Apollo Gemstone "an exclusive license to manufacture whereby Apollo Gemstone [would] manufacture, sell and distribute laboratory-created or "cultured" diamonds produced through Apollo Diamond's proprietary, highly scalable and efficient production process."

62.    Adams' vision for Apollo Gemstone remained similar to his failed DRI transactions.  According to its Private Placement Memorandum, Apollo Gemstone "intends to take the necessary steps to become a publicly-traded company . . . At present, [Apollo Gemstone] has entered into a non-binding letter of intent with a publicly-traded 'shell' company that trades on the Over-The-Counter Bulletin Board."

63.    Adams was an officer and director of Apollo Gemstone.  Adams served as Secretary and Chief Financial Officer for Apollo Gemstone.  In some instances, Apollo Gemstone's Regulation D filings reported that Adams' address was the same as that used for ESII and Oak Ridge Financial, while in the final Regulation D filing, Apollo Gemstone reported that his address was the same as the address of AMLLP.

64.     Monahan was an officer of Apollo Gemstone. Apollo Gemstone's Regulation D filings reported that Monahan's address was the same as the address of AMLLP.

65.     AMLLP served as legal counsel to and received legal fees from Apollo Gemstone.

66.     Focus Capital Group, Inc. ("**Focus**") was engaged by Apollo Gemstone to serve as a broker to solicit investments. Prior to December 4, 2009, Focus Capital was owned entirely by Adams and Monahan. After December 4, 2009, Adams and Monahan collectively owned 75% of the outstanding stock of Focus Capital.

67.     Apollo Gemstone submitted three Regulation D filings to the SEC dated November 13, 2007, July 20, 2009, and July 20, 2010. In the first two Regulation D filings, Apollo Gemstone sought to raise a total of $20,750,000. Apollo Gemstone estimated legal fees of $300,000 associated with the first offering. In addition, although the second Regulation D filing did not specifically identify any additional legal fees associated with the offering, Apollo Gemstone reported that a portion of the proceeds would be used to pay legal services to AMLLP.

68.     Apollo's Gemstone's July 20, 2010 Form D filing sought to raise an additional $6,500,000. This filing estimated that $845,000 would be paid to Focus as sales commissions. In addition, this filing estimated that $1.2 million from the proceeds of the offering would be paid to related parties, including as compensation to officers and directors, which upon information and belief, included Adams and Monahan. Apollo's Gemstone's July 20, 2010 Form D filing was signed by Adams as Chief Financial Officer.

### E.   Adams and Monahan Launch Private Scio

69.   By 2010, the efforts by Adams and Monahan to raise capital for Apollo Diamond and Apollo Gemstone had run out of steam.  Adams and Monahan needed to devise a new strategy to continue generating sales commissions and legal fees.

70.   Monahan came up with an idea to increase the ownership percentage of Adams and Monahan while generating additional legal fees and sales commissions.

71.   On February 12, 2011, Monahan sent an e-mail that outlined a strategy whereby Adams and Monahan would form a "NEWCO" to acquire the assets of Apollo Diamond.  *See* Ex. C.  The proposed newly formed entity referred to as "NEWCO" in Monahan's February 12, 2011 letter became Private Scio.  Monahan's February 12, 2011 email described a scheme to redeem substantially all of the outstanding shares from Apollo Diamond's existing shareholders in exchange for $0.01 per share.  Going further, Monahan stated that "[a]fter the proposed claw backs from [Apollo Diamond's shareholders] there will be approximately 6.8 [million] shares of the 22,608,066 shares to be allocated to NEWCO's founders, notably Ed and me.  I will propose Focus Capital (through a separate entity owned equally by the five partners) receive an allocation of those shares (e.g., 10%)."

72.   On February 13, 2011, Monahan sent another email providing a "rough chronological outline" for the "NEWCO" transaction.  *See* Ex. D.  According to Monahan, the second step was to "[o]btain proxies from founders of ADI and ADGC for impending vote on asset sales to NEWCO and stock redemption agreements between them and ADI and ADGC."  Step four and five were to "te[a]m up Joe Lancia (or whomever we select to head NEWCO" and "[i]dentify location for NEWCO's operations (Ed, Joe and [Monahan])."  After "[m]eet[ing] with key ADI and/or ADGC investors to explain the situation and plan" (step 8), the list was

rounded out with "[h]old[ing] shareholder meetings for ADI and ADGC (likely in Boston)," "[e]ffectuat[ing] asset sale," and "NEWCO off and running."

73. In February 2011 when Monahan devised the NEWCO plan, Adams was a shareholder and officer to Apollo Diamond and officer and director of Apollo Gemstone. Similarly, Monahan was an officer of Apollo Gemstone. AMLLP was legal counsel to both Apollo Diamond and Apollo Gemstone. In spite of these multiple roles, Monahan's "back of the napkin" strategy proved to be an effective approach to expanding their ownership while extracting additional fees from the entities to the detriment of existing Apollo Diamond shareholders.

74. Less than twenty (20) days after Monahan's February 12, 2011 email, Adams and Monahan formed Private Scio to serve as the "NEWCO" described in Monahan's plan. Private Scio was formed under the laws of Nevada on March 1, 2011. Adams and Monahan each owned shares of Private Scio. In addition, Adams was (and is) serving as the President and Treasurer of Private Scio as well as a director. Monahan is the Secretary of Private Scio as well as a director. Adams and Monahan were the sole officers and directors of Private Scio. AMLLP served as counsel to Private Scio.

75. Adams and Monahan proceeded to use their influence arising out of their multiple roles as officers, directors, shareholders and counsel to execute Monahan's "back of the napkin" plan as described in his emails. Apollo Diamond and Apollo Gemstone entered into two asset purchase agreements (the "Apollo Asset Purchase Agreements") with Private Scio on or about March 11, 2011 and March 18, 2011.

76. At the time that the Apollo Asset Purchase Agreements were executed, Private Scio was known as Scio Diamond Technology Corporation.

77. At the time that the Apollo Asset Purchase Agreements were executed, Public Scio was known as Krossbow Holding Corporation and had no relationship to the transaction.

78. Pursuant to the Apollo Asset Purchase Agreements, Private Scio was to acquire all assets of Apollo Diamond for $2,000,000 and all assets of Apollo Gemstone for $10,000.

