UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 0:17-cr-00064-DWF-KMM |
| Plaintiff, | |
| v. | **ORDER** |
| Edward S. Adams, | |
| Defendant. | |

David M. Genrich, David J. MacLaughlin and John E. Kokkinen, Assistant United States Attorneys, counsel for the United States of America

Lance A. Wade, Gloria K. Maier, Joseph G. Petrosinelli and Sarah Lochner O'Connor, Williams & Connolly LLP; Deborah A. Ellingboe and James L. Volling, Faegre Baker Daniels LLP; counsel for Mr. Adams

    This matter is before the Court on two government requests, both of which are opposed by the defense. (Gov't's Letter (June 20, 2018), ECF No. 162; Def.'s Letter (June 21, 2018), ECF No. 163.) First, the government seeks "approval for the use of a 'walled off' AUSA team to respond to the motion to dismiss" filed by the Defendant, Edward S. Adams. (Gov't's Letter at 2.) Second, the government asks the Court to extend the deadline for it to respond to Mr. Adams' motions. (*Id.*) The Court held a telephone conference with counsel for the parties on June 22, 2018 to discuss both matters.

### *Walled Off AUSA Team*

    Mr. Adams has filed a motion to dismiss the indictment, or, in the alternative, for disqualification of the prosecution team. (ECF No. 144.) Generally speaking, Mr. Adams contends that the indictment should be dismissed because agents and

members of the prosecution team repeatedly viewed attorney-client privileged material when they executed a search warrant for his Yahoo! email accounts. In a sealed version of his motion to dismiss, Mr. Adams discusses the contents of several communications he claims are privileged (ECF No. 144), and he has submitted twenty-one exhibits to the Court for *in camera* review. (ECF No. 145, Exs. A–U in Supp. of Def.'s Mot. to Dismiss.)

Since its purported viewing of the documents at issue during its review of the Yahoo! email database, the government has not seen the documents now submitted to the Court for *in camera* review, and the prosecution team only has access to a redacted version of the motion to dismiss that removes references to the substance of allegedly privileged communications. (*See* Def.'s Mot. to Dismiss (Public Version), ECF No. 141.) Because the motion to dismiss raises arguments based on emails the government cannot currently access, the government asserts that it "cannot effectively respond to these arguments without being able to review the contents of the emails." (Gov't's Letter at 2.) Specifically, the government argues that it needs access to those allegedly privileged emails both to evaluate the assertions of privilege themselves and to respond to the arguments that the government's conduct in executing the email warrant was outrageous and resulted in actual and substantial prejudice. (*Id.* at 2–3.) The government proposes that two AUSAs who are familiar with the case be permitted to review the emails comprising the *in camera* submission as well as the unredacted brief and prepare the government's response to the motion to dismiss, and that as a result, those two attorneys become permanently walled off from the rest of the prosecution. (*Id.* at 3.)

Mr. Adams opposes this request. (Def.'s Letter at 2–3.) He stresses that the materials he submitted *in camera* include communications with his former criminal counsel in this very case, his attorneys in a closely-related SEC investigation, and his tax counsel. (*Id.* at 2.) Because these emails implicate his defenses in this case, Mr. Adams contends that the establishment of a "walled off" AUSA team would provide insufficient safeguards to protect his attorney-client privilege. He proposes

that the Court should "consider the documents . . . submitted *in camera*, and for the government to prepare its response based on the information that Mr. Adams has supplied in his privilege log and in the public version of his brief." (*Id.* (citing *In re Grand Jury Subpoenas*, 454 F.3d 511, 520–22 (6th Cir. 2006) ("[A] government taint team's review of documents is far riskier to the non-moving party's privilege than is a judge's *in camera* review. . . . taint teams present inevitable, and reasonably foreseeable risks to privilege. . . . human nature being what it is, occasionally some taint-team attorneys will make mistakes or violate their ethical obligations.")); *id.* at 3 (citing *In re Grand Jury Subpoenas*, 454 F.3d at 523–24, and *Struzyk v. Prudential Ins. Co. of Am.*, No. 99-cv-1736 (JRT/FLN), 2003 WL 21302964, at *2 (D. Minn. May 16, 2003) for the proposition that challenges based on a privilege log alone represents the standard protocol).) Finally, Mr. Adams contends that "[p]ermitting further scrutiny by the government of any of the *in camera* documents would only deepen the privilege violations in this case. . . ." (*Id.* at 3.)

