# U.S. v. Edward S. Adams
# Case No. 17-64 (DWF/KMM)

# Exhibit 2



**FELHABER LARSON**
ATTORNEYS AT LAW

Jon M. Hopeman
(612) 373-8416
Fax: (612) 338-0535
E-mail: jhopeman@felhaber.com

May 13, 2016

**VIA E-MAIL AND U.S. MAIL**

Andrew M. Luger
United States Attorney
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

RE:   **Edward S. Adams**
      **Our File No. 29260.001**

Dear Mr. Luger:

I represent Edward S. Adams in connection with a Grand Jury Subpoena that he received from your office. A copy is enclosed as Exhibit A. In discussing the matter recently with my client, I discovered and verified that two entities mentioned in the Subpoena's document requests (Apollo Diamond, Inc. and Oak Ridge Capital Group, Inc.), for which Mr. Adams served in a legal capacity, officer capacity, and was a shareholder, retained, consulted, and/or worked with the law firm of Latham & Watkins, LLP ("Latham") during the time period for which information was requested. It also appears that as recently as 2010, Mr. Adams, on his own individual behalf and that of Apollo Diamond, Inc., had substantive discussions with Latham attorneys about Apollo Diamond, Inc., including a discussion relating to a potential regulatory matter. Critically, it appears that Assistant United States Attorney David Maria, whose name is listed on the Subpoena, was practicing law with Latham during much of the relevant time period. I write to alert you to the conflict Mr. Maria's involvement in this matter poses in light of these prior representations.

The Minnesota Rules of Professional Conduct apply here. 28 U.S.C. § 530B(a) and L.R. 83.6(a).

Minnesota Rule of Professional Conduct 1.11 provides that "a lawyer currently serving as a public officer or employee: (1) is subject to Rules 1.7 and 1.9 …." Comment 9 to Minnesota Rule of Professional Conduct 1.7 provides that "a lawyer's duties of loyalty and independence may be materially limited by responsibilities to former clients under Rule 1.9." Rule 1.9(c) provides in pertinent part that a "lawyer … whose former firm has …. represented a client … shall not thereafter: (1) use information relating to the representation to the disadvantage of the former client …." This "duty of confidentiality continues after the client-lawyer relationship has terminated." *See* Comment 19 to Minnesota Rule of Professional Conduct 1.6 (citing Rule

220 South Sixth Street
Suite 2200
Minneapolis, MN 55402-4504

Phone: 612.339.6321
Fax: 612.338.0535

felhaber.com

1378164.v1

Andrew M. Luger
May 13, 2016
Page 2

1.9(c)). Finally, Comment 2 to Rule 1.10 provides that "a firm of lawyers [such as Latham] is essentially one lawyer for purposes of the rules governing loyalty to the client, or from the premise that each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated." *See also* Comment 7 to Minnesota Rule of Professional Conduct 1.18 (providing that "the prohibition in this rule is imputed to other lawyers [in the same firm] as provided in Rule 1.10").

Of course, all of these Rules are even more apposite in the context of your office because Comment 1 to Rule 3.8 reminds us that a prosecutor "has the responsibility of a minister of justice and not simply that of an advocate," which responsibility carries with it "specific obligations to see that the defendant is accorded procedural justice." *See also* ABA Standards Relating to the Administration of Justice, The Prosecution Function at 3-3.1 cmt. (3rd ed. 1993) ("Prosecutors are ethically obligated to assure that the rights of their adversaries are protected."). Indeed, the U.S. Attorneys' Manual provides that a prosecutor has an obligation to recuse himself not only when an actual conflict of interest exists, but also when "there is an appearance of a conflict of interest or loss of impartiality." U.S. Attorneys' Manual, § 3-2.170. Such heightened ethical rules "are appropriate for prosecutors because the role of the prosecutor is significantly different from that of other lawyers. In the words of Justice Felix Frankfurter, the prosecutor 'wields the most terrible instruments of government.'" Monroe Freedman and Abbe Smith, *Understanding Lawyers Ethics* (4th ed. 2010), p. 286. This higher standard is justified because "[t]he United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all ...." *Berger v. United States*, 295 U.S. 78, 88 (1935).

Significantly, an article entitled "The Revolving Door: Professional Responsibility Considerations for Attorneys Entering or Leaving the Department of Justice" authored by Stacy M. Ludwig, Deputy Director of the Department of Justice's Professional Responsibility Advisory Office, and published in the September 2009 United States Attorneys' Bulletin (Volume 57, Number 4) confirms the above conflict analysis. A number of passages in the article are particularly salient. On page 8, Ms. Ludwig notes that the ABA equivalent of Rule 1.11 "requires that attorneys entering government service from the private sector comply with Model Rule 1.9, governing duties to former clients." Later on page 10 in her analysis of Model Rule 1.9, she notes that "except in limited circumstances, a Department attorney is prohibited from using or revealing confidential information of a former client or a prior firm's current or former client, unless the current or former client consents," meaning that "the situation may create a conflict of interest of the Department attorney in representing the United States." Additionally, she notes later on that same page that "[b]ecause a Department attorney, in most situations, is bound to maintain the confidential information of a former client (and the clients of her former firm), that attorney may face a conflict of interest ... in representing the United States." She adds in this regard that if a "former client does not consent to the use and disclosure of her confidential information, a Department attorney may find it difficult to represent the United States ... if not impossible," due to the difficulty of "distinguish[ing] confidential information learned during the prior representation from confidential information learned while representing the United States." Finally, Ms. Ludwig concludes on page 11, "An attorney's

1378164.v1

Andrew M. Luger
May 13, 2016
Page 3

fundamental duties of loyalty and confidentiality, *which never expire and can be imputed to an attorney from her firm*, impose obligations on attorneys entering or leaving the Department."

I knew that this was a matter that you would want brought to your attention as soon as possible. My interpretation of the Minnesota Rules of Professional Conduct and the article authored by Ms. Ludwig suggests that Mr. Maria's involvement in this matter at the very least is highly problematic. Mr. Adams does not know the scope of Mr. Maria's participation in the matter while at Latham. Mr. Adams is unwilling to waive any protection provided him under the Rules and does not consent to Mr. Maria's participation in this case. If you have any questions about the above, please let me know.

Sincerely,

Jon M. Hopeman

jle
Enclosure
cc:   Edward S. Adams

1378164.v1