## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 17-cr-64-DWF-KMM |
| | ) | |
| EDWARD S. ADAMS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## DEFENDANT'S OPPOSITION TO GOVERNMENT'S
## MOTION CONTESTING THE APPLICATION OF PRIVILEGE

The government does not challenge most of Mr. Adams's assertions of privilege, and the challenges that it has raised are without merit. As it relates to Mr. Adams's pending motions (ECF 141 and 147), the government only challenges—for a third time— the validity of Mr. Adams's assertions of privilege relating to seven communications with Murry LLC. It does not raise challenges as to any of the other *in camera* exhibits.

This Court previously considered the seven Murry LLC documents in February 2018, and ruled that "Mr. Adams has established the privileged nature of the communications at issue." ECF 117 at 13. The District Court rejected the government's objections to that ruling, confirming "that Defendant has established the privileged nature of communications with accountants that his tax attorney retained for the purpose of rendering legal advice to Defendant." ECF 139 at 2. The government's last-ditch effort to obtain reconsideration now, in order to excuse its unreasonable search conduct and its

unreasonable use of the Murry documents to build its tax case, is procedurally improper. And its new, belated argument that the crime-fraud exception should apply is unsupported by the law and the facts.

The government's remaining privilege challenges—relating to certain communications with Mr. Monahan, Mr. Reilly, Mr. Spitzer, and Nelson Mullins—are not challenges that relate to the relief that Mr. Adams is seeking in connection with his motions.  However, a review of these documents demonstrates that they are privileged.

## I.      The Identified Communications with Murry LLC Are Privileged.

The seven communications between Mr. Adams and Murry LLC that the government challenges are protected by the attorney-client privilege.[1]  The government's improper efforts to seek reconsideration, at still greater expense to Mr. Adams, of the Court's prior decisions establishing that these communications are privileged must be rejected.  The seven communications are ones that were made in confidence and for the purpose of obtaining legal advice, and are ones over which Mr. Adams (and Mr. Brever) have "clearly continually invoked the protection of these privileges."  ECF 117.  And the

---

[1] Mr. Adams addresses herein all of the government's challenges as to these documents, which are raised across the government's three briefs.  *See* Suppression Opp. 64-82, Dismissal Opp. 16, 21, 33-35, and Br. 2-3.  The government now claims that Mr. Adams's privilege log "is inadequate to demonstrate that the communications with the Murry firm are privileged," but this complaint was not raised during the meet and confer process.  *See* Gov. Ex. J.  Moreover, Mr. Adams set forth his justification for the application of the attorney-client privilege to these communications in his prior briefing, ECF 90 & 110, and in the declarations of Thomas Brever, ECF 93 & 112 (sealed versions: ECF 94, 97, 113 & 114).  Mr. Adams incorporates those submissions by reference herein.

government's new argument about the application of the crime-fraud exception—raised, improperly, after the government already viewed and used the communications with Murry LLC—fails because the government has not met the high bar to show that the legal advice at issue was obtained in furtherance of any crime or fraud.[2]

### A. The Government Is Improperly Seeking Reconsideration of the Court's Prior Decisions

We have been here before.  Faced with the potential consequences that may flow from the government's intentional invasion of Mr. Adams's protected communications with Murry LLC, the government is improperly rearguing the issue of whether they are privileged.  This contravenes the two-phase briefing schedule set by the Court in February.  ECF 88.  There is no reason to disturb the Court's prior ruling, ECF 117 (the "R&R"), which has now been adopted by the District Court, ECF 139.

The government could have, but did not, file a motion for reconsideration of the two prior rulings on the Murry privilege issue,[3] and it did not seek an interlocutory appeal

---

[2] The government notes that "[t]he remainder of the communications with the Murry firm either have not been claimed to be privileged or were excluded as a result of the second round of privilege filters or the final filter in April 2017."  Suppression Opp. 66.  What the government overlooks is that there may be additional privileged Murry communications among the 37,442 items that the government "seized" but never accessed.  As contemplated by this Court's orders, *see* ECF 88, Mr. Adams has not engaged in a document-by-document privilege review of those documents that the government did not access in Relativity.  Now that the government has stated that it does not object to suppressing the documents that it seized but never viewed, Suppression Opp. 86, it should be unnecessary to review the 37,442 never-viewed items for privilege.

[3] Of course, motions for reconsideration are disfavored, and this Court's Local Rules require a party seeking reconsideration to first file a letter seeking permission to file, and for permission to be granted the letter must demonstrate that there are "compelling circumstances" justifying reconsideration.  *United States v. Tate*, No. CIV. 11-3337 MJD,

PUBLIC VERSION

of the District Court's order.  Having failed to seek reconsideration, the law of the case

doctrine prevents the government from "relitigat[ing] settled issues in a case, thus

protecting the settled expectations of parties . . . and promoting judicial efficiency."

*Little Earth of the United Tribes, Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 807 F.2d

1433, 1441 (8th Cir. 1986).  The Court should "reconsider a previously decided issue

only if substantially different evidence is subsequently introduced or the decision is

clearly erroneous and works manifest injustice."  *Id.*  None of these grounds for

reconsideration exists.

    The government fails to identify any clear error of law, and misstates the record in

its efforts to do so.  Without citation to the Court's R&R, the government asserts that the

R&R "held that [the] record demonstrated that preparing tax returns was not the *sole*

purpose of the communications with the Murry firm," and that "this is an incorrect

statement of the applicable test."  Suppression Opp. 67.[4]  First, this is not at all what the

---

2012 WL 2885001, at *1 (D. Minn. July 13, 2012) (citing LR 7.1(h) (now LR 7.1(j)).
And "[m]otions for reconsideration serve a limited function: to correct manifest errors
of law or fact or to present newly discovered evidence. . . .  Nor should a motion for
reconsideration serve as the occasion to tender new legal theories for the first time."
*Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir.1988) (citation omitted);
*Julianello v. K-V Pharm. Co.*, 791 F.3d 915, 923 (8th Cir. 2015) ("A motion for
reconsideration is not a vehicle to identify facts or legal arguments that could have been,
but were not, raised at the time the relevant motion was pending.").

