# <u>U.S. v. Edward S. Adams</u>
# Case No. 17-64 (DWF/KMM)

# Exhibit 63

---

## FACSIMILE TRANSMITTAL SHEET

---

| TO: | FROM: |
|---|---|
| Bob Linares | Ed Adams |

| COMPANY: | DATE: |
|---|---|
| | 3/22/08 |

| FAX NUMBER: | TOTAL NO. OF PAGES INCLUDING COVER: |
|---|---|
| 508-429-2866 | 26 |

| PHONE NUMBER: | SENDER'S REFERENCE NUMBER: |
|---|---|
| | |

| RE: | YOUR REFERENCE NUMBER: |
|---|---|
| | |

---

☐ URGENT   ☐ FOR REVIEW   ☐ PLEASE COMMENT   ☐ PLEASE REPLY   ☐ PLEASE RECYCLE

**NOTES/COMMENTS:**

Bob,

Attached is a document that will likely be used with RL (the sale of warrants by existing shareholders). This similar to the one used in connection with DL last year (a similar transaction) and has been approved by Eric Madison at Robins Kaplan (who drafted the initial documents). You will note it is different than transactions where there are selling shareholders and the company is raising money; this one only involves selling warrant holders (hence the decision to form/use an entity other than Apollo to another highlighted people they are not buying directly from Apollo)

I do not know how much interest there will be, although Larry tells me there is lot. I would encourage all members of the family and others close to the company to sell to diversify their holdings. The plan is to only sell to existing shareholders. This I realize this is tricky in light of Deutsche Bank. Should we/you sell now or wait until we a higher price. A wise man once told me to sell something when you can in case things do not work out perfectly ——as they rarely do. As you know, some members of the family have told me they want sell some. It might be a good time to do so because we are confident B will execute and raise $, the revenues indicate we are moving toward (profitability) and we have money in the bank. Make hay when the sun shines! regardless. I know this is your baby and respect your decision.

ESA001637

# APOLLO DIAMOND, INC.



## CONFIDENTIAL SUMMARY OF TRANSACTION

### APRIL 1, 2008

THIS SUMMARY IS PROVIDED ONLY FOR PERSON(S) WHOSE NAME(S) APPEARS ON THE COVER OF THIS MEMORANDUM. THE RECIPIENT AGREES NOT TO COPY THIS SUMMARY AND TO RETURN IT, TOGETHER WITH ALL ATTACHMENTS, TO APOLLO DIAMOND, INC. (THE "COMPANY") IF THE RECIPIENT DOES NOT ENGAGE IN A TRANSACTION. ANY REPRODUCTION OR DISTRIBUTION OF THIS SUMMARY, IN WHOLE OR IN PART, OR THE DIVULGENCE OF ANY OF ITS CONTENTS WITHOUT THE PRIOR WRITTEN PERMISSION OF THE COMPANY IS PROHIBITED. THIS SUMMARY IS FURNISHED FOR THE SOLE USE OF THE RECIPIENT AND FOR THE SOLE PURPOSE OF PROVIDING INFORMATION REGARDING THE COMPANY AND A PURCHASE OF STOCK AND OR WARRANTS CONVERTIBLE INTO COMMON STOCK IN THE COMPANY. NO OTHER USE OF THIS INFORMATION IS AUTHORIZED.

THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION DOES NOT PASS UPON THE MERITS OF OR GIVE APPROVAL TO ANY TRANSACTION CONTEMPLATED HEREBY OR THE TERMS OF SUCH TRANSACTION, NOR DOES IT PASS UPON THE ACCURACY OR COMPLETENESS OF ANY MEMORANDUM OR OTHER LITERATURE. THE TRANSACTION CONTEMPLATED HEREBY IS TO BE MADE PURSUANT TO EXEMPTIONS FROM REGISTRATION REQUIREMENTS OF THE SECURTIES ACT OF 1933, AS AMENDED (THE "ACT") AND APPLICABLE STATE SECURITIES LAWS (THE "STATE LAWS"). THIS TRANSACTION HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION, NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED ON THE ADEQUACY OF THIS SUMMARY OR MADE AN INDEPENDENT DETERMINATION THAT THE TRANSACTION CONTEMPLATED HEREUNDER IS EXEMPT FROM REGISTRATION. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

AGREEMENTS TO PURCHASE COMMON STOCK AND/OR PURCHASE AND EXERCISE WARRANTS CONVERTIBLE INTO COMMON STOCK MAY BE REJECTED BY THE COMPANY FOR ANY OR NO REASON. IN ADDITION, THE RIGHT IS RESERVED TO CANCEL ANY TRANSACTION IF SUCH TRANSACTION, IN THE OPINION OF THE COMPANY WOULD VIOLATE FEDERAL OR STATE LAW OR ANY CONTRACTUAL OBLIGATION OF THE COMPANY OR ITS AFFILIATES.

RECIPIENTS ARE URGED TO READ THIS SUMMARY CAREFULLY. ALL RECIPIENTS WILL HAVE AN OPPORTUNITY, AT THEIR REQUEST, TO TALK WITH ROBERT C. LINARES, CHAIRMAN AND CEO OF THE COMPANY, TO VERIFY ANY OF THE INFORMATION INCLUDED HEREIN AND TO OBTAIN ADDITIONAL INFORMATION REGARDING THE COMPANY. COPIES OF THE INFORMATIONAL MEMORANDUM, INCLUDED WITH THIS DOCUMENT, SHOULD ALSO BE CONSULTED PRIOR TO ENTERING INTO A TRANSACTION. THE DELIVERY OF THIS SUMMARY, THE INFORMATIONAL MEMORANDUM, ATTACHMENTS, OR MATERIALS AVAILABLE ON

ESA001638

REQUEST AT ANY TIME DOES NOT IMPLY THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION SINCE THE DATE HEREOF.

THE RECIPIENT, BY ACCEPTING DELIVERY OF THIS SUMMARY, AGREES TO RETURN THIS SUMMARY AND ANY RELATED DOCUMENTS TO THE COMPANY IF THE RECIPIENT DOES NOT UNDERTAKE TO PARTICIPATE IN THE TRANSACTION CONTEMPLATED HEREBY.

EXCEPT AS HEREIN DISCUSSED, NO PERSON HAS BEEN AUTHORIZED BY THE COMPANY TO GIVE ANY INFORMATION OR TO MAKE ANY REPRESENTATION CONCERNING THE COMPANY OTHER THAN THOSE CONTAINED IN THIS SUMMARY IN CONNECTION WITH THE TRANSACTION DESCRIBED HEREIN AND, IF GIVEN OR MADE, SUCH OTHER INFORMATION OR REPRESENTATION MUST NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE COMPANY. IN MAKING A DECISION REGARDING A TRANSACTION, RECIPIENTS MUST RELY ON THEIR OWN EXAMINATION AND/OR EXAMINATION WITH THE ASSISTANCE OF ONE'S OWN LEGAL AND/OR FINANCIAL COUNSEL AND THE TERMS OF THE TRANSACTION, INCLUDING THE MERITS AND RISKS INVOLVED.

This Confidential Summary of Transaction represents only a brief synopsis of the Company, its operations and the proposed sale transaction (the "Transaction"). The terms of the proposed Transaction may be subject to change. No transaction may be made without the Recipient executing the accompanying AGREEMENT TO PURCHASE AND/OR PURCHASE AND EXERCISE INCLUDING INVESTMENT REPRESENTATIONS form included herewith.

