UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 17-cr-64-DWF-KMM |
| Plaintiff, | ) | |
| | ) | **DEFENDANT'S OBJECTION** |
| v. | ) | **TO SEPTEMBER 17, 2018 REPORT** |
| | ) | **AND RECOMMENDATION OF** |
| EDWARD S. ADAMS, | ) | **MAGISTRATE JUDGE** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Mr. Adams respectfully objects to the Report and Recommendation (ECF 221) (the "R&R"), which recommended that the Court deny Mr. Adams's (1) Motion to Suppress (ECF 36), (2) Motion to Dismiss the Superseding Indictment, or in the Alternative for Disqualification, for Privilege Violations (ECF 141), and (3) Motion to Dismiss Counts 15-17 of the Superseding Indictment, or in the Alternative, for a Bill of Particulars (ECF 140).

Mr. Adams will not repeat the arguments in his previously-submitted briefs, and incorporates those briefs and supporting documents by reference herein.[1] The R&R contains a number of legal and factual errors. Particularly objectionable is the recommendation that the Court deny suppression of thousands of seized documents that the government never even reviewed—and as to which the government expressly stated it

---

[1] *See* ECF 36-41, 140-157, 196-200, 205.  Mr. Adams has submitted a courtesy copy of these filings, with the exception of the brief and exhibits (ECF 37-41) he filed prior to the evidentiary hearing and the government's substantial additional factual disclosures.

did not object to suppression—and hundreds of additional seized documents that are undeniably outside the scope of the warrant.  Mr. Adams objects to this recommendation and to the R&R's overall finding that neither the government's search warrant nor its search execution violated the Fourth Amendment or Rule 41.

In short, the government obtained and executed a facially unconstitutional warrant on Mr. Adams's Yahoo! email accounts.  The government then seized the entire contents of the accounts, and rather than review the emails to determine if they fell within the scope of the warrant as required by Rule 41, it unreasonably used the database of emails like a litigation database for over a year.  Post-indictment, on the eve of the government's discovery deadline, it ran broad search terms to reduce the volume, and declared the filtered set of documents its "seizure."  Only after Mr. Adams moved to suppress did the government admit the process it had followed.  These disclosures revealed that it had taken unreasonably insufficient measures to protect Mr. Adams's privileged communications, which resulted in (as the R&R finds) its repeated review of privileged communications (including ones with prominent "attorney-client privileged" banners)—some of which were printed, circulated to other members of the prosecution team, and used to develop tax charges.

Mr. Adams objects to the R&R's conclusion that the government's admitted intrusion into Mr. Adams's privileged communications was insufficiently deliberate and prejudicial to merit dismissal or disqualification.  The tax charges in particular merit dismissal because the record reflects that the government was on notice of Mr. Adams's privileged relationship with a *Kovel* accountant, Murry LLC, yet it read communications

between Mr. Adams and Murry, deliberately searched for such communications, and used them to seek approval for tax charges. The R&R's recommended remedy for the government's privilege intrusions—that the government simply be prohibited from using at trial the privileged documents—is insufficient.

## LEGAL STANDARD

"The district judge must consider de novo any objection to the magistrate judge's recommendation. The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions." Fed. R. Crim. P. 59(b)(3); *see* 28 U.S.C. § 636(b)(1); LR 72.2(b)(3).

## ARGUMENT

I. **Mr. Adams's Motion to Suppress Should Be Granted.**

   A. **The Court should suppress the 38,142 documents to which the government raises no objection.**

It is especially objectionable that the R&R recommends denial of suppression as to documents whose seizure the government does not defend. The government effectively conceded in briefing that 38,142 emails (93% of the total seizure) should be suppressed—37,442 it never reviewed and 750 it never defends as within the warrant's scope. *See* ECF 172 at 21, 86. There is no basis for denying what the government concedes should be granted. The Court should reject that recommendation.

