UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 17-64 (DWF/KMM)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) **GOVERNMENT'S OBJECTIONS** |
| | ) **TO OCTOBER 27, 2018 ORDER** |
| v. | ) |
| | ) |
| EDWARD S. ADAMS, | ) |
| | ) |
| Defendant. | ) |

The United States of America, by and through its attorneys, Erica H. MacDonald, United States Attorney for the District of Minnesota, and John Kokkinen and Joseph H. Thompson, Assistant United States Attorneys, respectfully submits this objection to Magistrate Judge Katherine M. Menendez's October 27, 2018 Order [Dkt. 225] denying in part and granting in part the United States' motion contesting the application of privilege [Dkt. 192]. Specifically, the government objects to Judge Menendez's denial of the government's privilege challenge regarding seven email communications between Mr. Adams and his accountants, the Murry firm (hereinafter, "the Murry emails").

In the Order, Judge Menendez determined that (1) the Murry emails were privileged because they assisted Mr. Adams's counsel, Mr. Brever, in the provision of legal advice regarding tax-related matters; (2) the filing of amended returns did not operate as a waiver as to any of the information contained within the Murry emails because all of that information constituted "unpublished expressions that were not later revealed on the amended returns": and (3) the privilege was not vitiated by the crime-fraud exception

because the record failed to show that "Mr. Adams obtained Mr. Brever's advice and consulted with [the Murry firm] with the intent to commit a fraud or crime by misrepresenting that he earned income from stocks instead of the sale of warrants." October 27, 2018 Order at 2-8.

Because the practical effect of Judge Menendez's ruling is suppression of the Murry emails, the government submits that its objections are subject to de novo review. *See* Fed. R. Crim. P. 59(a); 28 U.S.C. § 636(b)(1). Rather than repeat all of the arguments that were made to Judge Menendez, the government respectfully requests that the Court consider de novo all of those previously made arguments regarding the Murry emails. *See* [Dkt. 172] at 64-76, [Dkt. 192] at 2-3, [Dkt. 217] at 2-28. In addition, the government respectfully submits the following arguments addressing specific aspects of Judge Menendez's ruling.

First, Judge Menendez's Order did not address the government's arguments regarding the primary purpose of the Murry emails. Although the Order ultimately concluded that the Murry emails assisted Mr. Brever in the provision of legal advice, the Order never addressed whether the Murry emails were also for another purpose, namely, the preparation of amended tax returns. Nor did the Order address which of those two apparent purposes was the primary or predominant purpose. As the government noted in its submissions, persuasive authority from outside the Eighth Circuit, which itself appears never to have addressed the issue, holds that the privilege applies only if the communications were for the sole or primary purpose of obtaining legal advice. *See In re Grand Jury Proceedings*, 220 F.3d 568 (7th Cir. 2000); *United States v. Frederick*, 182 F.3d 496 (7th Cir. 1999); *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983).

Second, in rejecting the government's waiver argument, Judge Menendez relied heavily on the principle from *United States v. Cote*, 456 F.2d 142 (8th Cir. 1972), that although the filing of amended returns does operate as a waiver as to the information on the amended returns, as well as the underlying details that support that information, the wavier does not extend to "unpublished expressions which are not part of the data revealed on the tax returns." Order at 3-4. As the government noted in its reply brief [Dkt. 217], the figures on the amended returns for the gains realized from selling Apollo securities find no support anywhere in the schedules attached to those returns. Nor do they find any support in any of the workpapers that were produced by the Murry firm as being nonprivileged. The amended returns report $991,750 in long-term gains in 2008, $160,250 in long-term gains in 2009, and $280,050 in long-term gains in 2010, but there is nothing showing the details of how those numbers were calculated. In other words, it would seem that Mr. Adams has claimed privilege over *all of the underlying details* of the transactions that gave rise to those previously unreported gains under the idea that *all of those underlying details* constitute "unpublished expressions."

Respectfully, it simply cannot be the case that Mr. Adams can properly claim privilege over all of the underlying details that support the figures on his amended returns. When tax returns are prepared, there are a number of workpapers and supporting schedules that are used to generate the figures reflected on the various line items of the returns. But often, those workpapers and schedules are not filed along with the returns. They are, however, retained to support the figures on the returns if a question ever arises as to the accuracy of the figures or the tax treatment claimed by the taxpayer. The fact that they are

not attached to the returns does not mean that they are "unpublished expressions *not part of the data revealed on the tax returns*." (Emphasis added.) To the contrary, they *are* part of the data revealed on the tax returns. Not only are they part of the data, they are the very basis for the data revealed on the tax returns. In other words, the "unpublished expressions" concept has two aspects to it: the expressions must be unpublished and they must not be a part of the data revealed on the tax returns. Both aspects must be satisfied. Here, if the Murry emails contain underlying details that form the basis for the totals reported on the tax returns and the tax treatments claimed for those totals, then they are part of the data revealed on the returns even if they are unpublished.[1]

Third, in rejecting the government's crime-fraud argument, Judge Menendez determined that the record failed to show that Mr. Adams had fraudulent intent in using the services of Mr. Brever and the Murry firm to file amended returns. Judge Menendez did

---

[1] One could imagine a scenario in which a taxpayer communicates with his attorney and/or *Kovel* accountant about transactions that gave rise to income and the communication goes into specifics of the transaction that do not affect mathematical calculations or tax treatments. For example, the communications could include discussion about what representations were made to an investor during a transaction, which could be relevant to the legal question of whether there is any potential civil or criminal liability but would not affect how the gains ought to be reported on a tax return. The discussion about those specifics of the transaction would fit within the concept of "unpublished expressions not part of the data revealed on the tax returns," and protecting from disclosure those portions of the discussion would serve the salutary principles of the privilege. Here, by contrast, if the Murry emails include any specifics about when the warrants were acquired, when they were exercised, what the exercise price was, when the resulting stocks were sold, and what the sale prices were—and it seems that the Murry emails must have included such information to enable Murry to prepare the returns—such specifics formed the basis for the mathematical calculations and tax treatment on the returns. That being so, there can be no expectation of confidentiality in the details underlying those calculations and claimed tax treatment.

not address, however, the disparity between the draft returns that were produced by the Murry firm and the final versions that were actually filed. *Compare* Gov't Exs. 31-33 *with* Gov't Ex. 43 at ECL-00030662-671 and ECL-00031611-620. That disparity shows that the misrepresentation that the transactions involved stocks rather than warrants, which was absent from the draft versions but was explicitly incorporated into the final versions that were actually filed, reduced Mr. Adams's tax obligation by at least $200,000. Employing a lie about the nature of the transactions in order to reduce a tax obligation by $200,000 is the epitome of fraudulent intent.

Dated: November 10, 2018

                                              Respectfully submitted,

                                              ERICA H. MACDONALD
                                              United States Attorney

                                              */s/ John Kokkinen*

BY:    JOHN KOKKINEN
        JOSEPH H. THOMPSON
        Assistant U.S. Attorneys