# EXHIBIT G

LAW OFFICES
# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

LANCE WADE
(202) 434-5755
lwade@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

July 30, 2019

<u>Via Hand Delivery</u>

Richard E. Zuckerman, Esq.
Principal Deputy Assistant Attorney General
Larry J. Wszalek, Esq.
Chief, Western Criminal Enforcement Section
Stephen K. Moulton, Esq.
Trial Attorney
U.S. Department of Justice, Tax Division
950 Pennsylvania Avenue, NW
Washington, DC 20530

Re:   <u>United States v. Edward S. Adams</u> – U.S. District Court for the District of Minnesota, Case No. 17-cr-64 (DWF/KMM)

Dear Counsel:

I write to request a meeting to discuss the highly unusual decision by the U.S. Attorneys' Office for the District of Minnesota ("MN USAO") to pursue tax charges against my client, Mr. Edward S. Adams, based on tax years for which Mr. Adams completed a voluntary disclosure submission and executed a binding closing agreement with the Internal Revenue Service. This charging decision not only contravenes the terms of Mr. Adams's closing agreement, it also violates federal statutes and regulations mandating that such agreements be treated as final and conclusive. *See, e.g.*, 26 U.S.C. § 7121(b)(1) (prohibiting "any officer, employee, or agent of the United States" from modifying the closing agreement or otherwise reopening the case); *id.* § 7121(b)(2) (providing that the closing agreement, and any determination contained therein, "shall not be . . . annulled, modified, set aside or disregarded" in "*any* suit, action, or proceeding" (emphasis added)). Mr. Adams's position on these significant issues is set forth in greater detail in his July 15, 2019 letter to the MN USAO (attached hereto as Exhibit A).

   A.   **Procedural Background**

In October 2014, Mr. Adams approached the IRS through experienced tax counsel to explore a possible voluntarily disclosure in connection with tax years 2008, 2009, and 2010. Following negotiations and discussions involving Mr. Adams's tax counsel, the IRS and Mr.

WILLIAMS & CONNOLLY LLP

Page 2

Adams executed a valid and final closing agreement in August 2015. Among other things, the IRS and Mr. Adams agreed to resolve with finality all issues concerning Mr. Adams's civil and criminal tax liability for his 2008, 2009, and 2010 amended returns.

On March 22, 2017, the MN USAO charged Mr. Adams with mail and wire fraud in connection with an alleged scheme to defraud a company called Apollo Diamond, Inc., and its subsidiary, Apollo Diamond Gemstone Corporation (collectively, "Apollo"). The original indictment alleged that Mr. Adams diverted funds he was raising for Apollo to himself and others. Shortly after filing this indictment, then-AUSA David Maria—who is no longer involved in this case—sought authorization to bring tax charges against Mr. Adams based on Mr. Adams's purported failure to report the proceeds of this fraud on his tax returns. A Special Agent Report ("SAR") was prepared on October 10, 2017. *See* SAR (attached hereto as Exhibit B). The SAR failed to address the significant legal issues posed by the contemplated tax charges, which violated the plain terms of Mr. Adams's closing agreement—not to mention several other federal statutes and regulations. *See, e.g.*, 26 U.S.C. § 7121; I.R.M. 8.13.1.7.2.1; *id.* 8.13.1.7.2.1.1.

To begin with, the SAR contained only a single, cursory reference to Mr. Adams's voluntary disclosure and binding closing agreement. *See* SAR at 4. The SAR did not discuss the circumstances and negotiations relating to Mr. Adams's voluntary disclosure and closing agreement, nor did it otherwise address the contents of these documents in any detail. More fundamentally, the SAR neglected to evaluate—or even raise—multiple legal issues posed by the contemplated charges, including but not limited to: (i) whether the contemplated charges violated the terms of Mr. Adams's closing agreement; (ii) whether there was any valid basis to set aside Mr. Adams's closing agreement, *see, e.g.*, 26 U.S.C. § 7121(b) (closing agreements may be set aside only "upon a showing of fraud or malfeasance, or misrepresentation of a material fact"); and (iii) whether the IRS had complied with the regulatory procedures for formally setting aside the closing agreement, *see, e.g.*, I.R.M. 8.13.1.7.2.1; *id.* 8.13.1.7.2.1.1. Notwithstanding the absence of the foregoing analysis, the SAR recommended that charges be brought in connection with Mr. Adams's 2008, 2009, and 2010 tax returns.

