<u>United States v. Edward S. Adams</u>
Case No. 17-64 (DWF/KMM)

Exhibit 2



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
CHICAGO REGIONAL OFFICE
175 WEST JACKSON BOULEVARD, 9TH FLOOR
CHICAGO, ILLINOIS 60604

**DIVISION OF ENFORCEMENT**

JAKE SCHMIDT
SENIOR ATTORNEY
(312) 886-3284

May 16, 2014

**Via UPS**
Edward S. Adams

Minneapolis, MN 55409

Re:   In the Matter of Scio Diamond Technology Corporation (C-08091)

To Whom It May Concern:

The staff of the Securities and Exchange Commission is conducting an investigation in the matter identified above. The enclosed subpoena has been issued to you as part of this investigation. The subpoena requires you to give us documents.

Please read the subpoena, this letter and the separate enclosed preservation letter carefully. This letter answers some questions you may have about the subpoena. The preservation letter concerns the preservation of certain data and documents. You should also read the enclosed SEC Form 1662. You must comply with the subpoena. You may be subject to a fine and/or imprisonment if you do not.

**Producing Documents**

*What materials do I have to produce?*

The subpoena requires you to give us the documents described in the attachment to the subpoena. You must provide these documents by **June 16, 2014**. The attachment to the subpoena defines some terms (such as "document") before listing what you must provide.

Please note that if copies of a document differ in any way, they are considered separate documents and you must send each one. For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

If you prefer, you may send us photocopies of the originals. The Commission cannot reimburse you for the copying costs. The copies must be identical to the originals, including even faint marks or print. If you choose to send copies, you <u>must</u> keep the originals in a safe place. The staff will accept the copies for now, but may require you to produce the originals later.


COMMISSION EXHIBIT 27

Edward S. Adams
May 16, 2014
Page 2

If you <u>do</u> send us photocopies, please put an identifying notation on each page of each document to indicate that it was produced by you, and number the pages of all the documents submitted. (For example, if Jane Doe sends documents to the staff, she may number the pages JD-1, JD-2, JD-3, etc., in a blank corner of the documents.) Please make sure the notation and number do not conceal any writing or marking on the document. If you send us originals, please <u>do not</u> add any identifying notations.

Copies of documents and information provided in electronic formats must comply with the technical requirements set out in the attached copy of the SEC's Data Delivery Standards. You should contact me prior to production in an electronic format other than those identified in the Data Delivery Standards.

*Do I need to send anything else?*

You should enclose a list briefly describing each item you send. The list should state which paragraph(s) in the subpoena attachment each item responds to.

Please include a cover letter stating whether you believe you have met your obligations under the subpoena by searching carefully and thoroughly for everything called for by the subpoena, and sending it all to us.

*What if I do not send everything described in the attachment to the subpoena?*

The subpoena requires you to send <u>all</u> the materials described in it. If, for any reason -- including a claim of attorney-client privilege -- you do not produce something called for by the subpoena, you should submit a list of what you are not producing. The list should describe each item separately, noting:

- its author(s);
- its date;
- its subject matter;
- the name of the person who has the item now, or the last person known to have it;
- the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents; and
- the reason you did not produce the item.

If you withhold anything on the basis of a claim of attorney-client privilege or attorney work product protection, you should also identify the attorney and client involved.

Edward S. Adams
May 16, 2014
Page 3

*Where should I send the materials?*

Please send the materials to:

>   ENF-CPU
>   U.S. Securities and Exchange Commission
>   100 F St., N.E., Mailstop 5973
>   Washington, DC 20549-5973

Please also send a duplicate set of the materials to:

>   Jake Schmidt
>   U.S. Securities and Exchange Commission
>   175 West Jackson Blvd., 9th Floor
>   Chicago, Illinois 60604

For smaller electronic productions under 10MB in size, the materials may be emailed to the following email address: ENF-CPU@sec.gov. Please also send a duplicate copy to schmidtj@sec.gov.

**Other Important Information**

*May I have a lawyer help me respond to the subpoena?*

Yes. You have the right to consult with and be represented by your own lawyer in this matter. We cannot give you legal advice.

