**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 17-cr-64-DWF-KMM |
| Plaintiff, ) | |
| ) | |
| v. ) | **DEFENDANT'S POSITION** |
| ) | **REGARDING SENTENCING** |
| EDWARD S. ADAMS, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**INTRODUCTION**

Edward S. Adams comes before this Court for sentencing after pleading guilty to a misdemeanor count of willful failure to provide information or pay a tax, in violation of 26 U.S.C. § 7203. The parties agree that a non-custodial, probationary disposition is appropriate in this case. Mr. Adams is 56 years old and this is his first offense. He is a devoted father, husband, and son, as well as a hardworking and generous man. In addition to his devotion to his family and friends, Mr. Adams has demonstrated for many years a commitment to helping those in need by volunteering his time and legal skills with various charitable organizations. The misdemeanor conduct at issue was an anomaly in the life of an otherwise good and hard-working member of the Twin Cities community. For these reasons, and those discussed below, Mr. Adams respectfully requests that the Court impose a sentence of probation, with no fine.

1

## I. MR. ADAMS'S PERSONAL HISTORY AND CHARACTER

### A. Mr. Adams's Upbringing

Edward S. Adams was born in Berwyn, Illinois and raised in Westchester, Illinois. His father, Edward Charles Adams (Edward Sr.), enlisted in the United States Army following Pearl Harbor and fought in World War II. Edward Sr. eventually became the manager of a manufacturing company, where Mr. Adams spent his summers performing manual labor. Mr. Adams's mother, June, worked as an administrative assistant for the Department of Veterans Affairs before devoting her time to raising her son. Although neither June nor Edward Sr. advanced further than high school, both instilled in Mr. Adams the importance of education, hard work, and self-reliance.

On Christmas Day 2004, Edward Sr. passed away from liver cancer in the home Mr. Adams was raised in, with Mr. Adams and June by his side. At that time, June and Edward Sr. had been married for 57 years. Following her husband's death, June relocated to Minnesota to be closer to Mr. Adams and his family. When June began to suffer from dementia in 2014, Mr. Adams was her primary caregiver. Mr. Adams ultimately helped June settle in to a professional care facility, and continued to provide emotional and financial support. June passed away peacefully in April 2015.

### B. Mr. Adams's Professional Life

Mr. Adams is a passionate educator. He graduated magna cum laude from Knox College in June 1985, with Bachelor of Arts Degrees in Economics and Business Administration as well as Philosophy. Three years later, he graduated cum laude from the University of Chicago Law School. Following his graduation from law school, Mr. Adams

2

clerked for the Hon. J. Harvie Wilkinson, III of the United States Court of Appeals for the Fourth Circuit. After two years in private practice, Mr. Adams joined Albany Law School as a Visiting Professor of Law, and thereafter fell in love with teaching.

In 1992, Mr. Adams moved to Minnesota to join the University of Minnesota Law School faculty, where he became a tenured professor and currently serves as the Howard E. Buhse Professor of Law and Finance. Mr. Adams has taught bankruptcy, corporations, secured transactions, and corporate finance to thousands of students over the last 28 years, and has twice been honored by his students with the Stanley V. Kinyon Teacher of the Year Award. During his tenure at the University of Minnesota, Mr. Adams has served on nearly a dozen academic committees and also served as the Associate Dean for Academic Affairs from 1997-2000. He has authored numerous articles and books, and has conducted hundreds of teaching presentations across the United States and Europe.

### C. Mr. Adams's Family Life

Family is everything to Mr. Adams. He is a devoted and loving partner to his wife, Denise, who has supported him both in times of success and times of hardship. The Adams's world revolves around their only son, "E.A."[1] E.A. is a junior in high school who excels academically and plays on the varsity golf team. Mr. Adams is an integral figure in his son's life. Nearly every day, Mr. Adams picks E.A. up from school and takes him to his sports practices or other after-school activities. Mr. Adams serves as E.A.'s informal golf coach and caddy, and hopes to travel with E.A. next year when E.A. competes

---

[1] Because he is a minor, this memorandum will refer to the Adams's son by his initials.

internationally.  Mr. Adams has coached multiple seasons of little league baseball and co-ed hockey for E.A.—leading both teams to championships—and has also volunteered to coach E.A.'s debate team.  He has helped foster his son's budding interests in science and entrepreneurship, and has even co-authored several patents with E.A.  Outside the classroom, Mr. Adams and E.A. share a love of the outdoors and enjoying fishing and skiing together.

