```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA

------------------------------------------------------------
                                  )
   United States of America,      )  File No. 17-CR-64
                                  )         (DWF/KMM)
           Plaintiff,             )
                                  )
   vs.                            )  St. Paul, Minnesota
                                  )  January 23, 2020
   Edward S. Adams,               )  11:03 a.m.
                                  )
           Defendant.             )
                                  )
------------------------------------------------------------

           BEFORE THE HONORABLE DONOVAN W. FRANK
           UNITED STATES DISTRICT COURT JUDGE
                   (SENTENCING HEARING)
```

APPEARANCES

```
   For the Plaintiff:       United States Attorney's Office
                            Joseph Thompson, AUSA
                            300 South 4th Street
                            Suite 600
                            Minneapolis, Minnesota 55415

   For the Defendant:       Williams & Connolly, LLP
                            Joseph Petrosinelli, ESQ.
                            Lance Wade, ESQ.
                            James Volling, ESQ.
                            725 12th Street NW
                            Washington, DC 20005

   Court Reporter:          Lynne M. Krenz, RMR, CRR, CRC
                            Suite 146
                            316 North Robert Street
                            St. Paul, Minnesota 55101
```

      Proceedings recorded by mechanical stenography;
   transcript produced by computer.

                    LYNNE M. KRENZ, RMR, CRR, CRC
                           (651)848-1226

1           **P R O C E E D I N G S**

2                      **IN OPEN COURT**

3           (Defendant present. )

4           THE COURT:  The Court would call United States

5   versus Edward Scott Adams.

6           Note for the record that the matter is before the

7   Court today for sentencing.

8           Before we -- before we begin, why don't we have

9   introductions of Counsel.  We can start on my right,

10  Counsel's left and then move over to Defense Counsel.

11          MR. THOMPSON:  Good morning, Your Honor.

12          Joe Thompson on behalf of the United States.

13          MR. PETROSINELLI:  Your Honor, good morning.

14  Joseph Petrosinelli on behalf of Mr. Adams.

15          And, of course, Mr. Adams is here with me, and his

16  wife, Denise Adams is here as well.

17          MS. ADAMS:  Good morning, Your Honor.

18          THE COURT:  The Court would suggest that we follow

19  in the -- that we proceed as follows, just not unique to

20  this case, but I'll discuss it with -- so Counsel's aware of

21  it.

22          I'll first verify with Counsel that there's no

23  dispute with respect to the applicable guidelines in the

24  case, based upon the plea to the -- to the misdemeanor

25  offense that was done before this Court.

1       And then once I announce that, which I don't
2  believe there's a dispute on, then I'll hear from Defense
3  Counsel with respect to what you believe is a fair sentence,
4  consistent with the case before the Court, including the
5  Plea Agreement.
6       Then at that time, Mr. Adams, as you're probably
7  aware, you'll have a right to speak or not to speak.  Some
8  Defendants talk at these sentencings, some don't.
9       The only rule that doesn't vary from one case to
10 the next is a Judge can never use it in a negative way if a
11 Defendant chooses not to add anything to what their lawyer
12 or lawyers have said in the case.
13      Then I would hear from the Prosecution, subject to
14 any response or rebuttal from Defense Counsel before I would
15 then announce the sentence in the case.
16      If we proceed in that order of events, is that
17 acceptable to the Government?
18      MR. THOMPSON:  Yes, Your Honor.  Thank you.
19      THE COURT:  To the Defense?
20      MR. PETROSINELLI:  Yes, Your Honor.
21      THE COURT:  A couple of things that I'll first
22 indicate to the parties.
23      I also -- so I acknowledge sentencing memorandums
24 from both the -- from both Defense Counsel and the
25 Government.

1            Secondly, I acknowledge receipt of two letters
2    both from the father-in-law and the spouse of the Defendant.
3            And then thirdly the -- as the parties are aware,
4    the -- as part of the Plea Agreement, the 17 felony counts
5    are being dismissed by the Government in exchange for the
6    plea that was made to the misdemeanor offense in here.
7            And so I wanted to acknowledge, as was referenced
8    in the Presentence Report, that I received 27 letters from
9    alleged victims on the 17 counts that are being dismissed,
10   which for the record so it's clear, that the Court -- it's
11   not proper for the Court then to consider that information,
12   because it relates -- it's unrelated to the misdemeanor that
13   was pled to, and relates to the alleged conduct in the
14   original 17 counts, superseding indictment that's being
15   dismissed.  And so the -- the Court acknowledges it has read
16   all 27 letters that -- well, actually from 32 people,
17   because there were some couples who sent them in, but
18   they're not deemed victims with restitution issues on the
19   case before the Court that remains.
20           So as the Court respectfully stated, I cannot be
21   and will not be considering that, even though it does
22   acknowledge it's -- as I've told Counsel, I've read
23   everything that came in.
24           So unless Counsel has any questions of me about
25   that we can -- we can proceed.