79. The Asset Purchase Agreement between Apollo Diamond and Private Scio was executed by Robert C. Linares, who is Adams' father-in-law, on behalf of Apollo Diamond.

80. The Asset Purchase Agreement between Apollo Diamond and Private Scio was executed by Lancia, who was identified in Monahan's "back of the napkin" outline, on behalf of Private Scio as its Chief Executive Officer.

81. Having used their positions of influence to manufacture and create the Apollo Asset Purchase Agreements between Apollo Diamond, Apollo Gemstone and Private Scio, Adams and Monahan needed to obtain approval from the Apollo Diamond shareholders for the transaction.

82. On March 11, 2011—the same date on which the Asset Purchase Agreement between Apollo Diamond and Private Scio was executed—Adams' father-in-law, Robert Linares, sent a letter to Apollo Diamond shareholders. The March 11, 2011 letter attached a proxy statement soliciting proxies from shareholders to approve (1) the sale of all of Apollo Diamond's assets for $2 million and (2) a Stock Repurchase program whereby Apollo Diamond would repurchase securities for $0.01 per share.

83. The March 11, 2011 letter instructed the Apollo Diamond shareholders that Apollo Diamond had exhausted its cash resources and been unable to raise sufficient additional resources to continue its developmental operations. The March 11, 2011 letter stated that Apollo

Diamond had outstanding liabilities in the amount of $2 million that it could not satisfy along with outstanding debts owed to "founders and other related parties."

84. As related by the March 11, 2011 letter, "[g]iven [Apollo Diamond's] recent history and the current economic environment, [Apollo Diamond's] board of directors has determined that a sale of the Company's assets and, correspondingly, new management offers the best chance to successfully lead future initiatives to monetize our proprietary technology."

85. Going further, the March 11, 2011 letter stated:

[t]o that end, the Company has entered into an Asset Purchase Agreement with Scio Diamond Technology Corporation ("SDTC")—a company formed for the purpose of this transaction and to capitalize on the technology developed by Apollo—whereby Apollo has agreed to sell substantially all of our assets for approximately $2,000,000 to SDTC. The cash obtained from the asset sale will largely be applied toward existing liabilities and contractual obligations of the Company.

86. With regard to the stock redemption, the March 11, 2011 letter stated that

[i]n an effort to create what may prove to be a tax-advantaged event for many of our shareholders, we are offering to repurchase the outstanding shares of common stock held by our stockholders at a price of $0.01 per share.

\*     \*     \*

In addition to repurchasing your shares in the Company, we have negotiated an agreement with SDTC whereby our stockholders whose shares are repurchased by the Company will be permitted to invest in SDTC at a price of $.01 per share. Each stockholder will be provided an opportunity to purchase a number of shares of SDTC equal to the number of the Company's shares currently held by the stockholder. This will permit our stockholders to preserve the continued potential opportunity of your investment in the Company and to maintain a largely pro-rata interest in the opportunity developed by the Company through ownership of SDTC stock.

87. The Proxy Statement attached to the March 11, 2011 letter is consistent with the representations in the March 11, 2011 letter. AMLLP acted as counsel for Apollo Diamond in conducting the proxy solicitation. In its summary, the Proxy Statement stated as follows:

Apollo Diamond, Inc. seeks approval from its stockholders to enter into a series of transactions through which the Company would initially sell substantially all of its assets to Scio Diamond Technology Corporation ("[Private Scio]") for approximately $2.0 million (the "Asset Sale") and subsequently repurchase all of the outstanding shares of its single series common stock (the "Stock"). The proceeds from the Asset Sale would be utilized to satisfy the Company's outstanding debts and liabilities as well as to repurchase the Company's outstanding stock at a value of $.01 per share (the stated par value of the Company's outstanding stock). Every [Apollo Diamond] stockholder consenting to the stock repurchase transaction (the "Stock Repurchase") will enter into an agreement with the Company to sell the stockholder's Stock to the Company at a value of $.01. In connection with the Asset Sale, [Apollo Diamond] has negotiated an option for [Apollo Diamond] stockholders to purchase shares of [Private Scio] common stock under a separate subscription agreement with [Private Scio] (the "SDTC Subscription Agreement"). Each [Apollo Diamond] stockholder . . . will be permitted to purchase a number of shares of [Private Scio's] common stock equal to the stockholders' current [Apollo Diamond] Stock ownership. The [Private Scio] common stock will be offered at an initial purchase price of $.01 per share.

88.     The Proxy Statement continued as follows:

As a result of these transactions, if approved and consented to, [Private Scio] will own substantially all of the assets of [Apollo Diamond] and [Apollo Gemstone]. You will also own shares in [Private Scio] which actually exceed, on a fully-diluted basis, your existing share ownership in [Apollo Diamond]. In other words, as a result of this transaction, your ownership in [Private Scio] will on a fully-diluted percentage ownership basis exceed that of your existing percentage share ownership in [Apollo Diamond].

89.     According to Adams, the outstanding liabilities of Apollo Diamond at the time of the Apollo Asset Purchase Agreements ranged between approximately $1.85 million and $2.2 million. The outstanding liabilities included legal fees owed to AMLLP in the amount of $575,000 and loans or "Monies Advanced to ADI by Principals" ranging between $431,282.77 to $478,222.

90.     Upon information and belief, the loans or "Monies Advanced to ADI by Principals" included in Apollo Diamond's outstanding liabilities were purportedly owed to Adams and/or his family members. Monahan has represented that those loans were fraudulent

and were not actually owed by Apollo Diamond. In an email from Monahan to Mack and Rapello, Monahan states that "[y]ou can also push for back-up on 'loans by principals to ADI' if you desire. From my perspective, that will be difficult to establish absent a forensic accounting exercise (not complex, just timely) and that, more relevant is an Apollo problem not a Scio problem. If there are shenanigans relating thereto[,] the 'principals' will have personal exposure to Apollo shareholders." *See* Ex. G.