There is no binding authority governing the question presented by the government's request. Indeed, the government did not cite a single case in its letter to support the procedure it asks the Court to authorize. And the authority provided by Mr. Adams, although somewhat helpful, fails to provide clear guidance on the unique circumstances presented here.

In a somewhat analogous setting, another district court has expressed reservations about the government's use of an ostensibly walled-off AUSA to review the substance of allegedly privileged communications and file a motion challenging the applicability of the attorney-client privilege. *United States v. Levin*, No. 15-cr-101 (KBF), 2015 WL 5838579, at *2–3 (S.D.N.Y. Oct. 5, 2015). In *Levin*, the government tasked a so-called "Wall AUSA" with separating potentially privileged communications from other documents seized by the government pursuant to a search warrant. The defendant's counsel also reviewed the items that had been seized and prepared a privilege log, and the Wall AUSA challenged certain assertions of privilege reflected on the log. The Wall AUSA also later prepared and filed the

3

government's motion arguing that the crime-fraud exception applied to certain categories of documents and communications. *Id.* at \*2. The district court expressed reservations with the government's approach, "particularly with regard to the role of the Wall AUSA." *Id.* at \*2. The court noted that the establishment of an ethical wall served the dual purpose of both allowing the government to make a review of seized material for responsiveness and protecting the defendant's "rights to the protection of his privilege." *Id.* But it observed that the use of an ethical wall "is decidedly not to give the Government a substantive look into that which it has no right to see." *Id.* Noting that the Wall AUSA "is not supposed to affirmatively act on behalf of the prosecution,' the Court found it "particularly problematic . . . that the Wall AUSA, at least implicitly, base[d] her motion on her substantive awareness of the content of the documents at issue." *Id.*

The Court notes that "taint teams" like the one sought here are a not uncommon solution to the problem created by balancing the government's interest in prosecuting criminal cases with defendants' interest in protecting privileged communications. *See, e.g.*, *United States v. Dupree*, 781 F. Supp. 2d 115, 163–64 (E.D.N.Y. 2011) (finding that "the government followed appropriate procedures with respect to handling potentially privileged documents" where it established a "taint team" to review documents seized during a search and proposed to return clearly privileged documents to opposing counsel and provide notice prior to disclosure to prosecution team of any possibly privileged documents). The Court does not embrace Mr. Adams' blanket assertions that taint teams are anathema to the Constitution. However, the Court shares concerns similar to those voiced in *Levin* that the "walled off" AUSA team proposed by the government in *this* case would potentially "give the [g]overnment a substantive look into that which it has no right to see." 2015 WL 5838579, at \*2. Specifically, unlike a situation in which a taint team is asked to sort privileged documents from those which are not, here the government seeks

4

permission to view documents regarding which the government has yet to dispute any claim of privilege.[1]

The Court is sympathetic to the difficult position in which the government finds itself—it is being asked to respond to a defense motion that seeks a substantial remedy without the benefit of seeing all the material on which the motion is based. However, the government's predicament here is no different than that in which litigants find themselves whenever they attempt to litigate issues of privilege and an *in camera* submission is made. *Struzyk v. Prudential Ins. Co. of Am.*, No. 99-cv-1736 (JRT/FLN), 2003 WL 21302964, at *2 (D. Minn. May 16, 2003) ("In camera reviews of documents necessarily hamper attorneys' ability to advocate their positions. . . . the very nature of the attorney-client privilege and work product doctrine demands that information about disputed documents be limited."). Moreover, the government's dilemma would not exist absent its own conduct. Mr. Adams likely would not have filed a motion seeking relief based on the substance of allegedly privileged communications if government counsel and law enforcement agents directly involved in the investigation and prosecution of this case had taken more effective steps to avoid accessing them. Most critically, the Court has reviewed the documents at issue, which number only twenty-one, and has examined the limited portions of Mr. Adams'