[4] The government advanced its position about the "sole" purpose of the engagement in a
failed effort to pierce Mr. Adams's privilege in all of his communications with Mr.
Brever, in addition to Murry.  *See* ECF 110 at 16-27 ("The government spends the
majority of its response attempting to shoehorn Mr. Adams's engagement of Foster
Brever Wehrly (and Mr. Brever's engagement of Murry LLC) into a common and simple
fact pattern in which the attorney-client privilege does not apply:  the retention of an
attorney or accountant *solely to prepare tax returns.*"); *see also* ECF 109 at 18-19; ECF

PUBLIC VERSION

R&R held:

> On the record before the Court, Mr. Adams has established the privileged nature of the communications at issue.  The declarations and their related exhibits demonstrate that Mr. Adams retained counsel before any decision was made to file amended tax returns and that counsel provided advice outside the narrow accounting-service scope of preparing and filing amended returns. . . . ***On these facts, the Court concludes that the communications between Mr. Adams, Mr. Brever, and Murry & Associates accountants were made in confidence and for the purpose of obtaining legal advice.***

ECF 117 at 13-14.  Second, the Court's R&R correctly applied *United States v. Cote*, 456 F.2d 142 (8th Cir. 1972).  *See* ECF 117 at 12 ("If counsel initially advises a client to file returns and then retains an accountant 'simply to make the correct mechanical calculations, the privilege would not apply'") (quoting *Cote*, 456 F.2d at 144).  The government's argument that the Court misstated the law is baseless.[5]  The Court plainly concluded that ***the purpose*** of these communications was to obtain legal advice.  *Id.* at 12-14.  This conclusion was consistent with *Kovel*'s holding that "communications by the

---

117 at n.7.

[5] The out-of-circuit cases now cited by the government, Suppression Opp. 68, do not reveal any misstatement of the law.  Only one of these cases relates to the application of the *Kovel* doctrine to an accountant, and that case is consistent with the law applied by the Court.  *See In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000) (citing *Cote*).  The government misunderstands that case's citation to *United States v. Frederick*, 182 F.3d 496 (7th Cir. 1999).  In *Frederick*, information was communicated to an attorney for the purpose of preparing annual tax returns.  *Id.* at 501.  That lawyer was also representing the taxpayer in anticipated litigation with the IRS related to *different* tax years.  *Id.*  Documents related to the regular annual returns were not privileged.  *Id.*  But the court explained that, in the context of an audit, accounting workpapers could be privileged.  *See id.* at 502; *see also Schaeffler v. United States*, 806 F.3d 34, 44 n.4 (2d Cir. 2015) (distinguishing *Frederick* on these grounds). ██████████████████ ████████████████████████████████████████  Thus, *Frederick* and the one line *in re Grand Jury Proceedings* cites from it are inapposite.

client reasonably related to" the purpose of facilitating an attorney's legal advice "ought fall within the privilege." *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961).  As discussed below, Mr. Brever's declarations confirm that the purpose of each of the documents at issue was to facilitate his provision of legal advice, and not merely to provide information to include on amended returns.[6]

**B.    Mr. Adams's Assertion of Privilege is Valid and Not Waived**

**1.    Mr. Adams and Mr. Brever have continuously and consistently asserted the application of the attorney-client privilege**

The government attempts to paint a picture of Mr. Adams's assertions of privilege as "inconsistent," but the purported "inconsistencies" do not exist; the facts are explained in Mr. Brever's declarations.  In all material ways, both Mr. Adams and Mr. Brever have consistently asserted that the attorney-client privilege applies to the seven communications with Murry LLC.[7]

---

[6] The government attempts to reargue that Mr. Brever's and Mr. Murry's October 27, 2014 emails are conclusive evidence that Mr. Brever had completed rendering his legal advice as of that date, and that after that date their purpose was to assist Mr. Adams with the preparation of amended returns.  Suppression Opp. 68-70.  This argument, and these documents, were already considered and rejected in the prior decisions.  *See* ECF 109 at 22-23 & ECF 109-8; ECF 119 at 3 & ECF 119-1.  The Court also already considered what the government identifies as the "salient questions:" "whether the Murry firm was retained before the decision was made to file amended returns and whether the Murry firm's services were limited to tax-preparation services or if they also included services that facilitated Mr. Brever's provision of legal services."  Suppression Opp. 67 n.21; *see* ECF 109 at 22; ECF 119 at 2; ECF 112 at ¶ 3.

[7] Mr. Adams has submitted as Exhibit 1 a chart demonstrating that the seven documents, Rows 101-107 of his privilege log (Dismissal Br. Ex. 1), were submitted *in camera* to the Court in connection with his prior motion (ECF 91-20 Tabs 1-7 & ECF 95-96), and also were recently submitted to the Court *in camera* as Exhibits R, O, M, N, P, S, and T.

PUBLIC VERSION

First, regarding *in camera* Exhibit R, the email from Mr. Adams to Mr. Murry attaching the "ESA Tax Summary for P. Murry" spreadsheet, the government complains that Mr. Brever disclosed the cover email, whereas Mr. Adams has included both the cover email and the substantive attachment in his privilege log and *in camera* submission. Suppression Opp. 70-71. This is not news. Mr. Brever previously stated in his declaration that he produced to the government certain "transmittal correspondence with substantive attachments removed." Brever Decl. ¶ 14 (ECF 93). But given the significance of the substantive attachment, Mr. Adams has kept the spreadsheet together with its transmittal email, because the transmittal email reflects the *context* of the transmission of the spreadsheet—that it was sent to Murry by Mr. Adams on October 28, 2014. The fact, addressed in Mr. Adams's briefs, that AUSA Maria viewed both the email and attachment is relevant to show that AUSA Maria knew what the spreadsheet was, and who its intended recipient was, when he repeatedly reviewed it. *See* Dismissal Br. Ex. 4 at 11 (Excerpt of Relativity Log for *in camera* Ex. R).[8]

Second, the government notes that Mr. Adams's privilege log does not list the attachments for *in camera* Exhibits S and T, although they were submitted in connection with Mr. Adams's Motion Asserting Certain Privileges (ECF 91-20 Tabs 6 &7). The only reason that Mr. Adams did not log the attachments to these emails in his subsequent Revised Privilege Log of Documents Viewed by Government in "For Review" Folder,

---

[8] *See also* Suppression Opp. 62 (raising same complaint about "ESA Tax Questions" cover email (*in camera* Ex. K)), which Mr. Adams included for the same reasons.