The Company may enter into an agency or finder relationship or agency or finder relationships with to-be-determined agents (the "Agents") with respect to the Transaction (an "Agreement"). Such an Agreement may provide for, among other things: (i) the payment to the Agents of a cash commission on all sales of common stock and/or purchases of warrants and the corresponding exercise thereof, (ii) the payment to the Agents of a non-accountable expense allowance relating to the sales of common stock and/or purchases of warrants and the corresponding exercise thereof, (iii) reimbursement of accountable fees and expenses of counsel to the Agents, (iv) the granting to the Agents of certain rights with respect to future financings of the Company, and (v) indemnification by the Company of the Agents against certain liabilities under the Act.

ESA001639

## BLUE SKY DISCLOSURE

THESE SECURITIES ARE OFFERED PURSUANT TO CLAIMED EXEMPTIONS UNDER THE SECURITIES ACT OF 1933, AS AMENDED, AND CERTAIN STATE SECURITIES LAWS. THESE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION (THE "COMMISSION") NOR HAS THE COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THIS MEMORANDUM. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE. THESE SECURITIES HAVE ALSO NOT BEEN APPROVED OR DISAPPROVED BY ANY STATE SECURITIES COMMISSION NOR HAS ANY STATE SECURITIES COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THIS MEMORANDUM. ANY REPRESENTATION TO THE CONTRARY IS ILLEGAL.

**Notice to California Residents.** THESE SECURITIES HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE CALIFORNIA CORPORATIONS CODE, BY REASON OF SPECIFIC EXEMPTIONS THEREUNDER RELATING TO THE LIMITED AVAILABILITY OF THE OFFERING. THESE SECURITIES CANNOT BE SOLD, TRANSFERRED, OR OTHERWISE DISPOSED OF TO ANY PERSON OR ENTITY UNLESS THEY ARE SUBSEQUENTLY REGISTERED OR AN EXEMPTION FROM REGISTRATION IS AVAILABLE. THE COMMISSIONER OF CORPORATIONS OF THE STATE OF CALIFORNIA DOES NOT RECOMMEND OR ENDORSE THE PURCHASE OF THESE SECURITIES. IT IS UNLAWFUL TO CONSUMMATE A SALE OR TRANSFER OF THESE SECURITIES OR ANY INTEREST THEREIN OR TO RECEIVE ANY CONSIDERATION THEREFORE WITHOUT THE PRIOR CONSENT OF THE COMMISSIONER OF CORPORATIONS OF THE STATE OF CALIFORNIA EXCEPT AS PERMITTED IN THE COMMISSIONER'S RULES.

**Notice to Colorado Residents.** THESE SECURITIES HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE COLORADO SECURITIES ACT OF 1981. THIS INFORMATION IS DISTRIBUTED PURSUANT TO AN EXEMPTION FOR SMALL OFFERINGS UNDER THE RULES OF THE COLORADO SECURITIES DIVISION. THE SECURITIES DIVISION HAS NEITHER REVIEWED NOR APPROVED ITS FORM OR CONTENT. THE SECURITIES DESCRIBED MAY ONLY BE PURCHASED BY "ACCREDITED INVESTORS" AS DEFINED BY RULE 501 OF SEC REGULATION D AND THE RULES OF THE COLORADO SECURITIES DIVISION.

**Notice to Connecticut Residents.** THESE SECURITIES HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED. THESE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE BANKING COMMISSIONER OF THE STATE OF CONNECTICUT NOR HAS THE COMMISSIONER PASSED UPON THE ACCURACY OR ADEQUANCE OF THE OFFERING. ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.

**Notice to Florida Residents.** THESE SECURITIES HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE FLORIDA SECURITIES ACT, BY REASON OF SPECIFIC EXEMPTIONS THEREUNDER RELATING TO THE LIMITED AVAILABILITY OF THE OFFERING. THESE SECURITIES CANNOT BE SOLD, TRANSFERRED, OR OTHERWISE DISPOSED OF TO ANY PERSON OR ENTITY UNLESS THEY ARE SUBSEQUENTLY REGISTERED OR EXEMPTION FROM REGISTRATION IS AVAILABLE.

IF SALES ARE MADE TO FIVE OR MORE PERSONS IN FLORIDA, AND YOU PURCHASE SECURITIES HEREUNDER, THEN YOU MAY VOID SUCH PURCHASE EITHER WITHIN THREE (3) DAYS AFTER THE FIRST TENDER OF CONSIDERATION IS MADE BY YOU TO THE

ISSUER, AN AGENT OF THE ISSUER, OR AN ESCROW AGENT OR WITHIN THREE (3) DAYS AFTER THE AVAILABILITY OF THIS PRIVILEGE COMMUNICATED TO YOU, WHICHEVER OCCURS LATER. WITHDRAWAL WILL BE WITHOUT ANY FURTHER LIABILITY TO ANY PERSON. TO ACCOMPLISH THIS WITHDRAWAL, A SUBSCRIBER NEED ONLY SEND A LETTER OR TELEGRAM TO THE COMPANY AT THE ADDRESS SET FORTH IN THIS MEMORANDUM INDICATION HIS OR HER INTENTION TO WITHDRAW. SUCH A LETTER OR TELEGRAM SHOULD BE SENT AND POSTMARKED PRIOR TO THE END OF THE AFOREMENTIONED THIRD BUSINESS DAY. IT IS ADVISABLE TO SEND SUCH LETTER BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, TO ENSURE THAT IS IT RECEIVED AND ALSO TO EVIDENCE THE TIME IT WAS MAILED. IF THE REQUEST IS MADE ORALLY, IN PERSON OR BY TELEPHONE TO AN OFFICER OF THE COMPANY A WRITTEN CONFIRMATION THAT THE REQUEST HAS BEEN RECEIVED SHOULD BE REQUESTED.

**Notice to Georgia Residents.** THESE SECURITIES HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED. THESE SECURITIES HAVE BEEN ISSUED OR SOLD IN RELIANCE ON PARAGRAPH (13) OF CODE SECTION 10-5-9 OF THE 'GEORGIA SECURITIES ACT OF 1973,' AND MAY NOT BE SOLD OR TRANSFERRED EXCEPT IN A TRANSACTION WHICH IS EXEMPT UNDER SUCH ACT OR PURSUANT TO AN EFFECTIVE REGISTRATION UNDER SUCH ACT.

**Notice to Illinois Residents.** THESE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SECRETARY OF STATE OF ILLINOIS OR THE STATE OF ILLINOIS, NOR HAS THE SECRETARY OF STATE OF ILLINOIS OR THE STATE OF ILLINOIS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS MEMORANDUM. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

**Notice to Maryland Residents.** THE SECURITIES REPRESENTED BY THIS CERTIFICATE [OR OTHER DOCUMENT] HAVE BEEN ISSUED PURSUANT TO A CLAIM OF EXEMPTION FROM THE REGISTRATION PROVISIONS OF FEDERAL AND STATE SECURITIES LAWS AND MAY NOT BE SOLD OR TRANSFERRED WITHOUT COMPLIANCE WITH THE REGSTRATION PROVISIONS OF APPLICABLE FEDERAL AND STATE SECURITIES LAWS OR APPLICABLE EXEMPTIONS THEREFROM.

**Notice to Massachusetts Residents.** THESE SECURITIES HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE MASSACHUSETTS UNIFORM SECURITIES ACT, BY REASON OF SPECIFIC EXEMPTIONS THEREUNDER RELATING TO THE LIMITED AVAILABILITY OF THE OFFERING. THESE SECURITIES CANNOT BE SOLD, TRANSFERRED, OR OTHERWISE DISPOSED OF TO ANY PERSON OR ENTITY UNLESS THEY ARE SUBSEQUENTLY REGISTERED OR AN EXEMPTION FROM REGISTRATION IS AVAILABLE.