The Court should suppress the 37,442 emails that the government *never looked at* in the course of its search, and only "seized" because they hit on at least one of the government's "relevance" search terms—including Mr. Adams's initials (ESA) and his

wife's maiden name (Linares). The government "does not object" to suppression of these documents. ECF 172 at 86. The seizure of these never-reviewed documents was unreasonable under the Fourth Amendment. *See United States v. Metter*, 860 F. Supp. 2d 205, 211 (E.D.N.Y. 2012) ("the government has a duty to make its own determination as to whether or not a particular [electronic] document fell within the scope of the warrant"). And as explained below, this seizure also violated Rule 41(e)(2)(B); *see also* ECF 147 at 57-60. Failure to suppress these documents would create ongoing case management concerns, as these 37,422 emails likely contain many privileged communications.[2]

The Court should also suppress the 750 documents that the government concedes are "arguably" outside the warrant's scope. ECF 172 at 21. The government viewed these documents during its search and seizure, but they have no bearing on the issues described in the warrant or indictment—115 relate to Mr. Adams's purely personal matters, and 635 relate to Mr. Adams's business interests not implicated in any alleged crimes. ECF 147 at 20-21. The government makes no argument as to why it was appropriate to seize any of these documents, and the R&R fails to address them. Suppression of documents outside the warrant's scope is required. *See United States v. Decker*, 956 F.2d 773, 779 (8th Cir. 1992).

---

[2] As contemplated by the Court's prior orders, *see* ECF 88, Mr. Adams has not reviewed for privilege the many thousands of documents that the government "seized" but never reviewed, and there is no basis for the government to force him to spend the resources that would be needed to do so. ECF 197 n.16.

### B.  The warrant and search violated the Fourth Amendment and Rule 41.

More broadly, the Court should suppress all the documents seized by the government.  First, Mr. Adams objects to the R&R's holding that the warrant does not facially violate the Fourth Amendment.  R&R 65-73.  The warrant lacked particularity because it authorized the seizure of all documents in Mr. Adams's email account that could be evidence of any fraud.  *See* ECF 147 at 30-31; ECF 197 at 23-25.  The R&R relies on an "illustrative" list in holding the warrant particular, but that list itself authorized the seizure of unparticular categories of documents, so it cannot save the warrant.  *See* ECF 197 at 23-25.  And even if sufficiently particular, the warrant was overbroad because it authorized a seizure far broader than the probable cause supporting it.  *See* ECF 147 at 32-33; ECF 197 at 25.  The warrant affidavit alleged misrepresentations during a 2011-2012 transaction, but the R&R erroneously concludes that unrelated business documents from six years prior are sufficiently connected to that 2011-2012 transaction to fall within the scope of the warrant.  R&R 69-70.  The R&R also misreads *Andresen v. Maryland*, 427 U.S. 463 (1976), as authorizing facially overbroad warrants in fraud cases.  *See* ECF 197 at 24.  The R&R's good faith ruling should likewise be rejected because no reasonable officer could presume such a facially deficient warrant to be valid.  *See* ECF 197 at 26.

Second, Mr. Adams objects to the R&R's holding that the government's "execution" of the warrant was reasonable.  *See* R&R 74-86.  From the first day it began executing the warrant, the government searched for documents outside the warrant's

scope.[3]  *See* ECF 147 at 35-38; ECF 197 at 22-23.  The R&R concludes that the search terms here were reasonably calculated to locate items set out in the warrant but cites no evidence, relying instead on the incantation that the fraud here was "complex."  *Contra* ECF 147 at 11-18.  In concluding that documents related to the 2006-2009 "embezzlement scheme" not alleged in the warrant fell within the warrant's scope, the R&R erroneously relies on the "business and financial transactions" language contained in the warrant's "illustrative" list, but ignores that category's limitation to documents from "2010 to present."  *See* ECF 197 at n.27.  The R&R relies on this list when concluding that the warrant was sufficiently particular to direct what officers could seize within the scope of the warrant, but then fails to faithfully apply the list when examining how the warrant was executed and assessing whether particular documents that were seized fell within the scope of the warrant.[4]

Third, the government recklessly disregarded proper procedure under Rule 41 by never meaningfully executing the warrant, and Mr. Adams objects to the R&R's conclusion otherwise.  *See* R&R 81-84, 86-88.  The government improperly used the trove of emails it obtained from Yahoo! as a litigation database—going back to these emails again and again and doing with them what it pleased—until *after* it indicted Mr.