On December 20, 2017, the MN USAO filed a superseding indictment charging Mr. Adams with understating his taxable income for the years 2008, 2009, and 2010, in violation of 26 U.S.C. § 7206(1). The theory set forth in the superseding indictment is that Mr. Adams failed to report proceeds obtained from his fraudulent scheme in his *2011 amended returns* for tax years 2008, 2009, and 2010. *See* First Superseding Indictment, ECF No. 70, ¶¶ 64–67.[1]

The fundamental defects in the government's tax charges first came to light nine months later, in connection with briefing on Mr. Adams's motion to suppress. There, in an effort to justify its unlawful access to privileged correspondence between Mr. Adams's tax counsel and Mr. Adams's *Kovel* accountant, the government fundamentally altered its theory of the case. Specifically, the government argued for the first time that Mr. Adams omitted from his *2014*

---

[1] Mr. Adams twice amended the returns at issue. He first amended the relevant tax returns in 2011, and thereafter amended them in 2014 (in connection with his voluntary disclosure submission and closing agreement).

WILLIAMS & CONNOLLY LLP

Page 3

*amended returns* proceeds obtained from the sale of unexercised stock warrants between 2006 and 2010. *See* Gov't's Post-Hr'g Mem. in Opp'n to Mot. to Suppress, ECF No. 172, at 76–82.[2] The government insisted that Mr. Adams had waived any privilege associated with the communications at issue pursuant the crime-fraud exception. *See id.* The Court ultimately sided with Mr. Adams, confirming that the documents are privileged. *See* Order of Oct. 27, 2018, ECF No. 225, at 2–8. Nevertheless, the briefing on this issue highlighted the existence of the 2015 closing agreement, and prompted discussions concerning the propriety of the tax charges in light of Mr. Adams's voluntary disclosure and closing agreement. *See* Ex. A; Letter of Dec. 14, 2018 (attached hereto as Exhibit C); Letter of Apr. 1, 2019 (attached hereto as Exhibit D); Letter of May 22, 2019 (attached hereto as Exhibit E); Letter of July 19, 2019 (attached hereto as Exhibit F). Among other things, Mr. Adams learned during these discussions that the government never followed the regulatory procedures to set aside his closing agreement prior to bringing the tax charges against him. *See* I.R.M. 8.13.1.7.2.1; *id.* 8.13.1.7.2.1.1. Nor is there any indication that the MN USAO contemporaneously consulted with the IRS or the Tax Division to determine whether its altered course of conduct was permissible in light of Mr. Adams's closing agreement. Although Mr. Adams repeatedly urged the government to dismiss the tax charges, the MN USAO ultimately refused to do so. *See* Ex. F.

### B.  Policy Considerations & Conclusion

The tax charges in this matter are unwarranted and, in our experience, unprecedented; if allowed to stand, they will have significant consequences for the Voluntary Disclosure Program and closing agreements more generally. *See* Ex. E at 2–6. These are precisely the types of issues for which careful review by the Tax Division is warranted. Before allowing this case to proceed, the Tax Division should assess whether the MN USAO's conduct contravenes numerous legal authorities and departmental policies, including but not limited to the following issues:

1. Whether the tax charges violate Mr. Adams's closing agreement and the statute under which it was executed—both of which contemplate final resolution of all issues concerning Mr. Adams's civil and criminal tax liability for tax years 2008, 2009, and 2010. Relatedly, whether the government failed to comply with established procedures for attempting to formally set aside Mr. Adams's binding closing agreement. (For additional details, *see* Ex. A at 2–5).

2. Whether the tax charges contravene the policies on which the Voluntary Disclosure Program rests, undermine the finality it was designed to achieve, and eliminate any incentive for future taxpayers to disclose potential tax issues in the first instance, *see* Ex. A at 6; and

3. Whether the MN USAO obtained authorization for the tax charges without appropriate review by the Tax Division, including a complete understanding and consideration of the significant legal and policy issues implicated by these charges.

---

[2] The SAR did not discuss or recommend any charges relating to Mr. Adams's 2014 amended returns.

WILLIAMS & CONNOLLY LLP

Page 4

Mr. Adams respectfully submits that any one of these issues should warrant a directive to dismiss the tax charges. Together, these significant issues render the tax charges unprecedented.

We respectfully request the opportunity to meet at your earliest convenience to discuss the MN USAO's charging decision. Absent dismissal of the tax charges, Mr. Adams intends to raise these issues with the Court. Because Mr. Adams's November 2019 trial date is fast approaching, I appreciate your prompt attention to this matter.

Please let me know your earliest availability for a meeting.

Sincerely,

Lance Wade

cc (via email):   John Kokkinen, Assistant U.S. Attorney
Joseph Thompson, Assistant U.S. Attorney