*What will the Commission do with the materials I send?*

The enclosed SEC Form 1662 includes a List of Routine Uses of information provided to the Commission. This form has other important information for you. Please read it carefully.

*Has the Commission determined that anyone has done anything wrong?*

This investigation is a non-public, fact-finding inquiry. We are trying to determine whether there have been any violations of the federal securities laws. The investigation and the subpoena do not mean that we have concluded that you or anyone else has broken the law. Also, the investigation does not mean that we have a negative opinion of any person, entity or security.

*Important Policy Concerning Settlements*

Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

Edward S. Adams
May 16, 2014
Page 4

*I have read this letter, the subpoena, and the SEC Form1662, but I still have questions. What should I do?*

If you have any other questions, you may call me at (312) 886-2384 or e-mail me at schmidtj@sec.gov. If you are represented by a lawyer, you should have your lawyer contact me.

Sincerely,

Jake Schmidt
Senior Attorney
Division of Enforcement

Enclosures:   Document Preservation Letter
Subpoena
SEC Form 1662
Data Delivery Standards



# SUBPOENA

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

**In the Matter of Scio Diamond Technology Corporation (C-08091)**

To:   Edward S. Adams

    Minneapolis, MN 55409

☒ **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission, at the place, date and time specified below:

ENF-CPU, U.S. Securities and Exchange Commission, 100 F St., N.E., Mailstop 5973, Washington, DC 20549-5973, no later than June 16, 2014 at 9:30 a.m.

☐ **YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place, date and time specified below:

**FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.**
Failure to comply may subject you to a fine and/or imprisonment.

By: *[signature]*

Jake Schmidt, Senior Attorney
Division of Enforcement
U.S. Securities and Exchange Commission
175 West Jackson Boulevard, Suite 900
Chicago, IL 60604
(312) 886-3284

May 16, 2014

I am an officer of the U.S. Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation under: Section 20(a) of the Securities Act of 1933 and Section 21 of the Securities Exchange Act of 1934.

NOTICE TO WITNESS:   If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

**SUBPOENA ATTACHMENT FOR EDWARD S. ADAMS**
**May 16, 2014**
In the Matter of Scio Diamond Technology Corporation (C-08091)

## A. Definitions

As used herein, the words and phrases listed below shall have the following meanings:

1. Scio Diamond Technology Corporation ("Public Scio") means the entity doing business under the name "Scio Diamond Technology Corporation" including parents, subsidiaries, affiliates, predecessors, successors, acquisitions, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing, including, but not limited to, Apollo Diamond, Inc., Apollo Diamond Gemstone Corp., and Scio Diamond Technology Corp. (also known as "Private Scio" – see Definition #2).

2. "Private Scio" means Scio Diamond Technology Corp. which is or was a private company acquired by Public Scio.

3. Adams Monahan, LLP means the Minneapolis-based law firm owned and/or operated (presently or in the past) by Edward Adams and/or Michael Monahan, including parents, subsidiaries, affiliates, predecessors, successors, acquisitions, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

4. Focus Capital Group, Inc. ("Focus Capital") means the Minnesota-based broker dealer with CRD# 143240, including parents, subsidiaries, affiliates, predecessors, successors, acquisitions, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

5. The Oak Ridge Financial Services Group, Inc. ("Oak Ridge") means the Minnesota-based broker dealer with CRD# 143240, including parents, subsidiaries, affiliates, predecessors, successors, acquisitions, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing, including, but not limited to, Equity Security Investments, Inc.

6. "Person" means a natural person, firm, association, organization, partnership, business, trust, corporation, bank or any other private or public entity.

1

7. A "Representative" of a Person means any present or former family members, officers, executives, partners, joint-venturers, directors, trustees, employees, consultants, accountants, attorneys, agents, or any other representative acting or purporting to act on behalf of the Person.