Due in part to the untimely passing of his parents, Mr. Adams is extremely close with his in-laws, the Linares family.  Mr. Adams has long supported the Linares family's personal and professional ambitions, dedicating his legal and business expertise to their professional ventures.  The Linares family deeply appreciates "the help that Ed provided them for all those years."  Ex. A, Letter of Denise Linares Adams.  Although the Linares family business was at the heart of the original charges that are being dismissed in this case, the Linares family nevertheless "stood behind Ed and supported him and [the Adams] family during this difficult time—support that remains solid to this day."  *Id.*

### D. Mr. Adams's Community Contributions

Mr. Adams devotes a significant amount of his time and legal skills to charitable endeavors.  He has founded multiple legal services programs throughout his professional career.  While in law school, Mr. Adams founded and dedicated hundreds of hours to the People's Law Project, which aimed to educate residents of the South Side of Chicago about their legal rights.  He later launched the same program in New York once he began teaching at Albany Law School.  Early in his professional career, Mr. Adams also founded a program to provide legal services to family members of those serving in the first Persian Gulf War,

and in this capacity assisted hundreds of military families in the Chicago area. In addition, Mr. Adams created a summer program run through the University of Minnesota Law School, which introduces minority and disadvantaged high school students to potential legal careers. Mr. Adams has also instilled in his son the importance of generosity, assisting E.A. in starting a Native American charity, for which E.A. has raised $25,000 in less than three months.

Mr. Adams has always given generously of his time. He has volunteered at the University of Minnesota Law School bankruptcy clinic, and provides pro bono representations several times per year for aspiring entrepreneurs. Mr. Adams is an active member of Mt. Olivet Lutheran church in Minneapolis, where he has led fundraising drives and volunteered his time busing tables and preparing meals for various events run by the church.

**II.   A SENTENCE OF PROBATION IS REASONABLE AND SUFFICIENT**

The "overarching provision" of 18 U.S.C. § 3553(a) requires district courts to "'impose a sentence sufficient, but not greater than necessary,' to accomplish the goals of sentencing." *Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (quoting 18 U.S.C. § 3553(a)). A district court must consider each of the § 3553(a) factors to "tailor the sentence" to fit the individual circumstances of each case. *United States v. Booker*, 543 U.S. 220, 245 (2005).

Mr. Adams respectfully asks that the Court follow the joint recommendation of the parties and impose a non-custodial sentence based on the factors set forth in § 3553(a).

### A. Mr. Adams's Personal History And Characteristics Support A Sentence Of Probation

A probationary sentence is appropriate given Mr. Adams's personal history and characteristics. "[I]f ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance." *United States v. Adelson*, 441 F. Supp. 2d 506, 513–14 (S.D.N.Y. 2006). Mr. Adams's wife and father-in-law have submitted letters that attest to Mr. Adams's devotion to his family, friends, and community. A few examples of Mr. Adams's good works and character cited in the letters include:

- "As a husband and father, Ed has always been involved in all aspects of our family life. He has pursued all projects with his typical zeal and diligence, whether it be as a church member, a sports coach and manager, a debate judge, planner of boys' weekend ski trips, or just a family guy manning the backyard grill. His all-around enthusiasm for just about everything has included embracing not just our immediate family, but also my extended family, our friends, and neighbors. And his commitment to others extends beyond helping with fun and festivities; Ed regularly provides assistance when friends or family members experience unexpected legal problems." Ex. A, Letter of Denise Adams.

- "Of particular note, is Ed's love and care in the upbringing and sharing of father-son experiences with [E.A.]. . . . Ed is a person who has the capacity to leave a positive mark on the legal community in his teaching and consulting." Ex. B, Letter of Robert Linares.

As these letters reflect, Edward Adams is a kind, hard-working, and generous member of his family and community. He enjoys the steadfast love and support of his wife, son, and in-laws. Mr. Adams has devoted hundreds of hours to his community as a sports coach, church volunteer, and pro bono attorney. Throughout his nearly 30 years as

an educator, he has impacted the lives of thousands of students and aspiring lawyers. The immense good in Mr. Adams's life should weigh heavily in this case, and justifies a probationary sentence.

### B. A Probationary Sentence Is Appropriate Given The Nature And Circumstances Of The Offense

The parties agree that the nature and circumstances of the offense warrant a non-custodial sentence. *See* Plea Agreement ¶ 11. Mr. Adams has accepted responsibility for omitting certain capital gains on his federal income tax returns for the tax years 2008, 2009, and 2010. PSR ¶¶ 9–10. In a voluntary disclosure submitted to the IRS in April 2015, Mr. Adams admitted that he underreported his federal income tax liabilities for these three tax years as a result of these omissions. PSR ¶ 10. Mr. Adams ultimately paid the amount due in full ($117,829) and filed amended returns before the government brought the instant charges. PSR ¶¶ 10–11. The nature and circumstances of this misdemeanor offense thus strongly counsel in favor of a probationary sentence.

### C. Similar Offenders Have Received Sentences Of Probation

A sentence of probation is consistent with the need to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Last year in this District, over 40% of offenders convicted of *any* "tax" crime received a sentence of either "Probation" or "Probation and Alternatives."[2] And of all U.S. citizens in this Circuit last year who—like Mr. Adams—

---

[2] *See* U.S. Sentencing Comm'n, *Statistical Information Packet, Fiscal Year 2018, District of Minnesota*, at Table 5, *available at* <www.tinyurl.com/USSCMinnesota>.

were convicted of any "tax" crime and were eligible for a non-prison sentence, over 65% ultimately received a non-prison sentence.[3]  Significantly, these figures encompass *all* federal tax offenses—the vast majority of which are felonies.  Because Mr. Adams's offense is a misdemeanor, his case falls even more squarely among those for which probation is appropriate.