1               Currently, based upon the adjusted offense level
2    of IV and a Criminal History Category, the lowest category
3    of I, pursuant to the misdemeanor plea for rule for failure
4    to provide information or pay tax, a misdemeanor under
5    federal law, that creates a potential sentence as zero to
6    one year, with the guideline -- advisory guidelines being
7    zero months to six months.
8               A supervised release period of no more than a
9    year.  A probationary period of zero to five years.  A fine
10   of $250 to $5,000.  And a special assessment of $25 for the
11   victims fund, that's mandatory in every misdemeanor case.
12              Those are the computations the Court currently
13   has.
14              Any -- does that square with the Government?
15              MR. THOMPSON:  It does, Your Honor.  Thank you.
16              THE COURT:  With Defense?
17              MR. PETROSINELLI:  Yes, Your Honor.
18              THE COURT:  Then with that in mind I'll -- we can
19   proceed with the argument by Defense Counsel.  And please
20   take -- come to the podium.
21              MR. PETROSINELLI:  Thank you, Your Honor.
22              Joseph Petrosinelli, again, for Mr. Adams.
23              Your Honor, I'll be relatively brief here.
24              As you know, a part of the Plea Agreement the
25   parties agree here that the appropriate sentence for this

1  offense, this misdemeanor offense, should be probation.  And
2  we would ask the Court to impose that sentence for the
3  reasons laid out in our memorandum.
4           I know Your Honor -- I know Your Honor's read our
5  memorandum, so I'm not going to repeat those arguments.
6           But on that basis and part of the Plea Agreement,
7  we'd ask the Court to impose a probationary sentence.
8           Now in terms of the term of probation, we'd ask
9  the Court to consider six months.
10          And I ask the Court for that for this reason.  Mr.
11 Adams, as I think Your Honor knows, this case has been
12 pending for about three years.  The original indictment was
13 -- was in March of 2017.  And so Mr. Adams had been subject
14 to pretrial supervision and all the attendant restrictions
15 with which he has fully complied for three years already.
16          And given that as Your Honor sees in the -- given
17 that as Your Honor sees in the Presentence Report, Mr. Adams
18 has a stable family life, he works at the University,
19 there's nothing about his circumstances that would suggest
20 the need for a lengthy probation period.
21          And so I think given the three years that the case
22 has been pending under which he's been under supervision or
23 pretrial services, with which he's complied, and given his
24 circumstances, we'd ask for a six-month probationary
25 sentence.

1           The other thing, Your Honor, is -- I think you saw
2   this in our memorandum, we'd also ask that no fine be
3   imposed as indicated in both the Plea Agreement and in the
4   Presentence Report.  Mr. Adams paid taxes owed on the tax
5   years in question some years ago now, actually.
6           THE COURT:  And actually to the extent it's
7   relevant, that was $117,829 paid November of 2014, which
8   actually proceeded the -- the 17-count indictment.  But the
9   -- and that was for the tax years 2008, 2009, 2010, added
10  up?
11          MR. PETROSINELLI:  That's correct, Your Honor.
12          THE COURT:  All right.
13          MR. PETROSINELLI:  And so given that five years
14  ago now, or five-plus years ago now, Mr. Adams paid the
15  taxes owed, and had an agreement with the IRS with respect
16  to those taxes and any other issues, and I'm not aware of
17  any outstanding issues, we think that there's no -- for this
18  misdemeanor, there's no fine that the Court should impose,
19  or that would be warranted.
20          Your Honor, I think that's it for me.  It's pretty
21  straightforward as laid out in my memorandum.
22          Two things I'll finish with, one, I just want to
23  thank Mr. Thompson.  I think that Your Honor knows that he
24  came into this case quite late and brought a fresh
25  perspective to it.  And I just want to thank him for his