91.     The March 11, 2011 letter and Proxy Statement included a number of material misrepresentations and omissions of material facts regarding the Apollo Asset Purchase Agreements and the stock repurchase plan. The March 11, 2011 letter and Proxy Statement failed to disclose or misrepresented *inter alia* that (a) Adams, Monahan and/or AMLLP had acted as counsel to both Apollo Diamond and Private Scio in connection with the transaction, (b) Adams and Monahan were the controlling shareholders of Private Scio while also serving as fiduciaries of Apollo Diamond and Apollo Gemstone, (c) the Apollo Asset Purchase Agreements were not arrived at through arms length negotiations, (d) aside from the amounts used to repurchase shares, the bulk of the funds received from the Apollo Asset Purchase Agreements were paid to satisfy purported loans from Adams or his family and to AMLLP, (e) no purported option to purchase shares in Private Scio had been negotiated, (f) the purported warrants in favor of former Apollo Diamond shareholders for $0.01 per share of Private Scio were never authorized, and (g) the price to be paid for the assets was far below their value.

92.     The law firm owned by Adams and Monahan, AMLLP, acted as counsel for both Apollo Diamond and Private Scio in connection with the Apollo Asset Purchase Agreements.

93.     Having secured the Apollo Asset Purchase Agreements in favor of their new company, Private Scio, Adams and Monahan turned to the task of raising capital to fund the

Apollo Asset Purchase Agreements. For this purpose, Adams and Monahan decided to use one of their other businesses, Focus Capital Group, Inc. ("Focus")

94. Focus was formed on or about July 13, 2005 under the laws of the State of Minnesota. Focus was founded by Adams and Monahan. On or about December 4, 2009, Adams and Monahan sold a portion of their shares in Focus to Plaintiffs Mack and Rapello and to a third individual, David Platt. After joining Focus in December 4, 2009, Mack, Rapello and Platt worked as brokers out of a New York office of Focus, while Adams and Monahan continued their brokerage functions in Minnesota.

95. In a document dated April 16, 2011, Monahan forwarded to Mack and Rapello a Private Placement Memorandum seeking to raise $5.4 million for Private Scio. Monahan—who was an officer of Apollo Gemstone and whose law firm was performing work on behalf of Apollo Diamond and Apollo Gemstone—forwarded this Private Placement Memorandum for Private Scio outlining the acquisition under the Apollo Asset Purchase Agreements before Apollo Diamond had even held its special shareholder meeting to approve the measures.

96. At the conclusion of the proposed offering by Private Scio, Adams and Monahan anticipated collectively owning 16% of the outstanding shares of Private Scio. This percentage ownership in Private Scio was greater than their collective percentage ownership in Apollo Diamond.

97. The Special Meeting to adopt the vote on the sale of Apollo Diamond's assets and repurchase shares occurred on April 18, 2011 in—as outlined in Monahan's February 13, 2011 email—Boston, Massachusetts. Upon information and belief, both the proposed measures to approve the Apollo Asset Purchase Agreements and the share repurchase arrangement were adopted at the Special Meeting on April 18, 2011.

98.    By May 4, 2011, Adams began sending solicitation emails to potential purchasers of Private Scio securities under the private placement. Adams' emails to potential investors explained that Private Scio—the only Scio entity in existence at the time—"had reached an agreement to acquire proprietary technology to produce laboratory-created diamond gemstones . . . from [Apollo Diamond and Apollo Gemstone]." Adams' email went further and stated that "My firm, Focus Capital Group, Inc., is presently engaged to raise $5.0 million for Scio. We have approximately $2.0 million raised (and $3.5 million in tax credits and other incentives pledged to us from the State of South Carolina over the next five years), but we still require an additional $3.0 million to close the transaction by the end of May." *See* Ex. E.

99.    Adams email soliciting investment in Private Scio included a number of false statements. Private Scio had not already raised $2.0 million by May 4, 2011. Upon information and belief, Private Scio had not secured $3.5 million in tax credits and other incentives from South Carolina. Further, Private Scio did not require an additional $3.0 million by the end of May to close the transaction as it only needed a total of $2.0 million under the terms of the Apollo Asset Purchase Agreements to close the transaction.

100.    Even Monahan, who was complicit in Adams' scheme to defraud investors, agreed that Adams' solicitation email was improper. As stated in a May 4, 2011 email sent by Monahan, "we CANNOT send this email to potential investors." *See* Ex. E.

101.    Further discussion ensued between Monahan and Adams on the issue. As stated by Monahan, "[Adams] thought it was okay to send [the proposed solicitation email] to investors so long as he sen[t] it via his law firm email. This, of course, strongly implies [Adams] recognized the problems with the email, not to mention it being a regulatory problem. The email below was, indeed, sent via the @adamsmonahan account." *See* Ex. E.

102. On May 4, 2011, Monahan scheduled a call amongst Focus' five owners, Adams, Mack, Rapello, Platt and himself, to discuss various issues, including the impending Private Scio offering. During the call, Mack raised concerns about the multiple roles that Adams and Monahan were playing by using Focus to solicit investments while at the same time occupying a number of corporate governance roles at Apollo Diamond and Private Scio. Adams and Monahan rejected these concerns.

103. In an email dated May 5, 2011, Adams continued to dismiss these objections to his and Monahan's conflicts of interest. Adams claimed the risk presented by the conflicts of interest should be disregarded because the control would allow him and Monahan to make more money:

> Also, I thought more about the roles Michael and I are playing at Scio. I guess I assumed they were not a problem because various partners have served on the boards of various entities with which we have sought engagements in the past. In a small firm such as [Focus], the use of [Deustche Bank] protocols and policies (which might make complete sense in that setting) will probably make it almost impossible for us to utilize our relationships (the thing we have of most value) to maximize our collective outcomes. I fear that we will be left to only work as agents on behalf of other parties who seemingly all feel free not to pay us.
>
> I acknowledge there is some risk on our involvement, but there is also control. Control which we can utilize to effectuate a favorable outcome. To be clear, no one in NY would have any shares in Scio if we were not the drivers of the opportunity. Surely no board that is not influenced by us would have seen fit to issue them. We did it because we recognize the value you will all collectively play to ensure the long-term success of the enterprise. To also be clear, there is no Scio opportunity—none—without us. This transaction was our idea, we have managed it, and we need to continue to manage it to a successful outcome.

*See* Ex. F (emphasis added).