---

[1] The government suggests it may contest Mr. Adams' assertions of attorney-client privilege or work-product protection. (Gov't's Letter at 2 ("[Mr. Adams] repeatedly asserts, for example, that certain emails were sent for the purpose of seeking legal advice, a key component of the attorney-client privilege. The government should be permitted to evaluate these assertions, to contest them if incorrect, or to agree with them, if they are correct, to narrow the scope of the parties' dispute.").) Mr. Adams provided the government with a privilege log on May 15, 2018, but neither a dispute about any claim of privilege or a dispute about the adequacy of such a log has been presented to the Court. In this Order, the Court requires the parties to meet and confer regarding specific issues concerning the validity of the attorney-client privilege or work-product protection claimed for any of the communications in Mr. Adams' privilege log. To the extent disagreements remain, the government shall file a separate motion contesting the application of the privilege or protection by the deadline established below.

motion to dismiss discussing those documents. While the balance of interests might favor use of a walled off AUSA in a situation where the inaccessible parts of the record were more voluminous, here the Court is equal to the task of reviewing the purportedly privileged materials. Moreover, the Court is capable of evaluating whether the extraordinary remedies sought by the defense are warranted based on its own review of the documents and any argument, albeit somewhat hindered, that the government presents.

For these reasons, the government's request for the Court to authorize the use of a "walled off" AUSA team that is provided access to the *in camera* submissions to respond to the motion to dismiss is denied.

### Request for an Extension

The government also seeks an extension of its deadline for responding to the lengthy filings pending before the Court. As communicated to counsel during the June 22nd telephone hearing, the Court agrees that an extension of the motions response deadline is appropriate, but not the full 30 days requested by the government. The Court finds that the departure of a lead member of the prosecution team from the United States Attorney's Office has delayed the government's ability to prepare its responses to the pretrial motions. However, the Court finds that a 30-day extension is not necessary for the government to prepare a response to the defense motions, and is not workable for this litigation. During the telephonic hearing, the Court instructed the government that it would permit a two-week extension, establishing a July 16, 2018 deadline. Since then, the parties have represented that they will be jointly requesting an extension of the trial date from the District Court, which has informed them that a new trial date could be set for December of 2018 or January or February of 2019. (Email from J. Kokkinen to Menendez, M.J. (June 24, 2018 5:13 p.m.) (on file with the Court).) In light of these representations, the Court finds it appropriate to extend the deadline for the government's response by an additional week, for a total extension of twenty-one days.

*Order*

For the reasons stated above, **IT IS HEREBY ORDERED THAT**:

1. The government's letter request **(ECF No. 162)** is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.
2. The government's request for approval of a "walled off" AUSA team to review *in camera* submissions to respond to the motion to dismiss is **DENIED**.
3. The government's request for an extension of the motion response deadline is **GRANTED** in part. The government shall file its responses to the defendant's new motions and post-hearing memorandum on the pending motion to suppress **on or before July 23, 2018**. In addition, the government shall raise any challenge to the privilege designations asserted by Mr. Adams in a separate motion by this date, if the parties are unable to resolve those disputes on their own.
4. Mr. Adams shall file any reply to the government's response **on or before August 6, 2018**. If the government files a separate motion challenging Mr. Adams' privilege designations, Mr. Adams shall file any response to that motion on this date.

Date: June 25, 2018              *s/Katherine Menendez*
                                 Katherine Menendez
                                 United States Magistrate Judge