ECF 142 Ex. 1, is because there is no Relativity record reflecting that the attachments were viewed by the government, and this log was limited to "viewed" documents.[9]

Last, the government argues that the cover emails that are Exhibits S and T were disclosed by Mr. Brever, and that it believes that the three attachments were also contained among Mr. Brever's production, although they were not produced together with the transmittal email. *See* Suppression Opp. 71-72. Mr. Brever addressed his production of certain standalone files in his Supplemental Declaration, including those relating to *in camera* Exhibits S and T. ECF 112 ¶ 7. ████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

█████████████████████████████████████

████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████

████████████████████████ In any event, the relief sought by Mr. Adams for the government's review and use of Mr. Adams's privileged communications with Murry LLC is not primarily based on *in camera* Exhibits S and T, and is instead largely based on the review and use of the "ESA Tax Summary for P. Murry" spreadsheet (*in*

---

[9] Mr. Adams did not submit the attachments to the Court with *in camera* Exhibits S and T for the same reason—the Relativity log did not reflect that the attachments were viewed.

*camera* Ex. R), and two October 29, 2014 email chains (*in camera* Exs. M and N).  *See*

Dismissal Br. 13-16.  *In camera* Exhibits M, N, and R were all viewed multiple times by

AUSA Maria before he sent them to Agent Belich, *see* Dismissal Br. Ex. 4 at 7-8, 11& *in*

*camera* Ex. Q, after which point these documents were discussed in the IRS Special

Agent Report ("SAR") and attached thereto in connection with the government's

approval of the tax charges.  *See* Suppression Reply 11-14 & *in camera* Ex. V.[10]

## 2.    The Seven Murry LLC Communications Are Privileged

The seven documents presently at issue were among those previously submitted to

the court as "samples" and were part of the record that supported the Court's conclusion

that "the communications between Mr. Adams, Mr. Brever, and Murry & Associates

accountants were made in confidence and for the purpose of obtaining legal advice."

ECF 117 at 13-14.  The Court's R&R referenced the "samples" provided by Mr. Adams,

and concluded:

> "[o]n the record before the Court . . . Mr. Adams has established the
> privileged nature of the communications at issue. *The declarations and their*
> *related exhibits demonstrate* that Mr. Adams retained counsel before any
> decision was made to file amended tax returns and that counsel provided
> advice outside the narrow, accounting-service scope of preparing and filing
> amended returns."

*Id.* (emphasis added).  Mr. Adams summarizes below the basis for his assertions of

privilege over these seven documents.

---

[10] As it did in the prior briefing on the Murry privilege issue, the government tries to use
the current briefing as a means to compel further production of files from Murry.  *See*
Suppression Opp. 72.  This Court should (again) reject this effort, as without reasonable
basis and procedurally improper.  *See* ECF 110 at 17 & n.11.

PUBLIC VERSION

Communications between a client and an accountant may be protected under the attorney-client privilege if the communications are "made in confidence for the purpose of obtaining legal advice from a lawyer." *Kovel*, 296 F.2d at 922. The Eighth Circuit in *Cote* recognized that the attorney-client privilege attached to such accounting-related documents where the "accountant's aid to the lawyer preceded the advice and was an integral part of it," and stated that "[a] more definitive test is whether the accountant's services are a necessary aid to the rendering of effective legal services to the client." 456 F.2d at 144-45.

In his two declarations, Mr. Brever explained the nature of his legal engagement and his need for the assistance of Murry LLC to facilitate his legal advice to Mr. Adams. The legal advice that Mr. Brever provided to Mr. Adams "███████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████ Murry LLC's advice and assistance assessing these technical accounting issues and deciphering relevant factual materials was essential to informing my legal advice in these areas." Brever Decl. ¶ 6. ████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████ Brever Suppl. Decl. ¶¶ 3.

PUBLIC VERSION

Mr. Brever specifically addressed the seven communications in his Supplemental Declaration.  Regarding the October 28, 2014 "ESA Tax Summary for P. Murry" spreadsheet (Tab 1 of prior submission; *in camera* Ex. R; Priv. Log Row 101), Mr. Brever explained:



Brever Suppl. Decl. ¶ 4 (emphasis added).  Regarding Tabs 2 through 5 of the prior submission (*in camera* Exs. O, M, N, P; Priv. Log Rows 102-105), three emails from October 29, 2014 and one from November 4, 2014, Mr. Brever stated:



*Id.* (emphasis added).  Mr. Brever described Tabs 6 and 7 (*in camera* Exs. S and T; Priv. Log Rows 106 & 107), two emails with attachments dated November 8 and 10, 2014, as:

Tabs 6 and 7 to Motion Exhibit 22, in my view, constitute requests for legal advice from Mr. Adams regarding

PUBLIC VERSION

*Id.* at ¶ 7.

The record thus establishes that the seven communications were "a necessary aid to the rendering of effective legal services to the client" and "preceded" Mr. Brever's "advice and [were] an integral part of it." *Cote*, 456 F.2d at 144-45. ███████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████. Brever Decl. ¶ 2; Supp. Brever Decl. ¶¶ 2-3, 5. The seven documents—and particularly the "ESA Tax Summary for P. Murry" (*in camera* Ex. R) and the October 29 emails (*in camera* Ex. M, N, and O)—embody the classic type of exchange of information *Kovel* found to be protected by the attorney-client privilege. *See Kovel*, 296 F.2d at 922. Because this is not a case in which "the advice to file the returns was first given by [Mr. Brever] and thereafter the accountant was employed simply to make the correct mechanical calculations," *Cote*, 456 F.2d at 144, these communications are privileged.

### 3. Mr. Adams Has Not Waived the Attorney-Client Privilege by Filing Amended Returns

The government again argues that the attorney-client privilege over the documents at issue has been waived as a result of Mr. Adams's filing of amended tax returns for 2008, 2009, and 2010. Suppression Opp. 73-76. It argues that "[t]he simple fact that Mr. Adams filed amended returns necessarily means that the raw factual information had to have been used to prepare and file those returns." *Id.* at 76. That is not the law. Mr. Adams did not waive the attorney-client privilege over these documents as a result of his

PUBLIC VERSION

filing of amended returns, because these documents contain more than just data underlying the amended returns.  They contain unpublished information, communicated to obtain legal advice, which was not intended for disclosure.