**Notice to Michigan Residents.** THESE SECURITIES HAVE NOT BEEN REGISTERED UNDER SECTION 451.701 OF THE MICHIGAN UNIFORM SECURITIES ACT (THE "ACT") AND MAY BE TRANSFERRED OR RESOLD BY RESIDENTS OF MICHIGAN ONLY IF REGISTERED PURSUANT TO THE PROVISIONS OF THE ACT OR IF AN EXEMPTION FROM REGISTRATION IS AVAILABLE.

**Notice to Minnesota Residents.** THE SECURITIES REPRESENTED BY THIS MEMORANDUM HAVE NOT BEEN REGISTERED UNDER CHAPTER 80 OF THE MINNESOTA SECURITIES LAWS AND MAY NOT BE SOLD, TRANSFERRED, OR OTHERWISE DISPOSED OF EXCEPT PURSUANT TO REGISTRATION OR AN EXEMPTION THEREFROM.

**Notice to Nevada Residents.** THESE SECURITIES HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE NEVADA SECURITIES ACT, BY REASON OF SPECIFIC EXEMPTIONS THEREUNDER RELATING TO THE LIMITED AVAILABILITY OF THE OFFERING. THESE SECURITIES CANNOT BE SOLD, TRANSFERRED, OR OTHERWISE DISPOSED OF TO ANY PERSON OR ENTITY UNLESS THEY ARE SUBSEQUENTLY REGISTERED OR AN EXEMPTION FROM REGISTRATION IS GRANTED.

**Notice to New Mexico Residents.** THESE SECURITIES HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED. IN MAKING AN INVESTMENT DECISION, INVESTORS MUST RELY ON THEIR OWN EXAMINATION OF THE ISSUER AND THE TERMS OF THE OFFERING, INCLUDING THE MERITS AND RISK INVOLVED. THESE SECURITIES HAVE NOT BEEN RECOMMENDED BY ANY FEDERAL OR STATE SECURITIES COMMISSION OR REGULATORY AUTHORITY. FURTHERMORE, THE FOREGOING AUTHORITIES HAVE NOT CONFIRMED THE ACCURACY OR DETERMINED THE ADEQUACY OF THIS DOCUMENT. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

**Notice to New York Residents.** THESE SECURITIES HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE NEW YORK FRAUDULENT PRACTICES ("MARTIN") ACT, BY REASON OF SPECIFIC EXEMPTIONS THEREFROM RELATING TO THE LIMITED AVAILABILITY OF THE OFFERING. THESE SECURITIES CANNOT BE SOLD, TRANSFERRED, OR OTHERWISE DISPOSED OF TO ANY PERSON OR ENTITY UNLESS THEY ARE SUBSEQUENTLY REGISTERED IF SUCH REGISTRATION IS REQUIRED.

THIS PRIVATE OFFERING MEMORANDUM HAS NOT BEEN REVIEWED BY THE ATTORNEY GENERAL PRIOR TO ITS ISSUANCE AND USE. THE ATTORNEY GENERAL OF THE STATE OF NEW YORK HAS NOT PASSED ON OR ENDORSED THE MERITS OF THIS OFFERING. ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.

THIS PRIVATE OFFERING MEMORANDUM DOES NOT CONTAIN AN UNTRUE STATEMENT OF A MATERIAL FACT OR OMIT TO STATE A MATERIAL FACT NECESSARY TO MAKE THE STATEMENTS MADE IN LIGHT OF THE CIRCUMSTANCES UNDER WHICH THEY ARE MADE, NOT MISLEADING. IT CONTAINS A FAIR SUMMARY OF THE MATERIAL TERMS OF DOCUMENTS PURPORTED TO BE SUMMARIZED HEREIN.

THESE SECURITIES HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED. THESE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES COMMISSIONER OF THE STATE OF NORTH DAKOTA NOR HAS THE COMMISSIONER PASSED UPON THE ACCURACY OR ADEQUACY OF THIS PROSPECTUS. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

**Notice to Oregon Residents.** IN MAKING AN INVESTMENT DECISION INVESTORS MUST RELY ON THEIR OWN EXAMINATION OF THE PERSON OR ENTITY CREATING THE SECURITIES AND THE TERMS OF THE OFFERING, INCLUDING THE MERITS AND RISKS INVOLVED. THESE SECURITIES HAVE NOT BEEN RECOMMENDED BY ANY FEDERAL OR STATE SECURITIES COMMISSION OR REGULATORY AUTHORITY. FURTHERMORE, THE FOREGOING AUTHORITIES HAVE NOT CONFIRMED THE ACCURACY OR DETERMINED THE ADEQUACY OF THIS DOCUMENT. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE. THESE SECURITIES ARE SUBJECT TO RESTRICTIONS ON TRANSFERABILITY AND RESALE AND MAY NOT BE TRANSFERRED OR RESOLD EXCEPT AS PERMITTED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, PURSUANT TO REGISTRATION OR EXEMPTION THEREFROM. INVESTORS SHOULD BE AWARE THAT

ESA001642

THEY WILL BE REQUIRED TO BEAR THE FINANCIAL RISKS OF THIS INVESTMENT FOR AN INDEFINITE PERIOD OF TIME.

IN DECIDING WHETHER OR NOT TO INVEST IN THE SECURITIES OFFERED, YOU SHOULD RELY ON YOUR OWN EXAMINATION OF THE COMPANY ISSUING THE SECURITIES AND THE TERMS OF THE OFFERING, INCLUDING THE MERITS AND RISKS INVOLVED. THESE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED BY ANY FEDERAL OR STATE SECURITIES COMMISSION OR OTHER REGULATORY AUTHORITY. ALSO, NO SUCH AGENCY HAS DETERMINED IF THIS DOCUMENT IS TRUTHFUL OR COMPLETE. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

YOU WILL NOT BE ABLE TO TRANSFER OR RESELL THESE SECURITIES EXCEPT PURSUANT TO REGISTRATION UNDER THE FEDERAL SECURITIES ACT OF 1933, AS AMENDED, OR AN EXEMPTION FROM REGISTRATION IF AVAILABLE. CONSEQUENTLY, YOU MAY BE REQUIRED TO BEAR THE FINANCIAL RISKS OF THIS INVESTMENT FOR AN INDEFINITE PERIOD OF TIME.

**Notice to South Carolina Residents.** THESE SECURITIES ARE OFFERED PURSUANT TO A CLAIM OF EXEMPTION UNDER ONE OR MORE SECURITIES ACTS.

IN MAKING AN INVESTMENT DECISIONS INVESTORS MUST RELY ON THEIR OWN EXAMINATION OF THE PERSON OR ENTITY CREATING THE SECURITIES AND THE TERMS OF THE OFFERING, INCLUDING THE MERITS AND RISKS INVOLVED. THESE SECURITIES HAVE NOT BEEN RECOMMENDED BY ANY FEDERAL OR STATE SECURITIES COMMISSIONER OR REGULATORY AUTHORITY. FURTHERMORE, THE FOREGOING AUTHORITIES HAVE NOT CONFIRMED THE ACCURACY OR DETERMINED THE ADEQUACY OF THIS DOCUMENT. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THESE SECURITIES ARE SUBJECT TO RESTRICTIONS ON TRANSFERABILITY AND RESALE AND MAY NOT BE TRANSFERRED OR RESOLD EXCEPT AS PERMITTED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, AND THE APPLICABLE STATE SECURITIES LAWS, PURSUANT TO REGISTRATION OR EXEMPTION THEREFROM. INVESTORS SHOULD BE AWARE THAT THEY WILL BE REQUIRED TO BEAR THE FINANCIAL RISKS OF THIS INVESTMENT FOR AN INDEFINITE PERIOD OF TIME.