---

[3] The warrant's execution was also unreasonable because the government reviewed documents more than necessary and examined privileged documents.  ECF 147 at 38-52.

[4] This flaw in the R&R is best displayed at R&R footnote 44, which concludes, in effect, that the warrant's overbreadth means that officers did not exceed its scope in executing it.

Adams.[5]  *See* ECF 147 at 33-35, 38-45; *United States v. Wey*, 256 F. Supp. 3d 355, 406-07 (S.D.N.Y. 2017).  At that point, with discovery deadlines looming, the government ran a list of broad search terms and proclaimed all emails containing those terms its "seizure," despite never viewing 87% of them.  ECF 147 at 20-21, 43-45.  Rule 41(e)(2)(B)'s two-step process allowed the government access to ten years of Mr. Adams's email (the first step) *solely* in order to conduct a "later review of the [documents] consistent with the warrant" (the second step).  But the government never truly completed that second step, which is not merely a "technical" requirement, R&R 88, because it never made any assessment of whether 87% of the material "seized" by the keyword terms were actually in the scope of the warrant, having never actually viewed those documents.  And after filtering, the government spent virtually no time assessing the 42,927 documents prior to "seizing" them—plainly not enough to determine whether its search terms yielded documents within the scope of the warrant.  *See* ECF 147 at 20.  Thus, it recklessly disregarded proper procedure under Rule 41.  *See* ECF 147 at 51-52; ECF 197 at n.34.  The R&R does not respond to Mr. Adams's actual argument concerning the requirements of Rule 41, *see* R&R 87-88, and it conducted no analysis of the government's failure to review 87% of the documents it "keyword-seized."

If upheld, the R&R's suppression ruling would have consequences far beyond this case.  The R&R effectively rules that the government need not identify its seizure with specificity.  R&R 80-81 (suggesting that the seizure included all items identified as

---

[5] This conduct was also unreasonable under the Fourth Amendment.  ECF 147 at 38-43.

"seized" plus other items used by the government during the investigation but never identified as seized). And the R&R approves of the government's repeated "pre-seizure" review of documents for a year after it obtained them. *See* R&R at 81-84; *contra* ECF 197 at 17-18. Taken together, these rulings mean that in fraud cases, the government can invoke Rule 41(e)(2)(B) to seize all of a suspect's emails, can use these emails for whatever purposes it wishes, can re-review these emails as its theory of the case evolves up to the time of trial, and need never identify with specificity what emails it actually properly seized. Rule 41's two-step process already represents the outer limit of what is permissible under the Fourth Amendment; by endorsing the government's reckless disregard for Rule 41's requirements, the R&R renders the Fourth Amendment meaningless in the digital context. This Court should not adopt that result.

## II. Mr. Adams's Motion to Dismiss, or in the Alternative to Disqualify, Should Be Granted.

### A. The government's conduct violated Mr. Adams's constitutional rights.

Mr. Adams objects to the R&R's conclusion that neither dismissal nor disqualification are justified. The R&R correctly recognizes that the government's search of Mr. Adams's email "resulted in members of the prosecution team being exposed, sometimes repeatedly, to certain privileged communications," R&R 17, and that at least one such document "contains information that could reveal aspects of the defense strategy in this case," *id.* 20-21. Yet it concludes that no remedy apart from suppression of the privileged documents is appropriate. *Id.* 33-60.

The Fifth Amendment compels dismissal. The government's conduct was an outrageous, deliberate intrusion into Mr. Adams's privileged communications. *See* ECF 196 at 8-11; ECF 141 at 25-26. This conclusion follows from the R&R's finding that "it is more likely than not that the privilege headers in the *in camera* documents [Exhibits A, J, K] were visible in the Relativity program when Inspector Kroells and AUSA Maria reviewed the documents." R&R n.14. The R&R's finding that it was not an outrageous or deliberate intrusion to review documents containing such privilege banners is untenable.[6] R&R 45-46.