8. "Document" shall include, but is not limited to, any written, printed, or typed matter including, but not limited to all drafts and copies bearing notations or marks not found in the original, letters and correspondence, interoffice communications, slips, tickets, records, worksheets, financial records, accounting documents, bookkeeping documents, memoranda, reports, manuals, telephone logs, telegrams, facsimiles, messages of any type, e-mails, instant messages, texts, telephone messages, voice mails, tape recordings, notices, instructions, minutes, summaries, notes of meetings, file folder markings, and any other organizational indicia, purchase orders, information recorded by photographic process, including microfilm and microfiche, computer printouts, spreadsheets, and other electronically stored information, including but not limited to writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations that are stored in any medium from which information can be retrieved, obtained, manipulated, or translated.

9. "Communication" means any correspondence, contact, discussion, e-mail, text, instant message, or any other kind of oral or written exchange or transmission of information (in the form of facts, ideas, inquiries, or otherwise) and any response thereto between two or more Persons or entities, including, without limitation, all telephone conversations, face-to-face meetings or conversations, internal or external discussions, or exchanges of a Document or Documents.

10. "Concerning" means directly or indirectly, in whole or in part, describing, constituting, evidencing, recording, evaluating, substantiating, concerning, referring to, alluding to, in connection with, commenting on, relating to, regarding, discussing, showing, describing, analyzing or reflecting.

11. An "Agreement" means any actual or contemplated (i) written or oral Agreement; (ii) term or provision of such Agreement; or (iii) amendment of any nature or termination of such Agreement. A request for any Agreement among or between specified parties includes a request for all Documents Concerning (i) any actual or contemplated Agreement among or between such parties, whether or not such Agreement included any other Person; (ii) the drafting or negotiation of any such Agreement; (iii) any actual or contemplated demand, request or application for any such Agreement, and any response thereto; and (iv) any actual or contemplated objection or refusal to enter into any such Agreement, and any response thereto.

2

12. The terms "Reviewed" means examined, assessed, considered, analyzed or evaluated.

13. The term "you" and "your" means the Person or entity to whom this request was issued.

14. To the extent necessary to bring within the scope of this request any information or Documents that might otherwise be construed to be outside its scope:

   a. the word "or" means "and/or";
   b. the word "and" means "and/or";
   c. the functional words "each," "every" "any" and "all" shall each be deemed to include each of the other functional words;
   d. the masculine gender includes the female gender and the female gender includes the masculine gender; and
   e. the singular includes the plural and the plural includes the singular.

## B. Instructions

1. Unless otherwise specified, this request calls for production of the original Documents and all copies and drafts of same. Documents responsive to this request may be in electronic or paper form. Electronic Documents such as email should be produced in accordance with the attached document entitled SEC Data Delivery Standards. All electronic Documents responsive to this request, including all metadata, should also be produced in their native software format.

2. For Documents in paper format, you may send the originals, or, if you prefer, you may send copies of the originals. The Commission cannot reimburse you for the copying costs. If you are sending copies, the staff requests that you scan (rather than photocopy) hard copy Documents and produce them in an electronic format consistent with the SEC Data Delivery Standards. Alternatively, you may send us photocopies of the Documents in paper format. If you choose to send copies, you <u>must</u> secure and retain the originals and store them in a safe place. The staff may later request or require that you produce the originals.

3. Whether you scan or photocopy Documents, the copies must be identical to the originals, including even faint marks or print. Also, please note that if copies of a Document differ in any way, they are considered separate Documents and you must send each one. For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

3

4. In producing a photocopy of an original Document that contains post-it(s), notation flag(s), or other removable markings or attachments which may conceal all or a portion of the markings contained in the original Document, photocopies of the original Document both with and without the relevant post-it(s), notation flag(s), or removable markings or attachments should be produced.

5. Documents should be produced as they are kept in the ordinary course of business or be organized and labeled to correspond with the categories in this request. In that regard, Documents should be produced in a unitized manner, *i.e.*, delineated with staples or paper clips to identify the Document boundaries.

6. Documents should be labeled with sequential numbering (bates-stamped).

7. The scope of any given request should not be limited or narrowed based on the fact that it calls for Documents that are responsive to another request.