Indeed, when Mr. Adams's situation is compared to other misdemeanor tax cases in the District, a sentence of probation is plainly reasonable and appropriate.  *See United States v. Schwarz*, 07-MJ-383 (sentence of probation imposed after defendant pled guilty to a single misdemeanor count of failure to file employer's quarterly tax return); *United States v. Brown*, 00-CR-175 (D. Minn.) (sentence of probation and $1,000 fine imposed after defendant pled guilty to two misdemeanor counts of failure to file a tax return and fraudulent tax return); *United States v. Best*, 3:92-CR-102 (D. Minn.) (sentence of probation and $300 fine imposed after defendant pled guilty to misdemeanor violations of 26 U.S.C. § 7203).  As these other cases show, probation is an adequate punishment.  The Supreme Court itself has recognized that, although "custodial sentences are qualitatively more severe than probationary sentences of equivalent terms," "[o]ffenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty." *Gall v. United States*, 552 U.S. 38, 48 (2007).

---

[3] *See* U.S. Sentencing Comm'n, *Statistical Information Packet, Fiscal Year 2018, Eighth Circuit*, at Table 6, *available at* <www.tinyurl.com/USSCCA8>.

### D. A Probationary Sentence Will Accomplish The Goals Of Sentencing

A non-custodial sentence would accomplish the goals of sentencing in this case, including deterrence, reflecting the seriousness of the offense, promoting respect for the law, and providing just punishment. 18 U.S.C. § 3553(a)(2).

A term of probation is all that is necessary to accomplish deterrence. Mr. Adams has suffered enormously as a consequence of his actions. As the letters from his wife and father-in-law attest, the charges against Mr. Adams have been devastating for him and his entire family. In addition to the emotional and financial harm the Adams family has experienced, Mr. Adams has experienced reputational harm. The widespread negative publicity surrounding this case, especially as it relates to the original charges that are being dismissed, has tainted his reputation and credibility, and seriously damaged his career prospects. There is no reason to believe that Mr. Adams will commit any further crimes. Mr. Adams is a remorseful first-time offender who presents minimal risk of recidivism.[4] In light of the serious consequences Mr. Adams has already experienced, and will continue to experience, as a result of his conviction, a non-custodial sentence is sufficient.

### E. No Fine Should Be Imposed

Mr. Adams respectfully requests that the Court impose no fine because the IRS may independently collect any applicable penalties. The parties agree that years ago Mr. Adams

---

[4] *See Recidivism Among Federal Offenders: A Comprehensive Overview*, U.S. Sentencing Commission at 5, March 2016, *available at* <www.tinyurl.com/RecidivismUSSC> (explaining that first-time offenders are statistically less likely to reoffend); *United States v. Hernandez*, No. 03-cr-1257, 2005 WL 1242344, at *5 (S.D.N.Y. May 24, 2005) (noting that offenders over age 40 "exhibit markedly lower rates of recidivism in comparison to younger defendants").

paid the IRS $117,829 in back taxes owed for the three years in question. PSR ¶¶ 10–11. To the extent the IRS believes further taxes or penalties are owed, it "will pursue collection of any outstanding taxes, interest, and penalties under its own authority." PSR ¶ 12. Given the IRS's independent ability to collect any penalties, a fine is not appropriate in this case. Should this Court decide to impose a fine, Mr. Adams requests that it be limited to a modest sum.[5]

## CONCLUSION

For the foregoing reasons and those expressed in the letters from family members who know him best, and based on the parties' agreement, Mr. Adams respectfully asks the Court to impose a sentence of probation with no fine.

---

[5] The PSR indicates that at least one person may request restitution based on the original charges in the superseding indictment. *See* PSR ¶ 13. But as the PSR recognizes and the government agrees, no restitution is appropriate in this case because the government has agreed to dismiss the original charges, which are not relevant conduct. *See* PSR ¶ 13.

Dated:  January 9, 2020 	Respectfully submitted,


	  /s/ *Lance Wade*  	

	Joseph G. Petrosinelli (DC Bar #434280)
	Lance Wade (DC Bar #484845)
	Gloria Maier (DC Bar # 1012208)
	Jena Neuscheler (DC Bar # 187814)
	WILLIAMS & CONNOLLY LLP
	725 Twelfth Street, N.W.
	Washington, DC  20005
	Telephone:  (202) 434-5000
	jpetrosinelli@wc.com
	lwade@wc.com
	gmaier@wc.com
	jneuscheler@wc.com

	James L. Volling (#113128)
	Deborah A. Ellingboe (#26216X)
	FAEGRE BAKER DANIELS LLP
	2200 Wells Fargo Center
	90 South Seventh Street
	Minneapolis, MN  55420
	Telephone:  (612) 766-7000
	Facsimile:  (612) 766-1600
	james.volling@faegrebd.com
	debbie.ellingboe@faegrebd.com

	*Attorneys for Defendant Edward S. Adams*