1     professionalism in connection with the matter.
2                And finally thank the probation officer for a
3     detailed and carefully done report as evidenced by the fact
4     that neither side had any objections to it, not a single
5     one.
6                Your Honor, Mr. Adams' misdemeanor offense here is
7     I think quite clearly an aberration and an otherwise
8     unblemished 56 years of personal and professional history
9     and for that reason we ask the Court to impose the sentence
10    that I just requested.
11               THE COURT:  Do you know if your client wishes to
12    address the Court?
13               MR. PETROSINELLI:  Yes, Your Honor, he does,
14    briefly.
15               THE COURT:  If you want to have him come up with
16    you to the podium?
17               MR. PETROSINELLI:  Yes.  Please.
18               THE COURT:  As you probably heard me say, sir,
19    you're free to make any statements.  You're also free not
20    to.  You're free to make any statements you wish.
21               THE DEFENDANT:  Thank you, Your Honor.  I
22    appreciate it.
23               Your Honor, good morning.  I'm very sorry for what
24    happened here.  I accept responsibility for the actions that
25    led to the situation and I promise you that I will never

1   find myself in this situation again.
2          Thank you for your consideration, Your Honor.
3          THE COURT: Thank you.
4          And that will be subject to rebuttal, if you want.
5   I'll hear from Government's Counsel.
6          MR. THOMPSON: Thank you, Your Honor.
7          Your Honor, it's true that almost five years ago
8   Mr. Adams entered into the voluntary disclosure program with
9   the IRS. He paid approximately $117,000 in taxes that he
10  owed for the tax years 2008, 2009, and 2010 and he did so
11  voluntarily.
12         In accordance with the Plea Agreement and the
13  sentencing papers that I know Your Honor has reviewed, the
14  Government would ask for a sentence of one year probation.
15  Thank you.
16         THE COURT: Anything further by Defense Counsel?
17         MR. PETROSINELLI: No, Your Honor. Thank you.
18         THE COURT: Okay.
19         You can remain seated. I'll respond briefly to
20  what's been said and I'll again repeat, again, not unique to
21  this case, both parties have submitted -- have submitted
22  written memorandums to the Court that the Court had a chance
23  to review beforehand.
24         Well, first of all, the -- the Court will indicate
25  for the record, not to insult the intelligence of the

1  lawyers or other people in the room that the -- in addition
2  to the Plea Agreement, and the fact there's a plea to a
3  misdemeanor the -- and, of course, the Court is obligated to
4  then -- is not allowed to consider any of the alleged
5  conduct with respect to the now will be dismissal of the
6  17-count indictment.  The -- as the lawyers and everyone,
7  most everybody in the room may know, the definition of a
8  fair sentence is what is that sentence that will promote
9  respect for the law, sufficient but not greater than
10 necessary to do that, will not create any unwarranted
11 sentencing disparities.  And Counsel have both addressed
12 that saying, well, this is -- for this type of charge, this
13 is a consistent with the majority of cases.
14       Probably the only thing that's not consistent is
15 that the -- the unpaid taxes were paid in advance almost
16 five years ago now.
17       And then the 'D' word, deterrence.  What is that
18 sentence that will promote -- it's really more related to
19 promote -- promoting respect for the law, speaking in plain
20 language and not any other language.
21       So the Court has had a chance to carefully look at
22 these issues.  And the -- the one thing that the Court has
23 looked at and was glad, Mr. Adams, you made the statement
24 that you just did is obviously it's common knowledge, and
25 it's all over the files, that you're a tenured law professor

1  at the University of Minnesota Law School and in high
2  regard.
3           And for the Court in this position -- your
4  position as a law professor with a reputation, one, informs
5  me that you clearly knew more than most that what you were
6  doing was illegal and unethical, and so -- when usually
7  hopefully law professors, and lawyers and judges are setting
8  examples for other individuals, whether they're law
9  students, young lawyers, older lawyers, and maybe other
10 people in the community, and so I have to balance all of
11 that.
12          And I believe probably we have experienced lawyers
13 on both sides, I believe, as they have and they've -- when
14 they've structured a Plea Agreement that they have, and so
15 what I'll be doing is a couple of things.
16          I'll be, in addition to the -- both parties have
17 made reasonable arguments with respect to the straight
18 probation sentence.
19          I'll be placing you on -- and I'll explain why in
20 a moment, two years of probation without any custody.  And
21 I'll get to that issue and that was part of the Plea
22 Agreement, too, both parties were representing no custody.
23 And I don't claim I'm obligated to follow that, but I
24 believe it would be -- meet the definition of a fair
25 sentence provided that with the two years probation without