104. The issue of Adams' and Monahan's conflicts resurfaced the next day. In an email dated May 6, 2011, Mack wrote to Adams stating "I have a real problem with the firm[']s heavy board involvement in the deal. [I] don't see any reason for more than one board

representative from this firm. A real company should have a diverse independent board. [W]e all know that. So, is [Private Scio] going to be a real company or not?? I think it has a chance to be very successful but if it's the latter I have zero interest in being involved and don't want this firm to be either. I hope that I am being clear." *See* Ex. F.

105.    Adams again responded by emphasizing the amount of money that he wanted to make. In a subsequent email of May 6, 2011, Adams stated "[t]o provide perspective on this transaction Scio is acquiring the assts of Apollo for $2 million. The equipment being acquired alone is valued from a replacement perspective at $15-23 million." *See* Ex. F (emphasis added). In this May 6, 2011 email, Adams also attached a list of Private Scio shareholders and the outstanding liabilities of Apollo Diamond that would be satisfied by the $2 million to be paid under the Apollo Asset Purchase Agreements. The list of outstanding liabilities provided by Adams included legal fees owed to AMLLP in the amount of $575,000 and loans or "Monies Advanced to ADI by Principals" ranging between $431,282.77 to $478,222.

106.    Mack and Rapello insisted that if Focus was going to continue to participate in Private Scio's offering of securities, a supplemental disclosure had to be prepared that described the numerous conflicts of interest arising from the various fiduciary roles held by Adams and Monahan. Nevertheless, because of the extraordinary conflicts of interest presented by the participation of Adams and Monahan, Mack and Rapello refused to permit Focus to participate in the transaction as of on or about May 9, 2011.

**F.    Adams and Monahan Concoct a Series of Fraudulent Transactions to Further Defraud Private Scio and Apollo Diamond Shareholders.**

107.    Having redeemed the Apollo Diamond shareholders through the fraudulent Proxy Statement and secured all the assets through an agreement in favor of Private Scio, which Adams

and Monahan controlled, Adams and Monahan had the control to structure a transaction in whatever manner they pleased.

108.    At some point after Mack and Rapello refused to permit Focus to participate in the transaction, Adams and Monahan were reminded of Adams' longtime strategy to take Apollo Diamond through a merger with a Pink Sheets company just as Adams had attempted with the DRI Transaction I and the DRI Transaction II.

109.    Krossbow Corporation ("Krossbow") was a Nevada corporation formed on or about September 17, 2009.   Krossbow was founded by Jason Kropp.

110.    Krossbow was initially capitalized through the sale of 1,000,000 shares of stock issued to Kropp on December 30, 2009.  Krossbow sold another 2,200,000 shares of stock to a small group of individuals on March 10, 2010.  Krossbow securities were registered securities and traded on an over-the-counter market much like DRI.

111.    According to its Form S-1, Krossbow was formed "to produce Verified Emission Reduction (VER) and Reduced emissions from Deforestation and Degradation (REDD) carbon offsets through global restoration projects."  Despite such lofty goals, Krossbow made little progress with regard to its business plans and sat largely idle on the Pink Sheets until Adams and Monahan discovered it.

112.    Krossbow's board of directors approved a 2-for-1 stock split of its issued and outstanding common shares on July 13, 2011.  The stock split was to be effective on August 5, 2011.  After this stock split, Kropp would hold 2,000,000 shares of stock while the other existing shareholders would hold 4,400,000.

113.    On July 21, 2011, Adams, in his capacity of Chairman of Scio Diamond Technology, gave consent to Kropp to use the name "Scio Diamond Technology Corporation" in

conjunction with Krossbow. On the same day, Kropp filed a Certificate of Amendment with the Nevada Secretary of State, changing the name of Krossbow to "Scio Diamond Technology Corporation." "Krossbow" is referred to as "Public Scio" hereafter.

114.     As of July 21, 2011, two Nevada companies existed under the name of "Scio Diamond Technology Corporation." Adams and Monahan founded and controlled the first ("Private Scio"), and one can only conclude that they effectively controlled the second ("Public Scio").

115.     On August 4, 2011, Private Scio and Public Scio entered into an Asset Purchase Agreement (the "Scio Asset Purchase Agreement"), whereby Public Scio acquired "substantially all assets, properties and rights of [Private Scio] . . . including without limitation those assets listed on Schedule 1.1(a) . . . ." The sole asset identified on Schedule 1.1(a) is the name "Scio Diamond Technology Corporation."

116.     In exchange for the Acquired Assets, Private Scio received 13 million shares of Public Scio stock. Pursuant to Schedule 1.4 of the Scio Asset Purchase Agreement, the 13,000,000 shares of Public Scio were not distributed to Private Scio, but instead were distributed to the Defendants and certain friends and relatives of the Defendants. Pursuant to Schedule 1.4, Adams and his wife received 4.1 million shares. Similarly, Monahan and his wife received 4.1 million shares. Among others also receiving some portion of the 13 million shares were Adams' father-in-law (Robert Linares), Joseph Lancia, and colleagues of AMLLP, Christopher J. Mumm and J.R. Maddox. Neither Rapello nor Mack received any of the 13 million Public Scio shares obtained in consideration for all assets of Private Scio.

117.     The Scio Asset Purchase Agreement includes a number of representations and warranties by Private Scio as "Seller" and Public Scio and "Buyer."

118. Paragraph 2.2 of the Scio Asset Purchase Agreement expressly represents and warrants that Private Scio had the authority to enter into the agreement.

> **2.2 Authorization of Agreement.** Each of Seller and the Shareholder has all requisite corporate power and authority to enter into this Agreement and to consummate the transactions contemplated hereby. This Agreement and all other agreements and instruments executed or to be executed by the parties hereto in connection herewith . . . have been duly and validly approved by the Board of Directors of Seller . . . and by Seller's shareholders, and no other proceeding on the part of Seller are necessary to approve this Agreement and to consummate the transactions contemplated hereby. This Agreement . . . have been (or upon execution will have been) duly executed and delivered by Seller and the Shareholder, have been effectively authorized by all necessary action, corporate or otherwise, and constitute (or upon execution will constitute) legal, valid and binding obligations of Seller and the Shareholder . . . .

119. Paragraph 2.14 of the Scio Asset Purchase Agreement expressly represents and warrants that none of the representations or warranties provided by the Seller contain any untrue statement of a material fact or omits to state any material fact necessary to make the statements and facts set forth therein not false or misleading.