When considering the question of waiver in the *Kovel* context, the Eighth Circuit distinguishes between the tax return's contents and "detail underlying the reported data" on the one hand, and "detail of *unpublished* expressions which are not part of the data revealed on the tax returns" on the other.  *See Cote*, 456 F.2d at 144, 145 n.4.  While the court in *Cote* held that the privilege attaching to the accountant's workpapers was waived where the accountant had transcribed that same information onto the filed amended returns, the court warned against applying this waiver-by-filing rule "[t]oo broad[ly]," as it "might tend to destroy the salutary purposes of the" attorney-client privilege.  *See* 456 F.2d at 145 n.4 (citing *United States v. Schlegel*, 313 F. Supp. 177 (D. Neb. 1970)); *see also* ECF 110 at 30 (collecting cases adopting the *Schlegel* rule).  In *Schlegel*, the court considered and rejected the government's argument—akin to the government's argument here—that all information relayed to an attorney in connection with the preparation of income tax returns must therefore be intended to be transmitted to the government.  313 F. Supp. at 179.  Instead, the court held that "a more realistic rule would be that the client intends that only as much of the information will be conveyed to the government as the attorney concludes should be, and ultimately is, sent to the government."  *Id.*

As recognized by the Court in the R&R, Mr. Brever's declarations confirm that, consistent with *Cote*, he produced to the government "data and information ultimately included in filed tax returns provided to the IRS, as well as computational records

PUBLIC VERSION

underlying the figures reported in tax returns." *See* Brever Supp. Decl. ¶ 6.  Mr. Brever

produced standalone copies of files that he believed to contain data and information that

were included in Mr. Adams's filed amended returns, *id.* ¶ 7.  These items are contained

in Mr. Brever's document production in response to the Murry LLC grand jury subpoena.

*See* Gov. Ex. 43.  Mr. Brever did not produce documents, including those presently at

issue, that contain the type of "unpublished expressions" of information to counsel that

the Eighth Circuit and many other courts have recognized remain privileged.  *See Cote*,

456 F.2d at 144-45; *Schlegel*, 313 F. Supp. at 179.

A review of the documents at issue reveals that they are not merely "detail

underlying the reported data" that eventually was included in Mr. Adams's amended tax

returns ██████████████████████████████████; instead, they are

communications from client to counsel (or counsel's agent) that contain the type of

"*unpublished* expressions" of information that remain privileged.  *See Cote*, 456 F.2d at

144-45.  The "ESA Tax Summary for P. Murry" (*in camera* Ex. R) contains confidential,

unpublished expressions of information to Murry LLC and Mr. Brever ████████

████████████████████████████████████████████████████

████.  Brever Suppl. Decl. ¶ 4.  ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████ *See in camera* Ex. R. ██████████████

████████████████████████████████ The information reflected on this

PUBLIC VERSION

spreadsheet is not data revealed on the tax returns or the detail underlying the reported

data, *see* Gov. Exs. 31-33 (Mr. Adams's 2014 amended tax returns for 2008, 2009, and

2010)—instead, it is unpublished information, sent for the purpose of obtaining legal

advice, which was not intended for disclosure.[11]

Similarly, the October 29 and November 4 emails (*in camera* Exs. M, N, O, P)

contain unpublished information that Mr. Adams provided to obtain legal advice.  These

emails reflect Murry LLC ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████  Thus, the attorney-client privilege over these documents has not been waived.

Last, the complete email families of *in camera* Exhibits S and T are unpublished

expressions of Mr. Adams's request for legal advice from Mr. Brever.  *See* ECF 112 ¶ 7.

### C.    The Crime-Fraud Exception Does Not Apply

The government's only new argument to excuse its intrusion into Mr. Adams's

privileged communications with Mr. Brever and Murry LLC is that the crime-fraud

---

[11] The fact that Mr. Adams's amended tax returns included a disclosure statement, *see* Suppression Opp. 75, does not waive Mr. Adams's attorney-client privilege over other communications sent to obtain legal advice.  *See Schlegel*, 313 F. Supp. at 179.

PUBLIC VERSION

exception applies.  This argument is a last-ditch effort to avoid repercussions for the

prosecution team's viewing and using Mr. Adams's privileged communications to build

its tax case.  Although the government identified no crime or fraud in the returns that Mr.

Adams filed in 2014, it is now up against the wall as a result of its privilege violations

and is attacking Mr. Adams's 2014 tax filing as a means to avoid responsibility for its

own conduct.  The timing of this argument is suspect (after the privilege violations), and

it is inconsistent with the government's prior positions.  Fundamentally, the crime-fraud

argument fails because the record does not reflect that Mr. Adams was using the services

of Mr. Brever or Murry LLC in furtherance of any crime or fraud.

### 1. The Government's Last Resort to the Crime-Fraud Exception— After it Used the Documents—is Procedurally Improper

Although the attorney-client privilege "does not extend to communications made

for the purpose of getting advice for the commission of a fraud or crime," *United States v.

Zolin*, 491 U.S. 554, 563 (1989), claiming this exception does not permit the government

to, of its own accord, review and use documents subject to an assertion of privilege—as it

did here.

The proper procedure for raising the crime-fraud exception requires the party

challenging the privilege to first make a "showing of a factual basis adequate to support a

good faith belief by a reasonable person that *in camera* review of the materials may

reveal evidence to establish the claim that the crime-fraud exception applies."  *Zolin*, 491

U.S. at 572.  "A moving party does not satisfy this threshold burden merely by alleging

that a fraud occurred and asserting that disclosure of any privileged communications may

PUBLIC VERSION

help prove the fraud."  *In re BankAmerica Corp. Sec. Litig.*, 270 F.3d 639, 642 (8th Cir.

2001) (also holding that "there must be a specific showing that a particular document or

communication was made in furtherance of the client's alleged crime or fraud").  *In*

*camera* review is required before a court can order a document to be disclosed under the

crime-fraud exception.  *Id.* at 644.  The party opposing the application of the crime-fraud

exception may present countervailing evidence to undermine the government's proffered

*prima facie* showing.  *In re Green Grand Jury Proceedings*, 492 F.3d 976, 984 (8th Cir.