**Notice to South Dakota Residents.** THESE SECURITIES HAVE NOT BEEN REGISTERED UNDER CHAPTER 47-31 OF THE SOUTH DAKOTA SECURITIES LAWS AND MAY NOT BE SOLD, TRANSFERRED, OR OTHERWISE DISPOSED OF FOR VALUE EXCEPT PURSUANT TO REGISTRATION, EXEMPTION THEREFROM, OR OPERATION OF LAW.

**Notice to Tennessee Residents.** IN MAKING AN INVESTMENT DECISION INVESTORS MUST RELY ON THEIR OWN EXAMINATION OF THE ISSUER AND THE TERMS OF THE OFFERING, INCLUDING THE MERITS AND RISKS INVOLVED.

THESE SECURITIES HAVE NOT BEEN RECOMMENDED BY ANY FEDERAL OR STATE SECURITIES COMMISSION OR REGULATORY AUTHORITY. FURTHERMORE, THE FOREGOING AUTHORITIES HAVE NOT CONFIRMED THE ACCURACY OR DETERMINED THE ADEQUACY OF THIS DOCUMENT. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

**THESE SECURITIES ARE SUBJECT TO RESTRICTIONS ON TRANSFERABILITY AND RESALE AND MAY NOT BE TRANSFERRED OR RESOLD EXCEPT AS PERMITTED**

ESA001643

UNDER THE SECURITIES ACT OF 1933, AS AMENDED, AND THE APPLICABLE STATE SECURITIES LAWS, PURSUANT TO REGISTRATION OR EXEMPTION THEREFROM. INVESTORS SHOULD BE AWARE THAT THEY MAY BE REQUIRED TO BEAR THE FINANCIAL RISK OF THIS INVESTMENT FOR AN INDEFINITE PERIOD OF TIME.

**Notice to Vermont Residents.** INVESTMENT IN THESE SECURITIES INVOLVES SIGNIFICANT RISKS AND IS SUITABLE ONLY FOR PERSONS WHO HAVE NO NEED FOR IMMEDIATE LIQUIDITY IN THEIR INVESTMENT AND WHO CAN BEAR THE ECONOMIC RISK OF A LOSS OF THEIR ENTIRE INVESTMENT. INVESTORS SHOULD BE AWARE THAT THEY MAY BE REQUIRED TO BEAR THE FINANCIAL RISKS OF THIS INVESTMENT FOR AN INDEFINITE PERIOD OF TIME.

IN MAKING AN INVESTMENT DECISION INVESTORS MUST RELY ON THEIR OWN EXAMINATION OF THE ISSUER AND THE TERMS OF THE OFFERING INCLUDING THE MERITS AND RISKS INVOLVED. THESE SECURITIES HAVE NOT BEEN RECOMMENDED BY ANY FEDERAL OR STATE SECURITIES COMMISSION OR REGULATORY AUTHORITY. FURTHERMORE, THE FOREGOING AUTHORITIES HAVE NOT CONFIRMED THE ACCURACY OR DETERMINED THE ADEQUACY OF THIS DOCUMENT. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THESE SECURITIES ARE SUBJECT TO RESTRICTIONS ON TRANSFERABILITY AND RESALE AND MAY NOT BE TRANSFERRED OR RESOLD EXCEPT AS PERMITTED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, AND THE VERMONT SECURITIES ACT, PURSUAT TO REGISTRATION OR EXEMPTION THEREFROM.

**Notice to Virginia Residents.** THE SECURITIES REPRESENTED BY THIS CERTIFICATE (OR OTHER DOCUMENT) HAVE BEEN ISSUED PURSUANT TO A CLAIM OF EXEMPTION FROM THE REGISTRATION OR QUALIFICATION PROVISIONS OF FEDERAL AND STATE SECURITIES LAWS AND SHALL NOT BE SOLD OR TRANSFERRED WITHOUT COMPLIANCE WITH THE REGISTRATION OF QUALIFICATION PROVISIONS OF APPLICABLE FEDERAL AND STATE SECURITIES LAWS OR APPLICABLE EXEMPTIONS THEREFROM.

ESA001644

## THE COMPANY

The Company, a Delaware corporation, produces high quality laboratory created diamond, suitable for use as gemstones and in electronics, technology and advanced industrial applications. The Company has developed what it believes to be a revolutionary and proprietary technology to produce these diamonds which it presently anticipates will be distributed through a variety of subsidiaries and other channels. The Informational Memorandum, included as part of this Confidential Summary of Transaction, describes in more detail the products, services, marketing plan and objectives of the Company. Recipients should read these materials carefully.

## THE OPPORTUNITY

*Summary of Transaction:* ................The Company has authorized the sale of warrants, convertible into the Company's common stock, previously sold or issued to a number of stockholders and/or directors, officers and agents of the Company. The exercise price of such warrants varies considerably and ranges between $.05 and $5.00 and will depend upon the individual selling the warrants. In the Transaction, Purchasers will purchase warrants from willing sellers prior to their expiration and, with regard to the warrants, correspondingly exercise such warrants. In either case, Purchasers shall make payment to the Company of $5.55 per share. Following the purchase of the warrants and their corresponding exercise, the Company will receive the exercise price less expenses associated with completing the proposed Transaction. There can be no assurance there will be sellers who are willing to sell their warrants such that all recipients will have an opportunity to participate in this Transaction. Purchases will be offered on a first-come, first-served basis and all subscriptions for purchase are subject to acceptance by the Company in its sole and unilateral discretion. The order of warrants offered for sale will correspond to the date of receipt by the Company of the corresponding Agreement to Purchase and Exercise Including Investment Representations form (a copy of which is attached hereto).

*Period of Availability:* ......................The availability period for recipients to consummate a Transaction shall terminate on September 30, 2008; provided, however, that the availability period may be terminated earlier or extended for an additional ninety (90) days at any time upon instruction by the Company in its sole and unilateral discretion.

## SECURITIES OUTSTANDING

The Company presently has approximately 105,915 shares of Series A Convertible Preferred Stock issued and outstanding convertible into approximately 2,118,300 shares of common stock and approximately 50,000 shares of Series B Convertible Preferred Stock issued and outstanding

convertible into approximately 500,000 shares of common stock. The Company has approximately 18,900,000 shares of common stock issued and outstanding and approximately 26,500,000 warrants and options issued or reserved for issuance at varying prices.

## RISK FACTORS

**THE COMPANY'S PLANNED OPERATIONS HAVE BEEN UNDERTAKEN COMMERCIALLY BY COMPETITORS ON A LIMITED BASIS. THERE CAN BE NO ASSURANCE THAT THE COMPANY'S BUSINESS MODEL AND/OR STRATEGY WILL BE COMMERCIALLY VIABLE. IN ADDITION, ACTUAL RESULTS OF OPERATIONS MAY REQUIRE SIGNIFICANT MODIFICATIONS OF ALL OR PART OF SUCH MODEL. RECIPIENTS SHOULD CAREFULLY CONSIDER, AMONG OTHER FACTORS, THE FOLLOWING RISK FACTORS. THE ORDER IN WHICH RISK FACTORS APPEAR IS NOT INTENDED AS AN INDICATION OF THE RELATIVE WEIGHT OR IMPORTANCE THEREOF:**

### *LACK OF OPERATING HISTORY AND EARLY STAGE COMPANY*

The Company, which was originally incorporated in May 1990, is in the early stages of development and has not yet engaged in any significant revenue-producing business activities other than limited sales of diamond gemstones, technology products and government funded contracts. The Company may continue to incur substantial losses for the foreseeable future. Accordingly, the Company has no operating history upon which an evaluation of the Company and its prospects can be based. To date, the Company's principal activities have focused on developing a laboratory and pilot-plant level process for the production of diamonds and the business model to support the rapid commercialization of resulting diamond products. As a result, the Company has sustained operating losses and negative cash flow since its incorporation and is expected to continue sustaining operating losses and negative cash flow in the near future. Although the Company has produced relatively small quantities of gem quality diamonds, the Company is still in the process of developing a high yield and scalable process for producing laboratory grown diamonds for the gemstone and electronics industries. The Company's business is subject to the risks inherent in the transition from research and development and prototype proof-of-concept to commercial production. Failure by the Company to develop a high yield and scalable process for producing the diamonds would have a material adverse effect on the Company's business, operating results and financial condition.