And the R&R's conclusion that Mr. Adams has failed to demonstrate prejudice is contrary to the facts. R&R 54-58. For example, a 2014 memo from Mr. Adams to his lawyers outlining lines of cross-examination that could be used at trial is just as relevant today as when written, and the fact that Inspector Kroells reviewed that memo demonstrates ongoing prejudice.[7] ECF 198 at 4-7. Similarly, the R&R seemingly concludes that Mr. Adams's communications with his tax lawyer and *Kovel* accountant about amending previously-filed returns would not be relevant to the government's tax

---

[6] The R&R also makes the erroneous findings that there was "general disclaimer language on many emails," and that "it was reasonable . . . for reviewers to conclude that there would be many items in Mr. Adams's email account that would facially suggest privilege existed, but for which no privilege was going to apply." R&R 44-46. Other than the privileged documents identified by Mr. Adams, there are no such Yahoo! emails in the record, and the R&R points to none.

[7] With respect to other draft memos reviewed by the government, the R&R erroneously concludes that their contents were presented to the government, ignoring the unique information identified by Mr. Adams in those memos. *See* ECF 198 at 4-7.

case concerning the very same previously-filed returns, R&R 57; this finding is contradicted by the intensive investigative focus the government put on these materials—subpoenaing additional records from the *Kovel* accountant and conducting many searches targeting these materials. ECF 197 n.10; ECF 147 at 14-15, 29.[8]

Even if it does not dismiss the indictment, the Court should disqualify the prosecution team. In recommending denial of this relief, the R&R considered four factors, each of which actually supports disqualification.[9] *See* R&R 60-64. First, the government's conduct was egregious: the government purposefully intruded on Mr. Adams's privileges, *see* R&R 49; ECF 198 at 2-7; accessed information disclosing trial strategy and defense;[10] and *repeatedly misrepresented to defense counsel the documents to which it had access before new government counsel became involved in the case*, *see* ECF 196 n.20; ECF 147 at 24 (a fact not mentioned in the R&R). Second, the government's access to Mr. Adams's communications was prejudicial. *See* ECF 198 at 2-7; ECF 144 at 21-25. Third, the effectiveness of Mr. Adams's defense has been

---

[8] In addition to the Fifth Amendment, the Sixth Amendment requires dismissal. The R&R confuses the attachment of the right to the appointment of counsel with the right not to have a pre-existing relationship interfered with, especially when that interference would infect trial. *See* ECF 198 at 11-13 & n.13; ECF 144 at 19-25. Likewise, the government's conduct merits dismissal under the Court's supervisory powers. *See* ECF 141 at 26; ECF 196 at 13.

[9] Mr. Adams addresses here the factors relied on in the R&R, but Mr. Adams maintains that the factors he cited in earlier briefing support disqualification. *See* ECF 141 at 27-42; ECF 196 at 13-16.

[10] *See* discussion *supra*; ECF 198 at 4-7.

compromised by the government's access to his trial strategy and potential lines of cross-examination. *See* ECF 198 at 4-7. "[I]t is highly unlikely" that the Court (or the defense) can "arrive at a certain conclusion as to how the government's knowledge of any part of the defense strategy might benefit the government . . . in the subtle process of pretrial discussion with potential witnesses, in the selection of jurors, or in the dynamics of trial itself." *United States v. Levy*, 577 F.2d 200, 208 (3d Cir. 1978).[11]  Fourth, the R&R relies on AUSA Maria's departure from the U.S. Attorney's Office but ignores that Inspector Kroells reviewed many privileged documents and remains on the team.[12]  *See* ECF 144 at 10-15, 17-18. Whether it applies the factors used in the R&R or those previously advocated by Mr. Adams, the Court should disqualify the prosecution team.

**B.    At a minimum, the tax charges merit dismissal.**

The R&R's recommendation against dismissal is particularly objectionable as to the tax charges, because the R&R's reasoning rests on two erroneous factual findings.

First, the R&R's recommendation is based on its finding that "the government was not on notice of any privileged relationship with Murry LLC in September of 2016," and it was not until "after receiving Mr. Brever's December 1, 2016 letter mentioning a *Kovel* arrangement" that the government was on notice. R&R 49-50. In making this finding,

---

[11] *Levy* applies a Sixth Amendment analysis, but its reasoning applies just as forcefully in the present context.