8. **If the Document production contains Bank Secrecy Act materials, please segregate and label those materials within the production.**

9. This request covers all Documents in or subject to your possession, custody or control, including all Documents that are not in your immediate possession but that you have the effective ability to obtain, that are responsive, in whole or in part, to any of the individual requests set forth below. If, for any reason – including a claim of attorney-client privilege – you do not produce something called for by the request, you should submit a list of what you are not producing. The list should describe each item separately, noting:

   a. its author(s);
   b. its date;
   c. its subject matter;
   d. the name of the Person who has the item now, or the last Person known to have it;
   e. the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents;
   f. the basis upon which you are not producing the responsive Document;
   g. the specific request in the request to which the Document relates;
   h. the attorney(s) and the client(s) involved; and
   i. in the case of the work product doctrine, the litigation for which the Document was prepared in anticipation.

4

10. If Documents responsive to this request no longer exist because they have been lost, discarded, or otherwise destroyed, you should identify such Documents and give the date on which they were lost, discarded or destroyed.

## C. Information and Documents to be Produced

### Financial Account Information

1. Documents sufficient to identify all checking, savings, credit card, money market, certificate of deposit, trust, brokerage, escrow and loan accounts and any other financial account in your name. A list of accounts that provides the following information for each account will satisfy this request: (i) name associated with the account; (ii) the account number; and (iii) the name and address of the financial institution or other entity where the account is located. This request includes both accounts solely in your name and jointly held accounts.

2. Documents sufficient to identify all checking, savings, credit card, money market, certificate of deposit, trust, brokerage, escrow and loan accounts and any other financial account in which you have any ownership interest, signatory authority or beneficial interest or over which you exercise or have exercised direct or indirect control. A list of accounts that provides the following information for each account will satisfy this request: (i) name associated with the account; (ii) the account number; and (iii) the name and address of the financial institution or other entity where the account is located.

### Board Minutes

3. For the time period January 1, 2010 to the present: Please provide the minutes for all regular and special meetings of Public Scio's Board of Directors, any committee thereof and Public Scio's Audit Committee (if any).

### Bylaws

4. For the time period January 1, 2011 to the present, please provide all documents and communications (including, but not limited to, e-mails) relating or referring to any changes, additions or amendments to the bylaws of Public Scio.

5

Financial Statements

5. For the period of time January 1, 2002 through December 31, 2011, please provide annual and quarterly financial statements for Public Scio (including such annual and quarterly financial statements for Apollo Diamond, Inc., Apollo Diamond Gemstone Corp., and Private Scio).

Offering Documents

6. In connection with any funds raised by Apollo Diamond, Inc., Apollo Diamond Gemstone Corp., and/or Private Scio during the January 1, 2002 to July 31, 2011 time period, please produce documents provided to prospective or actual investors describing the offering(s) (*i.e.*, the offering documents).

7. During the time period of August 1, 2011 to the present, Public Scio filed Forms D in connection with three offerings:

    (i) Form D filed on or about June 11, 2012 regarding $170,000 offering;

    (ii) Form D filed on or about May 7, 2012 regarding $5,500,000 offering (Form D/A filed on or about June 4, 2012 regarding what appears to be the same offering); and

    (iii) Form D filed on or about January 18, 2012 regarding $5,000,000 offering (Form D/A filed on or about February 2, 2012 regarding what appears to be the same offering).

    Please produce documents provided to prospective or actual investors describing these offerings (*i.e.*, the offering documents).

Private Scio-Apollo Transaction(s)

8. It is our understanding that, in or about 2011, Private Scio acquired all or substantially all of the assets of Apollo Diamond, Inc. and Apollo Diamond Gemstone Corp. (hereinafter referred to as the "Private Scio-Apollo Transaction(s)"). Please provide all documents provided to Apollo Diamond, Inc. shareholders regarding the Private Scio-Apollo Transaction(s), including, but not limited to, any applicable proxy solicitation.

9. Please provide all documents provided to Apollo Diamond Gemstone Corp. shareholders regarding the Private Scio-Apollo Transaction(s), including, but not limited to, any applicable proxy solicitation.