1      a promise to me, irrespective once I impose a couple other
2      conditions in addition to the standard conditions, it
3      wouldn't be unusual for the Court to, if I received an
4      application a year from now where you were 100 percent
5      compliant with all the conditions and everything was going
6      well, and had -- had completed, which I'll get to two
7      additional conditions, would be -- would not be unusual in a
8      case to terminate you early from probation.  It's not a
9      guarantee it happens, but any check of any our record would
10     indicate that that would be the case.
11             What I will be doing, and I'd note respectfully of
12     objection of your Counsel, I'll be imposing a -- and it's
13     the least important thing of one other specific condition,
14     the $5,000 fine to be paid at the rate of $200 per month,
15     starting the first day in February.
16             And then, obviously, if that's -- that there will
17     be an issue if there's a request for early termination of
18     probation a year from now if, well, it's I have this yet to
19     pay, or, no, I've paid it all, you can pay anything sooner
20     or if you take the position that $200 is more or too much to
21     pay our financial people will evaluate that, but I believe
22     that will -- that creates a fair balance with respect to --
23     and it's not only fair, but not that the Government asked
24     for it, but then it's consistent not inconsistent with the
25     Plea Agreement, although your attorney asked for no fine.

1                And then more important to the Court, in the end,
2       acknowledging your background and how you're viewed in the
3       community in the context of what you pled guilty to, I'm
4       going to order 200 hours of community service work to be
5       done with VLN, also known as Volunteer Lawyers Network,
6       and/or SMRLS, otherwise known as Southern Minnesota Regional
7       Legal Services, on a schedule that is consistent with your
8       schedule and on a schedule to be worked out -- probation
9       will work with you.
10               And then in 9 out of 10 cases there's never an
11      issue because we can work those things out and -- with those
12      two specific organizations.
13               And so that can be done on some schedule that
14      doesn't compromise what other issues or other things that
15      you were doing.  And then I won't go through the other
16      standard conditions of probation because I'll announce those
17      in just a few moments.
18               And I believe if I take that approach, one, and I
19      find the Plea Agreement -- based upon what's been pled to,
20      then I believe that I carry out my function in imposing a
21      fair sentence based upon the plea of guilty to this
22      misdemeanor charge.  And I'm confident the schedule can be
23      worked out that's compatible on those issues.
24               And with that, Counsel, if you and Mr. Adams would
25      come to the podium, please.

1               What I'll do is I'll formally announce the
2    sentence and then I'll stop and ask for any clarification or
3    requests from respective Counsel.
4               As the sentence of the law and judgment of this
5    Court I place you on probation at this time for two years,
6    understanding the comments that I've made about whether I'll
7    review it in a year from now.
8               I impose a fine of $5,000 to be paid at the rate
9    of $200 per month.  It can be paid more than that if you
10   want or if there's a request for less beginning on or about
11   February 1st of 2020.
12              More importantly to me, frankly, on a schedule to
13   be worked out with the probation department, approximately
14   200 hours of community service work, and specifically
15   identifying with VLN here in Minnesota Volunteer Lawyers
16   Network and SMRLS, because so, so many people are going
17   without advice or access.
18              And I don't believe it will conflict at all with
19   some of the other work you're doing with your legal aide
20   clinic and bankruptcy at the University of Minnesota Law
21   School that's been done in the past and other organizations
22   you've worked with.
23              There are no restitution issues because the only
24   thing in front of me, and that's all been paid through this
25   closing -- voluntary closing agreement in 2014 of the

1   $117,000.

2              So if there are any other issues, that's between
3   you and the IRS.  And they've -- consistent with other
4   cases, they don't contact the Court and say, here's any
5   remaining issues.  And so we're assuming -- and Counsel, I
6   think, shares the same views on both sides if there aren't
7   any issues, and if there are that's with the Internal
8   Revenue Service.

9              Moving on to the what are commonly called, as
10  you're probably aware, standard conditions:

11             You shall not commit any crimes, be it federal,
12  state, or local.

13             One, you shall cooperate, as every federal --
14  federal defendant has since October of 2004, in a DNA sample
15  for criminal identification purposes.

16             And then something we haven't discussed, and I
17  acknowledge I haven't discussed with Counsel, I came into
18  the courtroom intending to suspend -- which isn't, again,
19  unique to this case, if I see no identifiable issues of
20  alcohol, or drugs or mental health issues.

21             I suspect the drug testing requirement, as the
22  lawyers know, maybe you know, too, obviously if something
23  would evolve while you're on probation I have the right to
24  reinstitute it.  But I came in thinking that I would be
25  suspending drug testing since there's been no issues prior

1    to or since you've been on release.