120. Paragraphs 2.2 and 2.14 of the Scio Asset Purchase Agreement contain material representations in connection with the purchase and sale of a security. Private Scio did not have authority to enter into the Scio Asset Purchase Agreement. Private Scio's shareholders, including Mack and Rapello, were never informed of nor approved the transaction. The Scio Asset Purchase Agreement was not duly executed by Private Scio or an authorized representative of Private Scio. Given that the representations and warranties made by Private Scio were untrue and omitted to state material facts, Private Scio also misrepresented the representation and warranty that all information was accurate.

121. Paragraph 3.1 of the Scio Asset Purchase Agreement expressly represents and warrants that Public Scio had the authority to enter into the agreement and that it was duly executed.

**3.1    Organization and Corporate Authority**.  Buyer . . . has all requisite corporate power and authority to enter into this Agreement and to consummate the transactions contemplated hereby.  This Agreement and the other Transaction Documents have been (or upon execution will have been) duly executed and delivered by Buyer, have been effectively authorized by all necessary action, corporate or otherwise, and constitute (or upon execution will constitute) legal, valid and binding obligations of Buyer . . . .

122.    Paragraph 3.3 of the Scio Asset Purchase Agreement expressly represents and warrants that none of the representations or warranties provided by the Buyer contain any untrue statement of a material fact or omits to state any material fact necessary to make the statements and facts set forth therein not false or misleading.

123.    Paragraphs 3.1 and 3.3 of the Scio Asset Purchase Agreement contain material representations in connection with the purchase and sale of a security.  The Scio Asset Purchase Agreement was not duly executed by Public Scio or an authorized representative of Public Scio.  Given that the representations and warranties made by Public Scio were untrue and omitted to state material facts, Public Scio also misrepresented the representation and warranty that all information was accurate.

124.    The address identified for Private Scio in Paragraph 5.2 of the Scio Asset Purchase Agreement is AMLLP's address.

125.    The Scio Asset Purchase Agreement is executed on behalf of Public Scio by Joseph D. Lancia as its "President and CEO."  According to Public Scio's SEC filings, Kropp was Public Scio's President and CEO on August 4, 2011.

126.    The Scio Asset Purchase Agreement is executed on behalf of Private Scio by Joseph D. Lancia as its "President and CEO."

127.    Despite executing the Scio Asset Purchase Agreement as President and CEO of both Private Scio and Public Scio on August 4, 2011, both representations by Lancia were

untruthful. Lancia was not the President and CEO of Private Scio or Public Scio as of August 4, 2011 and he possessed no such authority. With regard to Private Scio, Lancia has made clear in a telephone conversation on March 26, 2012 that he had no involvement with the entity and was never employed by or an officer of Private Scio. Put simply, he "was not involved in that original private company." With regard to Public Scio, Lancia admits that he only "got involved" on August 5, 2011. Even then, Lancia admits that was not employed by Public Scio until December 15, 2011 and was only an independent contractor prior to that.

128.     According to its public SEC filings, Public Scio publicly changed its name to Scio Diamond Technology Corporation on August 5, 2011. However, Adams had already granted Public Scio and Kropp the rights to the name on July 21, 2011, when Public Scio filed a Certificate of Amendment with the Nevada Secretary of State, changing the name to "Scio Diamond Technology Corporation."

129.     On August 5, 2011—the day after the date of the fraudulent Scio Asset Purchase Agreement—Adams and Monahan each acquired 1 million shares of stock from Kropp for $165,614. Combined with the shares that they and their spouses received as set forth in Schedule 1.4 of the Scio Asset Purchase Agreement, Adams and Monahan each controlled 5.1 million shares of Public Scio's stock. In some undisclosed transaction, an additional 290,000 shares were credited to Adams and Monahan, respectively, so that by the time of Public Scio's 8-K dated August 17, 2011, Adams and Monahan were each attributed 5,390,000 shares of Public Scio's stock. Such holdings meant that Adams and Monahan each controlled 27.78% of Public Scio for a combined total of 55.56%. Such percentage ownership is a dramatic increase from the combined 16% they were to hold in Private Scio and the even smaller percentage owned of Apollo Diamond.

130.   Public Scio's SEC filings report that on August 5, 2011, Kropp resigned as President and Chief Executive Officer of Public Scio.

131.   Public Scio's SEC filings report that on August 5, 2011—the day after the date of the Scio Asset Purchase Agreement—Lancia was appointed Chief Executive Officer of Public Scio and a member of Public Scio's board.

132.   Public Scio's SEC filings report that on August 5, 2011, Adams was appointed the chairman of Public Scio's board.

133.   Public Scio's SEC filings report that on August 5, 2011, Monahan was appointed to the board of Public Scio.

134.   In an 8-K filing with the SEC dated August 17, 2011, Public Scio reported that it had "a two stage two year plan beginning in June of 2011." In June of 2011, the only Scio entity then in existence was Private Scio.

135.   Further, the 8-K dated August 17, 2011 states that "company has entered into agreements to purchase proprietary chemical vapor deposition ("CVD") diamond growth technology, equipment relating thereto and the intellectual property (collectively the "Diamond Technology") of Apollo Diamond, Inc. and Apollo Diamond Gemstone Corporation (collectively the "Apollo Companies") for the stipulated sum of $2,010,000." Not only is the $2,010,000 figure the same amount as agreed to in the Apollo Asset Purchase Agreements, but as of August 17, 2011, the Apollo Asset Purchase Agreements were the only agreements in existence for the purchase of the assets of Apollo Diamond and Apollo Gemstone. Accordingly, Public Scio's 8-K dated August 17, 2011 affirmed that not only did Public Scio possess the rights granted in favor of Private Scio, but that Public Scio was relying upon those agreements in support of its business.

136.    On August 31, 2011, Public Scio filed another 8-K with the SEC. In Public Scio's 8-K dated August 31, 2011, Public Scio represented that it had entered into an Asset Purchase Agreement with Apollo Diamond on August 31, 2011 (the "Apollo Asset Purchase Agreement II"). According to its 8-K dated August 31, 2011, Public Scio had agreed to pay $1 million "as stipulated between the parties" and a $1 million promissory note in consideration for Apollo Diamond's "Diamond Growing Machines and Intellectual Property related thereto." Public Scio's 8-K dated August 31, 2011 is nonsensical as Public Scio had already affirmed in its prior SEC filings the prior Apollo Asset Purchase Agreements, which conveyed all assets of Apollo Diamond and Apollo Gemstone. To date, Public Scio has not filed the Apollo Asset Purchase Agreement II with the SEC.