2007).  If the government satisfies its threshold burden to permit *in camera* review, then a

higher standard applies to the court's determination of whether the crime-fraud exception

applies.  *Zolin*, 491 U.S. at 572.[12]

Here, the government did none of the above.  It issued a subpoena to Murry LLC

in November 2016.  In December 2016, it met and conferred with Mr. Brever about his

assertions, on behalf of Mr. Adams, of the attorney-client privilege over certain

---

[12] The government misstates the applicable legal standard by relying on older law without
addressing later Supreme Court developments.  *See* Suppression Opp. 83-84.  It argues
that "'[t]o overcome a claim of privilege using the "crime-fraud" exception, the
government must merely make a *prima facie* showing that the legal advice has been
obtained in furtherance of an illegal or fraudulent activity.'"  *Id.* (quoting *United States v.
Horvath*, 731 F.2d 557, 562 (8th Cir. 1984)).  That is not the standard.  The Supreme
Court in *Zolin* held that "a lesser evidentiary showing is needed to trigger *in camera*
review than is required ultimately to overcome the privilege."  491 U.S. at 572.
Subsequent Eighth Circuit cases reflect that the showing referred to in *Horvath* is the
showing that must be made "*before* the crime-fraud exception may be applied."  *In re
Green Grand Jury Proceedings*, 492 F.3d 976, 982-83 (8th Cir. 2007) (holding that
"requir[ing] that crime or fraud be 'established'" or "requir[ing] that there be probable
cause to believe that a crime or fraud had been perpetrated" to "meet the higher
threshold" required by *Zolin*).

PUBLIC VERSION

communications with Murry LLC.  Mr. Brever and AUSA Kokkinen agreed to resolve any disputes over the application of the privilege to particular documents through an *in camera* submission of disputed documents to the district court, if necessary, but this process was never used.  Brever Decl. ¶ 12.  Instead, the government, which had copies of Mr. Adams's communications with Murry LLC as a result of the Yahoo! warrant, simply continued to view and use any communications between Mr. Adams and Murry LLC without restriction.  It never brought the privilege dispute to the Court, and it never asserted the crime-fraud exception.  It was not until Mr. Adams filed his motion to suppress and the Court ordered the government to disclose information about its process that this issue saw the light of day.  And it is only now—six months after the parties first briefed the issue of the validity of the Murry privilege in phase one—that the government is raising the crime-fraud theory.

"The crime-fraud exception is not a tool to justify disclosure after the fact." *Pallon v. Roggio*, 2006 WL 2466854, at *5 (D. N.J. Aug. 24, 2006).  In *Pallon*, the court rejected the plaintiffs' effort to assert the crime-fraud exception after the confidential information had already been improperly revealed to third parties.  *Id.*  It concluded "[s]ince Plaintiffs did not raise the crime-fraud exception before revealing the information or provide the necessary proof for this Court to determine the applicability of the exception, it does not apply." *Id.*  The Eighth Circuit has also recognized the importance of following the proper procedure (requiring an *in camera* review to determine whether crime-fraud exception applies) *prior to* the disclosure of privileged communications.  *See In Re General Motors Corp.*, 153 F.3d 714, 716 (8th Cir. 1998).

PUBLIC VERSION

The government's post hoc invocation of the crime-fraud exception is improper, should not be condoned, and does not excuse its unreasonable review and use of Mr. Adams's privileged communications.

### 2.    The Crime-Fraud Theory is At Odds with the Indictment

The government's new crime-fraud theory is surprising because it is inconsistent with the premise of the indictment.  These inconsistencies reveal that the government is now grasping at straws to find some way to undermine the attorney-client privilege protection that applies to Mr. Adams's communications with Murry LLC.

The indictment alleges that Mr. Adams "misappropriated and embezzled millions of dollars for his personal use and benefit" of investor funds from certain bank accounts, and to hide this "theft," he "lulled" investors into participating in the Apollo/Scio asset purchase transaction.  Superseding Indictment ¶ 1.  Now, the government appears to concede that "the proceeds deposited into the Venture Bank accounts were the result of the sale of unexercised warrants in 2006-2010" by Mr. Adams.  Suppression Opp. 79.  It is hard to conceive of how Mr. Adams's sale of his own Apollo warrants/stock constitutes theft or embezzlement—but apparently the government is willing to concede its embezzlement theory in order to attempt to establish a basis for the crime-fraud exception.

The government's indicted tax fraud case is similarly premised on Mr. Adams's alleged embezzlement of the investor monies, and is inconsistent with the government's new crime-fraud theory.  The indictment alleges that Mr. Adams committed tax fraud by failing to pay income tax on the money that he supposedly misappropriated.  Superseding

19

Indictment ¶¶ 64-65.  Despite the fact that the government analyzed Mr. Adams's 2014 amended returns when it submitted the IRS SAR *see in camera* Ex. V at 16, the SAR does not discuss or recommend any charges relating to any crime or fraud as to these amended returns.  Instead, the theory set forth in the SAR is that Mr. Adams's amended returns submitted *in 2011* "failed to report over $1.5 million of payments [Mr. Adams] made to himself from the funds raised from investors," which allegedly should have been reported as "Other Income" on his tax returns, *id.* at 4-5, 11.

Tax cases are often complicated, and tax charges require the approval of the DOJ's Tax Division.[13]  The SAR presents the theory that was reviewed and approved by the Tax Division before the criminal tax charges could be filed against Mr. Adams.  The government's new theory has not (presumably) received the same level of review by the subject-matter experts at the Tax Division.  Moreover, information about Mr. Adams's 2014 amended returns was before the Tax Division when it considered the SAR (as these returns were attached to the SAR)—and did not result in the approval of any additional tax charges.

The government cannot have it both ways—either Mr. Adams embezzled funds, or he sold investors warrants and/or stock from exercising his warrants.  The inconsistency in the government's new position reflects its lack of merit.

---

[13] *See* DOJ Criminal Tax Manual at 1.04[2][b][2] (describing typical process in complicated tax cases, which involves a trial attorney preparing a Prosecution Memorandum analyzing the proposed charges, methods of proof, evidentiary issues, and policy concerns during a 45-day period, followed by a review by the Assistant Chief).

PUBLIC VERSION

### 3.   The Evidence Reflects that Mr. Adams did not Consult Mr. Brever (or Murry LLC) in Furtherance of Any Crime or Fraud

The government fails to make the threshold showing that would justify the Court's *in camera* review to determine the applicability of the crime-fraud exception.  Moreover (and given the case's unusual posture), the documents already *in camera* do not satisfy the higher showing that is required to compel the production of otherwise privileged documents pursuant to the crime-fraud exception.  There is simply no indication in the record that Mr. Adams consulted Mr. Brever or Murry LLC to further a crime or fraud.