Likewise, the Company's products are in an early stage of development and are subject to the risks inherent in the development and marketing of new products, including unforeseen design, manufacturing or other problems or failure to develop market acceptance. Failure by the Company to complete development of its products or to develop the ability to produce such products in commercial quantities would have a material adverse effect on the Company's business, operating results and financial condition. Accordingly, the Company's prospects must be considered in light of the risks, expenses and difficulties frequently encountered by companies in their early stage of development, particularly technology-based companies operating with undeveloped and unproven products. To address these risks, the Company must, among other things, respond to competitive developments, attract and motivate qualified personnel, develop market acceptance for its products, establish effective distribution channels, effectively manage

any growth that may occur and continue to upgrade its technologies and successfully commercialize products incorporating such technologies.

## UNDEVELOPED MARKET AND UNPROVEN ACCEPTANCE OF COMPANY'S PRODUCTS

There currently is no widely-developed market among jewelers or consumers for lab-created diamond gemstones and the Company believes that jewelers and consumers are generally unaware of the existence and attributes of these particular lab-created diamonds. As is the case with any new or potential product, market acceptance and demand are subject to a significant amount of uncertainty. The Company's future financial performance will depend upon jeweler and consumer acceptance of the Company's lab-created diamond gemstones as a realistic and affordable substitute for earth-mined diamond. The Company has not conducted extensive market tests to predict jeweler or consumer reaction to its products.

There currently is no widely-developed market for lab-created diamond electronic, including semi-conductor and computing, applications. As is the case with any new or potential product, market acceptance and demand are subject to a significant amount of uncertainty. The Company's future financial performance will depend upon our customer's ability to develop devices and applications incorporating our diamond electronic products and acceptance of our customer's products by the consumer market.

Because no widely-developed markets now exist for lab-created diamond gemstones or electronic applications, it is difficult to predict the future growth rate, if any, and the size of the market for the Company's products. The Company may spend significant amounts of capital to acquire diamond production systems at a time when there is insufficient demand for the Company's products to fund those expenditures. The market for the Company's lab-created gemstones and electronic applications may never develop or may develop at a slower pace than expected as a result of lack of acceptance of lab-created diamonds by jewelers and/or by consumers. If the market fails to develop or develops more slowly than expected, or if the Company's products do not achieve significant market acceptance, the Company's business, operating results and financial condition would be materially adversely affected.

## INVESTORS WILL EXPERIENCE IMMEDIATE SUBSTANTIAL DILUTION OF THEIR INVESTMENT

Purchasers in this Offering will experience an immediate dilution in book value per share for the Shares acquired in this Offering. See "Dilution Table."

## PRODUCT FAILURE

The manufacture of the Company's diamond products involves highly complex processes. It is anticipated that customers will have highly specific quality, performance and reliability standard, which the Company will need to meet in order to be successful. The Company's products are in the early stages of development and there can be no assurances that the Company will be able to meet all these customer standards. Product failure or the inability meet customer requirements would have a material adverse effect on the Company's business, operating results and financial condition.

## UNDEVELOPED DISTRIBUTION CHANNELS

The Company plans to initially sell its products in selected markets in the United States and internationally. The Company intends to enter into distribution agreements with, and will be dependent upon, a number of third parties for sales of its diamond gemstones and electronic applications. The Company has not yet entered into distribution agreements with any independent distributors. There can be no assurance that the Company will be able to enter into distribution agreements with distributors or that its distribution strategy will prove to be successful or that distributors will devote the efforts needed for successful distribution of the Company's products. The inability of the Company to enter into favorable arrangements with distributors or to achieve desired distribution of its diamond gemstones and electronic applications would have a material adverse effect on the Company's business, operating results and financial condition.

## _DEPENDENCE ON THIRD PARTIES_

In addition to its dependence on third party distribution channels, the Company's prospects depend upon its ability to identify, reach agreements with and work successfully with other third parties. In particular, the Company expects to rely on third parties to facet (cut) its lab-created diamonds into gemstones. There can be no assurance that the Company can enter into contracts with faceting vendors on terms satisfactory to the Company or that faceting vendors will be able to provide faceting services in the quality and quantities required by the Company. In addition, the Company will be dependent upon other technologies incorporating its diamond materials into computing and electronic products. There can be no assurance of technology convergence in that regard. Failure by the Company to succeed in any of the aforementioned scenarios with third parties would have a material adverse effect on the Company's business, operating results and financial condition.

ESA001648

## DEPENDENCE ON INTELLECTUAL PROPERTY

The Company has been granted seven patents related to its production of high quality diamond. There can be no assurance, however, that this or any other patents issued to the Company will provide any significant commercial protection to the Company, that the Company will have sufficient resources to prosecute its patents or that any patents will be upheld by a court should the Company seek to enforce their respective rights against an infringer. Furthermore, there can be no assurance that the Company's business and/or its ability to produce diamond products will not be impaired by claims that it is infringing the intellectual property of others. The existence of valid patents does not prevent other companies from independently developing competing technologies. Existing producers of lab-created diamond may refine existing processes for growing diamond or develop new technologies for growing diamond in a manner that does not infringe any intellectual property rights of the Company.

The Company regards certain of its technology as critical to its business and attempts to protect such technology under patent and trade secret laws and through the use of employee, customer and business partner confidentiality agreements. Such measures, however, afford only limited protection and the Company may not be able to maintain the confidentiality of its technology. As a result of the foregoing factors, existing and potential competitors may be able to develop products that are competitive with or superior to the Company's products, and such competition could have a material adverse effect on the Company's business, operating results and financial condition.

## COMPETITION

Competition in the market for gemstones is intense. The Company's planned products face competition from established producers and sellers of earth-mined diamonds (including the cartel represented by De Beers), lab-created gemstones and diamond simulates such as cubic zirconia and Moissanite™. The most well-known potential competitor in the lab-created diamond category is a company called Gemesis located in Florida. Gemesis is a development stage company that produces diamonds using a "high pressure" method. Gemesis diamonds are usually yellowish in color to date and have distinctive inclusions that are readily identified with high-pressure production methods. Other companies, however, could seek to introduce lab-created diamonds or other competing products or to develop competing processes for production of lab-created diamond gemstones. Indeed, the Carnegie Institute, in a collaborative project with the University of Alabama-Birmingham, recently announced its ability to create diamonds utilizing a chemical vapor deposition process. Details of the project are not readily available, but the inventors claim to be able to grow diamond that will be capable of use in various applications. The Company believes that the more successful it is in creating market acceptance for lab-created diamond gemstones, the more competition can be expected to increase. Increased competition could result in a decrease in the price charged by the Company for its products or reduce demand for the Company's products, which would have a material adverse effect on the Company's business, operating results and financial condition. Furthermore, some of the Company's current and potential competitors may have significantly greater financial, technical, manufacturing and marketing resources and greater access to distribution channels than the Company. There can be no assurance that the Company will be able to compete successfully with its existing or potential competitors.