[12] The R&R also recommended against conducting a hearing to determine what privileged information AUSA Maria shared, R&R n.40, despite evidence that team members shared information (some privileged) with each other. *See* ECF 147 at 13, 18-19; ECF 197 at 12-13.

11

the R&R omits any mention of the fact that *in camera* Exhibit K contained a privilege banner stating "Attorney-Client Privileged Communication for Tom Brever *and Pat Murry*," and that on May 4, 2016, AUSA Maria viewed this document *four times*, as well as two more times shortly thereafter. ECF 197 at 5. The lead prosecutor's repeated viewing of this privilege legend put the government on clear notice that communications with Murry LLC were potentially privileged, such that AUSA Maria's review of additional communications with Murry thereafter (*in camera* Exhibits M, N, O, R) and searches for "Murryllc" in September 2016 were deliberate and outrageous. *See* ECF 144 at 13-16.[13]

Second, the finding that "the tax charges were forthcoming independent of any review of [Mr. Adams's] emails," R&R 57, and that "[t]he government did not use Mr. Adams's privileged information to procure the indictment," *id.* 64, is contradicted by the fact that Mr. Adams's privileged communications with Murry were incorporated into and attached to the IRS Special Agent Report seeking approval of the tax charges. *See* ECF 196 at 2-3. The R&R also fails to consider that Mr. Adams's privileged emails with Murry were reviewed *before* the prosecution reviewed Mr. Adams's tax returns. *Id.* The

---

[13] The R&R does not make conclusions about whether the specific documents identified by Mr. Adams are protected by the attorney-client privilege. To the extent that the R&R suggests that Mr. Brever "disavowed any privilege" for certain multi-message email chains as a result of having produced a single non-privileged message from within the chain while withholding the rest of the chain as privileged, this is contrary to privilege law. *See* Fed. R. Evid. 502 (subject matter waiver only appropriate where disclosed and undisclosed communications "ought in fairness to be considered together").

R&R's finding that the government's "basis for the tax allegations would have been apparent" from Mr. Adams's initial and amended tax returns, R&R 57, absent the government's review of Mr. Adams's communications with his tax attorney and *Kovel* accountant about those same returns, is unsupported by any record evidence.[14]

As a result of the government's deliberate searches for and review of Mr. Adams's communications with Murry LLC despite being on notice of Mr. Adams's claim of privilege and the government's actual use of those communications to gain approval for tax charges, the tax charges should be dismissed. *See United States v. Valencia*, 541 F.2d 618, 621 (6th Cir. 1976).

### III. Mr. Adams's Motion to Dismiss the Tax Charges, or in the Alternative, for a Bill of Particulars, Should Be Granted.

Mr. Adams objects to the R&R's recommendation that this motion be denied. In justifying its recommendation, the R&R relies on evidence outside the indictment and possible motions that Mr. Adams could raise in the future to guard against the risk of double jeopardy. R&R 92. This does not cure the defect; the charged crime has to be set forth with adequate notice in this indictment. *Hamling v. United States*, 418 U.S. 87, 117 (1974); ECF 140 at 3-8.

---

[14] Mr. Adams sought to obtain testimony from AUSA Maria regarding the execution of the warrant but the Magistrate Judge granted the government's motion to prevent his testimony. ECF 100.

## **CONCLUSION**

Mr. Adams respectfully requests that the Court modify the Report and Recommendation and grant his motions.

Dated:  October 1, 2018                              Respectfully submitted,

                                                      /s/ *Lance Wade*

Joseph G. Petrosinelli (DC Bar #434280)
Lance Wade (DC Bar #484845)
Gloria Maier (DC Bar # 1012208)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
Telephone:  (202) 434-5000
jpetrosinelli@wc.com
lwade@wc.com
gmaier@wc.com

James L. Volling (#113128)
Deborah A. Ellingboe (#26216X)
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55420
Telephone:  (612) 766-7000
Facsimile:  (612) 766-1600
james.volling@faegrebd.com
debbie.ellingboe@faegrebd.com

*Attorneys for Defendant Edward S. Adams*