6

10. If oral disclosures about the Private Scio-Apollo Transaction(s) were made to Apollo Diamond, Inc. shareholders and/or Apollo Diamond Gemstone Corp. shareholders, please provide details regarding those disclosures, including the substance of the disclosure, made by whom, to whom, where and when.

11. Please provide the transactional documents related to the Private Scio-Apollo Transaction(s), including, but not limited, to the purchase agreement(s).

12. Please provide any communications (including, but not limited to e-mails) relating or referring to the Private Scio-Apollo Transaction(s).

Private Scio-Public Scio Transaction(s)

13. In the "Corporate History" section of its Form 10-K for the fiscal year ended March 31, 2012, Public Scio (formerly known as Krossbow Corp.) states that, in August 2011: (i) it purchased the name "Scio Diamond Technology Corporation" from Private Scio; and (ii) "acquired other rights" from Private Scio. Hereinafter these transactions are referred to as the "Private Scio-Public Scio Transaction(s)." Please provide all documents provided to Private Scio shareholders regarding the Private Scio-Public Scio Transaction(s), including, but not limited to, any applicable proxy solicitation.

14. If oral disclosures about the Private Scio-Public Scio Transaction(s) were made to Private Scio shareholders, please provide details regarding those disclosures, including the substance of the disclosure, made by whom, to whom, where and when.

15. Please provide the transactional documents related to the Private Scio-Public Scio Transaction(s), including, but not limited to, the purchase agreement.

16. Please provide any communications (including, but not limited to e-mails) relating or referring to the Private Scio-Public Scio Transaction(s).

Public Scio-Apollo Diamond Transaction(s)

17. In the "Corporate History" section of its Form 10-K for the fiscal year ended March 31, 2012, Public Scio states that, in August 2011, Public Scio "acquired certain assets of Apollo Diamond, Inc." (hereinafter referred to as the "Public Scio-Apollo Diamond Transaction(s)"). Please provide all documents provided to Public Scio shareholders regarding the Public Scio-Apollo Diamond Transaction(s), including, but not limited to, any applicable proxy solicitation.

7

18. If Public Scio shareholders were provided oral disclosures about the Public Scio-Apollo Diamond Transaction(s), please provide details regarding those disclosures, including the substance of the disclosure, made by whom, to whom, where and when.

19. Please provide the transactional documents related to the Public Scio-Apollo Diamond Transaction(s), including, but not limited to, the purchase agreement.

20. Please provide any communications (including, but not limited to e-mails) relating or referring to the Public Scio-Apollo Diamond Transaction(s).

Public Scio-Apollo Gemstone Transaction(s)

21. In the "Corporate History" section of its Form 10-K for the fiscal year ended March 31, 2012, Public Scio states that, in June 2012, Public Scio "acquired substantially all of the assets of Apollo Diamond Gemstone Corporation" (hereinafter referred to as the "Public Scio-Apollo Gemstone Transaction(s)"). Please provide all documents provided to Public Scio shareholders regarding the Public Scio-Apollo Gemstone Transaction(s), including, but not limited to, any applicable proxy solicitation.

22. If Public Scio shareholders were provided oral disclosures about the Public Scio-Apollo Gemstone Transaction(s), please provide details regarding those disclosures, including the substance of the disclosure, made by whom, to whom, where and when.

23. Please provide the transactional documents related to the Public Scio-Apollo Gemstone Transaction(s), including, but not limited to, the purchase agreement.

24. Please provide any communications (including, but not limited to e-mails) relating or referring to the Public Scio-Apollo Gemstone Transaction(s).

Agreements Between Public Scio (Or Any Of Its Predecessors) and Adams and/or Related Entities

25. For the time period of January 1, 2002 to the present, please produce all Agreements (see Definition #11) between Public Scio, Apollo Diamond, Inc., Apollo Diamond Gemstone Corp., and/or Private Scio and:

   (a) Edward Adams;

   (b) Adams Monahan, LLP (see Definition #3);

   (c) Focus Capital (see Definition #4);

   (d) Oak Ridge (see Definition #5); and/or

(e)   Any other entity owned, controlled or operated by Edward Adams.