2             Any objection to that by Government's Counsel?

3             MR. THOMPSON:  No, Your Honor.

4             THE COURT:  And I doubt that Defense will have an

5    objection.

6             MR. PETROSINELLI:  No, Your Honor.

7             THE COURT:  All right.  Then moving on -- and some

8    of these are standard conditions:

9             You shall not own, possess, or have access to

10   firearm, ammunition, destructive device or any other

11   dangerous weapon as part of your probation.

12            And something it's a standard condition in a case

13   like this, while you're on probation, you shall provide, if

14   requested by the probation officer, access to any requested

15   financial information, including credit reports, credit card

16   bills, bank statements, telephone bills.

17            And then they don't monitor your financial

18   circumstances in terms of incurring new purchases, credit --

19   credit -- opening new accounts, bank accounts, or credit

20   cards, but you have to so inform the probation officer so

21   they can say, yes, we understand.

22            And then there's a $25 special assessment for the

23   Crime Victims Fund.  I'll direct that that be paid on or

24   before February 1st, as well.

25            There -- there's been a waiver of appeal in this

1    case as part of the Plea Agreement.  However, if you feel I
2    have violated the law or imposed a sentence contrary to law
3    then notice of appeal must be filed within 14 days after I
4    file the -- what's called the sentencing judgment, which
5    your lawyer gets a copy of, prosecution, probation, and the
6    Court.
7            And then I believe before I ask if there's any
8    other questions, I believe, what, you're moving to dismiss
9    the 17-count superseding indictment?
10           MR. THOMPSON:  Yes.  That's correct, Your Honor.
11           THE COURT:  Those pursuant to the Plea Agreement
12   are hereby dismissed.
13           Any questions for clarification or anything else
14   by Defense Counsel?
15           MR. PETROSINELLI:  No, Your Honor.
16           THE COURT:  Any questions, Mr. Adams, that you
17   have for the Court?
18           THE DEFENDANT:  No, Your Honor.
19           THE COURT:  Mr. --
20           MR. THOMPSON:  No, Your Honor.  Thank you.
21           THE COURT:  And then -- I know what you're -- I
22   know she got up to remind me of something, so, as she does
23   in every case.  Thank you.
24           But before I go to what I know she got up for, the
25   probation officer, you'll probably want to meet briefly with

1    Mr. Adams before he leaves?

2            MS. KRIER:  Yes, Your Honor.

3            THE COURT:  All right.  The -- again, not unique
4    to this case, and I know that's why typically with respect
5    to any letters that come in from family members and friends,
6    or other people, we seal those for at least ten years.

7            Sealing means, of course, that you and your lawyer
8    have access, Mr. Thompson does, probation and the Court but
9    the public can't go in because there may be personal things
10   or identifiers, and typically we would seal those for ten
11   years unless we're asked to have a longer time or shorter
12   time.  Mr. Petrosinelli?

13           MR. PETROSINELLI:  I'd like to seal those for ten
14   years, Your Honor.

15           THE COURT:  All right.  Mr. Thompson?

16           MR. THOMPSON:  No objection, Your Honor.

17           THE COURT:  I'm going to ask probation, anything
18   else that you wanted to -- hopefully the Court was going to
19   hear?

20           MS. KRIER:  No, Your Honor.

21           THE COURT:  Anything else?  Anything else by
22   Defense Counsel?

23           MR. PETROSINELLI:  No, Your Honor.  Thank you.

24           THE COURT:  By Prosecution?

25           MR. THOMPSON:  No, Your Honor.  Thank you.

1    THE COURT: Then I'm sure for people here,
2 regardless of what capacity you appear, respective Counsel
3 for either side can answer any questions that you may have.
4    And then probation will want to meet with you, Mr.
5 Adams, before you leave and can answer any other questions
6 you have. So we are in recess and we are adjourned.
7    (Court adjourned at 11:28 a.m.)

8                    **REPORTER'S CERTIFICATE**

9
10   I, Lynne M. Krenz, do certify the foregoing pages of typewritten material constitute a full, true and correct transcript of my original stenograph notes, as they
11 purport to contain, of the proceedings reported by me at the time and place hereinbefore mentioned.
12
13            /s/Lynne M. Krenz
             Lynne M. Krenz, RMR, CRR, CRC
14
15
16
17
18
19
20
21
22
23
24
25