137.    Having transferred the Apollo Diamond assets to yet another entity with a resulting increase in their respective percentage ownership, Adams and Monahan proceeded to renew their efforts to raise capital through additional investment. Between the time Adams and Monahan acquired Public Scio and Public Scio's 10-Q filing for the period ended December 31, 2011, Public Scio had sold 6,566,193 shares at $0.70 per share, which totals $4,596,335.10. However, Public Scio's 10-Q reports that after discounting the total proceeds after fees, the total receipts for Public Scio equal $4,048,622.74. Accordingly, $547,712.36 were received as fees in connection with the placement of Public Scio shares. Upon information and belief, Adams, Monahan or AMLLP received, directly or indirectly, a significant portion of the fees associated with the shares sold by Public Scio in 2011.

138.    To date, numerous former shareholders of Apollo Diamond have never received warrants for the purchase of Public Scio stock for $0.01 per share as set forth in the March 11, 2011 Proxy Statement. Upon information and belief, to date, none of the former shareholders of

Apollo Diamond or Apollo Gemstone have received warrants for the purchase of Public Scio stock for $0.01 per share as set forth in the March 11, 2011 Proxy Statement. Any such warrants are not disclosed in Public Scio's SEC filings, and upon information and belief, have never been authorized.

139. On March 23, 2012, Mack and Rapello sent a demand letter to Adams with regard to the wrongful conduct identified herein. Adams did not respond to the March 23, 2012 letter. Instead, Adams and Monahan attempted to further cover up their fraudulent conduct by changing Private Scio's name to "Loblolly, Inc." on April 13, 2012.

## DERIVATIVE ACTION ALLEGATIONS

140. The Plaintiffs fairly and adequately represent the interests of the shareholders of Private Scio that are similarly situated in enforcing the rights of Private Scio.

141. Private Scio has been controlled by the Defendants Adams and Monahan since the date of Private Scio's formation.

142. To the extent he is deemed its President and CEO Private Scio, Lancia has also controlled Private Scio.

143. The Plaintiffs have made no effort to secure action from the officers and directors of Private Scio for the reason that the Defendants are the sole officers and directors of Private Scio and any demand on the officers and directors of Private Scio that they bring an action in the name of Private Scio against the Defendants would have been futile.

144. The Plaintiffs attempted to locate the other shareholders of Private Scio by sending a demand dated April 13, 2012 to The Corporation Trust Company of Nevada, the registered agent for Private Scio, to inspect and copy Private Scio's stock ledger or, in the

alternative, a statement naming the custodian of Private Scio's stock ledger, in accordance with Section 78.105 of the Nevada Revised Statutes.

145.     In response to the Plaintiffs' demand, The Corporation Trust Company of Nevada represented that it does not possess a copy of Private Scio's stock ledger or a statement naming the custodian of Private Scio's stock ledger, which is a violation by Private Scio of Section 78.105 of the Nevada Revised Statutes.

146.     Accordingly, based on the foregoing, the Defendants and/or their agents are the only parties that could maintain the list of shareholders.

147.     Since it would be futile to request the Defendants to provide the Plaintiffs with a list of shareholders, the Plaintiffs have not made a demand on the shareholders to take action against the Defendants.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**(Sections 10(b) and 20(a) of the 1934 Act,**

**Violation of S.E.C. Rule 10b-5 Promulgated Thereunder)**

**(Asserted Against Adams, Monahan, AMLLP, Lancia and Public Scio)**

148.     The Plaintiffs repeat the allegations of all preceding paragraphs of this Complaint and incorporate the same by reference.

149.     All of the Defendants, in connection with the purchase and sale of the Public Scio shares to Private Scio, directly and indirectly, singly and in concert, recklessly, knowingly or with an intention to defraud, engaged in, offered for sale and sold to Private Scio securities by means of one or more misrepresentations of failures to disclose material facts, which material facts were necessary in order to make the statement made in connection with those offerings and

sales not misleading in light of the circumstances under which those statement were made and, in addition, employed a device, scheme or artifice to defraud Private Scio and engaged in acts, practices and a course of business which operated as a fraud or deceit upon each Private Scio, all in violation of Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j] and subsections 2(a), (b) and (c) of SEC Rule 10b-5 promulgated thereunder.

150.     Defendants Adams, Monahan and Lancia are each, individually, persons who directly or indirectly controlled Private Scio and Public Scio within the meaning of Section 20(a) of the Securities Exchange Act of 1934 [15 U.S.C. § 78t(a)].

151.     To the extent the violation of Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j] and SEC Rule 10b-5 relate to misrepresentations as opposed to omissions of material fact, Private Scio reasonably relied upon the Scio Asset Purchase Agreement and other representations in connection with the exchange of Public Scio securities.

152.     The purpose, effect and result of the Defendants' violations of Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j] and SEC Rule 10b-5 promulgated thereunder were to induce Private Scio to purchase the Public Scio securities.

153.     All of the Defendants conspired to fraudulently conceal their fraud from Private Scio, the Plaintiffs and other parties by virtue of all of the hereinabove alleged conduct attributable to the Defendants and events which occurred in connection with and subsequent to Private Scio's acquisition of Public Scio's securities.  As a result of such fraudulent concealment, Plaintiffs, in the exercise of reasonable diligence, did not discover their claims against the Defendants until some time within one year prior to filing this Complaint.  This claim was brought by Plaintiffs on behalf of Private Scio within one year after the discovery of the

facts giving rise to this cause of action and within three years of the date of the purchase of the securities.

154.    As a direct and proximate result of the hereinabove-alleged violations of Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j] and SEC Rule 10b-5 promulgated thereunder, Private Scio has suffered damages in an amount to be proven at trial.

155.    As a direct and proximate result of the hereinabove-alleged violations of Section 20(a) of the Securities Exchange Act of 1934, Private Scio has suffered damages in an amount to be proven at trial.