The government's (new) theory is that the disclosure statement attached to Mr. Adams's amended returns filed in 2014 "indicates that Mr. Adams gave false information to the Murry firm so that he could fraudulently take advantage of a lower tax rate that would be applied to only 50% of the proceeds of the warrant sales that occurred in 2008-2010."  Suppression Opp. 81.  The government contends that documents in its possession reflect that the income derived by Mr. Adams in 2008, 2009, and 2010 related to warrant transactions that took place in those years, and not in 2003 as suggested by Mr. Adams's disclosure statement.  *Id.* 76-81.  The government therefore argues that, according to 26 U.S.C. § 1223(5), Mr. Adams's income from these transactions should have been taxed as ordinary income subject to a higher marginal rate than the rate that was applied (long term capital gains with partial exclusion under 26 U.S.C. § 1202).  The government both ignores relevant documents in its possession and oversimplifies the tax laws.

First, although it did not mention them in its briefing, the government has documents reflecting Mr. Adams's exercise of warrants in 2003, and even discussed these

21

documents in the IRS SAR—which of course is completely consistent with Mr. Adams's disclosure statement.  *See in camera* Ex. V at 3-4 (noting that Mr. Adams had "produced records indicating that he was issued millions of warrants," and that one of the subscription forms he had produced was dated December 21, 2003); Ex. 2 at 1 (Dec. 21, 2003 subscription form); *see also id.* at 2-3 (additional 2003 subscription forms).

Second, documents Mr. Brever produced pursuant to the Murry LLC grand jury subpoena, which the government attached to its briefing, reflect that Messrs. Murry and Brever were provided exactly the kind of information that the government now asserts Mr. Adams withheld from them.[14]  For example, Mr. Brever produced a letter from Mr. Linares to Mr. Adams, dated June 17, 2009, describing the ADR transaction.  It states "certain existing holders of warrants in Apollo Diamond, Inc. . . . will be effectively assigning our rights to warrants to prospective shareholders via ADR who will direct payment to ADR for their purchase.  Apollo will then cancel our rights to such warrants (on a cashless exercise basis)."  Gov. Ex. 43 at ECL-00031260.  Mr. Brever also produced Mr. Adams's employment agreements reflecting that his compensation package included "cashless exercise" options or warrants.  *Id.* at *e.g.*, ECL-00031401.

Third, the record that is already before the Court *in camera* contradicts the government's crime-fraud theory █████████████████████████████████████████

---

[14] The government also gets the facts wrong in its discussion of "a transaction with investor B.E."  *See* Suppression Opp. 77.  "B.E.['s]" $277,500 payment was not made "several months later" into the RL account, it was made 13 days later into the DL account.  *See* Ex. 3 (record of deposit).  It is unclear how this 2007 transaction could relate to Mr. Adams's 2008, 2009, and 2010 taxes.

PUBLIC VERSION



██████████████████████████████.  Mr. Brever has explained in his declarations

that his legal engagement ████████████████████████████████████

███████████████████████████  Murry Decl. ¶ 6.  The *in camera*

documents reflect ████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████  the subscription

forms submitted by the government:  "the holder of the within Warrant, hereby

PUBLIC VERSION

irrevocably elects to exercise the purchase right represented by such Warrant for, and to purchase thereunder . . . shares of Common Stock . . . of Apollo Diamond Inc." Gov. Ex. 34; *see* Suppression Opp. 77-78. Mr. Brever has confirmed that these *in camera* documents provided information to inform his legal guidance. Brever Suppl. Decl. ¶ 4.

Fourth, the tax treatment of cashless exercise warrants is a highly complex issue, and certainly not as straightforward as suggested by the government, as it is unclear whether 26 U.S.C. § 1223(5) (calculating the holding period from the date of exercise) or 26 U.S.C. § 1223(1) (calculating the holding period from the date of the warrant issuance) applies. Moreover, the IRS uses the first-in, first-out ("FIFO") method to determine the basis and holding period of stock sold unless the taxpayer adequately identifies the lot from which the stock is sold. 26 CFR § 1.1012-1(c)(1)(i).

Against this backdrop, with the assistance of Mr. Brever and Murry LLC, Mr. Adams submitted second amended tax returns in 2014 for tax years 2008, 2009, and 2010. Even if the government now disagrees with Mr. Adams's (and his advisors') application of the long term capital gains rate and § 1202 exclusion, and even if the government's view of the tax code is ever accepted, "the crime-fraud exception does not apply when a [party] seeks legal advice concerning its . . . obligations and then commits an unintentional . . . violation." *In re BankAmerica Corp. Sec. Litig.*, 270 F.3d 639, 643–44 (8th Cir. 2001). In order to establish the application of the crime-fraud exception, "it is the client's intent to further a crime or fraud that must be shown." *Id.* The record reflects that Mr. Adams made extensive disclosures to Mr. Brever and Murry LLC of information that is consistent with the information that the government now argues was

24

hidden from them.  The government has failed to meet its heavy burden to show a factual

basis to support a good faith belief by a reasonable person that the documents at issue

would reveal evidence to establish the crime fraud exception.  *Zolin*, 491 U.S. at 572.

And the government has not even attempted to make the required, specific showing as to

each particular document, as required by *In re BankAmerica Corp. Sec. Litig.*, 270 F.3d at

642.  The government's second-guessing of tax judgments is inadequate.

The documents at issue do not "establish" that Mr. Adams was using the services

of Mr. Brever and Murry LLC in furtherance of a crime or fraud, nor do they support a

finding of "probable cause to believe that a crime or fraud had been perpetrated."  *In re

Green Grand Jury Proceedings*, 492 F.3d at 982-83.  The Court should, thus, deny the

government's request to compel the production of the seven Murry documents.[15]

## II.     The Other Privilege Challenges Are Without Merit

The government has challenged 65 documents on Mr. Adams's privilege log that

fall into three other categories: (1) communications between Mr. Adams and Mr.

Monahan, and/or Josh Reilly (a paralegal at Adams Monahan LLP) that relate to Mr.