ESA001649

Electronic applications for diamond are in the very early stages of development. Other than the Company, the only entities that are known to have developed diamonds that are acceptable for use in the electronics industry are De Beers and Sumitomo Corporation. The Company believes that as more electronic devices and applications using diamond are developed, the more competition can be expected to increase. Increased competition could result in a decrease in the price charged by the Company for its products or reduce demand for the Company's products, which would have a material adverse effect on the Company's business, operating results and financial condition. Furthermore, some of the Company's current and potential competitors may have significantly greater financial, technical, manufacturing and marketing resources and greater access to distribution channels than the Company. There can be no assurance that the Company will be able to compete successfully with its existing or potential competitors.

## INTERNATIONAL OPERATIONS

The Company intends to target certain international markets for its products. In addition, it may use certain companies based outside the United States to facet its lab-created diamond products. Due to the Company's reliance on development of foreign markets and its use of foreign vendors, the Company is subject to the risks of conducting business outside of the United States. These risks include unexpected changes in, or impositions of, legislative or regulatory requirements, delays resulting from difficulty in obtaining export licenses, currency exchange fluctuations, tariffs and other trade barriers, restrictions and burdens resulting from compliance with a variety of foreign laws and other factors beyond the Company's control. The Company is also subject to general geopolitical risks in connection with its international operations, such as political, social and economic instability, potential hostilities and changes in diplomatic and trade or business relationships. There can be no assurance that such factors will not adversely affect the Company's operations in the future or require the Company to modify its anticipated business practices.

## GOVERNMENTAL AND INDUSTRY REGULATION

The Company is subject to governmental regulations regarding the manufacture and sale of lab-created diamond gemstones. In particular, the Federal Trade Commission (the "FTC") has the power to restrict the offer and sale of products that could deceive or have the tendency or effect of misleading or deceiving purchasers or prospective purchasers with regard to the type, kind, quality, character, value, origin and/or other characteristics of a diamond gemstone. Under current guidelines issued by the FTC, the Company must refer to its diamond gemstones as "lab-created diamond", "laboratory created diamond" or "laboratory grown diamond" and such designations may inhibit marketing descriptions that are more favorable to creating consumer demand. The Company may be under close scrutiny by governmental agencies and industry testing organizations (such as the Gemological Institute of America) and also by competitors in the gemstone industry, any of which may challenge the Company's promotion and marketing of its gemstone products. If the Company's production and/or marketing of its lab-created gemstones is challenged by governmental agencies or competitors, or if regulations are issued that restrict the ability of the Company to produce and market its products as "cultured diamond", "lab-created diamond", or otherwise as a natural diamond substitute, the Company's business, operating results and financial condition could be materially adversely affected.

## MANAGEMENT OF RAPID GROWTH

ESA001650

The Company currently is experiencing a period of rapid and significant growth, which is expected to continue over the next several years. This rapid growth has placed, and will continue to place, a significant strain on the Company's resources. The Company's ability to manage its growth effectively will require implementation and improvements of operational and financial systems and the expansion, training and management of its employee base. The Company also will be required to manage multiple relationships with various suppliers, customers and other third parties. The Company's future operating results will also depend on its ability to expand its sales and marketing, research and development and administrative support organizations. The Company's executive officers have no significant experience in managing rapidly growing businesses. If the Company is unable to manage growth effectively, the Company's business, operating results and financial condition would be materially adversely affected.

### NEED FOR ADDITIONAL CAPITAL

The Company will likely require substantial additional capital to continue to develop and improve the process for growing lab-created diamonds and diamond materials for electronic purposes, to fund expansion of manufacturing capacity to meet projected growth and to fund its expansion into new markets. The Company's future capital requirements will depend on many factors, including the speed at which the diamond growth process can be scaled-up with high yield, market acceptance of and demand for the Company's products and the timing of the Company's expansion into new markets. There can be no assurance that additional financing will not be required and there can be no assurance that additional equity or debt financing, if required, will be available on acceptable terms or at all. The inability of the Company to obtain financing on acceptable terms when needed would have a material adverse effect on the Company's business, operating results and financial condition.

### DEPENDENCE ON KEY PERSONNEL

The Company's success depends in part upon retaining the services of certain executive officers and other key employees. The Company has entered into employment agreements with Robert C. Linares, the Company's Chairman and CEO, Bryant R. Linares, a member of the Company's Board of Directors, and Patrick J. Doering, the Company's Vice President of Technology, among others. The loss of the services of the Company's executive officers or other key employees could have a material adverse effect on the Company's business, operating results and financial condition. Since the Company is in the early stage of development, the Company is also dependent on its ability to recruit, retain and motivate personnel with technical, manufacturing and gemological skills. There are a limited number of personnel with these qualifications and competition for such personnel is intense. The inability of the Company to attract and retain additional qualified personnel would materially adversely affect the Company's business, operating results and financial condition.

### ABSENCE OF DIVIDENDS

The Company has never declared any dividends and does not expect to declare or pay any cash dividends in the foreseeable future.

### CONTINUED CONTROL BY MANAGEMENT

The directors and officers of the Company will continue to exercise voting control of the

Company through their ownership of both preferred and common stock of the Company. The holders of the Company's preferred stock are entitled to two hundred (200) votes for each share held, without cumulative voting for directors. Additionally, the holders of the Company's preferred stock are entitled to elect a majority of the board of directors of the Company as result of their rights as preferred stockholders. The holders of the Company's common stock are entitled to one vote for each share held, without cumulative voting for directors. This means that the holders of more than 50% of the shares voting for the election of directors, including those holding both preferred and common stock, can elect all the directors to be elected if they choose to do so, and in such event, the holders of the remaining shares will not be able to elect any person as a director.

## NO ASSURANCE REGARDING PROCEEDS FROM EXERCISE OF WARRANTS

Not all the proceeds generated from the purchase and exercise of warrants, if any, will actually be received by the Company. In addition, notwithstanding this Transaction, the Company may not be able to achieve its objectives without obtaining funds from alternative sources. There can be no assurance, however, that alternative sources of financing will be available. The inability of the Company to obtain financing on acceptable terms when needed would have a material adverse effect on the Company's business, operating results and financial condition.

## NO PUBLIC MARKET; OFFERING PRICE

At this time, there is no public market for any of the Company's securities, nor is there any assurance that one will ever develop. The sale price for the common stock and/or convertible warrants was determined unilaterally and arbitrarily by the Agent and the Company and was not based on the net worth or earnings of the Company but rather on the Company's personnel, the present rate of development of its products and services, its intellectual property, its opportunity to establish a competitive position in the marketplace and its sales and earnings potential.

## CLOSE FAMILY RELATIONSHIP

Many of the principals of the Company are related by blood or marriage. It is possible that the stockholders, directors, officers and agents of the Company who may or may not be selling warrants in connection with this transaction may or may not be related by blood or marriage.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK.]

ESA001652

# Apollo Diamond, Inc.

## Dilution Table

The following table summarizes in approximate amounts, and as of the date of this Summary of Transaction, the difference between the total number of common stock shares purchased and/or contemplated to be purchased from the Company, the total consideration paid, and the average price per share paid by the existing Stockholders of the Company and by an investor purchasing one hundred thousand (100,000) Shares offered under this Summary of Transaction before deduction of offering expenses.

| Per Share | Shares Purchased | | Total Consideration | | Average Price |
|---|---|---|---|---|---|
| | Number | Percent | Amount | Percent | |
| Existing Stockholders(1) | 18,900,000 | .9947% | $34,500,000 | .9787% | $1.83 |
| New Investors (2) | 100,000 | .0053% | $750,000 | .0213% | $7.50 |
| Total | 19,000,000 | 100% | $35,250,000 | 100% | $1.87 |

1.  Includes only outstanding approximate common shares. Does not include approximately 23,500,000 warrants and options issued or reserved for issuance at varying prices.
2.  Shows impact for an investment of $750,000. Investments of differing and/or additional amounts following the date hereof shall affect this table accordingly.