<div align="center">

**SECOND CAUSE OF ACTION**

**(Minnesota Securities Act,**

**Minn. Stat. § 80A.68 and 80A.76)**

**(Asserted Against Adams, Monahan, AMLLP, Lancia and Public Scio)**

</div>

156.    The Plaintiffs repeat the allegations of all preceding paragraphs of this Complaint and incorporate the same by reference.

157.    All of the Defendants, in connection with the purchase and sale of the Public Scio shares to Private Scio, directly and indirectly, singly and in concert, recklessly, knowingly or with an intention to defraud, engaged in, offered for sale and sold to Private Scio securities by means of one or more misrepresentations of failures to disclose material facts, which material facts were necessary in order to make the statement made in connection with those offerings and sales not misleading in light of the circumstances under which those statement were made and, in addition, employed a device, scheme or artifice to defraud Private Scio and engaged in acts, practices and a course of business which operated as a fraud or deceit upon each Private Scio, all in violation of Sections 80A.68 and 80A.76 of the Minnesota Securities Act.

158.    Defendants Adams, Monahan and Lancia are each, individually, persons who directly or indirectly controlled Private Scio and Public Scio within the meaning of Section 80A.76(g)(1) of the Minnesota Securities Act.

159.    To the extent the violation of Sections 80A.68 and 80A.76 of the Minnesota Securities Act relate to misrepresentations as opposed to omissions of material fact, Private Scio reasonably relied upon the Scio Asset Purchase Agreement and other representations in connection with the exchange of Public Scio securities.

160.    The purpose, effect and result of the Defendants' violations of Sections 80A.68 and 80A.76 of the Minnesota Securities Act were to induce Private Scio to purchase the Public Scio securities.

161.    All of the Defendants conspired to fraudulently conceal their fraud from Private Scio, the Plaintiffs and other parties by virtue of all of the hereinabove alleged conduct attributable to the Defendants and events which occurred in connection with and subsequent to Private Scio's acquisition of Public Scio's securities.  As a result of such fraudulent concealment, Plaintiffs, in the exercise of reasonable diligence, did not discover their claims against the Defendants until some time within one year prior to filing this Complaint.  This claim was brought by Plaintiffs on behalf of Private Scio within two years after the discovery of the facts giving rise to this cause of action and within five years of the date of the purchase of the securities.

162.    As a direct and proximate result of the hereinabove-alleged violations of Sections 80A.68 and 80A.76 of the Minnesota Securities Act, Private Scio has suffered damages and is entitled to the remedy of rescission.

163.     As a direct and proximate result of the hereinabove-alleged violations of the Minnesota Securities Act, Defendants Adams, Monahan and Lancia are liable under Section 80A.76(g)(1) of the Minnesota Securities Act for Private Scio's damages in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

### (Breach of Fiduciary Duty)

### (Against Adams, Monahan, AMLLP and Lancia)

164.     The Plaintiffs repeat the allegations of all preceding paragraphs of this Complaint and incorporate the same by reference.

165.     Persons acting in a fiduciary capacity on behalf of another, whether as a lawyer, corporate executive, broker, director, transfer agent, or agent, possess a fiduciary relationship with the represented person, and are required to act with utmost good faith and fair dealing with the highest possible degree of ethical conduct.  Among other responsibilities, fiduciaries must provide competent representation to the represented party by having sufficient knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

166.     Defendants Adams and Monahan were directors, officers and attorneys of Private Scio.  As directors and officers of Private Scio, Adams and Monahan owed fiduciary duties of care and loyalty in the performance of their duties.

167.     Defendant AMLLP was counsel to Private Scio and owed fiduciary duties of care and loyalty in its representation.

168.     To the extent Defendant Lancia is or was an officer of Private Scio, Lancia owed a fiduciary duty of care and loyalty in the performance of his duties.

169.    As discussed in more detail above, Defendants breached their fiduciary duties by failing to act with the utmost good faith and for the benefit of Private Scio or to disclose all facts concerning the transactions that might affect Private Scio, all as described in detail in the preceding paragraphs.

170.    As a direct and proximate result of Defendants' breach of their fiduciary duties, Private Scio suffered direct and consequential damages in an amount to be proven at trial.

<div align="center">

**FOURTH CAUSE OF ACTION**

**(Malpractice)**

**(Against Adams, Monahan and AMLLP)**

</div>

171.    The Plaintiffs repeat the allegations of all preceding paragraphs of this Complaint and incorporate the same by reference.

172.    Private Scio had an attorney-client relationship with Adams, Monahan and AMLLP.  As part of this relationship, Adams, Monahan, and AMLLP owed Private Scio a duty of good faith and fair dealing.  Adams, Monahan and AMLLP also owed Private Scio a duty to exercise the degree of care, skill, diligence and knowledge commonly possessed by a reasonable, careful and prudent lawyer in the practice of law in the community.  Adams, Monahan and AMLLP further owed Private Scio a duty to comply with the Rules of Professional Conduct.  Adams, Monahan, and AMLLP owed Private Scio a fiduciary duty of loyalty.

173.    As a result of the conduct outlined above, Adams, Monahan and AMLLP breached their good faith, fair dealing, care and loyalty owed to Private Scio.

174.    Adams, Monahan and AMLLP conduct constituted malpractice for numerous reasons, including the existence of numerous conflicts of interest in representing numerous parties in the same transactions while also serving their own personal interests.

175.     As a direct and proximate result of the malpractice by Adams, Monahan and AMLLP, Private Scio suffered damages and other compensable injuries in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

### (Declaratory Judgment)

### (Against All Defendants)

176.     The Plaintiffs repeat the allegations of all preceding paragraphs of this Complaint and incorporate the same by reference.

177.     The Plaintiffs seek a declaration that the Scio Asset Purchase Agreement was executed without proper authority as alleged in detail in the preceding paragraphs, an *ultra vires* action on the part of Defendants and void pursuant to the Minnesota Declaratory Judgments Act, Minn. Stat. §§ 555.01 *et seq*.

19.     There exists an actual, justiciable and genuine controversy with regard to the Defendants' execution of the Scio Asset Purchase Agreement.

20.     Plaintiffs seek a declaration that (a) the Scio Asset Purchase Agreement is void, (b) the parties must be returned to the status quo immediately prior to execution of the Scio Asset Purchase Agreement, (c) Public Scio must return all assets received from Private Scio, and (d) the individuals identified on Schedule 1.4 of the Scio Asset Purchase Agreement must return the 13 million shares of Public Scio.