Adams's and Mr. Monahan's civil litigation matters (including the *Mack and Rapello*

---

[15] The government's efforts to compel the *in camera* review of "the entire Murry file,"
Br. 3, must be rejected.  First, this is yet another attempt by the government to compel
further production from a grand jury subpoena nearly two years after that subpoena was
issued, which is procedurally improper.  *See* ECF 110 at 17 & n.11.  Second, the
government must make "a specific showing that a particular document or communication
was made in furtherance of the client's alleged crime or fraud"—it cannot "merely . . .
alleg[e] that a fraud occurred and assert[] that disclosure of any privileged
communications may help prove the fraud."  *In re BankAmerica Corp. Sec. Litig.*, 270
F.3d at 642.

PUBLIC VERSION

lawsuit, the *Fink* lawsuit, and the malpractice claim against Nelson Mullins LLP); (2)

communications by Mr. Adams and Gregory Spitzer, Esq. of Paul Hastings LLP; and (3)

communications between Mr. Adams and attorneys at Nelson Mullins relating to the *Fink*

lawsuit.  For the reasons set forth below, these communications are protected by Mr.

Adams's attorney-client privilege and/or the attorney work product doctrine.

A.  **The Identified Communications with Mr. Monahan and Mr. Reilly Are Privileged**

Contrary to the government's argument, Mr. Adams's privilege assertions that fall

into this category[16] are not based on the mere fact that he is an attorney.  Instead, they are

based on the application of the common interest doctrine, under which otherwise

privileged communications maintain their privilege protections despite having been

shared with a third party, so long as that third party shares a common interest in the legal

matter.  The government does not dispute that Mr. Adams and Mr. Monahan were

codefendants or potential co-plaintiffs in civil lawsuits, or that they were jointly

represented in those matters.  But the government's position is that Mr. Adams may not

validly assert the attorney-client privilege or the attorney work product protection over

any of his common interest communications with Mr. Monahan unless an attorney was

present on the communication.  That is not the law.

Under the common interest doctrine, the "joint representation privilege" applies

---

[16] The government challenges Mr. Adams's assertions of privilege as to rows 16, 43, 63-68, 71-73, and 76-91 of his privilege log (Dismissal Br. Ex. 1).  These documents have been submitted *in camera* as Ex. W.

PUBLIC VERSION

where "two or more clients . . . consult an attorney on matters of common interest."

*Shukh v. Seagate Tech., LLC*, 872 F. Supp. 2d 851, 855 (D. Minn. 2012).  In such a

circumstance, "the communications between the clients and the attorney are privileged as

against third parties."  *Id.*; *see also John Morrell & Co. v. Local Union 304A of United

*Food & Commercial Workers, AFL-CIO*, 913 F.2d 544, 555–56 (8th Cir. 1990) (holding

that joint defense privilege applied to parties aligned on same side of lawsuit and that it is

"fundamental" that the privilege cannot be waived without the consent of all parties to the

defense).  As with the attorney-client privilege, work product may be created or shared

with another party that has "common interests" without a waiver of the protection.  *See*

*United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1300 (D.C. Cir. 1980).  It is not

necessary for an attorney to be present on the communication; the common interest

doctrine may extend to communications between parties alone if "the underlying

substance of the communication [is] privileged in that it must involve either work product

or the solicitation or giving of legal advice."  *Pucket v. Hot Springs Sch. Dist. No. 23-2*,

239 F.R.D. 572, 584 (D.S.D. 2006).[17]

The government advances a very narrow view of the work-product doctrine,

arguing that the doctrine only extends to the work product of an attorney on behalf of a

client.  Gov. Br. 5-6.  The work-product doctrine is not so limited.  "'[A] lawyer need not

be involved at all for the work product protection to take effect.'"  *Goff v. Harrah's*

---

[17] *See also IBJ Whitehall Bank & Tr. Co. v. Cory & Assocs., Inc.*, 1999 WL 617842, at *6
(N.D. Ill. Aug. 12, 1999); *Sapphire Sales Sols., LLC v. Best W. Int'l, Inc.*, 2013 WL
12284534, at *2 (D. Ariz. June 27, 2013).

PUBLIC VERSION

*Operating Co.*, 240 F.R.D. 659, 660 (D. Nev. 2007) (concluding that "documents related to 'shopping' for an attorney meet this standard" for work product protection) (quoting Roger Park et al., Hornbook on Evidence Law § 8.09 (West 2d ed. 2004)). Federal Rule of Civil Procedure 26(b)(3) extends the work product protection "to materials prepared in anticipation of litigation or preparation for trial *by or for a party* or any representative acting on his behalf." Fed. R. Civ. P. 26(b)(3) advisory committee's note (1970). Work product protection also extends to efforts to gather information to facilitate provision of legal advice. *See, e.g.*, *Tatum v. R.J. Reynolds Tobacco Co.*, 247 F.R.D. 488, 501 (M.D.N.C. 2008).

The documents at issue reflect Mr. Adams and Mr. Monahan consulting with each other about documents and information to transmit to the attorneys jointly representing them.[18] An April 30, 2012 email (DocID 00351976, Row 16), ██████████████

████████████████████████████████████████

██████ relating to their dispute with former business partners Mack and Rapello. *In camera* Ex. W at 2.[19] Similarly, DocID 00356085 (Row 43) is an email from Mr.

---

[18] Mr. Adams and Mr. Monahan also relied on their Adams Monahan LLP paralegal, Mr. Reilly, to send them relevant documents to provide to their attorneys for the purpose of obtaining legal advice and in anticipation of litigation. Mr. Reilly thus served as their agent for these purposes, which does not vitiate the privilege. *See In re Grand Jury Investigation*, 918 F.2d 374, 388 (3d Cir. 1990) ("The presence of a third party will not vitiate the attorney-client privilege, if the third party is the attorney's or client's agent or possesses a commonality of interest with the client").

[19] Mr. Adams was a defendant in both the *Mack and Rapello v. Adams, et al.* and *Fink v. Adams, et al.* lawsuits in his personal capacity (as was his wife, Mr. and Mrs. Monahan, and Scio). Ex. 4 (*Mack and Rapello* complaint); Ex. 5 (*Fink* complaint).