**[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK.]**

# APOLLO DIAMOND, INC.



## AGREEMENT TO PURCHASE AND EXERCISE
## INCLUDING INVESTMENT REPRESENTATIONS

This agreement will confirm that you have agreed to purchase and exercise _____ (_____) warrants, each warrant exercisable into one share of common stock of Apollo Diamond, Inc. (the "Company") at a price of Five Dollars and Fifty-Five Cents ($5.55) per warrant in the aggregate amount of _____ ($_____). For purposes of this agreement, the term "Securities" shall mean the warrants purchased and corresponding common stock into which such warrants are converted by the exercise of such warrants purchased by you hereby. Unless otherwise agreed to by the Company, the purchaser herewith agrees to submit payment to the RL Investments, LLC ("RL Investments") in the aggregate amount of _____ ($_____) by (the "Purchase").

1.  Certain Representations of the Purchaser. In connection with, and in consideration of, the sale of the Securities to the undersigned, the undersigned hereby represents and warrants to the Company, its officers, directors, employees, agents, shareholders and RL Investments, that the undersigned:

    (a)    Has received and is familiar with information regarding the Company (the "Information").

    (b)    Has had an opportunity to review and ask questions of the executive officers of the Company, concerning the Information, and desires no further information.

    (c)    Realizes that a purchase of the Securities represents a speculative investment involving a high degree of risk.

    (d)    Realizes that the price per share of the common stock offered pursuant to the Securities may materially exceed amounts paid by prior purchasers of the Company's securities, and that the undersigned will experience substantial dilution in the per share value of the shares purchased by the undersigned immediately upon purchase.

    (e)    Realizes that the Company must raise substantial additional monies in order to become a going-concern.

    (f)    Can bear the economic risk of an investment in the Securities for an indefinite period of time, can afford to sustain a complete loss of such investment, has no need for liquidity in connection with an investment in the Securities, and can afford to hold the Securities indefinitely.

ESA001654

(g)     Realizes that there will be no market for the Securities after this offering and that there are significant statutory and contractual restrictions on the transferability of the Securities as set forth in Sections 2 and 3 below.

(h)     Realizes that the Securities have not been registered for sale under the Securities Act of 1933, as amended (the "Act") or applicable state securities laws (the "State Laws") and may be sold only pursuant to registration under the Act and State Laws or an opinion of counsel that such registration is not required.

(i)     Is experienced and knowledgeable in financial and business matters, capable of evaluating the merits and risks of investing in the Securities, and does not need or desire the assistance of a knowledgeable representative to aid in the evaluation of such risks (or, in the alternative, has a knowledgeable representative whom such investor has used in connection with a decision as to whether to purchase the Securities).

(j)     Realizes that, for the above and other reasons, the undersigned may not be able to liquidate an investment in the Securities for an indefinite period.

2.     <u>Investment Intent</u>.  The undersigned has been advised that the Securities have not been registered under the Act or the relevant State Laws but are being sold pursuant to exemptions from the Act and State Laws, and that the relevant parties' reliance upon such exemptions is predicated in part on the undersigned's representations contained herein.  The undersigned represents and warrants that the Securities are being purchased for the undersigned's own account and for long term investment and without the intention of reselling or redistributing the Securities, that the undersigned has made no agreement with others regarding any of the Securities, and that the undersigned's financial condition is such that it is not likely that it will be necessary for the undersigned to dispose of any of the Securities in the foreseeable future.  The undersigned represents and warrants that the undersigned has a financial net worth or anticipated income such that a sale of such Securities need not be made in the foreseeable future to satisfy any financial obligation of which the undersigned is, or contemplates, becoming subject.  The undersigned is aware that (i) there is presently no public market for the Securities, and, in the view of the Securities and Exchange Commission, a purchase of securities with an intent to resell by reason of any foreseeable specific contingency or anticipated change in market values, or any change in the liquidation or settlement of any loan obtained for the acquisition of any of the Securities and for which the Securities were or may be pledged as security would represent an intent inconsistent with the investment representations set forth above and (ii) the transferability of the Securities is restricted and (A) requires the express written consent of the Company (which may be withheld in the Company's sole and unilateral discretion for no reason or any reason) and, in the event the Company is effecting the initial public offering of its securities, the managing underwriter of such offering, and (B) will be further restricted by a legend placed on the certificate(s) representing the Securities containing substantially the following language:

THE ABOVE-DESCRIBED SECURITIES HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), OR UNDER THE LAWS OF ANY STATE.  THE SECURITIES MAY NOT BE OFFERED, SOLD, HYPOTHECATED, PLEDGED, TRANSFERRED OR OTHERWISE DISPOSED OF WITHOUT FIRST OBTAINING THE EXPRESS WRITTEN CONSENT OF APOLLO DIAMOND, INC. (THE

ESA001655

"COMPANY"), WHICH CONSENT MAY BE WITHHELD BY THE COMPANY FOR ANY REASON OR NO REASON WHATSOEVER IN THE COMPANY'S SOLE AND UNILATERAL DISCRETION.

THE ABOVE-DESCRIBED SECURITIES ARE RESTRICTED BY ALL TERMS OF THE COMPANY'S BYLAWS AND CERTIFICATE OF INCORPORATION IN EXISTENCE ON THE DATE OF THIS INITIAL OWNERSHIP STATEMENT. A TRANSFER OF STOCK IN VIOLATION OF THE FOREGOING RESTRICTIONS IS VOIDABLE AT THE SOLE AND UNILATERAL DISCRETION OF THE COMPANY. THE COMPANY'S TRANSFER RECORDS REFLECT THE RESTRICTIONS ON TRANSFERABILITY OF THE SECURITIES CONTAINED HEREIN.

UNDER NO CIRCUMSTANCES WILL A TRANSFER BE PERMITTED UNLESS IT IS EFFECTED UPON YOUR WRITTEN INSTRUCTION TO THE COMPANY, WITH SAID WRITTEN INSTRUCTION TO MINIMALLY INCLUDE YOUR NAME, ADDRESS, SOCIAL SECURITY NUMBER OR TAXPAYER IDENTIFICATION NUMBER AND THE IDENTITY, ADDRESS AND SOCIAL SECURITY NUMBER OR TAXPAYER IDENTIFICATION NUMBER OF THE PERSON/ENTITY TO WHOM YOU WILL TRANSFER THE SHARES.

The undersigned further represents and agrees that if, contrary to the undersigned's foregoing intentions, the undersigned should later desire to dispose of or transfer any of the Securities in any manner, the undersigned shall not do so without first obtaining the express written consent of the Company (which may be withheld by the Company for any reason or no reason whatsoever in its sole and unilateral discretion) and either (a) an opinion of counsel satisfactory to the Company that such proposed disposition or transfer may be made lawfully without the registration of such Securities pursuant to the Act and applicable State Laws and an agreement by the transferee to be bound by the terms and restrictions of this Subscription Agreement, or (b) registration of such Securities (it being expressly understood that the Company shall not have any obligation to register such Securities).

3.    Residence.  The undersigned represents and warrants that the undersigned is a bona fide resident of (or if an entity is domiciled in), the State of _____ and that the Securities are being purchased by the undersigned in the undersigned's name solely for the undersigned's own beneficial interest and not as nominee for, on behalf of, for the beneficial interest of, or with the intention to transfer to, any other person, trust, or organization.