## SIXTH CAUSE OF ACTION

### (Rescission)

### (Against All Defendants)

38

178. The Plaintiffs repeat the allegations of all preceding paragraphs of this Complaint and incorporate the same by reference.

179. As alleged in detail in the preceding paragraphs, the Scio Asset Purchase Agreement was fraudulent and executed without proper authority.

180. Sufficient grounds in equity exist for rescission of the Scio Asset Purchase Agreement.

181. Private Scio has not lost its right to rescission by affirmance, laches or otherwise.

182. The commencement of this action is notice of Private Scio's election of its right to rescission.

183. Private Scio demands rescission of the Scio Asset Purchase Agreement and return of the consideration exchanged pursuant to the Scio Asset Purchase Agreement. Private Scio hereby tenders the 13 million shares of Public Scio stock purportedly transferred to individuals identified on Schedule 1.4 of the Scio Asset Purchase Agreement.

## SEVENTH CAUSE OF ACTION

### (Usurpation of a Corporate Opportunity)

### (Against Adams, Monahan and Lancia)

184. The Plaintiffs repeat the allegations of all preceding paragraphs of this Complaint and incorporate the same by reference.

185. Defendants Adams and Monahan were directors, officers and attorneys of Private Scio. As directors and officers of Private Scio, Adams and Monahan owed fiduciary duties of care and loyalty in the performance of their duties.

186. To the extent Defendant Lancia is or was an officer of Private Scio, Lancia owed a fiduciary duty of care and loyalty in the performance of his duties.

187.    Private Scio possessed assets and corporate opportunities, including without limitation the rights under the Apollo Asset Purchase Agreements.

188.    Private Scio's assets and corporate opportunities, including without limitation the rights under the Apollo Asset Purchase Agreements, were closely associated with Private Scio's existing or prospective activities and were in line with its business.

189.    Defendants Adams, Monahan and Lancia diverted Private Scio's corporate opportunities to their own personal interests, by causing Private Scio to enter into transactions with Public Scio, a company they controlled.  Defendants exploited their positions as "insiders" by appropriating to themselves business opportunities belonging to Private Scio.  Defendants' conduct in diverting these corporate opportunities was a breach of their fiduciary duties of loyalty, good faith and fair dealing in favor of Private Scio and constituted a usurpation of Private Scio's corporate opportunities.

190.    Any property or profit acquired by Defendants Adams, Monahan and Lancia in connection with their  usurpation of Private Scio's corporate opportunities is subject to a constructive trust for the benefit of Private Scio.

191.    As a direct and proximate result of the malpractice by Adams, Monahan and AMLLP, Private Scio suffered damages and other compensable injuries an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief against defendants as follows:

1.    For a judgment against defendants, jointly and severally, awarding direct and consequential damages sustained by Private Scio in an amount to be established through proof at trial, plus pre-judgment and post-judgment interest.

2.     For a judgment against Defendants awarding Private Scio appropriate equitable relief to remedy the Defendants' breaches of fiduciary duties.

3.     For declaratory judgment declaring that (a) the Scio Asset Purchase Agreement is void, (b) the parties must be returned to the status quo immediately prior to execution of the Scio Asset Purchase Agreement, (c) Public Scio must return all assets received from Private Scio, and (d) the individuals identified on Schedule 1.4 of the Scio Asset Purchase Agreement must return the 13 million shares of Public Scio.

4.     For rescission of the Scio Asset Purchase Agreement.

5.     For a constructive trust in favor of Private Scio based upon Defendants' usurpation of Private Scio's corporate opportunities.

6.     For a judgment against defendants, jointly and severally, awarding Private Scio reasonable attorneys' fees and costs incurred in prosecuting this action.

7.     Such other and further relief as the Court deems just and proper.

Respectfully submitted,

Date:  May 7, 2012.

*s/Annamarie A. Daley*
Annamarie A. Daley (MN Bar No. 158112)
Stephanie M. Seidl (MN Bar No. 392743)
BARNES & THORNBURG LLP
225 South Sixth Street
Minneapolis, MN 55402
Phone: (612) 333-2111
Fax: (612) 333-6798
Email: annamarie.daley@btlaw.com
         stephanie.seidl@btlaw.com

# EXHIBIT 9

| | |
|---|---|
| **From:** | Kristoffer Mack |
| **To:** | Kroells, Christine A |
| **Cc:** | Paul Rapello |
| **Subject:** | Scio Diamond |
| **Date:** | Tuesday, August 09, 2016 4:03:10 PM |

Hey Christie. Hope all is well with the investigation. Paul and I happened upon this site this morning. You guys should have a look at this company and their Edgar filings. Lots of money raised ($25mm) over three company name changes and surprise surprise, Mr. Adams on the Board.  In googling around, there seems to be other strange stuff especially when you try to match up photos with Dan and Dave Kruger (apparently brothers) who both work at the company?? The last link is a summit that Dan Kruger spoke at but its actual a picture of Dave Kruger we think. Also, surprisingly poor website programing for a company claiming to be a SAAS business. We suspect its all a fraud but happy to do discuss our suspicions if your team isn't already all over it. Best

https://www.absio.com/
https://www.sec.gov/cgi-bin/browse-edgar?company=absio&owner=exclude&action=getcompany

http://coloradotechsummit.org/speakers/

ECL-00028914

# EXHIBIT 10

| | |
|---|---|
| **From:** | Paul Rapello |
| **To:** | Kroells, Christine A |
| **Cc:** | Kristoffer Mack |
| **Subject:** | follow up |
| **Date:** | Thursday, May 19, 2016 12:40:41 PM |
| **Attachments:** | Scio Diamond - Key Event Time Line - February 10 2015.docx |
| | Key Entity and Individual Glossary PR comments 5-9-12.docx |
| | ADI Proxy and related info.pdf |
| | Scio ownership table.xlsx |
| | Copy of Apollo Outstanding Liabilities (April 12, 2011).xlsx |
| | Scio_Diamond_Letter_03232012[1].pdf |
| | Mazzeo Summary.docx |

Hi Christi,

Thanks again for your time today.  As discussed, I have attached some additional items which may be useful.  Please feel free to contact me with any additional questions.

Best,
Paul

ECL-00033416