PUBLIC VERSION

Monahan to Mr. Adams the day before the *Fink* complaint was filed, *id.* at 4, ███████
████████████████████████████████████████████. Two emails dated August 18, 2012
(Doc IDs 00053104 & 00053113, rows 63-64), reflect Mr. Adams requesting that Mr.
Reilly send him certain documents relevant to the *Fink* litigation to forward to attorneys
at Latham & Watkins who were replacing Nelson Mullins in that matter. *Id.* at 6, 8.
These materials were provided to Latham shortly thereafter. *See in camera* Ex. Z. The
documents that comprise rows 65-68, 71-73, and 76-89 reflect the gathering of
documents for use in the anticipated litigation against Nelson Mullins for legal
malpractice. Ex. W at 9-88. These documents were sent by Mr. Adams to attorneys for
legal advice, in connection with Mr. Adams's efforts to seek counsel for this potential
claim. *See id.* at 22 (████████████████████████████████████████
████████████████); *in camera* Ex. X at 19-21, 23-25 (documents sent to Mr. Spitzer,
described in greater detail below). Similarly, the final two documents (Doc IDs
00086172 & 00086276, rows 90-91) reflect the gathering of documents to send to
counsel at Bland Richter LLP, which was retained to represent Mr. Adams, Mr.
Monahan, and Scio with the potential legal malpractice claim against Nelson Mullins.
*See in camera* Ex. W at 89-107; *in camera* Exs. AA & BB (transmittals to Bland Richter
LLP). As communications about the gathering of information to provide to counsel, for
the purpose of legal advice and in anticipation of litigation, between individuals with a
common interest as parties on the same side of the anticipated litigation, these documents
are protected by the attorney-client privilege and work product doctrine.

PUBLIC VERSION

## B.      The Identified Communications with Mr. Spitzer Are Privileged

Mr. Adams's assertions of the attorney-client privilege over a small number of communications with Gregory Spitzer, an attorney with Paul Hastings LLP, are valid.[20] These communications reflect initial consultations with Mr. Spitzer in his capacity as an attorney on legal matters where Mr. Adams was himself a defendant or potential plaintiff. The attorney-client privilege protects communications in which an attorney is "engaged *or consulted* by the client for the purpose of obtaining legal services or advice services or advice that a lawyer may perform or give in his capacity as a lawyer."  *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir. 1977) (emphasis added).[21]

These communications reflect consultations between Mr. Adams and Mr. Spitzer or other attorneys at Paul Hastings for the purpose of obtaining legal advice relating to the *Fink* and Nelson Mullins litigation matters. ███████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████  *In camera* Ex. X at 1-17.  The other two documents relate to the potential claim against

---

[20] These documents (rows 44-46, 69, and 74) have been submitted *in camera* as Ex. X.

[21] *See also Banner v. City of Flint*, 99 F. App'x 29, 36 (6th Cir. 2004) ("When a potential client consults with an attorney, the consultation establishes a relationship akin to that of an attorney and existing client, and the elements of the attorney-client privilege . . . are satisfied."); *see also* E. Epstein, Attorney-Client Privilege & the Work-Product Doctrine 1.III.E2.A.1 (6th 2017) ("The privilege protects initial consultations").

PUBLIC VERSION

Nelson Mullins, a claim in which Mr. Adams, Mr. Monahan, and Scio were potential

plaintiffs. ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████ *Id* at 19.  Although Mr. Spitzer was ultimately not retained to

represent Mr. Adams in these matters, these communications are protected by the

attorney-client privilege and attorney work product doctrine.

### C.     The Identified Communications with Nelson Mullins Are Privileged

The government, relying on a recent letter from Nelson Mullins,[22] asserts that the

firm never represented Mr. Adams in his personal capacity in connection with the *Fink*

litigation, but this position is contradicted by the documents and the declaration by Mr.

Adams being filed contemporaneously herewith.[23]  The communications at issue are a

collection of emails between Mr. Adams, Nelson Mullins attorneys, and Scio directors

and officers relating to the *Fink* lawsuit.[24]  Non-privileged portions of these documents

reflect that Cory Manning of Nelson Mullins was negotiating with counsel for the *Fink*

plaintiffs on Mr. Adams's behalf, and was offering consideration for the proposed

settlement from Mr. Adams personally.  *See* Ex. 6.  Indeed, Mr. Adams's attached

declaration confirms that he participated in a telephone call with others and Mr. Manning

---

[22] Gov. Ex. K.  As discussed above, Mr. Adams contemplated a malpractice action
against Nelson Mullins.

[23] The government has challenged rows 47-62 of Mr. Adams's privilege log, which are
submitted *in camera* as Ex. Y.

[24] The *Fink* lawsuit was against, *inter alia*, Mr. Adams, Mr. Monahan, and Scio.  Ex. 5.

31

at the time of the *Fink* litigation in which Mr. Manning confirmed that he was representing Mr. Adams's interests in connection with the settlement negotiations. *See* Adams Decl. ¶ 3-4. Thereafter, Mr. Manning prepared a memorandum which presented strategies for the "Defendants"—not merely Scio—to defend against the *Fink* litigation. *In camera* Ex. CC. And after Mr. Adams replaced Nelson Mullins with Latham & Watkins in the *Fink* matter, ███████████████████████████████████

███████████████████████████████████████████████████████████

██████████████. *In camera* Ex. DD. This evidence demonstrates that Mr. Adams's communications with Mr. Manning and the other attorneys at Nelson Mullins in connection with the *Fink* matter are protected by the attorney-client privilege and the attorney work product doctrine. *See Diversified Indus.*, 572 F.2d at 601; *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d at 924.

## III.    CONCLUSION

For the reasons stated, the Court should deny the government's motion.

32

Dated:  August 17, 2018                    Respectfully submitted,


                                    ___/s/ *Lance Wade*_____

                                    Joseph G. Petrosinelli (DC Bar #434280)
                                    Lance Wade (DC Bar #484845)
                                    Gloria Maier (DC Bar #1012208)
                                    WILLIAMS & CONNOLLY LLP
                                    725 Twelfth Street, N.W.
                                    Washington, DC  20005
                                    Telephone:  (202) 434-5000
                                    jpetrosinelli@wc.com
                                    lwade@wc.com
                                    gmaier@wc.com

                                    James L. Volling (#113128)
                                    Deborah A. Ellingboe (#26216X)
                                    FAEGRE BAKER DANIELS LLP
                                    2200 Wells Fargo Center
                                    90 South Seventh Street
                                    Minneapolis, MN  55420
                                    Telephone:  (612) 766-7000
                                    james.volling@faegrebd.com
                                    debbie.ellingboe@faegrebd.com


                                    *Attorneys for Defendant Edward S. Adams*

PUBLIC VERSION