PARAGRAPHS 4 AND 5 ARE REQUIRED IN CONNECTION WITH THE EXEMPTIONS FROM THE ACT AND STATE LAWS BEING RELIED ON BY THE COMPANY WITH RESPECT TO THE OFFER AND SALE OF THE SECURITIES. ALL OF SUCH INFORMATION WILL BE KEPT CONFIDENTIAL, AND WILL BE REVIEWED ONLY BY THE COMPANY OR ITS COUNSEL DEEMS NECESSARY. The undersigned agrees to furnish any additional information which the Company or its counsel deems necessary in order to verify the responses set forth below.

4.    Accredited Status. The undersigned represents and warrants that the undersigned is an "Accredited Investor" as such term is defined in Regulation D Under the Act. (CHECK ALL THAT ARE APPLICABLE):

ESA001656

## INDIVIDUALS

____ (a)   The undersigned is an individual with a net worth, or a joint net worth together with his or her spouse, in excess of $1,000,000. (In calculating net worth, you may include equity in personal property and real estate, including your principal residence, cash, short term investments, stock and securities. Equity in personal property and real estate should be based on the fair market value of such property minus debt secured by such property.)

____ (b)   The undersigned is an individual that had an individual income in excess of $200,000 in each of the prior two years and reasonably expects an income in excess of $200,000 in the current year.

____ (c)   The undersigned is an individual that had with his/her spouse joint income in excess of $300,000 in each of the prior two years and reasonably expects joint income in excess of $300,000 in the current year.

____ (d)   The undersigned is a director or executive officer of the Company.

## ENTITIES

____ (e)   The undersigned, if other than an individual, is an entity all of whose equity owners meet one of the tests set forth in (a) through (d) above. (Investors attempting to qualify under this item must provide a copy of this Subscription Agreement which has been completed and executed by each equity owner.)

____ (f)   The undersigned is an entity, and is an "Accredited Investor" as defined in Rule 501(a) of Regulation D under the Act. This representation is based on the following (check one or more, as applicable):

____ (i)   The undersigned (or, in the case of a trust, the undersigned trustee) is a bank or savings and loan association as defined in Sections 3(a) (2) and 3(a)(5)(A), respectively, of the Act acting either in its individual or fiduciary capacity.

____ (ii)   The undersigned is an insurance company as defined in Section 2(13) of the Act.

____ (iii)   The undersigned is an investment company registered under the Investment Company Act of 1940 or a business development company as defined in Section 2(a) (48) of that Act.

____ (iv)   The undersigned is a Small Business Investment Company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958.

A-4

ESA001657

_____ (v)   The undersigned is an employee benefit plan within the meaning of Title I of the Employee Retirement Income Security Act of 1974 and either (check one or more, as applicable):

_____ (a)   the investment decision is made by a plan fiduciary, as defined in Section 3(21) of such Act, which is either a bank, savings and loan association, insurance company, or registered investment adviser; or

_____ (b)   the employee benefit plan has total assets in excess of $5,000,000; or

_____ (c)   the plan is a self-directed plan with investment decisions made solely by persons who are "Accredited Investors" as defined under the 1933 Act

_____ (vi)   The undersigned is a private business development company as defined in Section 202(a) (22) of the Investment Advisers Act of 1940.

_____ (vii)   The undersigned has total assets in excess of $5,000,000, was not formed for the specific purpose of acquiring shares of the Company and is one or more of the following (check one or more, as appropriate):

_____ (a)   an organization described in Section 501(c) (3) of the Internal Revenue Code; or

_____ (b)   a corporation; or

_____ (c)   a Massachusetts or similar business trust; or

_____ (d)   a partnership.

_____ (viii)   The undersigned is a trust with total assets exceeding $5,000,000, which was not formed for the specific purpose of acquiring shares of the Company and whose purchase is directed by a person who has such knowledge and experience in financial and business matters that he is capable of evaluating the merits and risks of the investment in the Securities.   (IF ONLY THIS RESPONSE IS CHECKED, please contact the Company to receive and complete an information statement before this subscription can be considered by the Company.)

ESA001658

5.  <u>Entities</u>.  If the undersigned is an entity, the individual signing on behalf of such entity and the entity jointly and severally agree and certify that:

(a)   the undersigned was not organized for the specific purpose of acquiring the shares; and

(b)   this Agreement has been duly authorized by all necessary action on the part of the undersigned, has been duly executed by an authorized officer or representative of the undersigned, and is a legal, valid, and binding obligation of the undersigned enforceable in accordance with its terms.

6.  <u>Relationship to Brokerage Firms</u>.  (Please answer the following questions by checking the appropriate response.)

(a)   ____ YES ____ NO: Are you a director, officer, partner, branch manager, registered representative, employee, shareholder of, or similarly related to or employed by, a brokerage firm?  (IF YES, please contact the Company to provide additional information before your subscription can be considered.)

(b)   ____ YES ____ NO: Is your spouse, father, mother, father-in-law, mother-in-law, or any of your brothers, sisters, brothers-in-law, sisters-in-law or children, or any relative which you support, a director, officer, partner, branch manager, registered representative, employee, shareholder of, or similarly related to or engaged by, a brokerage firm?  (IF YES, please contact the Company to provide additional information before your subscription can be considered.)

(c)   ____ YES ____ NO: Does the undersigned own voting securities of any brokerage firm?  (IF YES, please contact the Company to provide additional information before your subscription can be considered.)

(d)   ____ YES ____ NO: If the undersigned is an entity, is any director, officer, partner or 5% owner of the undersigned also a director, officer, partner, branch manager, registered representative, employee, shareholder of, or similarly related to or employed by a brokerage firm?  (IF YES, please contact the Company to provide additional information before the Subscriber's subscription can be considered.)

7.  <u>Miscellaneous</u>.

(a)   Manner in Which Title Is to Be Held: (check one)

_____   Individual Ownership
_____   Joint Tenant with Right of Survivorship
_____   Partnership
_____   Tenants in Common
_____   Corporation
_____   Other _____ (describe)

ESA001659

(b)    The undersigned agrees that the undersigned understands the meaning and legal consequences of the agreements, representations and warranties contained herein, agrees that such agreements, representations and warranties shall survive and remain in full force and effect after the execution hereof and payment for the Securities, and further agrees to indemnify and hold harmless the Company, each current and future officer, director, employee, agent and shareholder from and against any and all loss, damage or liability due to, or arising out of, a breach of any agreement, representation or warranty of the undersigned contained herein.

(c)    This Agreement shall be construed and interpreted in accordance with Delaware law.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK.]**
**[SIGNATURE PAGE FOLLOWS]**

ESA001660

Dated: _____, 2008

**INDIVIDUAL INVESTORS**   **ENTITY INVESTORS**

_____
Name of Entity, if any

_____
Signature (Individual)

By _____
     Signature
Its _____
     Title

_____
Signature
(all record holders should sign)

_____        _____
Name(s) Typed or Printed                          Name Typed or Printed

_____        _____
Address to Which Correspondence            Address to Which Correspondence
Should be Directed                                     Should be Directed

_____        _____
City, State and Zip Code                            City, State and Zip Code

_____        _____
Tax Identification or                                  Tax Identification or
Social Security Number                              Social Security Number

A-8

ESA001661

Acceptance:

Apollo Diamond, Inc. hereby accepts this subscription for the purchase of _____ shares of common stock through the exercise of a warrant to purchase common stock and acknowledges receipt from _____ of such Purchaser's check in the aggregate amount of ($_____) as of _____, 2008.

**APOLLO DIAMOND, INC.**

By:_____
　　　　　　Robert C. Linares
　　　　　　Chief Executive Officer

A-9

ESA001662